Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Robert Friedl (SBN 134947)
Robert.Friedl@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiffs
Carlos Victorino and
Adam Tavitian

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO and ADAM TAVITIAN, individually, and on behalf of a class of similarly situated individuals,<br><br>        Plaintiffs,<br><br>        v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>        Defendant. | Case No.:  '16CV1617 GPC JLB<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Violations of California's Consumers Legal Remedies Act<br>(2)  Violations of Unfair Competition Law<br>(3)  Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act<br>(4)  Breach of Implied Warranty pursuant to the Magnuson-Moss Warranty Act<br>(5)  Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      Plaintiffs Carlos Victorino and Adam Tavitian ("Plaintiffs") bring this action for themselves and on behalf of all persons in the United States who purchased or leased any Dodge Dart vehicles[1] equipped with a Fiat C635 manual transmission ("Manual Transmission") (collectively, "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted and serviced by FCA US LLC, a Delaware limited liability company ("FCA" or "Defendant").

2.      This case arises out of a defect in the Class Vehicle's manual transmissions that cause the vehicles' clutches to fail and stick to the floor.

3.      FCA designed and marketed[2] its Manual Transmission to be compact and lightweight with gearing optimized to increase fuel efficiency and perform quick, seamless shifts.  However, Plaintiffs are informed and believe and based thereon allege that the Manual Transmission contains a design defect that causes, among other problems, the clutch pedal to lose pressure, stick to the floor, and fail to engage/disengage gears.  As a result, the vehicles equipped with the Manual Transmission experience stalling, failure to accelerate, and premature failure of the transmission's components, including, but not limited to, the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel (the "Transmission Defect").

4.      On information and belief, the Transmission Defect is caused by a design flaw in the clutch master cylinder wherein the internal and external seals are ineffective in preventing debris from contaminating and prematurely wearing the seals, resulting in the deprivation of hydraulic fluid to the slave cylinder and,

---

[1] On information and belief, these vehicles include, but are not limited to, the following Dodge vehicles: 2013-2016 Dodge Darts.

[2] *See* Chrysler Media, "All-new 2013 Dodge Dart Features a Powertrain Lineup that Includes Two Tigershark Four-cylinder Engines and a 1.4-liter MultiAir® Turbo Engine," http://media.chrysler.com/newsrelease.do;jsessionid=31332A75DA55E8EDD2E 533D1DFC3E1FC?&id=11858&mid=1 (last visited July 21, 2014).

1    thus, causing collateral damage to the vehicle's clutch slave cylinder and release

2    bearing, clutch disc, pressure plate, and flywheel.  Further, on information and

3    belief, the Transmission Defect is exacerbated by Defendant's use of a plastic

4    clutch master cylinder, which is prone to corrosion by constant exposure to

5    hydraulic fluid.

6        5.    Since 2012, in an effort to address owner complaints regarding the

7    Transmission Defect, FCA has issued Technical Service Bulletins ("TSBs"),

8    customer satisfaction campaigns ("CSCs"), and STAR cases, as detailed below.

9    However, these efforts have been entirely inadequate in remedying the

10   Transmission Defect.  In fact, rather than redesigning the defective components,

11   FCA has perpetuated the Transmission Defect by simply utilizing the same

12   defective components during repairs.  Further, Class Vehicle owners

13   experiencing the Transmission Defect must pay for the temporary repairs, often

14   totaling over $2,000.

15       6.    Additionally, FCA refuses to pay for any repair costs associated

16   with the collateral damage caused by the Transmission Defect, including, but not

17   limited to, the recurring replacement of the clutch slave cylinder and release

18   bearing, clutch disc and pressure plate, and flywheel.

19       7.    Manual transmissions use a driver-controlled clutch.  By pressing

20   and releasing a foot pedal, the driver engages and disengages the engine from the

21   transmission, allowing the vehicle to travel smoothly while the driver manually

22   changes gears.  When the clutch pedal is depressed, the engine and the

23   transmission are disconnected so that the engine can continue to run even while

24   the car is stationary.  When the clutch pedal is released, the engine and the shaft

25   from the engine are directly connected.  A properly functioning clutch pedal is

26   essential for proper vehicle operation, i.e. starting, accelerating, decelerating,

27   reversing, and parking.

28

CLASS ACTION COMPLAINT

8.      The Class Vehicles are equipped with a hydraulic clutch system. This system engages and disengages the clutch using hydraulic pressure. Depressing the clutch pedal develops hydraulic pressure in the clutch master cylinder, and ultimately causes the clutch disc to release.  The figure below shows a typical clutch hydraulic system, which consists of a clutch master cylinder (2), slave cylinder (3), and an interconnecting hydraulic hose.  Clutch hydraulic fluid is supplied by the brake system via the brake master cylinder reservoir (1):



9.      A vehicle equipped with a manual transmission should function in a manner that the driver expects, i.e. it should start, accelerate, decelerate, reverse, and park as the driver operates the clutch.  However, the Manual Transmission does not function as expected and is instead plagued by numerous problems and safety concerns.

10.     On information and belief, the Dodge Dart vehicles equipped with the Manual Transmission have the same or substantially identical transmissions,

and the Transmission Defect is the same for all Class Vehicles.

11.     The Transmission Defect causes unsafe conditions, including, but not limited to, drivers of the Class Vehicles' inability to shift gears or maneuver the clutch pedal, thereby rendering the vehicle unable to accelerate and decelerate, often while the vehicle is already in motion.  These conditions present a safety hazard because they severely affect the driver's ability to control the vehicle's speed, acceleration, and deceleration.  As an example, these conditions make it difficult to maintain appropriate speeds, safely change lanes or merge into traffic because Plaintiffs and Class Members' vehicles have lost power and failed to accelerate when they attempted to change lanes and/or merge onto the highway.[3]  These conditions also caused Plaintiffs and Class Members to have difficulty safely bringing their vehicles to a stop or parking their vehicles.

12.     On information and belief, the Transmission Defect also causes premature wear to the Manual Transmission and its related components, which results in premature clutch system or transmission failure and requires expensive repairs, including replacements of the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc and pressure plate, and flywheel.

13.     Defendant knew or should have known that the Class Vehicles and

_____

[3] *See*, for example, this 2014 Dart owner's complaint to the National Highway Traffic Safety Administration ("NHTSA"):  (2014 Dodge Dart 4/9/2015) PURCHASED A 2014 DODGE DART USED WITH A 6 SPEED. THIS INCIDENT HAPPENED JUST THREE WEEKS AFTER I PURCHASED IT. I NOTICED IT STARTED TO SLIP AND WHILE DRIVING DOWN THE HIGHWAY I HEARD A NOISE, CAR LOST POWER AND SMOKE STARTED POURING OUT FROM UNDER THE HOOD. I HAD IT TOWED TO THE DEALERSHIP WHERE I WAS INFORMED THAT SOMETHING FAILED IN THE CLUTCH, BLOWING A HOLE THROUGH THE TRANSMISSION. THIS ALL HAPPENED WITHIN A MINUTE OR SO WHILE DRIVING AT HIGHWAY SPEEDS. (Safercar.gov, *Search for Safety Problems* (May 19, 2016), http://www-odi.nhtsa.dot.gov/owners/Search SafetyIssues).

the Manual Transmission contained a design defect that adversely affects the drivability of the Class Vehicles and causes safety hazards, in part, because the same concerns were expressed regarding the 2011-2012 models year Dodge Journey that had the same Manual Transmission as the Class Vehicles.

14.     On information and belief, Defendant's corporate officers, directors, or managers knew about the Transmission Defect and failed to disclose it to Plaintiffs and Class Members, at the time of sale, lease, repair, and thereafter.

15.     In fact, on or around January 20, 2012, Chrysler issued a Service Bulletin "06-001-12"[4] for the 2011-2012 Dodge Journey vehicles equipped with the Fiat C635 Manual Transmission.  The Service Bulletin stated that the clutch pedal was inoperative in some vehicles.

16.     Further, in or around November 2012, FCA issued service bulletin 10051770-2112 informing dealers that certain 2013 Dodge Dart vehicles were equipped with defective clutch slave cylinders and could cause a hydraulic fluid leak, which leads to a pressure loss in the clutch system and failure of the clutch pedal.  FCA instructed its dealers to replace the clutch slave cylinder in the affected vehicles.

17.     Then, on or around August 15, 2014, FCA released STAR case number S1406000001 to its dealers addressing an issue in Dodge Dart vehicles equipped with the Manual Transmission where the "Clutch Pedal Does Not Return (Remains on the Floor) After Depressing the Pedal."  FCA instructed its dealers to inspect the clutch pedal and replace the clutch master cylinder and reservoir hose, if necessary.

18.     Additionally, in or around January 2016, FCA extended the clutch master cylinder and reservoir hose warranty period due to 2013-2015 Dodge

---

[4] The same bulletin is referred to as "2011 Dodge Journey Power Train Service Bulletin 329136" and "2012 Dodge Journey Power Train Service Bulletin 329136."

Dart vehicles exhibiting a "loss of clutch pedal operation including limited pedal travel and limited clutch disengagement."  FCA also provided reimbursement for Dodge Dart owners who experienced the clutch issues mentioned and previously paid for clutch master cylinder repairs.  On information and belief, the campaign neither fixed the Transmission Defect nor actually reimbursed all owners affected by the Transmission Defect for repairs performed on the clutch master cylinder and reservoir hose.

19.    Because FCA will not notify Class Members that the Manual Transmission is defective, Plaintiffs and Class Members (as well as members of the general public) remain subject to dangerous driving conditions that often occur without warning.

20.    The alleged Transmission Defect was inherent in each Dodge Dart's Manual Transmission and was present in each Dodge Dart Manual Transmission at the time of sale.

21.    FCA knew about and concealed the Transmission Defect present in every Class Vehicle, along with the attendant dangerous safety and driveability problems, from Plaintiffs and Class Members, at the time of sale, lease, and repair and thereafter.  In fact, instead of repairing the defects in the Manual Transmission, FCA either refused to acknowledge their existence, or performed repairs that simply masked the defects.

22.    If Plaintiffs and Class Members knew about these defects at the time of sale or lease, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

23.    As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles, including, but not limited to, out of pocket costs related to repairs to the Manual Transmission.  Additionally, as a

1 result of the Transmission Defect, Plaintiffs and Class Members were harmed

2 and suffered actual damages in that the Class Vehicles' clutch components are

3 substantially certain to fail before their expected useful life has run.

4                                     **THE PARTIES**

5 **Plaintiff Carlos Victorino**

6          24.     Plaintiff Carlos Victorino is a California citizen who resides in

7 Chula Vista, California.

8          25.     On or about March 22, 2014, Mr. Victorino purchased a new 2014

9 Dodge Dart from San Diego Chrysler Dodge Jeep Ram ("San Diego Dodge"), an

10 authorized FCA dealer in San Diego County.  Mr. Victorino's vehicle was

11 equipped with a Manual Transmission.

12         26.     Mr. Victorino purchased his vehicle primarily for personal, family,

13 or household use.  FCA manufactured, sold, distributed, advertised, marketed,

14 and warranted the vehicle.

15         27.     Passenger safety and reliability were factors in Mr. Victorino's

16 decision to purchase his vehicle.  Prior to purchasing his vehicle, Mr. Victorino

17 spent time researching the Dodge Dart on Dodge's corporate website.  Based on

18 his research, Mr. Victorino believed that the Dodge Dart would be a safe and

19 reliable vehicle.  Mr. Victorino also test drove his vehicle with a dealership

20 salesperson prior to purchase.

21         28.     Had FCA disclosed its knowledge of the Transmission Defect

22 before he purchased his vehicle, Mr. Victorino would have seen such disclosures

23 and been aware of them.  Indeed, FCA's omissions were material to Mr.

24 Victorino.  Like all members of the Class, Mr. Victorino would not have

25 purchased his Class Vehicle, or would have paid less for it, had he known of the

26 Transmission Defect.

27         29.     Since purchasing his Dodge Dart, Mr. Victorino experienced

28

symptoms of the Transmission Defect, including the clutch failing to engage gears and stalling.  On or around January 13, 2016, with approximately 34,351 miles on the odometer, Mr. Victorino brought his vehicle to San Diego Dodge complaining that the vehicle's clutch frequently failed to engage gears and upon shifting, would fail to accelerate.  The service technician inspected the vehicle and found that the clutch assembly, flywheel, and slave cylinder were overheated and worn.  The technician replaced the clutch assembly, flywheel, and slave cylinder at a cost of $1,165.31 to Mr. Victorino.

