1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16

| | |
|---|---|
| CARLOS VICTORINO and ADAM TAVITIAN, individually and on behalf of a class of similarly situated individuals,<br><br>                                              Plaintiff,<br><br>        v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>                                              Defendant. | CASE NO. 16cv1617-GPC(JLB)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>[Dkt. No. 12.] |

17
18
19
20
21
22

Before the Court is Defendant FCA US LLC's ("FCA") motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and 9(b). (Dkt. No. 12.) Plaintiffs filed an opposition on October 7, 2016. (Dkt. No. 15.) A reply was filed on October 21, 2016. (Dkt. No. 17.) Based on the reasoning below, the Court DENIES Defendant's motion to dismiss.

23

**Background**

24
25
26
27
28

Plaintiffs Carlos Victorino ("Victorino") and Adam Tavitian ("Tavitian") bring a purported class action complaint based on defects in the 2013-2016 Dodge Dart vehicles equipped with a Fiat C635 manual transmission ("Class Vehicles") that cause the vehicles' clutches to fail and stick to the floor. (Dkt. No. 1, Compl. ¶¶ 1, 2.) Defendant FCA designs, manufactures, markets, distributes, services, repairs, sells and

leases passenger vehicles, including the Class Vehicles, nationwide and in California. (Id. ¶ 40.) Plaintiffs assert that the manual transmission in the Class Vehicles contains a design defect that causes the clutch pedal to lose pressure, stick to the floor, and fail to engage/disengage gears. (Id. ¶ 3.) As a result, the vehicles equipped with the defective manual transmission "experience stalling, failure to accelerate, and premature failure of the transmission's components, including, but not limited to, the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel." (Id.)

According to the Complaint, the transmission defect is caused by a "design flaw in the clutch master cylinder wherein the internal and external seals are ineffective in preventing debris from contaminating and prematurely wearing the seals, resulting in the deprivation of hydraulic fluid to the slave cylinder and, thus, causing collateral damage to the vehicle's clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel." (Id. ¶¶ 4, 51.) The transmission defect is "exacerbated by Defendant's use of a plastic clutch master cylinder, which is prone to corrosion by constant exposure to hydraulic fluid." (Id. ¶¶ 4, 51.) Plaintiffs allege that the defect causes unsafe driving conditions, including, but not limited to, drivers' inability to shift gears or maneuver the clutch pedal, thereby rendering the vehicle unable to accelerate and decelerate, often while the vehicle is already in motion. (Id. ¶¶ 11, 54.) It also caused Plaintiffs to have difficulty safely bringing their vehicles to a stop or to park their vehicles. (Id. ¶¶ 11, 54.) The purported defect severely affects the driver's ability to control the vehicle's speed, acceleration and deceleration such as when changing lanes or merging onto traffic. (Id. ¶ 54.) The transmission defect also "causes premature wear to the Manual Transmission and its related components, which results in premature clutch system or transmission failure and requires expensive repairs, including replacements of the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc and pressure plate, and flywheel." (Id. ¶ 12.)

[16cv1617-GPC(JLB)]

1
2
3
4
5
6
7
8

   The complaint asserts that Defendant knew or should have known that the Class Vehicles and the manual transmission of the Class Vehicles contained a design defect that adversely affects the driveability and causes safety hazards because the same concerns were expressed regarding the 2011-2012 model years Dodge Journey that had the same manual transmission as the Class Vehicles.  (Id. ¶ 13.)   In addition, Defendant's corporate officers, directors, or managers knew about the transmission defect and failed to disclose it to Plaintiffs at the time of sale, lease, repair, and thereafter.  (Id. ¶ 14.)

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

   Defendant was allegedly aware of the defects in the manual transmission since at least January 2012.  (Id. ¶ 53.)  Around January 20, 2012, Chrylser issued a service bulletin "06-001-12" for the 2011-2012 Dodge Journey vehicles equipped with the Fiat C635 Manual Transmission which stated that the clutch pedal was inoperative in some vehicles.   (Id. ¶ 15.)   In November 2012, Defendant issued a service bulletin "10051770-2112" informing dealers that certain Dodge Dart vehicles were "equipped with defective clutch slave cylinders and could cause a hydraulic fluid leak which leads to a pressure loss in the clutch system and failure of the clutch pedal."  (Id. ¶ 16.) Around August 15, 2014, Defendant released STAR case number S1406000001 to its dealers addressing an issue in the manual transmission of the Dodge Dart vehicles where the "Clutch Pedal Does Not Return (Remains on the Floor) After Depressing the Pedal."  (Id. ¶ 17.)  Defendant instructed its dealers to inspect the clutch pedal and replace the clutch master cylinder and reservoir hose, if necessary.  (Id.)   Around January 2016, Defendant extended the clutch master cylinder and reservoir hose warranty period to 2013-2015 Dodge Dart vehicles exhibiting a "loss of clutch pedal operation including limited pedal travel and limited clutch disengagement." (Id. ¶ 18.) Defendant also provided reimbursement for owners who experienced this issue and previously paid for clutch mater cylinder repairs.  (Id.)  According to Plaintiffs, the campaign did not fix the transmission defect and did not actually reimburse all owners affected by the defect for repairs performed on the clutch master cylinder and reservoir

1   hose.[1]  (Id.)

2       Defendant knew about and concealed the transmission defect present in every

3   Class Vehicle, along with the attendant dangerous safety and driveability problems,

4   from Plaintiffs at the time of sale, lease, and repair and thereafter.  (Id. ¶ 21.)  In fact,

5   instead of repairing the defects in the manual transmission, Defendant either refused

6   to acknowledge their existence, or performed repairs that simply masked the defects.