30.    At all times, Mr. Victorino, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Plaintiff Adam Tavitian**

31.    Plaintiff Adam Tavitian is a California citizen who resides in North Hollywood, California.

32.    On or around November 17, 2012, Mr. Tavitian purchased a new 2013 Dodge Dart from Stewart Chrysler Dodge Jeep Ram, an authorized FCA dealer in San Mateo County ("Stewart Chrysler").  Mr. Tavitian's vehicle was equipped with a standard Manual Transmission.

33.    Mr. Tavitian purchased his vehicle primarily for personal, family, or household use.  FCA manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

34.    Passenger safety and reliability were factors in Mr. Tavitian's decision to purchase his vehicle.  Prior to purchasing his vehicle, Mr. Tavitian spent time researching the Dodge Dart on Dodge's corporate website.  Based on his research, Mr. Tavitian believed that the Dodge Dart would be a safe and reliable vehicle.  Mr. Tavitian also test drove his vehicle with a dealership salesperson prior to purchase.

35.     Had FCA disclosed its knowledge of the Transmission Defect before he purchased his vehicle, Mr. Tavitian would have seen such disclosures and been aware of them.  Indeed, FCA's omissions were material to Mr. Tavitian.  Like all members of the Class, Mr. Tavitian would not have purchased his Class Vehicle, or would have paid less for it, had he known of the Transmission Defect.

36.     On or around July 7, 2014, Mr. Tavitian took his vehicle to Rydell Chrysler, complaining that the clutch pedal installed in his Dodge Dart would stick in the depressed position and fail to shift gears.  The service technician inspected the vehicle and determined that the clutch master cylinder was leaking and subsequently replaced the clutch master cylinder at a cost of $298.33 to Mr. Tavitian.  In May 2016, Mr. Tavitian requested reimbursement from FCA for the repair costs incurred in replacing the clutch master cylinder in response to FCA's customer service campaign providing for such reimbursement.  However, Mr. Tavitian's claim was denied.

37.     Despite requesting reimbursement for the clutch master cylinder replacement per FCA's customer service campaign in early 2016, receiving a letter from FCA informing him that his Class Vehicle was included in its CSP, which extended the warranty of the clutch master cylinder and reservoir hose and provided reimbursement to owners of the affected vehicles who previously replaced the cylinder and/or hose, FCA denied Mr. Tavitian's claim for reimbursement.

38.     At all times, Mr. Tavitian, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Defendant**

39.     Defendant FCA US LLC is a limited liability company organized

and in existence under the laws of the State of Delaware and registered to do business in the State of California.  FCA US LLC's Corporate Headquarters are located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.  FCA US LLC designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide and in California. FCA US LLC is the warrantor and distributor of the Class Vehicles in the United States.

40.    At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in San Diego County and throughout the United States of America.

## JURISDICTION

41.    This is a class action.

42.    Plaintiffs and other members of the Proposed Class are citizens of states different from the home state of Defendants.

43.    On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

44.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

## VENUE

45.    FCA, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate.  Defendant is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

46.    In addition, a substantial part of the events or omissions giving rise to these claims and a substantial part of the property that is the subject of this action are in this district.  In addition, Plaintiff Carlos Victorino's Declaration, as required under California Civil Code section 1780(d) but not pursuant to *Erie*

CLASS ACTION COMPLAINT

and federal procedural rules, reflects that a substantial part of the events or omissions giving rise to the claims alleged herein occurred, or a substantial part of property that is the subject of this action, is situated in San Diego County, California.  It is attached as Exhibit 1.

47.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

48.    Since 2012, FCA has designed, manufactured, distributed, sold, and leased the Class Vehicles.  FCA has sold, directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles equipped with the Manual Transmission in California and nationwide.

49.    FCA designed and marketed its Manual Transmission to be compact and lightweight with gearing optimized to increase fuel efficiency and perform quick, seamless shifts.  However, Plaintiffs are informed and believe and based thereon allege that the Manual Transmission contains a design defect that causes, among other problems, the clutch pedal to lose pressure, stick to the floor, and fail to engage/disengage gears.  As a result, the vehicles equipped with the Manual Transmission experience stalling, failure to accelerate, and premature failure of the transmission's components, including, but not limited to, the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel (the "Transmission Defect").

50.    Theoretically, a vehicle equipped with a manual transmission should function in a manner that the driver expects, i.e. it should start, accelerate, decelerate, reverse, and park as the driver operates the clutch.  In practice, however, FCA's Manual Transmission is plagued by numerous problems and safety concerns.

51.    On information and belief, the Transmission Defect is caused by a design flaw in the clutch master cylinder wherein the internal and external seals

are ineffective in preventing debris from contaminating and prematurely wearing the seals, resulting in the deprivation of hydraulic fluid to the slave cylinder and, thus, causing collateral damage to the vehicle's clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel. Further, on information and belief, the Transmission Defect is exacerbated by Defendant's use of a plastic clutch master cylinder, which is prone to corrosion by constant exposure to hydraulic fluid.

52.     The alleged Transmission Defect is inherent in each Dodge Dart's Manual Transmission and was present in each Dodge Dart's manual transmission at the time of sale.

53.     Dating back to at least January 2012, FCA was aware of the defects of the Manual Transmission.  FCA, however, failed to disclose these known defects to consumers.  As a result of this failure, Plaintiffs and Class Members have been damaged.

**The Transmission Defect Poses an Unreasonable Safety Hazard**

54.     The Transmission Defect causes unsafe conditions, including, but not limited to, drivers of the Class Vehicles' inability to shift gears or maneuver the clutch pedal, thereby rendering the vehicle unable to accelerate and decelerate, often while the vehicle is already in motion.  These conditions present a safety hazard because they severely affect the driver's ability to control the vehicle's speed, acceleration, and deceleration.  As an example, these conditions make it difficult to maintain appropriate speeds, safely change lanes or merge into traffic because Plaintiffs and Class Members' vehicles have lost power and failed to accelerate when they attempted to change lanes and/or merge onto the highway.   These conditions also caused Plaintiffs and Class Members to have difficulty safely bringing their vehicles to a stop or parking their vehicles.

55.     Hundreds of purchasers and lessees of the Class Vehicles have experienced problems with the manual transmission.  Complaints filed by consumers with the National Highway Traffic Safety Administration ("NHTSA") demonstrate that the defect is widespread and dangerous and that it manifests without warning.  The complaints also indicate Defendant's awareness of the problems with the transmission and how potentially dangerous the defective condition is for consumers.  The following are some safety complaints relating to the Transmission Defect (spelling and grammar mistakes remain as found in the original) (Safercar.gov, *Search for Safety Issues* (May 25, 2016), http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues/):

**2013 Dodge Dart:**

a. 2/2/2013 THIS VEHICLE SHIFTS SO BAD AND THAT CARS I'VE DRIVEN THAT WERE 5 - 10 YEARS OLDER SHIFTED BETTER THAN THIS . IT DOWNSHIFTS WHILE BRAKING AND SOMETIME IT IS A VERY JERKY DOWNSHIFT .ALSO IT SLAMS/JOLTS INTO FIRST GEAR WHILE ROLLING AT ABOUT 3-5 MILES PER HOUR ONCE THE PEDAL IS PUSHED. IT ALSO IS THE WORST AT CHANGING GEARS DURING STOP AND GO DRIVING BECAUSE IT IS SO JERKY AND BOUNCY AFTER BRAKING THEN ACCELERATING AND I DON'T SEE WHY A CAR THAT IS BRAND NEW SHOULD DO THIS. AFTER TAKING IT TO THE DEALER AND HAVING THEM TELL ME TO BRAKE IT IN FIRST , I HAVE DONE SO AND HAVE 700+ MILES ON IT AND HAVE HAD THEM PERFORM TRANSMISSION FLASH UPDATES WITH NO EFFECT ON THE SHIFTING PROBLEMS. I CAN'T SEE HOW THIS TRANSMISSION( AND ALL PARTS THAT WORK TOGETHER WITH IT )WILL LAST WITH THESE SORT OF THINGS HAPPENING. ALSO IT BOGS OUT BECAUSE IT WON'T DOWNSHIFT WHEN IT SHOULD AND STAYS AT ABOUT 1300-1400 RPM'S WHEN IT SHOULD BE ABOUT 4-5000 RPM'S HIGHER . I'VE DRIVEN NEW CARS AND THE DODGE DART 2013 SE 2.0 LITER MODEL SEEMS LIKE IT WASN'T READY YET FOR THE ROAD .THE ACCELERATION IS VERY BOUNCY TOO WHEN IT SHOULD BE A STEADY ACCELERATION. *TR

b. 3/25/2013 WHEN DRIVING DOWN THE HIGHWAY, I ATTEMPTED TO DOWNSHIFT TO CHANGE LANES. THE CLUTCH BASICALLY POPPED AND WENT TO THE FLOOR. I THEN HAD TO SWERVE IN TRAFFIC IN ORDER TO GET OFF THE HIGHWAY. I HAVE A 2013 DART SXT WITH THE 1.4L MULTIAIR ENGINE AND THE 6 SPEED TRANSMISSION. AFTER LOOKING AROUND ON THERE WEB, THIS IS

APPARENTLY NOT AN ISOLATED INCIDENT AND MAY ACTUALLY BE A KNOWN ISSUE WITH THE VEHICLES. CHRYSLER NEEDS TO NOT ONLY FIX THIS PROBLEM, BUT IT SHOULD BE RECALLED AS IT CAN HAPPEN AT ANY TIME. I HAVE FOUND THAT SOME VEHICLES HAVE THIS HAPPEN IN AS LITTLE AS THE FIRST FEW DAYS OF OWNERSHIP OR AS IN MY CASE, AFTER A FEW THOUSAND MILES. IT IS DANGEROUS. I WOULD PUT IN THE VIN, BUT THE CAR IS CURRENTLY AT THE DEALERSHIP AS THIS HAPPENED TODAY. THANK YOU. *TR

c. 8/8/2013 ON THREE SEPARATE OCCASIONS WHEN I AM IN TRAFFIC AND HAVE TO DO A LOT OF START/STOP THE CAR STALLS, WILL NOT GO INTO GEAR AND START SMOKING. IT SMELLS AS IF THE CLUTCH IS BURNING AND THE CAR WILL NOT GO INTO GEAR. I HAVE TO PULL OVER FOR ABOUT 30MIN TO AN HOUR TO STOP THIS FROM CONTINUING. THIS IS A BRAND NEW CAR AND I HAVE TAKEN IT TO THE DEALER AND THEY OF COURSE CANT DUPLICATE THE PROBLEM AND THE TECH IS TELLING ME THE CLUTCH IS OVERHEATING BECAUSE OF USER ERROR. I HAVE BEEN DRIVING A STICK SHIFT FOR ABOUT 15 YEARS AND HAVE NEVER HAD ANY PROBLEMS WITH MY OTHER STICK SHIFTS LIKE THIS ONE. EVERYONE AROUND ME CAN SEE THE CAR SMOKING AND MY DAUGHTER IS SCARED TO DEATH TO GET BACK IN THE CAR BECAUSE SHE HAS EXPERIENCED THIS TWICE NOW AND SHE IS ONLY 4 YEARS OLD SHE THINK THE CAR IS GOING TO CATCH ON FIRE. I SHOULD NOT HAVE TO PULL OVER FOR AN HOUR EVERYTIME I AM IN TRAFFIC. I LIVE IN A CITY WHERE THAT IS NOT PREVENTABLE. THERE HAS GOT TO BE SOMETHING THAT CAN BE DONE ABOUT THIS. *TR

d. 8/20/2013 1. CLUTCH STARTED TO LOSE RESISTANCE COUPLE TIMES A MONTH IN TWO LAST MONTHS. NOW ALMOST EVERY DAY AFTER LONG TIME NOT USING IT. IT FREELY GOING DOWN, SOMETIMES STUCK IN THE HALF WAY OUT AND HAVE TO BE PULLED UP. 2. BRAKES STARTED LOSE RESISTANCE RECENTLY ALSO AFTER LONG TIME NOT TO BE USED (1 OR MORE HOURS) SPECIALLY IN THE MORNING. IT FREELY GOING DOWN HALF WAY PRODUCING AIR BLOW SOUND. AFTER A FEW TIMES PUSHING PEDAL DOWN AIR BLOW STOPS AND RESISTANCE GETS OK. BEHIND OF BRAKE PEDAL IT FEELS SOME KING OF LIQUID. 3. ACCELERATION AT HIGH SPEED TAKES LONGER TIME THEN IT WAS BEFORE AND REQUIRES TO SWITCH TO LOWER GEAR. (TURBO PROBLEM?) 4. MPG DECREASED. ON THE SAME WAY TO AND BACK TO WORK USUALLY IT WAS 32-33 MPG. NOW IT GETS 28-29 TODAY BROUGHT CAR TO DEALER. AFTER A WHOLE DAY OF INSPECTION NOTHING WRONG WAS FOUND. *TR