7   (Id.)

8       Around March 22, 2014, Plaintiff Victorino purchased a new 2014 Dodge Dart

9   with a manual transmission from an authorized FCA dealer in San Diego County.  (Id.

10  ¶ 25.)  Prior to buying the vehicle, he spent time researching the Dodge Dart on

11  Dodge's corporate website and test drove the vehicle with a dealership salesperson

12  before purchasing the vehicle.  (Id. ¶ 27.)  On January 13, 2016, with about 34,351

13  miles on the odometer, Victorino complained to the dealership that the vehicle's clutch

14  "frequently failed to engage gears and upon shifting, would fail to accelerate."  (Id. ¶

15  29.)  The service technician found that the clutch assembly, flywheel, and slave

16  cylinder were overheated and worn.  (Id.)  Victorino paid $1,165.31 to replace the

17  clutch assembly, flywheel, and slave cylinder.  (Id.)

18      In November 2012, Plaintiff Tavitian purchased a new 2013 Dodge Dart with a

19  manual transmission from an authorized FCA dealer in San Mateo County.  (Id. ¶ 32.)

20  Prior to purchasing the vehicle, he spent time researching the vehicle on Dodge's

21  corporate website and test drove the vehicle with a dealership salesperson.  (Id. ¶ 34.)

22

23      [1]The parties do not dispute that this case has its genesis in Hardt v. Chrysler
24  Group LLC, Case No. 8:14cv1375 AJO(VBKx) (C.D. Cal.), a purported class action
    filed on August 27, 2014 alleging a transmission defect in 2013-2014 Dodge Dart
25  vehicles similar to the defect alleged in this case. (Dkt. No. 12-1 at 7; Dkt. No. 15 at
    7.) Eventually, the Hardt case settled.  During the pendency of the case, Chrysler
26  implemented a customer service action to address complaints of clutches going "soft"
    and "sticking to the floor" in certain manual transmission vehicles.  According to
27  Plaintiffs, after Hardt was dismissed, Chrysler's implementation of the customer
    service action was inadequate and did not fix the defect, replaced defective parts with
28  more defective parts and failed to reimburse many owners for repairs. (Dkt. No. 15 at
    7.) Thus, this case was filed to seek relief on behalf of other Dodge Dart owners who
    are still being harmed by Chrysler's unlawful practices. (Id.)

- 4 -

1  Around July 7, 2014, Tavitian took his vehicle to the dealership and complained that
2  "the clutch pedal installed in his Dodge Dart would stick in the depressed position and
3  fail to shift gears." (Id. ¶ 36.)  The service technician inspected the vehicle and
4  determined that the clutch master cylinder was leaking and replaced it at a cost of
5  $298.33.  (Id.)  Tavitian requested reimbursement of the cost under the "customer
6  service campaign" but his claim was denied.  (Id.)

**Discussion**

7
8  **A.    Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)**

9         Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure
10 to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Dismissal
11 under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory
12 or sufficient facts to support a cognizable legal theory.  See Balistreri v. Pacifica Police
13 Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure
14 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the
15 claim showing that the pleader is entitled to relief," and "give the defendant fair notice
16 of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v.
17 Twombly, 550 U.S. 544, 555 (2007).

18        A complaint may survive a motion to dismiss only if, taking all well-pleaded
19 factual allegations as true, it contains enough facts to "state a claim to relief that is
20 plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,
21 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual
22 content that allows the court to draw the reasonable inference that the defendant is
23 liable for the misconduct alleged." Id.  "Threadbare recitals of the elements of a cause
24 of action, supported by mere conclusory statements, do not suffice." Id.  "In sum, for
25 a complaint to survive a motion to dismiss, the non-conclusory factual content, and
26 reasonable inferences from that content, must be plausibly suggestive of a claim
27 entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir.
28 2009) (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as

true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff.  al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.  See DeSoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

**1.  Failure to Allege a Defect**

As an initial matter, Defendant moves to dismiss the complaint for failing to allege a defect in compliance with Rule 8 because many of the material allegations in the complaint are based on "information and belief."  Plaintiffs argue that this case involves the "exact same defect" as the case in the Central District of California, Hardt v. Chrysler Group LLC, Case No. 14cv1375 SJO (VBKx) (C.D. Cal.) and in that case, the district judge held that plaintiffs stated a claim under the Rule 8 standard.

Courts have held that pleadings based on information and belief are permissible where the facts are within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.  Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010); Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana, 786 F.3d 510, 517 (7th Cir. 2015).  "Even after Iqbal and Twombly, numerous courts have held that facts may be pleaded on information and belief, especially where . . . the underlying evidence is peculiarly within the defendant's possession." GCIU-EMployer Retirement Fund v. Quad/Graphics, Inc., No. 16cv0100-ODW(AFMx), 2016 WL 3027336, at *3 (C.D. Cal. May 26, 2016) (citing cases).

Plausibility "refers to whether the non-conclusory factual allegations, when assumed to be true, 'allow[ ] the court to draw the reasonable inference that the

[16cv1617-GPC(JLB)]

defendant is liable for the misconduct alleged.'" <u>Waldo v. Eli Lilly & Co.</u>, No. CIV 13-789 LKK/EFB, 2013 WL 5554623, at *2 (E.D. Cal. Oct. 8, 2013) (quoting <u>Iqbal</u>, 556 U.S. at 678).  In <u>Waldo</u>, the court explained that while the Supreme Court nor the Ninth Circuit has issued a definitive ruling on whether an allegation based "on information and belief" may be pled, it held that facts may be pled on information and belief as long as they are based on or supported by non-conclusory factual allegations that plausibly give rise to an entitlement to relief. <u>Id.</u> at 5 (citing <u>Blantz v. Cal. Dep't of Corrections</u>, 727 F.3d 917, 926-27 (9th Cir. 2013)).