e. 9/8/2013 WHEN I GO TO SHIFT FROM 1ST TO 2ND GEAR THE CLUTCH PEDAL STAYS DEPRESSED, THIS KEEPS THE CAR

1   IN NEUTRAL AND LEAVING IT UNABLE TO DELIVER
    POWER TO MANEUVER.

2   f.   9/12/2013 CLUTCH PEDAL DOES NOT ALWAYS COME ALL
3        THE WAY BACK UP. I HAVE TO PULL IT UP WITH MY FOOT.
         I CAN TELL IT DOES NOT HAVE THE CLUTCH ENGAGED TO
4        BURN IT OUT. JUST A IRRITATING THING TO HAVE TO DO
         ON A BRAND NEW CAR. TOOK IT TO THE DEALERSHIP FOR
5        ANOTHER ISSUE AND HAD THEM CHECK IT. THEY COULD
         NOT GET IT TO STICK. AND SINCE CHRYSLERS SYSTEM
6        WAS DOWN THEY DIDN'T KNOW WHAT TO LOOK AT. THIS
         HAPPENS AND RANDOM TIMES. THIS MORNING IT
7        HAPPENED. WHEN I WENT TO PUSH THE CLUTCH DOWN I
         COULD TELL THERE WAS NO RESISTANCE FOR A FEW
8        INCHES. WHEN I RELEASED THE CLUTCH IT ONLY CAME
         PART WAY UP AGAIN. BIGGEST FRUSTRATION IS THE
9        TECH'S CAN NOT PROBLEM SOLVE ANYTHING WITH OUT
         A COMPUTER TELLING THEM WHAT TO DO. I MADE A FEW
10       SUGGESTIONS ON WHAT TO CHECK BUT THEY HAD NOT
         CLUE. SINCE THIS IS THE FIRST YEAR FOR THIS CAR I DO
11       EXPECT BUGS IN THE SYSTEM. HOWEVER THEY SHOULD
         BE PREPARED TO PROBLEM SOLVE THIS PROBLEMS. I
12       SHOULD NOT HAVE TO MAKE SUGGESTIONS OR PROBLEM
         SOLVE IT MYSELF. *TR

13  g.   10/24/2013 PRESSED IN CLUTCH PEDAL TO START VEHICLE.
14       AFTER CAR STARTED, TRIED TO TAKE CAR OUT OF GEAR
         BUT IT WOULDN'T BUDGE. ALSO, THE CLUTCH PEDDLE
15       WOULD NOT RELEASE, AS IT WAS STUCK TO THE FULLY
         PRESSED POSITION. CAR BEGAN TO ROLL AS IF IT
16       STARTED TO DISENGAGE BUT THE PEDDLE WAS STILL
         COMPLETELY PRESSED IN. I IMMEDIATELY TURNED THE
17       CAR OFF. I HAD TO PULL THE CLUTCH PEDDLE UP BY
         HAND TO GET IT TO DISENGAGE. CALLED DEALER
18       SERVICE, SAID THEY COULDN'T RESOLVE THE ISSUE IF
         THEY COULDN'T DUPLICATE THE PROBLEM. I'VE NOTICED
19       MANY PEOPLE WITH THE SAME ISSUE. CHRYSLER NEEDS
         TO ISSUE A RECALL ON THIS. *TR

20  h.   1/2/2014 ANOTHER TIME CLUTCH WOULD NOT COME UP
21       AND STAYED TO THE FLOOR,CLUTCH FLUID LEAKED

22  i.   3/12/2014 AFTER SEVERAL HOURS OF STAYING PARKED
         WITH TRANSMISSION IN GEAR (1ST), VEHICLE WOULD
23       NOT DISENGAGE GEARBOX ON STARTUP. CLUTCH LOST
         ALL PRESSURE AND THE VEHICLE REQUIRED EXCESSIVE
24       USE OF FORCE TO DISLODGE GEAR SHIFTER. VEHICLE
         WAS STARTED (CLUTCH DISENGAGED AND IN NEUTRAL)
25       AND VEHICLE BEGAN TO DRIVE FORWARD.
         CLUTCH/TRANSMISSION REMAINED IN CONTACT WITH
26       ENGINE CAUSING THE VEHICLE TO CONTINUE MOVING
         FORWARD EVEN WHILE IN NEUTRAL.
27       TRANSMISSION/CLUTCH WOULDN'T REENGAGE WITHOUT
         EXCESSIVE FORCE. *TR

28

CLASS ACTION COMPLAINT

j. 3/24/2014 BRAND NEW 2013 DODGE DART, SIX SPEED MANUAL TRANSMISSION. BEGAN SMELLING AND SMOKING WHEN TEACHING MY SON HOW TO START ON A HILL. SMOKE WAS COMING FROM FRONT RIGHT SIDE OF TRANSMISSION. SMELLED LIKE A BURNING CLUTCH. THIS OCCURRED AFTER A SHORT PERIOD OF TIME ON THE HILL (LESS THAN FIVE MINUTES). TOOK CAR BACK TO DEALERSHIP TODAY (3-24-14), AND WAS TOLD THERE IS A STICKER ON THE TRANSMISSION THAT BURNS (IT WAS REMOVED TODAY, AND HAS BEEN REMOVED ON OTHER DARTS THEY HAVE WORKED ON FOR THE SAME PROBLEM), AND THE SMELL AND SMOKE WERE ALSO COMING FROM THE CLUTCH. THEY TEST DROVE THE CAR OVER SOME HILLS NEAR THE DEALERSHIP AND WERE ABLE TO REPRODUCE THE SAME SMELL, BUT SAID IT IS LIKELY CAUSED BY THE NEW CLUTCH AND SHOULD BE DRIVEN 1500-2000 MILES BEFORE BEING CONCERNED ABOUT THIS ISSUE. I HAVE NEVER EXPERIENCED CLUTCH BURNING LIKE THIS, ESPECIALLY AFTER SUCH A SHORT PERIOD OF TIME ON THE HILL, AND I'VE DRIVEN MANY MANUAL CARS/TRUCKS OVER MANY YEARS. *TR

k. 4/17/2014 TL* THE CONTACT OWNS A 2013 DODGE DART. THE CONTACT STATED THAT WHILE TRAVELING VARIOUS SPEEDS, THE VEHICLE FAILED TO RESPOND TO DECELERATION ATTEMPTS. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT CONTACTED ABOUT THE FAILURE. THE FAILURE MILEAGE WAS 3,500.

l. 5/7/2014 I WENT OUT IN THE MORNING TO START THE CAR AND IT WOULD NOT GO INTO REVERSE. THE GEAR STICK FELT STUCK AND I HAD TO HAVE MY HUSBAND COME OUT AND PUT THE CAR INTO NEUTRAL AND ROLL THE CAR BACK SO WE COULD START IT IN FIRST. THIS HAPPENED AGAIN ONE MONTH LATER, ONLY THE CAR WOULD NOT EVEN GO INTO FIRST GEAR. WE HAD IT TOWED TO DEALER AND WERE TOLD WE HAD TO PAY FOR A NEW CLUTCH-IT WAS BURNED OUT. BURNED OUT AT 18,000 MILES. WE PAID FOR A NEW CLUTCH, AND NOW 4MTHS LATER, THE CAR IS DOING THE SAME THING. PROBLEM GOING INTO REVERSE. DEALER CAN FIND NOTHING WRONG WITH IT-I AM SCARED THE CLUTCH WILL BURN OUT AGAIN-NEVER KNOW WHEN THIS CAR WILL LEAVE ME STRANDED. WORST EXPERIENCE EVER. *TR

m. 5/12/2014 WENT TO START MY CAR IN THE MORNING PUSHED THE CLUTCH TO THE FLOOR AND IT DID NOT RETURN, JUST STAYED DEPRESSED AGAINST THE FLOORBOARD. TOOK IT TO THE DEALERSHIP AND THEY SAID EVERYTHING IS FUNCTIONING AS DESIGNED. WELL ITS NOT! I CALLED CHRYSLER CUSTOMER SERVICE AND THEY TOLD ME THE CLUTCH IS ONLY UNDER WARRANTY FOR 12000 MILES. MY PREVIOUS 3 CARS HAVE BEEN

CLASS ACTION COMPLAINT

MANUAL TRANSMISSIONS AND ALL WENT WELL OVER 100000K WITHOUT ANY CLUTCH ISSUES. MY CAR NOW DOES THIS REGULARLY AT LEAST ONCE EVERY OTHER DAY. I AM EXTREMELY DISAPPOINTED IN DODGE AND THOUGHT THEY WERE "FOCUSING ON QUALITY". THE LACK OF CONCERN BY DODGE REGARDING THIS SAFETY ISSUE IS DOWNRIGHT DISGUSTING. AFTER SPEAKING WITH THE CUSTOMER SERVICE REP SHE STATED SHE WOULD CONTACT THE DEALERSHIP AND CALL ME TOMORROW. NO CALL, NO E-MAIL. THEN THEY HAVE THE NERVE TO SEND ME A SURVEY ON HOW WAS MY ISSUE RESOLVED. IT WASN'T THAT'S WHY YOU GOT ALL 1'S. WHY DON'T YOU ACTUALLY STAND BY YOUR PRODUCT? *TR

n. 5/18/2014 WENT TO START MY CAR AND THE CLUTCH PEDAL WENT STRAIGHT TO THE FLOOR ALMOST LIKE IT HAD NO FLUID IN THE MASTER CYLINDER AFTER I STARTED THE CAR I HAD TO SIT THERE AND PUMP IT TO FIND FEELING BEFORE I FELT COMFORTABLE DRIVING IT. THIS WAS STRANGE AS I PARK INSIDE A CLIMATE CONTROLLED GARAGE AND THERE IS NOT ANY FLUID LEAKING ON THE GROUND. *JS

o. 6/3/2014 ON MULTIPLE OCCASIONS, WORSE WHEN IT IS HOT OUTSIDE, THE CLUTCH PEDAL WILL BE SOFT AND NOT COME UP OFF THE FLOOR. WHEN THE CLUTCH IS SOFT, I AM NOT ABLE TO SHIFT IN OR OUT OF GEAR. IF THE ENGINE IS ON AND IN GEAR, YOU CANNOT PUMP THE CLUTCH UNTIL THE VEHICLE IS OFF, OR IF YOU MANAGE TO GET IT INTO NEUTRAL. AS I PREFER TO PARK THE VEHICLE IN GEAR, WHEN THE CLUTCH GOES SOFT, IT MAKES IT DIFFICULT, IF NOT IMPOSSIBLE, TO REMOVE THE SHIFTER FROM GEAR TO PREVENT THE CAR FROM MOVING AND HITTING AN OBJECT. I HAVE ALMOST HIT A CONCRETE PILLAR AND DRIVEN THROUGH MY GARAGE WHEN THIS HAPPENS. I GET THE FEELING THE CLUTCH IS NOT FULLY DISENGAGED, DESPITE THE PEDAL STUCK ON THE FLOOR. WITHOUT PARKING IN GEAR, I RUN THE RISK OF THE CAR ROLLING AWAY IF THE PARKING BRAKE FAILS. THERE HAVE BEEN NO LEAKS AND THE DEALER HAS BEEN UNABLE TO LOCATE THE PROBLEM. *TR

p. 6/5/2014 FOR THE PAST YEAR AND A HALF MY CLUTCH HAS BEEN LOSING ALL RESISTANCE. THIS USUALLY HAPPENS WHEN THE VEHICLE IS COLD AND AT TIMES I AM UNABLE TO PUT MY CAR INTO GEAR. SOMETIMES THIS HAS HAPPENED WHILE AT STOP LIGHTS OR EVEN PULLING OUT INTO TRAFFIC. EVERY TIME I TAKE MY VEHICLE TO THE DEALERSHIP AIM TOLD THERE IS NOTHING WRONG. EVENTUALLY THEY REPLACED MY CLUTCH MASTER CYLINDER ABOUT 8 MONTHS AGO THE FIRST TIME. PROBLEM SEEMED TO RESOLVE THEN ABOUT 2 MONTHS AGO IT STARTED DOING IT AGAIN. WENT BACK TO THE DEALERSHIP AND TOLD NOTHING WAS WRONG.