In support, Defendant cites to <u>Yagman v. General Motors</u>, No. CV-14-4696, 2014 WL 4177295 at *2 (C.D. Cal. Aug. 22, 2014). and <u>DeCoteau v. FCA US LLC</u>, No. 15cv0020-MCE-EFB, 2015 WL 6951296 (Nov. 10, 2015).  In <u>Yagman</u>, the plaintiff alleged that his vehicle's engine stopped running and experienced a complete electrical shutdown. <u>Yagman</u>, 2014 WL 4177295 at 2.  Testing did not reveal any problems, but the engine eventually broke down again. <u>Id.</u> The court concluded that these allegations were not sufficient to state a claim under Rule 8. <u>Id.</u>  The court explained that the plaintiff only alleged an injury and not a defect. <u>Id.</u> at 3.  The fact that the plaintiff's vehicle stopped working and experienced a total electrical failure did not create a plausible inference that a manufacturing defect was the cause but only alleged a possibility. <u>Id.</u>  The court therefore dismissed the complaint with leave to amend, instructing the plaintiff that the amended complaint "should set forth the specific facts on which Plaintiff bases his belief that a defect" caused the harm he suffered. <u>Id.</u>

In <u>DeCoteau</u>, the district court dismissed the complaint with leave to amend directing the plaintiffs to allege specific facts to support their conclusion that their vehicles were defective. <u>Id.</u> at 1.  It is not enough to conclusorily allege that a transmission defect exists and is responsible for the injuries stated in the FAC. <u>Id.</u> at 3. The court explained "Plaintiffs must also plausibly connect the existence of the alleged defect to the injuries they claim to have suffered." <u>Id.</u>

In this case, Plaintiffs allege,

> the Transmission Defect is caused by a design flaw in the clutch master cylinder wherein the internal and external seals are ineffective in preventing debris from contaminating and prematurely wearing the seals, resulting in the deprivation of hydraulic fluid to the slave cylinder and, thus, causing collateral damage to the vehicle's clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel. Further, on information and belief, the Transmission Defect is exacerbated by Defendant's use of a plastic clutch master cylinder, which is prone to corrosion by constant exposure to hydraulic fluid.

(Dkt. No. 1 Compl. ¶ 4.)  The allegations of symptoms that arise from the defect is that it causes "the clutch pedal to lose pressure, stick to the floor, and fail to engage/disengage gears.  As a result, the vehicles equipped with the Manual Transmission experience stalling, failure to accelerate, and premature failure of the transmission's components, including, but not limited to, the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel."  (Id. ¶ 3.)  These allegations sufficiently allege an injury caused by a defect due to a flaw in the clutch master cylinder.  Plaintiffs have provided specific facts to create a plausible inference of a defect in the transmission.  The Court DENIES Defendant's motion to dismiss based on a failure to specifically allege a defect.

## B.     Legal Standard as to Federal Rule of Civil Procedure 9(b)

Where a plaintiff alleges fraud in the complaint, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  State of mind does not have to be alleged with specificity.  Id.  A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Odom v. Microsoft Corp., 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted).  Rule 9(b) also applies to claims that are "grounded in fraud" or "sound in fraud." Vess v. Ciba-Geigy Corp., U.S.A., 317 F.3d 1097, 1103-04 (9th Cir. 2003).

In an fraudulent omissions or fraudulent concealment cause of action, Rule 9(b) standard is "somewhat relaxed because "a plaintiff cannot plead either the specific time

of [an] omission or the place, as he is not alleging an act, but a failure to act." Asghari v. Volkswagen Group of America, Inc., 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) (citation omitted). "Claims of nondisclosure and omission, as varieties of misrepresentation, are subject to the pleading standards of Rule 9(b)." Marolda v. Symantec Corp., 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009).  However, a plaintiff alleging fraudulent omission or concealment must still plead the claim with particularity. Asghari, 42 F. Supp. at 1325.  Specifically, a plaintiff must "set forth an explanation as to why [the] omission complained of was false and misleading" to state a claim under Rule 9(b).  Id. "[T]o plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." Id. at 1325-26 (citations omitted).

In corporate fraud cases, the Ninth Circuit has held that Rule 9(b)'s requirement may be relaxed as to matters within the defendant's knowledge and where plaintiffs lack personal knowledge of all underlying facts. Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989). In such a case, allegations may be made on information and belief so long as they are accompanied by a statement of facts on which the belief is founded.  Id.

### 1.    Failure to Allege Fraud Allegations with Specificity

Defendant generally argues that Plaintiffs failed to plead with the particularity pleading requirement of Rule 9(b) because most of the allegations are based on "information and belief" and because Plaintiffs have not identified the information that was allegedly withheld from them and the names of the persons who withheld it.  The Court disagrees with Defendant's arguments.  Plaintiff has plead that the alleged specific defect was concealed from Plaintiffs at the time of purchase, (Dkt. No. 1, Compl. ¶ 68), explained why it was false, (id. ¶ 49), and who allegedly concealed it.

[16cv1617-GPC(JLB)]

(Id. ¶¶ 14, 70.)  These allegations are sufficient to survive a motion to dismiss pursuant to Rule 9(b).

## C.   CLRA[2]  Claim

Plaintiffs allege violations of sections 1770(a)(5) and (7) of the CLRA by Defendant for "failing to disclose and concealing the defective nature of the transmissions from Plaintiffs . . . as it represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have, and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another."  (Dkt. No. 1, Compl. ¶ 85.)