AFTER MULTIPLE TRIPS TO DEALERSHIP THEY FINALLY AGREED TO REPLACE MASTER CYLINDER AND DISCOVERED THE SLAVE CYLINDER IS LEAKING. VEHICLE BACK IN THE SHOP FOR THE PAST WEEK REPLACING SLAVE CYLINDER. ANY PERSPECTIVE DART BUYERS OUT THERE, I REALLY CAUTION AGAINST THIS PURCHASE. THIS IS ONLY ONE OF MULTIPLE ISSUES I HAVE HAD. ON A SIDE NOTE, I PURCHASED THIS VEHICLE NEW IN JULY 2012 WITH 120 MILES ON IT. SINCE THEN I HAVE HAD 2 IGNITION COILS REPLACED, 2 CLUTCH MASTER CYLINDERS, SLAVE CYLINDER, 3 TURBOS, CATALYTIC CONVERTER ALL REPLACED. BUYER BEWARE. *TR

q. 6/6/2014 I WENT TO MOVE MY CAR AND THE CLUTCH WAS STUCK TO THE FLOOR OF MY CAR. I COULD NOT GET IT IN OR OUT OF GEAR. SO FAR CHRYSLER HAS REPLACED THE ELECTRICAL/COMPUTER PART, THE PART FOR THE CLUTCH. I JUST FOUND OUT ABOUT THE RECALL FOR THE BRAKE AND TRANSMISSION. LAST MY DOOR IS DARKER THEN THE REST OF THE CAR AND THEY ARE HAVING IT PAINTED. *TR

r. 6/24/2014 2013 DODGE DART. CONSUMER WRITES IN REGARDS TO TRANSMISSION MALFUNCTION, BROKEN TIRE SENSOR AND OTHER VEHICLE PROBLEMS. *SMD THE CONSUMER STATED THE TRANSMISSION HAS BEEN ON GOING SINCE, THE FIRST DAY THE VEHICLE WAS PURCHASED. APPARENTLY, IT WAS A FACTORY DEFAULT, THAT COULD NOT BE FIXED. THE TRANSMISSION DOWN SHIFTED INTO SECOND GEAR, THE CLUTCH WOULD STICK, THE GEARS WERE GRINDING WHEN IN REVERSE AND A METALLIC NOISE WAS HEARD WHEN DOWN SHIFTING IN ANY GEAR. THE DEALER REPLACED THE SECOND GEAR AND SYNCHRONIZERS. THE SUN VISOR NO LONGER STAYED IN ITS POSITION.

s. 7/1/2014 I HAVE FILED A COMPLAINT IN SEPT. 2013 THE INCIDENT NUMBER WAS 10542516. I MY VEHICLE WAS TOWED TO THE NEAREST DEALERSHIP FOR REPAIR. THE CLUTCH PEDAL WOULD NOT RETURN ONCE DEPRESSED. IT WAS DETERMINED THAT IT WAS THE SLAVE CYLINDER. THAT WAS REPLACED, TAKING OVER A WEEK. THE REMEDIED THE PROBLEM UNTIL THE END OF JUNE 2014 WHEN THE CAR BEGAN DISPLAYING THE SAME PROBLEM. I WAS GETTING ON THE INTERSTATE AND WENT TO SHIFT FROM 2ND TO 3RD AND THE CLUTCH PEDAL REMAINED DEPRESSED ONCE AGAIN. NOT HAVING POWER AT THIS KEY POINT OF ACCELERATION WAS DANGEROUS AND I WAS ALMOST REAR ENDED BY A SEMI. I TOOK THE CAR TO A DEALERSHIP ONCE AGAIN AND IT WAS DETERMINED THE SLAVE CYLINDER WAS THE PROBLEM ONCE AGAIN. I THINK THIS REALLY NEEDS TO BE EXAMINED AS IT CREATES A SERIOUS POTENTIAL FOR INJURY. *TR

CLASS ACTION COMPLAINT

1
2
3

t.  7/3/2014 CLUTCH PEDAL DOES NOT RETURN FROM DEPRESSED POSITION. CLUTCH PEDAL IS SOFT AND CLUTCH MECHANISM DOES NOT FUNCTION PROPERLY FOR A FEW MINUTES OF INITIAL OPERATION. AFTER THE INITIAL INCIDENT THIS PROBLEM HAS BECOME MORE FREQUENT AND NOW OCCURS ALMOST DAILY. *TR

4
5
6
7
8
9
10
11
12
13

u.  7/7/2014 I WAS ACCELERATING FROM A STOPPED POSITION AND WAS SHIFTING INTO FOURTH GEAR WHEN THE CLUTCH PEDAL STAYED DEPRESSED TO THE FLOOR. I HAVE HAD THIS CAR BACK FROM THE DEALER 10 DAYS. IT WAS IN THE SERVICE DEPARTMENT TO CORRECT THE SAME PROBLEM. THIS IS THE THIRD TIME THIS CAR HAS DONE THIS. THE CASE NUMBERS FOR THE FIRST TWO ARE 10542516 AND 10607620. LIKE THE SECOND EPISODE, I WAS LEFT IN A VULNERABLE SITUATION IN WHICH I WAS ALMOST HIT. THE LANES TAPER FROM TWO DOWN TO ONE AND I WAS IN THE INSIDE LANE COMING OUT OF THE TAPER. A TRUCK COMING UP FROM BEHIND WAS UNAWARE TO THE SLOW SPEED OF MY CAR AND I WAS NOT ABLE TO ACCELERATE. HE WAS ABLE TO SWERVE ACROSS THE NO PASSING LINES INTO ANOTHER LANE AND AVOID HITTING THE BACK OF MY CAR. I WAS ABLE TO COAST TO NEXT CROSS ROAD AND JUST MAKE IT OFF THE STATE HIGHWAY. MY VEHICLE WAS TOWED BACK TO THE DEALERSHIP. *JS

14
15
16
17
18
19
20
21

v.  7/9/2014 DRIVING AT A AVERAGE SPEED OF 60-70 WHEN PASSING ON THE HWY MY CLUTCH PEDAL WAS STUCK TO THE FLOOR AND I HAD TO PULL IT OUT WITH MY FOOT TO CHANGE GEARS. THIS NOW HAS STARTED HAPPENING ON TAKE OFFS NOW. THE DEALER HAS ALL READY REPLACE IT ONCE AND IT IS STILL HAVING THE SAME ISSUE. APPARENTLY THE PART IS ON BACK ORDER BECAUSE THEY CAN NOT KEEP ENOUGH IN STOCK FOR THE CARS THAT ARE HAVING THIS REPLACED. IT TOOK 21 DAYS IN ORDER FOR MY PART TO ARRIVE AT THE DEALERSHIP. NOW I HAVE TO WAIT LONGER FOR A NEW ONE TO REPLACE THE ONE THAT WAS PUT IN. THIS CAN CAUSE A SERIOUS ISSUE ALMOST LIFE THREATENING BECAUSE YOU COULD BE PULLING OUT INTO TRAFFIC AND GOD FORBID YOU CAN'T REACT FAST ENOUGH. *JS

22
23
24
25
26

w.  8/29/2014 THE CLUTCH PEDAL STUCK TO THE FLOOR PREVENTING ME FROM BEING ABLE TO SHIFT OUT OF GEAR OR DISENGAGE THE ENGINE FROM THE TRANSMISSION. BECAUSE I AM A MECHANIC I WAS ABLE TO AVOID A CRASH. THIS IS A COMPLEX ISSUE AND MOST CONSUMERS WILL FREAK OUT IF THEY CAN NOT PUT THERE VEHICLE IN NEUTRAL AND THE ENGINE STALLS FROM THEM TRYING TO USE THE BRAKES. *TR

27
28

x.  10/14/2014 MY FOOT WAS ON MY CLUTCH AND BRAKE I THEN STARED THE CAR....THE CAR LUNGE FORWARD INTO SOME BUSHES .. AFTER THAT THE CLUTCH STAYED

ON THE FLOOR UNABLE TO SHIFT IN REVERSE TILL I PUMPED BRAKE AND CLUTCH I ACTUALLY LIFTED THE CLUTCH UP WITH MY FOOT TO USE IT TO SHIFT. *TR

y.  1/13/2015 TL* THE CONTACT OWNS A 2013 DODGE DART. UPON STARTING THE VEHICLE OR DURING COLD WEATHER TEMPERATURES, THE CLUTCH FAILED TO SHIFT PROPERLY. THE CONTACT MENTIONED THAT THE CLUTCH NEEDED TO BE PUMPED IN ORDER TO SHIFT PROPERLY. THE VEHICLE WAS TAKEN TO DEALER WHERE THE FAILURE WAS UNABLE TO BE DUPLICATED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 12,000.

z.  1/22/2015 I WAS DRIVING AT ABOUT 40 MPH AND ABRUPTLY THE ENGINE STALLED AND THE CLUTCH WENT TO THE FLOOR AND THE VEHICLE REFUSED TO CHANGED GEARS OR MOVE. I ALLOWED IT TO VEER TO THE SIDE TO ESCAPE BEING REAR ENDED OR CRASHED FROM BEHIND. I HAD NO CONTROL OF THIS CAR. *TR

aa. 2/19/2015 PURCHASED CAR BRAND NEW. HAVE DRIVEN MANUAL TRANSMISSIONS FOR 40 YEARS AND HAVE NEVER RUINED A CLUTCH OR ANY PART OF THE TRANSMISSION. I WAS DRIVING ALL THE ROAD AND GOING UP A HILL AND ATTEMPTED TO DOWNSHIFT TO GET UP THE STEEP HILL. THE CLUTCH WENT DOWN TO THE FLOOR AND THE SHIFTER WOULDN'T ALLOW ANY SHIFTING. I VEERED OFF THE ROAD AND CALL TOW TRUCK. I HAD CAR TOWED TO LANDMARK DODGE, MORROW, GA 30260, AND AFTER WEEKS THEY SAY THE ENTIRE TRANSMISSION WAS BURNED UP AND BROKEN INTO PIECES?? WELL, 1ST WEEK THEY ORDERED WRONG PART, 3 WEEK THEY SAID THEY HAD TO REMOVE THE ENTIRE TRANSMISSION AND TODAY (4 WEEKS LATER) THEY SAID THEY FEEL IT IS A CASE OF CUSTOMER ABUSE AND WANT 1500.00 TO REPAIR. I TOLD THEM UP FRONT A CERTIFIED TECHNICIAN LOOKED AT THE ISSUE PRIOR TO ME HAVING PULLED TO THEM AND HE SAID, "THIS IS DEFECTIVE". HE ALSO PRINTED OUT INFO FROM THE INTERNET OF OTHER DODGE DART 2012-2013 WITH THE VERY SAME ISSUE. CLUTCH TO THE FLOOR, AND EVEN A CLASS ACTION SUIT. I WILL HAVE TO GET IT FIXED

bb. 4/15/2015 CLUTCH WENT COMPLETELY TO THE FLOOR AND HAD TO VEER CAR INTO A TERRAIN IN ORDER TO AVOID BEING RUN OVER BY DUMP TRUCK DIRECTLY BEHIND. THERE WAS NO WARNING AND CAR IS FAIRLY NEW. (WAS PURCHASED NEW). QUICK INVESTIGATION, AND THERE IS A LAW SUIT WITH CHRYSLER INDICATING THEY ARE AWARE OF THIS DEFECT BUT THEIR DEALERSHIPS ARE NOT AND REFUSED TO REPAIR WITHOUT CHARGING. INSISTED I TAKE CAR TO ANOTHER PLACE THAT REALLY WORKS ON DODGES (???). THIS LOST

OF GEAR SHIFTING IS GOING TO GET SOMEONE KILLED! UNFORTUNATELY IT IS HARD TO REACH ME BY TELEPHONE BUT I WOULD REALLY LIKE TO HAVE SOME DETAILS AS TO HOW TO HANDLE THIS ISSUE. I HAD AN INDEPENDENT DEALER "WHO REALLY WORKS ON DODGES" TO REPAIR AND THEY CONFIRMED THE CLUTCH WAS DEFECTIVE AND CAUSED IT TO CRASH AND BURN. I'M NOT THE ONLY ONE WHO HAS EXPERIENCED THIS.