Here, it is not disputed that Plaintiffs' allegations are based on fraudulent omissions and fraudulent concealment in that Defendant had exclusive knowledge of the manual transmission defect and actively concealed the defect.[3]

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).  Such acts and practices include "[r]epresenting that goods . . . have characteristics . . . which they do not have," Cal. Civ. Code § 1770(a)(5), and [r]epresenting that goods . . . are of a particular standard, quality, or grade, . . . if they are of another," id. § 1170(a)(7).  If a CLRA claim is based on fraudulent omissions or fraudulent concealment[4], the "omission must be contrary to a representation actually

---

[2]While Defendant moves to dismiss Counts 1 and II (CLRA & UCL), it provides no arguments as to the UCL and does not specifically address the motion to dismiss as to the unlawful, unfair and fraudulent prongs of the UCL.  Without presenting any legal analysis on this issue, the Court DENIES Defendant's motion to dismiss the UCL claim.

[3]Despite certain claims of affirmative representation in the complaint, (Dkt. No. 1, Compl. ¶¶ 60, 85), it is not disputed that Plaintiffs' CLRA and UCL claims are based exclusively on alleged omissions or active concealment by Defendant concerning the nature of the transmission defect.  (Dkt. No. 15, Ps' Opp. at 16.)

[4]A plaintiff alleging fraud must allege: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."  Baggett v. Hewlett–Packard Co., 582 F. Supp. 2d 1261, 1267 (C.D. Cal.

made by the defendant, or an omission of a fact that the defendant was obligated to disclose." Daugherty v. American Honda Motor Co., Inc., 144 Cal. App. 4th 824, 835 (2007).

"Under California law, there are four circumstances in which an obligation to disclose may arise: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." Asghari, 42 F. Supp. 3d at 1328 (citing Smith v. Ford Motor Co., 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (citing LiMandri v. Judkins, 52 Cal. App. 4th 326, 337 (1997)).

In its motion, Defendant argues that Plaintiffs have failed to allege a duty to disclosure based on exclusive knowledge and active concealment; therefore they have failed to state a claim under the CLRA. In response, Plaintiffs assert they have pled Defendant had exclusive knowledge of the transmission defect and actively concealed the defect.  (Dkt. No. 1, Compl. ¶¶ 58-72.)

As to exclusive knowledge, Defendant argues that Plaintiffs failed to plead facts that it had knowledge of the manual transmission defect in Dodge Dart vehicles since 2012, as alleged, and specifically failed to allege Defendant had exclusive knowledge of the defect prior to when Plaintiff Tavitian purchased his vehicle in November 2012 and prior to when Victorino purchased his vehicle in March 2014.  Plaintiffs respond that they have pled that Defendant had knowledge of the alleged defect since 2012.

To demonstrate exclusive knowledge by a defendant, Plaintiffs must allege that a "defendant was aware of a defect at the time of sale to survive a motion to dismiss." Wilson v. Hewlitt-Packard Co., 668 F.3d 1136, 1147 (9th Cir. 2012).  Consumer complaints alone are not adequate to establish pre-sale knowledge.  See id. at 1147-48 (holding that undated consumer complaints and two complaints dated two years after

2007) (quoting Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 990 (2004)).

the plaintiffs' purchase was not sufficient to support an inference that the defendant was aware of the defect). Moreover, general allegations that the defendant had "access to aggregate information and data regarding the risk " was speculative as to defendant's knowledge of the defect at the time of sale. Id. at 1146-47. However, more than one indication of knowledge by Defendant can be sufficient to state a claim. Id. at 1147 ("the amassed weight of [customer] complaints together with other indications that [the defendant] had knowledge of the defect" sufficiently stated a claim in Falk v. General Motors Corp. 496 F. Supp. 2d 1088 (N.D. Cal. 2007)). The Ninth Circuit noted that district court in Falk held that customer complaints can impute knowledge on a defendant as long as there are other indications that the defendant had knowledge of the defect. Id.; see MacDonald v. Ford Motor Co., 37 F. Supp. 3d 1087, 1095 (N.D. Cal. 2014) (consumer complaints, alone are not sufficient, but may help support other evidence of knowledge).

As to technical service bulletins ("TSB"), in Fisher, the district court held the TSBs were not sufficient to support an inference of knowledge because three of the TSBs did not relate to the one model of vehicle at issue, and while only one TSB related to a model of the alleged class vehicle, it did not refer to the defect at issue. Fisher v. Honda North America, No. CV13-9285 JAK(PLAx), at *6 (C.D. Cal. June 12, 2014). In MacDonald, the defendant argued the plaintiff had not alleged knowledge by the defendant of the defect because one TSB concerned an earlier model of the vehicle and two TSBs were issued after the plaintiffs purchased their vehicles. MacDonald, 37 F. Supp. at 1093. The court explained that competing inferences from the same facts do not justify dismissal on a motion to dismiss. Id. "One plausible inference that can be drawn from the three TSBs is that Ford was generally aware of problems with the coolant pump, and that despite this awareness it continued to sell vehicles containing the defective part." Id. The court even concluded that TSBs issued shortly after Plaintiffs' purchases, five and nine months later, "also plausibly give rise to the inference that Ford knew of the issue prior to their issuance." Id. at

1093-94.