cc. 5/13/2015 I WENT TO GET IN MY CAR TO GO TO WORK AND WHEN I STARTED MY CAR THE CLUTCH PEDAL WENT TO THE FLOOR AND WOULD NOT COME BACK UP. THE VEHICLE GOT STUCK IN FIRST GEAR UNTILL I MANUALLY BENT DOWN AND PULLED THE CLUTCH PEDAL UP AND TURNED THE CAR OFF SEVERAL TIMES. WHEN I SOPKE TO DODGE THEY ACTED LIKE THEY HAD NEVER HEARD OF THIS ISSUE (WHICH I KNOW IS NOT TRUE FROM VARIOUS FORUMS AND COMPLAINTS IVE SEEN). NOW I AM WORRIED ABOUT THE SAFTEY OF THE CAR BECASUE IF THIS HAPPENS WHILE IM ON THE ROAD AND NOT PARKED I OR SOMEONE COULD GET SERIOUSLY INJURED. THE DODGE DEALER I SPOKE WITH SAID TO FIX THE ISSUE I WOULD HAVE TO REPLACE THE MASTER CYLINDER, SLAVE CYLINDER, AND REPLACE THE CLUTCH. I DONT FEEL I SHOULD HAVE TO WORRY ABOUT THIS THERE SHOULD BE A RECALL ISSUED.

dd. 5/20/2015 CLUTCH PEDAL DEPRESSED AND WOULD NOT RETURN TO NORMAL POSITION. PRESSING DOWN ON CLUTCH PEDAL WOULD NOT DISENGAGE THE CLUTCH FROM THE FLYWHEEL SO CONTINUED TO ATTEMPT TO MOVE FORWARD REQUIRING FOOT MORE STRONGLY ON THE BRAKES. THIS WASN'T THE ONLY TIME, AND SEEMS TO OCCUR AFTER THE VEHICLE HAS BEEN SITTING A FEW HOURS. ITS GETTING FREQUENT ENOUGH THAT I'M GOING TO TRY TO TRADE THE VEHICLE IN. I DON'T TRUST CHRYSLER/DODGE PRODUCTS ANY MORE AND THEIR QUALITY IS GOING DOWN HILL WITH THEIR DRIVE BY WIRE VEHICLES. FOR THE RECORD, 90% OF MY MILEAGE IS ALL HIGHWAY AND I DON'T "POP" THE CLUTCH TO PEAL OUT AT STOP LIGHTS AND THE LIKE. SEARCHES OF THE INTERNET ARE FINDING MORE AND MORE POSTS WITH CLUTCH AND TRANSMISSION PROBLEMS.

ee. 6/3/2015 WHEN FIRST STARTED ON A COOL OR COLD MORNING, THE CLUTCH ON THE 2013 DODGE DART WILL NOT HAVE ANY PRESSURE AND STICK TO THE FLOOR. THE CLUTCH PEDDLE WOULD HAVE TO BE PHYSICALLY PULLED UP FROM THE FLOOR AND PUMPED TO DEVELOP ANY PEDDLE. THE VEHICLE WAS TAKEN TO THE DEALER THAT COULD NOT REPLICATE THE PROBLEM NOR WOULD MAKE ANY INDICATION TO MAKE THE REPAIR. THE NEXT WEEK (AROUND MAY 18, 2015), THE MANUAL TRANSMISSION WAS PARKED IN FIRST GEAR AND WHEN THE CLUTCH WAS DEPRESSED, THERE WAS LITTLE TO NO

PEDDLE. THE CAR STARTED AND BEGAN TO LUNGE FORWARD AND STOPPED. THE CLUTCH ALMOST STUCK TO THE FLOOR. . OTHER TIMES, THE CAR IS PARKED IN NEUTRAL AND THE CAR WILL NOT ALLOW THE DRIVER TO SHIFT INTO GEAR. THERE IS FLUID VISIBLE ON TOP OF THE TRANSMISSION WHICH IS SUSPECTED BY THE OWNER TO BE FROM THE HYDRAULIC CLUTCH. CHRYSLER IS AWARE OF THIS PROBLEM AND ARE BEING SUED IN THE STATE OF CALIFORNIA OVER OTHER CLAIMS. THIS IS A SAFETY ISSUE WITH THESE CARS AND THE VOLUME OF COMPLAINTS FOR THE SAME ISSUE IS INDICATIVE OF A LARGER PROBLEM.

ff. 6/8/2015 TL* THE CONTACT OWNS A 2013 DODGE DART. WHILE DRIVING AT APPROXIMATELY 50 MPH, THE CLUTCH PEDAL WAS DEPRESSED AND FAILED TO RESPOND WITHOUT WARNING. THE VEHICLE WAS TAKEN TO A DEALER WHERE IT WAS DIAGNOSED THAT THE MASTER SLAVE CYLINDER NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED HOWEVER, THE FAILURE RECURRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 1,200.

gg. 6/8/2015 TL* THE CONTACT OWNS A 2013 DODGE DART. WHILE REVERSING OUT OF A PARKING LOT AT 5 MPH, THE CLUTCH FAILED TO SHIFT OUT OF REVERSE TO GO INTO FIRST GEAR. THE FAILURE RECURRED ONCE. THE VEHICLE WAS TAKEN TO A DEALER, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 24,000.

hh. 6/10/2015 2013 DART 2.0 LITER, 6 SPEED MANUAL TRANS. CLUTCH PEDAL GOES TO FLOOR WITH NO RESISTANCE AND WILL NOT DISENGAGE CLUTCH. PULLING THE PEDAL UP WITH FOOT AND PUMPING IT RESTORES FUNCTION UNTIL THE CAR IS PARKED AT WHICH TIME, THE SYSTEM BLEEDS DOWN AGAIN AND THE PEDAL GOES TO THE FLOOR WITHOUT DISENGAGING THE CLUTCH. PROBLEM IS MARKEDLY WORSE IN HOT WEATHER. RESPONSE FROM CHRYSLER ON RECTIFICATION ACTION IS AWAITING FOLLOWING INQUIRY BY MYSELF.

ii. 6/12/2015 I WENT AND ATTEMPTED TO START THE CAR. CAR WOULD NOT START. IT WAS LIKE THE CLUTCH WOULD NOT ENGAGE. RELEASED THE CLUTCH AND RE-ENGAGED, AND IT STARTED. DURING SHIFTS, IT DIDNT WANT TO GO INTO 3 OR 6TH GEARS. IT WAS LIKE THE CLUTCH IS NOT ENGAGING ONCE AGAIN. TOOK THE CAR BACK TO WHERE I PURCHASED IT, PERFORMANCE DODGE, AND THEY TOLD ME THAT CHRYSLER KNOWS OF THE ISSUE BUT CHRYSLER STAR WILL NOT FIX IT. I ASKED HOW CAN THEY KNOW THAT THE CLUTCH HAS ISSUES, BUT THEY ARE NOT GOING TO FIX IT. THE EMPLOYEE INFORMED ME THAT THEY ALL ARE LIKE

THIS. CHRYSLER KNOWS OF THE CLUTCH ISSUES DUE TO ALL THE COMPLAINTS, BUT THEY STILL RISK THE LIVES OF THE INDIVIDUALS WHO PURCHASED THE VEHICLE BY NOT REPLACING THE CLUTCH. I HAVE ALSO HAD ISSUES WITH MY WINDOWS NOT ROLLING UP OR DOWN AND THE RADIO KEEPS RESETTING ITSELF. THEY DO UPDATES, BUT IT DOES NOT FIX THE RADIO ISSUE. THE LAST TIME I TOOK IT FOR THE UPDATE, THE UPDATE WOULDNT EVEN LOAD TO FIX THE ISSUE. HOW CAN A COMPANY KNOW OF ISSUES BUT REFUSE TO FIX THEM?

jj. 6/14/2015 I DEPRESSED THE CLUTCH TO START THE ENGINE AND WHEN IT STARTED THE CAR BEGAN TO MOVE EVEN THOUGH THE CLUTCH PEDAL WAS FULLY DEPRESSED. I HAD TO TURN THE ENGINE OFF TO STOP THE CAR FROM MOVING AND THE CLUTCH PEDAL REMAINED ON THE FLOOR. AFTER A FEW MORE ATTEMPTS IT STARTED TO WORK CORRECTLY. IT NOW DOES THIS EVERY TIME IT IS PARKED FOR A FEW HOURS. VERY DANGEROUS DEFECT THAT NEEDS TO BE RECALLED BY CHRYSLER.

kk. 6/20/2015 CLUTCH PEDAL KEPT GETTING STUCK IN POSITION AND WOULD NOT DISENGAGE.

ll. 7/20/2015 WHEN GETTING INTO MY CAR IN THE MORNING OR AFTER WORK (ANY TIME THE CAR HAS BEEN SITTING FOR A WHILE), THE CLUTCH PEDAL GOES STRAIGHT TO THE FLOOR AND DOESN'T COME BACK UP. I CANNOT PUT MY CAR INTO GEAR OR EVEN START THE CAR. I HAVE TO PUMP THE CLUTCH PEDAL FOR A FEW MINUTES UNTIL I HAVE A LITTLE PRESSURE TO EVEN START MY CAR. MY CAR STALLED OUT TWICE FROM THIS WHEN ENTERING A PARKING GARAGE AND I ALMOST HIT ANOTHER CAR BECAUSE OF THIS. AFTER DRIVING THE CAR FOR 2-3 MILES THE CLUTCH SEEMS TO COME BACK TO NORMAL PRESSURE AND I CAN SHIFT FINE AT THAT POINT.

mm. 7/27/2015 I HAVE A 2013 DODGE DART RALLYE. I BOUGHT IT USED IN JANUARY 2015. IT HAS THE 1.4 MULTI AIR TURBO WITH 6 SPD MANUAL TRANSMISSION. MY PROBLEM IS JUST ABOUT EVERY MORNING OR AFTER THE CAR SETS FOR A FEW HOURS WHEN I TRY TO START THE CAR I PUSH THE CLUTCH PEDAL IN TO START THE CAR AND I GO TO PUT THE CAR IN GEAR AND IT WON'T GO IN GEAR WITH MY CLUTCH PEDAL TO THE FLOOR AND THE CAR TRYS TO MOVE WHEN I TRY TO PUT IT IN GEAR SO I LET OFF THE CLUTCH AND IT STICKS HALF WAY TO THE FLOOR SO I HAVE TO PUMP IT FOR ABOUT 2 MINUTES OR UNTIL THE CAR WARMS UP JUST TO PUT IT IN GEAR I DID RESEARCH ON THIS AND APAIRENTLY ALOT OF PEOPLE WITH THIS CAR HAVE BEEN HAVING THIS SAME PROBLEM AND CHRYSLER WANTS TO CHARGE ME JUST TO TAKE A LOOK AT IT BECAUSE IT IS OUT OF WARRANTY THIS ISSUE REALLY NEEDS TO BE LOOKED

INTO.

nn. 8/6/2015 INTERMITTENTLY, THE CLUTCH PEDAL HAD DROPPED TO THE FLOOR WHEN DEPRESSED AND NOT RETURNING WITHOUT PUMPING THE PEDAL PRIOR TO STARTING THE ENGINE. THIS WAS BECOMING COMMON AFTER THE CAR WAS NOT IN OPERATION OVERNIGHT BUT ON 6-AUG-15 THE WHILE DRIVING AT HIGHWAY SPEEDS PRIOR TO EXITING A LIMITED ACCESS HIGHWAY WITH THE PEDAL DEPRESSED TO THE FLOOR THE ENGINE DID NOT DISENGAGE FROM THE TRANSMISSION OR ALLOW THE SHIFTER TO BE MOVE OUT OF GEAR. IT REQUIRED THE PEDAL TO BE PULLED UP MANUALLY WITH THE TOE OF MY SHOE AND PUMPED BEFORE IT ACTUATED THE CLUTCH AND ALLOWED THE CAR TO STOP. AN ACCIDENT WAS NARROWLY AVOIDED ON INTERSTATE 495 DUE TO THIS FAILURE. CHRYSLER WAS CONTACTED REGARDING THE SERVICE BULLETIN M37, TRANSAXIAL SLAVE VALVE DEFECT AND THEY SAID THIS IS A LISTED ISSUE FOR THE CAR/ENGINE BUT NOT FOR THIS VIN. REGARDLESS OF THE BULLETIN'S "COMMITMENT TO SAFETY" THEY WOULD NOT COVER ANY TOWING OR REPAIR.

oo. 8/6/2015 WHEN TRYING TO START THE CAR THE CLUTCH PEDAL WILL GET STUCK DOWN AND NOT ENGAGE. IF THIS HAPPENS WHEN DRIVING IT COULD CAUSE AN ACCIDENT.