Defendant contends that the alleged facts do not demonstrate it had knowledge of the defect in manual transmissions for Dart vehicles since 2012 because the service bulletins referenced by Plaintiffs concern a different model of a vehicle and concern a Dart vehicle with an entirely different transmission. Plaintiffs argue that the service bulletin concerning the 2011-2011 Dodge Journey vehicles were equipped with the same transmission as the Class Vehicles and suffered from a similar or identical defect; and the November 2012 service bulleting concerning the 2013 Dodge Dart vehicles were equipped with defective clutch slave cylinders which lead to pressure loss in the clutch system and failure of the clutch pedal which addressed similar symptoms as in this case. (Dkt. No. 1, Compl. ¶ 63.) Plaintiffs also allege numerous consumer complaints to the National Highway Transportation Safety Administration ("NHTSA") concerning the 2013 Dodge Dart beginning in February 2013. (Id. ¶ 66.)

Here, Plaintiffs allege that Defendant had exclusive knowledge of the alleged transmission defect since at least early 2012 through "pre-release testing data, early consumer complaints about the transmission defects to Chrysler and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, aggregate data from Chrysler dealers." (Dkt. No. 1, Compl. ¶ 59.) Specifically, Defendant was aware of complaints received about the same exact manual transmission used in 2011-2012 Dodge Journey vehicles from consumers and from automotive journalists. (Id. ¶ 61.) In addition, on January 20, 2012, Defendant issued a Service Bulletin for the 2011-2012 Dodge Journey concerning the very same manual transmission as in this case that suffered from similar defects. (Id. ¶ 62.) Moreover, in November 2012, Defendant issued a service bulletin concerning 2013 Dodge Dart vehicles that informed dealers that the clutch slave cylinders were defective as it caused pressure loss in the clutch system causing the clutch pedal to fail. (Id. ¶ 63.) Lastly, numerous consumer complaints to the NHTSA going back to February 2013 provided

1  Defendant with notice of the defect.[5]

2      In Hardt, the district court concluded that same service bulletin alleged in the
3  instant complaint concerning the 2011-2012 Dodge Journey vehicles with the same
4  manual transmission suffering from similar defects created a plausible inference that
5  Chrysler knew of the manual transmission problem.   Hardt v. Chrysler, SACV
6  14cv1375 SJO(VBKx), at 7 (C.D. Cal. Mar. 16, 2015).   The Court agrees with the
7  reasoning in Hardt concerning the service bulletin issued on the Dodge Journey as
8  supported by the caselaw.  The service bulletin, released in January 2012, for the 2011-
9  2012 Dodge Journey concerned the same exact manual transmission as the Class
10 Vehicles and concerned similar problems of the clutch pedal going to the floor which
11 may be caused by the hydraulic clutch damper leaking fluid. (Dkt. No. 12-2, D's RJN[6],
12 Ex. B at 36.)  Here, the complaint alleges similar problems of the clutch pedal sticking
13 to the floor and making the clutch pedal inoperable.

14      In addition to the service bulletin on the 2011-2012 Dodge Journey, Defendant
15 issued a service bulletin on the 2013 Dodge Dart vehicles in November 2012 informing
16 dealers that certain vehicles were equipped with "defective clutch slave cylinders and
17 could cause a hydraulic fluid leak, which leads to a pressure loss in the clutch system

18 ───────────
19 [5]Plaintiffs also allege a communication to Dodge dealers in August 15, 2014
   concerning issues with the manual transmission in Dodge Dart Vehicles, (Dkt. No. 1,
20 Compl. ¶ 64), and January 2016 warranty extension for 2013-2015 Dodge Dart vehicles
   (id. ¶ 65) but these post-date the sale of the Dodge Dart vehicles to Plaintiffs and do
21 not state a claim that Defendant had knowledge of the alleged defect at the time
   Plaintiffs purchased their vehicles.

22 [6]Defendant filed a request for judicial notice of January 2012 Technical Service
   Bulletin concerning the 2011-2012 Dodge Journey and the November 2012 Customer
23 Satisfaction Notification. (Dkt. No. 12-2, D's RJN, Exs. A & B.)  As a general rule,
   "a district court may not consider any material beyond the pleadings in ruling on a Rule
24 12(b)(6) motion."  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).
   However, a court may take judicial notice of documents that are not attached to the
25 complaint if the documents' "authenticity . . . is not contested" and "the plaintiff's
   complaint necessarily relies" on them. Id. (citations omitted).  The Complaint relies
26 on the TSB and Customer Service Notification to demonstrate Defendant had notice
   of the defects and Plaintiffs do not dispute the authenticity and do not oppose the
27 request.  Accordingly, the Court GRANTS Defendant's request for judicial notice of
   Exhibits A & B.  However, the Court DENIES Defendant's request for judicial notice
28 as to the United States' Statement of Interest attached as Exhibit C to the Request for
   Judicial Notice as unnecessary as the Court did not rely on this document.

and failure of the clutch pedal." (Id. ¶ 73.)  These symptoms are similar to the ones claimed in this case and raise a plausible inference that Defendant knew about a defect in the manual transmissions of the Dodge Dart.  While Defendant argues, without support, that this service bulletin concerns a different transmission sold only in foreign countries, the Court, at this stage of the proceedings, does not consider disputed issues of fact.  Moreover, Plaintiffs list consumer complaints made to the NHTSA starting in February 2013 concerning similar manual transmission problems on the 2013 Dodge Dart which provided Defendant with notice as to Victorino's claims.  Plaintiffs have presented more than one indication of knowledge by Defendant of the alleged defect, and the Court concludes they have stated a claim that Defendant had exclusive knowledge of the defect prior to Plaintiff's purchase of their vehicles.

As to a duty to disclose when the defendant actively conceals a material fact from the plaintiff, Defendant generally contends that Plaintiffs' allegations of "active concealment" also do not support a duty to disclose because no facts are alleged.  Plaintiffs argue their allegations of active concealment are sufficient to survive a motion to dismiss.