pp. 8/14/2015 WHEN I WENT TO TURN MY CAR ON, WHICH IS A MANUAL, MY CLUTCH PEDAL STAYED ENGAGED AND WOULD NOT RELEASE AND MY CAR WOULD NOT TURN OFF. I COULD NOT TURN THE KEY TO TURN THE CAR OFF. I HAD TO WAIT A FEW MINUTES BEFORE THE CLUTCH RELEASED AND I WAS FINALLY ABLE TO TURN MY CAR OFF. WHEN I TRIED AGAIN TO TURN MY CAR ON THE CLUTCH PEDAL ONCE AGAIN STAYED ENGAGED AND WOULD NOT RELEASE BUT I WAS ABLE TO TURN MY CAR OFF THE SECOND TIME. AND TRY AGAIN AND AGAIN UNTIL THE CLUTCH WOULD RETURN AFTER I TURNED THE CAR ON

qq. 8/26/2015 WHEN TRYING TO START THE CAR, THE CLUTCH PEDAL WILL GET STUCK DOWN AND NOT ENGAGE INTERMITTENTLY. THE CLUTCH PEDAL DROPS TO THE FLOOR WHEN DEPRESSED AND NOT RETURNING WITHOUT PUMPING THE PEDAL PRIOR TO STARTING THE ENGINE. THIS IS BECOMING COMMON AFTER THE CAR IS NOT IN OPERATION OVERNIGHT

rr. 8/27/2015 THIS HAS BEEN AN ONGOING-INTERMITTENT PROBLEM/ISSUE. THE HYDRAULIC CLUTCH SYSTEM (MANUAL TRANS) WILL LOSE PRESSURE WHICH MEANS THAT THE CLUTCH PEDAL WILL GO TO THE FLOOR AND I CAN'T SHIFT THE TRANSMISSION. AT TIMES IT IS ONLY

DOING THIS FIRST THING IN THE MORNING BUT WILL GET PRESSURE AFTER "PUMPING IT UP" A FEW TIMES. IT WILL LOSE PRESSURE AFTER DRIVING FOR A PERIOD OF 15-20 MINUTES MEANING THAT WHEN COMING TO A STOP I AM UNABLE TO DOWNSHIFT. ONCE STOPPED, WHEN IT HAS LOST PRESSURE, IF YOU LEAVE THE TRANSMISSION IN FIRST GEAR, OR REVERSE, IT WILL MOVE WHEN THE IGNITION KEY IS PUT INTO THE START MODE WHEN THE CLUTCH PEDAL IS FULLY DEPRESSED! THERE HAVE NEVER BEEN ANY FLUID LEAKS OR SIGNS THAT THE LEVEL HAS GONE DOWN. I HAVE SEEN ON A DODGE DART OWNERS WEBSITE THAT THIS IS A PROBLEM THAT OTHERS HAVE HAD AS WELL.

ss. 9/29/2015 ONGOING CLUTCH/HYDRAULIC PROBLEMS HAVE CAUSED ME TO BE IN SEVERAL UNSAFE SITUATIONS. FIRST SAFETY CONCERN WAS DUE TO CAR STALLING WHEN ATTEMPTING TO ACCELERATE FROM A STOP. THERE WERE SEVERAL TIMES THAT IMPROPER CLUTCH ENGAGEMENT CAUSED THE CAR TO JERK AND DIE AT A STOP. SECOND CONCERN WAS FROM DIFFICULTY SHIFTING GEARS IN STOP AND GO TRAFFIC DUE TO CLUTCH NOT ENGAGING FULLY. THIRD CONCERN WAS FROM TOTAL SYSTEM FAILURE (19426 MILES): EXITED INTERSTATE HIGHWAY AND DEPRESSED CLUTCH TO SHIFT TO NEUTRAL. WHILE DEPRESSING THE CLUTCH I HEARD A LOUD POP/CLUNK SOUND AND THE CLUTCH INSTANTLY DROPPED TO THE FLOOR. I THEN STARTED SMELLING THE CLUTCH BURNING AND HAD NO ABILITY TO SHIFT OR ENGAGE GEARS. I WAS LEFT IN THE MIDDLE OF THE ROADWAY AND HAD TO PUSH MY VEHICLE TO A SAFE LOCATION ON THE SHOULDER OF THE ROAD THANKS TO THE HELP OF SOME PEOPLE THAT STOPPED. AFTER TOWING THE VEHICLE TO THE DEALERSHIP FOR REPAIR, I WAS TOLD THE FLYWHEEL, PRESSURE PLATE, AND CLUTCH NEEDED TO BE REPLACED (19,426 MILES). FOURTH CONCERN WAS A FAILURE OF THE CLUTCH (APPROX 34,735 MILES): AFTER BACKING OUT OF A DRIVEWAY THE CLUTCH STUCK TO THE FLOOR AND WOULD NOT RETURN TO THE NORMAL POSITION CAUSING THE INABILITY TO SHIFT. AFTER RESTARTING VEHICLE I HAD TO LIFT CLUTCH BY HAND AND PUMP CLUTCH TO REGAIN HYDRAULIC PRESSURE. I WAS TOLD CLUTCH HAD FAILED AND WAS BLAMED FOR FAILURE FROM RIDING CLUTCH MILEAGE PROBLEMS FIRST REPORTED (I CONTINUED TO MENTION PROBLEMS ON LATER VISITS): 1555 - NOISE RELEASING CLUTCH 2072 - RESISTANCE AND ENGAGEMENT CHANGING IN THE CLUTCH MILEAGE/REPAIRS MADE: 5905 - MASTER CYLINDER/ACTUATOR REPLACED 19426 - CLUTCH, PRESSURE PLATE, AND FLYWHEEL REPLACED 34747 - CLUTCH, PRESSURE PLATE, FLYWHEEL, AND SLAVE CYLINDER REPLACED (AWAITING AMENDED REPAIR ORDER) AFTER LATEST REPAIR THE CAR IS BACK IN SHOP DUE TO RETURNED HYDRAULIC PRESSURE VARIANCE

tt. 12/4/2015 I HAVE A 2013 DODGE DART. AFTER 2 YEARS, THE CLUTCH SUDDENLY STUCK TO THE FLOOR, THE VEHICLE INOPERABLE; IT NEEDED A NEW MASTER CYLINDER. A FEW MONTHS LATER, I STARTED NOTICING IT STICKING AGAIN, BUT IT COULD BE PULLED OUT BY USING MY FOOT TO POP IT BACK OUT. SO I PROMPTLY TOOK IT TO THE DEALER. THEY SAID EVERYTHING WAS NORMAL. LAST MONTH, THE CLUTCH WENT OUT AGAIN. HAD TO BE TOWED TO THE DEALER. NOW IT SEEMS THEY ARE REPLACING THE ENTIRE CLUTCH KIT. TOLD ME THE FLYWHEEL WAS COMPLETELY BURNED OUT. AND TRIED TO BLAME MY DRIVING, SAYING THE FLYWHEEL WAS NORMAL WHEN THEY EVALUATED IT. NO WAY, DODGE. NOW THEY'VE HAD MY CAR SINCE NOVEMBER 16TH, TODAY BEING DEC. 3, AND IT STILL WON'T BE FIXED UNTIL WELL INTO NEXT WEEK. AND THE RENTAL CAR IS OUT OF MY POCKET.

uu. 12/23/2015 CAME UP TO A STOP SIGN, DROVE OFF AND WENT TO SHIFT INTO 2ND (STANDARD TRANSMISSION) AND MY SHIFTER WAS LOOSE. GEAR IS STUCK IN FIRST.

vv. 1/4/2016 CLUTCH PEDAL DOES NOT RETURN FROM DEPRESSED POSITION. CLUTCH PEDAL IS SOFT AND CLUTCH MECHANISM DOES NOT FUNCTION PROPERLY FOR A FEW MINUTES OF INITIAL OPERATION. AFTER THE INITIAL INCIDENT THIS PROBLEM HAS BECOME MORE FREQUENT AND NOW OCCURS ALMOST DAILY.

ww. 1/26/2016 1) SLAVE CYLINDER IN TRANSMISSION (MANUAL) BEGAN FAILING AT 12,000 MILES, CAUSING CLUTCH PEDAL TO LOSE PRESSURE AND NOT RETURN TO TOP OF TRAVEL. UNABLE TO SHIFT INTO ANY GEAR. THIS OCCURRED WHEN PARKED OVERNIGHT. DEALERSHIP REPLACED SLAVE CYLINDER, CLUTCH, AND THROW OUT BEARING WITH NO CHARGE.

xx. 2/10/2016 CAR SHIFTS OUT OF GEAR, HAS LITTLE POWER, SERVICE LIGHT COMES ON ,WILL NOT START AT TIMES, TAKEN TO DEALERS FOR RECALL R42 TWICE PARTS NOT AVAILABLE. NOW THEY ARE SAYING A WHOLE NEW TRANSMISSION IS NEEDED AT A COST OF OVER 8 THOUSAND DOLLARS. CLUTCH PLATE CRACKED AND FLY WHEEL DAMAGED. TRYING TO BLAME MY DRIVING, HAD TO BE TOWED.

yy. 3/4/2016 I GOT 2013 DODGE DART 1.4L TURBO 6 SPEED MANUAL AND EVERY MORNING WHEN LEAVE FOR WORK CLUTCH PEDAL GOES TO FLOOR AND HAVE TO PUMP IT GOOD BIT JUST TO GET IT TO CHANGE GEARS. STARTED CAR IN REVERSE AND CAR TAKES OFF WHILE ENGINE IS TURNING OVER. AND ON HIGHWAY IF STAY IN SAME GEAR FOR LONG PERIODS OF TIME IT WILL NOT COME OUT GEAR AND BEEN TO DEALERSHIP 2 TIMES FOR THIS AND THEY SAY NOTHING WRONG

**2014 Dodge Dart**

a. 9/12/2014 TL* THE CONTACT OWNS A 2014 DODGE DART. WHILE DRIVING APPROXIMATELY 10 MPH, THE CLUTCH BECAME STUCK IN THE DOWNWARD POSITION AND THE GEAR SHIFTER WAS STUCK IN FIRST GEAR. THE CONTACT HAD TO DEPRESS THE CLUTCH COMPLETELY DOWN TO THE FLOORBOARD TO LOOSEN THE CLUTCH, FOLLOWED BY AGGRESSIVELY PULLING THE GEAR SHIFTER TO GET IT OUT OF FIRST POSITION. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED. THE VIN WAS UNAVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 33,000.

b. 1/29/2015 THE CLUTCH PEDAL WOULD STICK TO THE FLOOR IN COLD WEATHER. WOULD EASILY STALL BECAUSE OF POOR ENGAGEMENT. SOMETIMES THE CAR WOULD BUCK OR STUTTER BECAUSE THE CLUTCH WOULD NOT BE ABLE TO EFFECTIVELY ENGAGE. SOMETIMES THE VEHICLE WOULD STALL ON ENGAGEMENT AND HAVE TO SIT FOR SEVERAL MINUTES BEFORE THE ENGINE WOULD START. AFTER AN ATTEMPTED REPAIR TO THE CLUTCH HYDRAULICS BY CORWIN THE CLUTCH STILL HAS SLOP IN IT AND POOR WORKSMANSHIP WAS FOUND AT ANOTHER DEALER. THE TRANSMISSION IS NOW NOISY AND MAKES LOUD CLUNKING OR WHINING NOISES WHEN THE CLUTCH IS ENGAGED OR DISENGAGED. THE CLUTCH WILL STILL PARTIALLY STICK TO THE FLOOR IN SEVERE COLD AND IS NOT SAFE TO DRIVE. *TR

c. 4/9/2015 PURCHASED A 2014 DODGE DART USED WITH A 6 SPEED. THIS INCIDENT HAPPENED JUST THREE WEEKS AFTER I PURCHASED IT. I NOTICED IT STARTED TO SLIP AND WHILE DRIVING DOWN THE HIGHWAY I HEARD A NOISE, CAR LOST POWER AND SMOKE STARTED POURING OUT FROM UNDER THE HOOD. I HAD IT TOWED TO THE DEALERSHIP WHERE I WAS INFORMED THAT SOMETHING FAILED IN THE CLUTCH, BLOWING A HOLE THROUGH THE TRANSMISSION. THIS ALL HAPPENED WITHIN A MINUTE OR SO WHILE DRIVING AT HIGHWAY SPEEDS.

d. 7/27/2015 WHILE DRIVING CLUTCH WILL LOSE COMPRESSION MAKING IT DIFFICULT TO SHIFT WITHOUT GRINDING GEARS. CLUTCH WILL GO ALL THE WAY TO THE FLOOR AND INHIBITED YOU FROM SHIFTING. I HAVE HAD TO SHIFT INTO NEUTRAL TO SLOW DOWN HOPING THE CLUTCH REGAINS COMPRESSION IN ORDER TO SHIFT INTO APPROPRIATE GEAR. THIS ALSO INHIBITS PROPER ACCELERATION WHEN SHIFTING GEARS.

e. 9/15/2015 THE VEHICLE HAS A MANUAL TRANSMISSION. MY VEHICLE REVS WHEN ATTEMPTING TO SHIFT IT. THE CLUTCH WILL BE COMPLETELY UP AND THE VEHICLE WILL STILL REV AS IF IT IS ENGAGED. AT THIS POINT

1
2
3

THERE IS NOTHING THAT CAN BE DONE UNTIL IT STOPS REVVING. IT ALSO GRINDS AND CLATTERS WHEN SHIFTING FROM 1ST TO 2ND AND 2ND TO 3RD GEAR. VERY ROUGH SHIFTING AND SOMETIMES EXPERIENCE A BURNING SMELL AFTER ITS DRIVEN.