A defendant's denial of the existence of a defect can state a claim for active concealment.  See In re Toyota Motor Corp., 754 F. Supp. 2d 1145, 1192 (C.D. Cal. 2010) (defendants repeatedly denial of the existence of defect was sufficient to state a claim for active concealment); Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1134-35 (N.D. Cal. 2010) (active concealment sufficiently alleged where plaintiffs contacted defendant for service of defective machines and were told there was no defect and/or denied free service or replacement parts).

Here, the Complaint alleges that Defendant "actively concealed the existence and nature of the defect from Plaintiffs and Class Members at the time of purchase, lease or repair." (Dkt. No. 1, Compl. ¶ 68.) More specifically, Plaintiffs complain that when "consumers present the Class Vehicles to an authorized FCA dealer for repair of the transmission, rather than repair the problem under warranty, FCA dealers either inform

consumers that their vehicles are functioning properly, or conduct repairs that merely mask the defect. In fact, even when presented with video evidence of the Transmission Defect herein alleged, FCA authorized repair facilities, which act as FCA's repair agents, inform Class Members that the defect is known." (Id. ¶ 70.)  Defendant has not yet modified or redesigned the defective components.  (Id. ¶ 71.)  These allegations create a plausible inference of active concealment.  Accordingly, the Court DENIES Defendant's motion to dismiss the CLRA cause of action.

**D.     Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791**

Plaintiffs assert a claim for breach of the implied warranty of mechantability in violation of the Song-Beverly Consumer Warranty Act.  (Dkt. No. 1, Compl. ¶¶ 113-121.)  The Song -Beverly Consumer Warranty Act provides for an implied warranty of merchantability that the consumer goods are "fit for the ordinary purposes for which such goods are used."   Cal. Civ. Code § 1791.1(a).   The implied warranty of merchantability "provides for a minimum level of quality." Am. Suzuki Motor Corp. v. Superior Court, 37 Cal. App. 4th 1291, 1295-96 (1995).   "Such fitness is shown if the product is in safe condition and substantially free of defects . . . ." Brand v. Hyundai Motor America, 226 Cal. App. 4th 1538, 1546 (2014) (internal quotation marks omitted) (quoting Mexia Rinker Boat Co., Inc., 174 Cal. App. 4th 1297 (2009)). However, "we reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily violate the implied warranty of merchantability." Isip v. Mercedes-Benz USA, LLC, 155 Cal. App. 4th 19, 27 (2007).  In Isip, the court of appeal affirmed the trial court's judgment following a jury trial in favor of the plaintiff finding a violation of the Song–Beverly Act noting "malodorous air-conditioning, a leaking transmission, transmission hesitation, and Isip's clanking brake problem were not normal for a car." Id. at 27.  Citing Isip, the Ninth Circuit held that the "defect need not render a vehicle inoperable to give rise to a claim for breach of implied warranty." Troup v. Toyota Motor Corp., 545 F. App'x 668, 669 (9th Cir. 2013) (breach of implied warranty of merchantability based on plaintiffs' requirement

to refuel more often failed to state a plausible claim because it did not implicate the vehicle's operability).

Defendant argues that there are no facts alleged that the Dodge Dart vehicles were unmerchantable as the facts allege nothing more than a single repair to fix a wear component and Plaintiffs have not alleged they have stopped driving their vehicles for any reason or that the vehicles are not capable of providing transportation. Plaintiffs argue that Defendant's arguments are without legal support and they have alleged facts to support their implied warranty claim.

The Complaint alleges that the alleged manual transmission defect can cause unsafe driving conditions when drivers are unable to shift gears or maneuver the clutch pedal rendering the vehicle unable to accelerate or decelerate while the vehicle is already in motion on the streets or highways. (Dkt. No. 1, Compl. ¶ 54.) The alleged defect also causes drivers to have difficulty safely bringing their vehicles to a stop or park their vehicles. (Id.) The inability to shift gears and accelerate or decelerate while driving render the vehicles unsafe and not free of defects. See Kas v. Mercedes-Benz USA , LLC, No. CV11-1032 GHK(PJWx), 2011 WL 5248299, at *2 (C.D. Cal. Oct. 31, 2011) (amending complaint to add that the automatic transmission system was damaged due to an alleged radiator defect causing "kicking, jerking, delayed acceleration, etc." . . . "when her vehicle, during normal operation, suddenly and unexpectedly pulls back (i.e., jolts), hesitates, and then takes off like a slingshot" stated a claim for implied warranty of merchantability).

Defendant does not provide legal support for its argument that a single repair to fix the alleged defect and Plaintiffs' continued ability to drive the vehicles are not sufficient to state a claim of implied warranty of merchantabilty. In fact, a consumer is not required to afford a car manufacturer an opportunity to repair a vehicle for there to be a breach of the implied warranty. See Mocek v. Alfa Leisure, Inc., 114 Cal. App. 4th 402, 407 (2003); Music Acceptance Corp. v. Lofing, 32 Cal. App. 4th 610, 620-21 (1995).

[16cv1617-GPC(JLB)]

1   Accordingly, the Court DENIES Defendant's motion to dismiss the Song-
2   Beverly Consumer Warranty Act cause of action.