4      56.     Also, complaints posted by consumers in forums demonstrate that

5   the defect is widespread and dangerous and that it manifests without warning.

6   The complaints also indicate Defendant's awareness of the problems with the

7   transmission and how potentially dangerous the defective condition is for

8   consumers.  The following are some safety complaints relating to Manual

9   Transmission Defects (spelling and grammar mistakes remain as found in the

10  original) (Edmunds.com  (May 25, 2016), http://www.edmunds.com/).

11  **Edmunds.com**

12          a.  Posted on 4/2/2016 by teddyluv: I too have thought about a
               lawyer, as I had the master cylinder replaced twice since Sept
13             2014, then in Jan of this year, the clutch went out, I was told
               that it was normal wear & tear, had nothing to do with the
14             master cylinder& therefore cost me 2369.00 to repair. then it
               was back in the shop, the turbo went out on it...... had it back
15             for 6 days when once again, the clutch pedal went to the floor
               & stayed there. For the THIRD time in 1 1/2 years my 2013
16             Dodge dart is Back in the shop to have the master cylinder
               replaced . Chrysler just says " I am sorry & refuses to work
17             with me. Hello: Look at the cars history, I feel that Chrysler
               should step up & do the " Right " thing here. They do not seem
18             to care about their customers, or realize just how much word
               of mouth advertising can hurt their business. I can't begin to
19             tell you how many people I have already told about my issues,
               and they Will not be purchasing a vehicle from Chrysler/
20             Dodge because of it. I am amazed that there are so many
               issues with the Dodge dart & Chrysler is getting away scott
21             free.

22          b.  Posted on 4/2/2016 by fireemt45: I have a 2015 Dodge Dart
               with 22000 miles on it. I started having problems with the car
23             two weeks ago. The clutch would reengage while driving
               down the road at about 3000 rpms in third and fourth gear.
24             That was the first couple days. I went to the dealer right away
               and I had to wait a week to get the car looked at. When I took
25             the car to the dealer finally the clutch was doing it in all six
               gears. They looked at it and claim that it is normal wear and
26             tear. They are paying for parts. I still dont understand how the
               clutch is out at 22000 miles. I have been driving a Manual
27             since I started driving. Has anyone had a similair problem and
               what their dealer did to fix the problem. I see that theres quite
28             a few problems with the master cylinder.

57.     The Transmission Defect poses an unreasonable safety risk for Class Members, as well as the drivers, passengers, and pedestrians sharing the road with Class Vehicles.  A vehicle's ability to switch gears when parked or while in motion, and the ability of a vehicle's transmission to perform properly are critical to a vehicle's safe operation.  A defect that causes one or more of these negative characteristics poses a safety hazard to the general public, and increases the risk of automobile accidents.

**FCA Has Exclusive Knowledge of the Transmission Defect**

58.     FCA had superior and exclusive knowledge of the transmission defect, and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class Vehicles.

59.     Plaintiffs are informed and believe and based thereon allege that before Plaintiffs purchased their Class Vehicle, and since at least early 2012, FCA knew about the Transmission Defect through sources not available to consumers, including pre-release testing data, early consumer complaints about the transmission defects to Chrysler and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, aggregate data from Chrysler dealers, among other internal sources of aggregate information about the problem.

60.     Before the Class Vehicles were available for sale, FCA acknowledged in its own press releases the extensive pre-release testing and analysis it conducted before bringing the Manual Transmission to the market. For example, on April 28, 2012, Chrysler posted a media release, where Bob Lee, Vice President, Engine and Electrified Propulsion Engineering – Chrysler Group LLC, stated, "The three new engines and transmissions available in the new Dodge Dart have been designed and tested to meet consumer's needs for

fuel economy, refinement, durability and power in a compact car."  Additionally, each transmission was said to have undergone "extensive testing and evaluation to ensure that customer expectations in the area of refined shifting characteristics . . . are met."

61.     FCA was also aware of the Transmission Defect through its experience with the same Manual Transmission used in 2011-2012 Dodge Journey vehicles, and the numerous complaints it received, both from consumers and from automotive journalists, who roundly criticized the performance of the Manual Transmission.

62.     In fact, on January 20, 2012, FCA issued Service Bulletin "06-001-12" for the 2011-2012 model year Dodge Journey vehicles equipped with the very same manual transmissions and suffering from similar if not identical defects as alleged herein.  Specifically, the Service Bulletin stated that the clutch pedal was inoperative in some vehicles.  The Dodge Dart and Dodge Journey utilize the same Manual Transmission.

63.     Further, in or around November 2012, FCA issued service bulletin 10051770-2112 informing dealers that certain 2013 Dodge Dart vehicles were equipped with defective clutch slave cylinders and could cause a hydraulic fluid leak, which leads to a pressure loss in the clutch system and failure of the clutch pedal.  FCA instructed its dealers to replace the clutch slave cylinder in the affected vehicles.

64.     Then, on or around August 15, 2014, FCA released STAR case number S1406000001 to its dealers addressing an issue in Dodge Dart vehicles equipped with the Manual Transmission where the "Clutch Pedal Does Not Return (Remains on the Floor) After Depressing the Pedal."  FCA instructed its dealers to inspect the clutch pedal and replace the clutch master cylinder and reservoir hose, if necessary.

65.     Additionally, in or around January 2016, FCA extended the clutch master cylinder and reservoir hose warranty period due to 2013-2015 Dodge Dart vehicles exhibiting a "loss of clutch pedal operation including limited pedal travel and limited clutch disengagement."  FCA also provided reimbursement for Dodge Dart owners who experienced the clutch issues mentioned and previously paid for clutch master cylinder repairs.  On information and belief, the campaign neither fixed the Transmission Defect nor actually reimbursed all owners affected by the Transmission Defect for repairs performed on the clutch master cylinder and reservoir hose.

66.     The existence of the Transmission Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle that was equipped with a manual transmission.  Had Plaintiffs and other Class Members known that the Class Vehicles were equipped with defective transmissions, they would not have purchased or leased the Class Vehicles equipped with the Manual Transmissions or would have paid less for them.

67.     Reasonable consumers, like Plaintiffs, reasonably expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety hazard, and is free from defects.  Plaintiffs and Class Members further reasonably expect that FCA will not sell or lease vehicles with known safety defects, such as the Transmission Defect, and will disclose any such defects to its consumers when it learns of them.  They did not expect Chrysler to fail to disclose the Transmission Defect to them and to continually deny the defect.

**FCA Has Actively Concealed the Transmission Defect**

68.     While FCA has been fully aware of the Transmission Defect in the Class Vehicles, it actively concealed the existence and nature of the defect from Plaintiffs and Class Members at the time of purchase, lease or repair and

thereafter. Specifically, FCA failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a)    any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the Manual Transmission;

(b)    that the Class Vehicles, including their Manual Transmission, were not in good in working order, were defective, and were not fit for their intended purposes; and

(c)    that the Class Vehicles and their Manual Transmission were defective, despite the fact that FCA learned of such defects through alarming failure rates, customer complaints, as well as through other internal sources, as early as 2012.

69.    As a result of the Transmission Defect, FCA was inundated with complaints regarding the Manual Transmission.

70.    When consumers present the Class Vehicles to an authorized FCA dealer for repair of the transmission, rather than repair the problem under warranty, FCA dealers either inform consumers that their vehicles are functioning properly, or conduct repairs that merely mask the defect. In fact, even when presented with video evidence of the Transmission Defect herein alleged, FCA authorized repair facilities, which act as FCA's repair agents, inform Class Members that the defect is known.

71.    To this day, FCA has still not modified or redesigned any of the defective components that continue to cause the Transmission Defect.

72.    On information and belief, FCA has caused Plaintiffs and Class Members to expend money at its dealerships to diagnose, repair or replace the Class Vehicles' clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc and pressure plate, and flywheel, despite FCA's

1    knowledge of the Transmission Defect.

2                         **CLASS ACTION ALLEGATIONS**

3          73.    Plaintiffs bring this lawsuit as a class action on behalf of themselves

4    and all others similarly situated as members of the proposed Class pursuant to

5    Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the

6    numerosity, commonality, typicality, adequacy, predominance, and superiority

7    requirements of those provisions.

8          74.    The Class and Sub-Class are defined as:

9          **Nationwide Class**:  All individuals in the United States
           who purchased or leased any Dodge Dart vehicle
10         equipped with a Manual Transmission (the "Nationwide
           Class" or "Class").

11         **California Sub-Class**:  All members of the Nationwide
           Class who reside in the State of California.
12

13         **CLRA Sub-Class**:  All members of the California Sub-
           Class who are "consumers" within the meaning of
14         California Civil Code § 1761(d).

15         **Implied Warranty Sub-Class**:   All members of the
           Nationwide Class who purchased or leased their
16         vehicles in the State of California.

17

18         75.    Excluded from the Class and Sub-Classes are:  (1) Defendant, any

19   entity or division in which Defendant has a controlling interest, and their legal

20   representatives, officers, directors, assigns, and successors; (2) the Judge to

21   whom this case is assigned and the Judge's staff; and (3) those persons who have

22   suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve

23   the right to amend the Class and Sub-Class definitions if discovery and further

24   investigation reveal that the Class and Sub-Class should be expanded or

25   otherwise modified.

26         76.    <u>Numerosity</u>:  Although the exact number of Class Members is

27   uncertain and can only be ascertained through appropriate discovery, the number

28

is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

77.   Typicality:  Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by FCA, and equipped with a Manual Transmission.  The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective transmission.  Furthermore, the factual bases of FCA's misconduct are common to all Class Members and represent a common thread resulting in injury to all Class Members.

78.   Commonality:  There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting only individual Class Members.  These common legal and factual issues include the following:

      (a)   Whether Class Vehicles suffer from defects relating to the Manual Transmission;

      (b)   Whether the defects relating to the Manual Transmission constitute an unreasonable safety risk;

      (c)   Whether Defendant knows about the defects relating to the Manual Transmission and, if so, how long Defendant has known of the defect;

      (d)   Whether the defective nature of the Manual Transmission constitutes a material fact;

      (e)   Whether Defendant has a duty to disclose the defective nature

of the Manual Transmission to Plaintiffs and Class Members;

(f)    Whether Plaintiffs and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

(g)    Whether Defendant knew or reasonably should have known of the defects relating to the Manual Transmission before it sold and leased Class Vehicles to Class Members;

(h)    Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective Manual Transmission;

(i)    Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective Manual Transmission or clutch components;

(j)    Whether Defendant breached the implied warranty of merchantability pursuant to the Magnuson-Moss Act; and

(k)    Whether Defendant breached the implied warranty of merchantability pursuant to the Song-Beverly Act;

79.   Adequate Representation:  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

80.   Predominance and Superiority:  Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

1   Absent a class action, most Class Members would likely find the cost of
2   litigating their claims prohibitively high and would therefore have no effective
3   remedy at law.  Because of the relatively small size of the individual Class
4   Members' claims, it is likely that only a few Class Members could afford to seek
5   legal redress for Defendant's misconduct.  Absent a class action, Class Members
6   will continue to incur damages, and Defendant's misconduct will continue
7   without remedy.  Class treatment of common questions of law and fact would
8   also be a superior method to multiple individual actions or piecemeal litigation in
9   that class treatment will conserve the resources of the courts and the litigants,
10  and will promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**

11

**(Violation of California's Consumers Legal Remedies Act,**

12

**California Civil Code § 1750, *et seq*.)**

13

14      81.     Plaintiffs incorporate by reference the allegations contained in the
15  preceding paragraphs of this Complaint.

16      82.     Plaintiffs bring this cause of action on behalf of themselves and on
17  behalf of the members of the CLRA Sub-Class.