3   **E.    Magnuson-Moss Warranty Act**

4       The Magnuson–Moss Warranty Act ("MMWA") provides for a federal cause of
5   action for state law warranty claims. Birdsong v. Apple, Inc., 955 F.3d 955, 958 n.2
6   (9th Cir. 2009) (The substantive elements under the Magnuson-Moss Act are the same
7   as under state warranty law). The MMWA permits a "consumer" to sue for damage
8   caused "by the failure of a supplier, warrantor, or service contractor to comply with any
9   obligation under this [act], or under a written warranty, implied warranty, or service
10  contract." 15 U.S.C. § 2310(d)(1). The term implied warranty "means an implied
11  warranty arising under State law . . . in connection with the sale by a supplier of a
12  consumer product." 15 U.S.C. § 2301(7); Clemens v. DaimlerChrysler Corp., 534 F.
13  3d 1017, 1022 (9th Cir. 2008) (claims under the MMWA "stand or fall" with the state
14  express and implied warranty claims; see also Daugherty v. Am. Honda Motor Co.,
15  144 Cal. App. 4th 824, 832-33 (2006). Here, since the Song-Beverly Consumer
16  Warranty Act survives, the Magnuson-Moss Warranty Act also survives.

17      Defendant further argues that the MMWA claim should be dismissed to the
18  extent it is brought on behalf of the "Nationwide Class" because the only state-law
19  implied warranty claim is the Song-Beverly Consumer Warranty Act which does not
20  apply to individuals who purchased their vehicles outside of California. Plaintiffs
21  disagree. At this stage of the case, the Court declines to address this issue until the
22  class certification stage. Thus, the Court DENIES Defendant's motion to dismiss the
23  MMWA claim.

24  **F.    Unjust Enrichment**

25      Defendant next argues that the unjust enrichment claim is duplicative of the
26  statutory consumer fraud allegations as it based on the same allegations underlying the
27  statutory consumer fraud claims of failing to disclose known defects and seeking the
28  exact same relief of rescission.

[16cv1617-GPC(JLB)]

Federal district courts as well as the Ninth Circuit have noted that California courts are split on whether unjust enrichment can be an independent cause of action. ESG Capital Partners, LP v. Stratos, 828 F.3d 1023, 1038 (9th Cir. 2016); City of L.A. v. Bank of Am. Corp., No. 13-9046, 2014 WL 2770083, at *12 (C.D. Cal. June 12, 2014) (recognizing differing treatments of unjust enrichment claims); In re ConAgra Foods, Inc., 908 F. Supp. 2d 1090, 1113 (C.D. Cal. 2012); Falk v. General Motors Corp., 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007); Paskenta Band of Nomlaki Indians v. Crosby, No. 15-00538, 2015 WL 4879650, at *6 (E.D. Cal. Aug. 14, 2015) (recognizing split in California courts and applying Ninth Circuit's interpretation of California law).

Recently, in Astiana v. Hain Celestial Group, Inc., 783 F.3d 753, 762 (9th Cir. 2015), the Ninth Circuit resolved the question of whether a court may dismiss an unjust enrichment as merely duplicative of other statutory claims seeking the same relief. The Ninth Circuit explained that while there is no stand alone cause of action for "unjust enrichment" which is synonymous with "restitution", when a plaintiff alleges a claim of unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." Id. (citing Rutherford Holdings, LLC v. Plaza Del Rey, 223 Cal. App. 4th 221, 231 (2014) (construing unjust enrichment claim as quasi-contract claim seeking restitution)). In Astiana, the court held that the plaintiff's allegations alleging unjust enrichment based on false and misleading labeling were "sufficient to state a quasi-contract cause of action" and the district court's dismissal of unjust enrichment as duplicative or superfluous was not grounds for dismissal. Id. The Ninth Circuit specifically noted that courts should not dismiss an unjust enrichment claim because it is "duplicative of or superfluous to" other claims alleged. Id. (citing Fed. R. Civ. P. 8(d)(2) which allows a party to plead claims in the alternative).

To allege unjust enrichment, a plaintiff must assert "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." Peterson v. Cellco Partnership, 164 Cal. App. 4th 1583, 1593 (2008). Here, the complaint alleges that due

to Defendant's failure to disclose known defects, it has profited through the sale or lease of the Class Vehicles. (Dkt. No. 1, Compl. ¶ 136.)   Plaintiffs allege that due to Defendant's failure to disclose the alleged defect, Plaintiffs have been required to incur high-cost repairs that have conferred an unjust substantial benefit upon Defendant. (Id. ¶ 137.)

Based on the holding in Astiana, Plaintiffs have sufficiently stated a claim for quasi-contract.  Therefore, Defendant's argument that the unjust enrichment claim is duplicative of relief available under the UCL is without merit, see Astiana, 783 F.3d at 762-63, and the Court DENIES Defendant's motion to dismiss the unjust enrichment claim.

**G.   Damages**

Defendant seeks to dismiss Plaintiffs' damages requests for a motor vehicle recall and related injunctive relief, and punitive damages.  Plaintiffs disagree.

**1.   Injunctive Relief**

In their claims for injunctive relief, Plaintiffs seek an injunction seeking a recall for the class vehicles pursuant to the NHTSA guidelines, compelling Defendant to remove, repair and/or replace allegedly defective vehicle components and enjoining Defendant from selling the Dodge Dart vehicles with the misleading information. (Dkt. No. 1, Compl. ¶ 140(b).)

Defendant argues that Plaintiffs' request for a recall injunction compelling Defendant to issue a recall of the Class Vehicles pursuant to NHTSA guidelines and other injunctive relief should be dismissed as preempted.  Plaintiffs oppose arguing the doctrine of primary jurisdiction which is not asserted by Defendant.