18      83.     Defendant is a "person" as defined by California Civil Code
19  § 1761(c).

20      84.     Plaintiffs and CLRA Sub-class Members are "consumers" within the
21  meaning of California Civil Code § 1761(d) because they purchased their Class
22  Vehicles primarily for personal, family, or household use.

23      85.     By failing to disclose and concealing the defective nature of the
24  transmissions from Plaintiffs and prospective Class Members, Defendant
25  violated California Civil Code § 1770(a), as it represented that the Class
26  Vehicles and their transmissions had characteristics and benefits that they do not
27  have, and represented that the Class Vehicles and their transmissions were of a

28

particular standard, quality, or grade when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

86.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

87.   Defendant knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

88.   As a result of their reliance on Defendant's omissions , owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' clutch components are substantially certain to fail before their expected useful life has run.

89.   Defendant was under a duty to Plaintiffs and Class Members to disclose the defective nature of the transmissions and/or the associated repair costs because:

(a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

(b)   Plaintiffs and Class Members could not reasonably have been expected to learn or discover that their transmissions had a dangerous safety defect until it manifested; and

(c)   Defendant knew that Plaintiffs and Class Members could not reasonably have been expected to learn of or discover the safety defect.

90.     In failing to disclose the defective nature of the transmissions, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

91.     The facts Defendant concealed from or failed to disclose to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had Plaintiffs and Class Members known that the Class Vehicles' transmissions were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

92.     Plaintiffs and Class Members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit problems such as the clutch pedals "going soft" and remaining depressed to the floor, transmissions failing to engage or disengage, gear shifts burning out, the clutches and transmissions burning out, stalling, and failure to accelerate or decelerate. This is the reasonable and objective consumer expectation relating to vehicle transmissions.

93.     As a result of Defendant's conduct, Plaintiffs and Class Members were harmed and suffered actual damages in that, on information and belief, the Class Vehicles experienced and will continue to experience problems such as the clutch pedals "going soft" and remaining depressed to the floor, transmissions failing to engage or disengage, gear shifts burning out, the clutches and transmissions burning out, stalling, and failure to accelerate or decelerate.

94.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs and Class Members suffered and will continue to suffer actual damages.

95.     Plaintiffs and the Class are entitled to equitable relief.

96.     Plaintiffs provided Defendant with notice of its violations of the

CLRA pursuant to California Civil Code § 1782(a).  Defendant failed to provide appropriate relief for their violations of the CLRA within 30 days. Therefore, Plaintiffs seek monetary, compensatory, and punitive damages, in addition to injunctive and equitable relief.

**SECOND CAUSE OF ACTION**

**(Violation of California Business & Professions Code § 17200, *et seq.*)**

97.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

98.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the California Sub-Class.

99.     As a result of their reliance on Defendant's omissions , owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' clutch components are substantially certain to fail before their expected useful life has run.

100.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

101.   Plaintiffs and Class Members are reasonable consumers who do not expect their transmissions to exhibit problems such as the clutch pedals "going soft" and remaining depressed to the floor, transmissions failing to engage or disengage, gear shifts burning out, the clutches and transmissions burning out, stalling, and failure to accelerate or decelerate.

102.   Defendant knew the Class Vehicles and their transmissions suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

103.   In failing to disclose the defects with the transmission, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

104.   Defendant was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles and their transmissions:

       (a)    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

       (b)    Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their transmissions; and

       (c)    Defendant actively concealed the defective nature of the Class Vehicles and their transmissions from Plaintiffs and the Class.

105.   The facts Defendant concealed from or not disclosed to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles.  Had Plaintiffs and other Class Members known that the Class Vehicles' transmissions were defective and posed a safety hazard, then Plaintiffs and the other Class Members would not have purchased or leased Class Vehicles equipped with transmissions, or would have paid less for them.

106.   Defendant continued to conceal the defective nature of the Class Vehicles and their transmissions even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of the problem.

107.   Defendant's conduct was and is likely to deceive consumers.

108.   Defendant's acts, conduct and practices were unlawful, in that they constituted:

     (a)     Violations of California's Consumers Legal Remedies Act;

     (b)     Violations of the Song-Beverly Consumer Warranty Act;

     (c)     Violations of the Magnuson-Moss Warranty Act.

109.   By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

110.   Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

111.   As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

112.   Defendant has been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

## THIRD CAUSE OF ACTION

### (Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)

113.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

114.   Plaintiffs bring this cause of action against Defendant on behalf of themselves and on behalf of the members of the Implied Warranty Sub-Class.

115.   Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

116.   Defendant provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

1  However, the Class Vehicles are not fit for their ordinary purpose of providing
2  reasonably reliable and safe transportation because, inter alia, the Class Vehicles
3  and their transmissions suffered from an inherent defect at the time of sale and
4  thereafter are not fit for their particular purpose of providing safe and reliable
5  transportation.

6       117.  Defendant impliedly warranted that the Class Vehicles were of
7  merchantable quality and fit for such use.  This implied warranty included,
8  among other things:  (i) a warranty that the Class Vehicles and their
9  transmissions were manufactured, supplied, distributed, and/or sold by FCA
10  were safe and reliable for providing transportation; and (ii) a warranty that the
11  Class Vehicles and their transmissions would be fit for their intended use while
12  the Class Vehicles were being operated.

13       118.  Contrary to the applicable implied warranties, the Class Vehicles
14  and their transmissions at the time of sale and thereafter were not fit for their
15  ordinary and intended purpose of providing Plaintiffs and Class Members with
16  reliable, durable, and safe transportation.  Instead, the Class Vehicles are
17  defective, including but not limited to the defective design and manufacture of
18  their transmissions.

19       119.  The alleged Transmission Defect is inherent in each Class Vehicle
20  and was present in each Class Vehicle at the time of sale.

21       120.  As a result of Defendant's breach of the applicable implied
22  warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable
23  loss of money, property, and/or value of their Class Vehicles. Additionally, as a
24  result of the Transmission Defect, Plaintiffs and Class Members were harmed
25  and suffered actual damages in that the Class Vehicles' clutch components are
26  substantially certain to fail before their expected useful life has run.

27       121.  Defendant's actions, as complained of herein, breached the implied

28

CLASS ACTION COMPLAINT

1  warranty that the Class Vehicles were of merchantable quality and fit for such

2  use in violation of California Civil Code §§ 1792 and 1791.1.

3  **FOURTH CAUSE OF ACTION**

4  **(Breach of Implied Warranty under the Magnuson-Moss Warranty Act,**

5  **15 U.S.C. § 2303 *et seq*.)**

6  122.   Plaintiffs incorporate by reference the allegations contained in the

7  preceding paragraphs of this Complaint.

8  123.   Plaintiffs bring this cause of action on behalf of themselves and on

9  behalf of the Nationwide Class, or, in the alternative, on behalf of the California

10  Sub-Class, against Defendant.

11  124.   The Class Vehicles are a "consumer product" within the meaning of

12  the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

13  125.   Plaintiffs and Class Members are "consumers" within the meaning

14  of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

15  126.   Defendant is a "supplier" and "warrantor" within the meaning of the

16  Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

17  127.   FCA impliedly warranted that the Class Vehicles were of

18  merchantable quality and fit for such use.  This implied warranty included,

19  among other things:  (i) a warranty that the Class Vehicles and their

20  transmissions were manufactured, supplied, distributed, and/or sold by FCA

21  were safe and reliable for providing transportation; and (ii) a warranty that the

22  Class Vehicles and their transmissions would be fit for their intended use while

23  the Class Vehicles were being operated.

24  128.   Contrary to the applicable implied warranties, the Class Vehicles

25  and their transmissions at the time of sale and thereafter were not fit for their

26  ordinary and intended purpose of providing Plaintiffs and Class Members with

27  reliable, durable, and safe transportation.  Instead, the Class Vehicles are

28

1  defective, including but not limited to the defective design of their transmissions.

2  129.  Defendant's breach of implied warranties has deprived Plaintiffs

3  and Class Members of the benefit of their bargain.

4  130.  The amount in controversy of Plaintiffs' individual claims meets or

5  exceeds the sum or value of $25,000.  In addition, the amount in controversy

6  meets or exceeds the sum or value of $50,000 (exclusive of interests and costs)

7  computed on the basis of all claims to be determined in this suit.

8  131.  Defendant has been afforded a reasonable opportunity to cure its

9  breach, including when Plaintiffs and Class Members brought their vehicles in

10  for diagnoses and repair of the transmission.

11  132.  As a direct and proximate cause of Defendant's breach of implied

12  warranties, Plaintiffs and Class Members sustained damages and other losses in

13  an amount to be determined at trial.  Defendant's conduct damaged Plaintiffs and

14  Class Members, who are entitled to recover actual damages, consequential

15  damages, specific performance, diminution in value, costs, attorneys' fees,

16  and/or other relief as appropriate.

17  133.  As a result of Defendant's violations of the Magnuson-Moss

18  Warranty Act as alleged herein Plaintiffs and Class Members have incurred

19  damages.

20  **FIFTH CAUSE OF ACTION**

21  **(For Unjust Enrichment)**

22  134.  Plaintiffs incorporate by reference the allegations contained in the

23  preceding paragraphs of this Complaint.

24  135.  Plaintiffs bring this cause of action on behalf of themselves and on

25  behalf of the Class Members against Defendant.

26  136.  As a direct and proximate result of Defendant's failure to disclose

27  known defects, Defendant has profited through the sale and lease of said

28

vehicles.  Although these vehicles are purchased through Defendant's agents, the money from the vehicle sales flows directly back to Defendant.

137.   Additionally, as a direct and proximate result of Defendant's failure to disclose known defects in the Class Vehicles, Plaintiffs and Class Members have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant.

138.   Defendant has therefore been unjustly enriched due to the known defects in the Class Vehicles through the use of funds that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiffs and Class Members.

139.   As a result of the Defendant's unjust enrichment, Plaintiffs and Class Members have suffered damages.

## RELIEF REQUESTED

140.   Plaintiffs, on behalf of themselves, and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

    (a) An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representative of the Class, and designating the undersigned as Class Counsel;

    (a) A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the Manual Transmission, including the need for periodic maintenance;

    (b) An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendant to issue a recall for the Class Vehicles pursuant to the applicable NHTSA guidelines; compelling Defendant to remove, repair, and/or replace the

1  Class Vehicles' defective transmission components with
2  suitable alternative product(s) that do not contain the defects
3  alleged herein; enjoining Defendant from selling the Class
4  Vehicles with the misleading information; and/or compelling
5  Defendant to reform its warranty, in a manner deemed to be
6  appropriate by the Court, to cover the injury alleged and to
7  notify all Class Members that such warranty has been
8  reformed;

9  (c)  A declaration requiring Defendant to comply with the various
10  provisions of the Song-Beverly Act alleged herein and to
11  make all the required disclosures;

12  (d)  An award to Plaintiffs and the Class for compensatory,
13  exemplary, and statutory damages, including interest, in an
14  amount to be proven at trial;

15  (e)  Any and all remedies provided pursuant to the Song-Beverly
16  Act, including California Civil Code section 1794;

17  (f)  Any and all remedies provided pursuant to the Magnuson-
18  Moss Warranty Act;

19  (g)  A declaration that Defendant must disgorge, for the benefit of
20  the Class, all or part of the ill-gotten profits it received from
21  the sale or lease of its Class Vehicles, or make full restitution
22  to Plaintiffs and Class Members;

23  (h)  An award of attorneys' fees and costs, as allowed by law;

24  (i)  An award of attorneys' fees and costs pursuant to California
25  Code of Civil Procedure § 1021.5;

26  (j)  An award of pre-judgment and post-judgment interest, as
27  provided by law;

28

CLASS ACTION COMPLAINT

1        (k)     Leave to amend the Complaint to conform to the evidence

2                 produced at trial; and

3        (l)     Such other relief as may be appropriate under the

4                 circumstances.

5                         **DEMAND FOR JURY TRIAL**

6       141.   Pursuant to Federal Rule of Civil Procedure 38(b) and Southern

7 District of California Local Rule 38.1, Plaintiffs demand a trial by jury of any

8 and all issues in this action so triable.

9

10 Dated:  June 24, 2016                 Respectfully submitted,

                                           Capstone Law APC

11

12

13                           By: /s/ Jordan L. Lurie

14                             Jordan L. Lurie
                             Robert Friedl

15                           Tarek H. Zohdy
                           Cody R. Padgett

16                           Karen L. Wallace

17                         Attorneys for Plaintiffs Carlos Victorino
                         and Adam Tavitian

18

19

20

21

22

23

24

25

26

27

28