Under the Supremacy Clause, the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const., Art. VI, cl. 2.  Accordingly, "state laws that conflict with federal law are 'without effect.'"  Mut. Pharm. Co., Inc. v. Bartlett, —— U.S. ——, 133 S. Ct. 2466, 2473 (2013) (citations omitted).  "Federal preemption occurs when:

- 20 -

(1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." Chae v. SLM Corp., 593 F.3d 936, 941 (9th Cir. 2010) (citations omitted). As stated, there are three categories of preemption: express, field and conflict. See id. Field and conflict preemption are subcategories of implied preemption. Stengel v. Medtronic, Inc., 714 F.3d 1224, 1230 (9th Cir. 2013).

There are several problems with Defendant's motion to dismiss the injunctive relief based on preemption. While Defendant moves to dismiss the requested relief of an injunction based on preemption pursuant to Rule 12(b)(6), it has failed to state which state law claims are preempted by the Safety Act. See In re Toyota Motor Corp., 754 F. Supp. 2d at 1194-95 (defendant failed to state which claim it seeks to dismissed on the grounds of preemption). Moreover, Defendant does not assert whether it seeks preemption based on express or implied preemption. It has not argued that Congress has expressly preempted state law, that a state law actually conflicts with federal law, or that the federal law occupies a legislative field so as to conclude that Congress left no room for state regulation in that field. See Chae, 593 F.3d at 941. Moreover, Defendant does not explain or argue how the injunctive relief sought that are not related to NHTSA guidelines are preempted. Instead, Defendant argues that the recall sought by Plaintiffs pursuant to NHTSA's guidelines cannot be conducted without involvement by the NHTSA as the guidelines require submission of reports to the NHTSA which would be ordering a federal agency to perform certain acts involving its resources and its personnel. A court cannot direct a federal agency like the NHTSA how to use its resources or how to set its enforcement priorities and when to conduct a vehicle recall or to halt the sale of vehicles. In response, Plaintiffs argue that the injunctive relief they seek do not seek an order that NHTSA must act a certain way but that Defendant take action pursuant to the provisions of the Federal Motor Vehicle

Safety Act ("Safety Act")[7].  Moreover, they argue that the savings clause in the Safety Act provides consumers with "other rights and remedies under other laws of the United States or a State."  49 U.S.C. § 30103(d).

Defendant's citation to <u>Granillo v. FCA US LLC</u>, Case No. 3:16cv153, Dkt. No. 57 at 39 (D.N.J.) is not helpful as it concerned injunctive relief of a recall under the UCL which the court held violated the doctrine of intergovernmental immunity because it would directly regulate the actions of the NHTSA.

Here, Defendant has not addressed what state law is preempted, has not alleged the elements of either express or implied preemption and has not alleged whether it seeks intergovernmental immunity as a basis for its motions.  Because Defendant has not properly addressed preemption and has not demonstrated that all the injunctive relief sought is subject to preemption, the Court DENIES Defendant's motion to dismiss the injunctive relief claims at this time.

### 2.   Punitive Damages

Defendant seeks to dismiss the punitive damages claim because it is based on a single conclusory allegation, based on information and belief, that the corporate officers knew about the alleged defect in the manual transmission.  Plaintiffs maintain that they have sufficiently alleged facts to create an inference that the officers, directors or managers of Defendant were involved in the conduct.

To seek punitive damages against a corporation, there must an allegation of the "the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."  Cal. Civil Code § 3294(b); <u>White v. Ultramar, Inc.</u>, 21 Cal. 4th 563, 572 (1999) ("For corporate punitive damages liability, [§ 3294(b) ] requires that the wrongful act giving rise to the exemplary damages be committed by an 'officer, director, or managing agent.'").  A consumer seeking damages under the  CLRA may recover punitive damages.  Cal. Civ. Code § 1780(a)(4).

---

[7]49 U.S.C. § 30101 *et seq*.

The complaint alleges, on information and belief, that "Defendant's corporate officers, directors, or managers knew about the Transmission Defect and failed to disclose it to Plaintiffs and Class Members, at the time of sale, lease, repair, and thereafter." (Dkt. No. 1, Compl. ¶ 14.)  It also asserts that in April 2012 before the Class Vehicles were available for sale, Defendant's Vice President, in a posted media release stated, "The three new engines and transmissions available in the new Dodge Dart have been designed and tested to meet consumer's needs for fuel economy, refinement, durability and power in a compact car. . ." and each transmission has undergone "extensive testing and evaluation to ensure that customer expectations in the area of refined shifting characteristics . . . are met." (Id. ¶ 60.)  In addition, Plaintiffs assert the FCA had superior and exclusive knowledge of the transmission defect, and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class Vehicles." (Id. ¶ 58.) FCA failed to disclose or actively concealed all known material defects relating to the manual transmission.  (Id. ¶ 68.)

The Court concludes that these facts, while close, create a plausible inference that the corporate officers knew about the alleged defect and withheld such material information from Plaintiffs.  The cases cited by Defendants do not support its argument.  Ortega v. Natural Balance, Inc., No. CV 13-5942 ABC(Ex), 2013 WL 6596792 at *5 (C.D. Cal. Dec. 16, 2013) (no allegation to plead punitive damages); Storm Mfg. Group Inc. v Weather Tec Corp., No. CV 12-10849 (CAS)(FFMx), 2013 WL 5352698, at *10 (C.D. Cal. Sept. 23, 2013) (no allegation of any authorization or ratification by a manager or director of corporation).  Accordingly, the Court DENIES Defendant's motion to dismiss the request for punitive damages.

/ / / /

/ / / /

/ / / /

/ / / /

[16cv1617-GPC(JLB)]

**Conclusion**

Based on the above, the Court DENIES Defendant's motion to dismiss. The hearing set for November 4, 2016 shall be **vacated**.

IT IS SO ORDERED.

DATED: November 1, 2016

HON. GONZALO P. CURIEL
United States District Judge

[16cv1617-GPC(JLB)]