UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO and ADAM TAVITIAN, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company, ,<br><br>        Defendant. | Case No.: 16cv1617-GPC(JLB)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S EX PARTE MOTION TO STRIKE**<br><br>**[REDACTED -ORIGINAL FILED UNDER SEAL]**<br><br>**[Dkt. Nos. 50, 70, 79.]** |

Before the Court is Defendant FCA US LLC's motion for summary judgment. (Dkt. No. 50.) Plaintiffs Carlos Victorino and Adam Tavitian filed an opposition on May 12, 2017. (Dkt. No. 55.) A reply was filed on May 26, 2017. (Dkt. No. 65.) Based on the reasoning below, the Court DENIES Defendant's motion for summary judgment and denies Defendant's ex parte motion to strike.

## BACKGROUND

Plaintiffs Carlos Victorino ("Victorino") and Adam Tavitian ("Tavitian") (collectively "Defendants") bring this purported class action complaint based on defects in the 2013-2016 Dodge Dart vehicles equipped with a Fiat C635 manual transmission

that cause the vehicles' clutches to fail and stick to the floor. (Dkt. No. 1, Compl. ¶¶ 1, 2.) Defendant FCA US LLC ("Defendant") designs, manufactures, markets, distributes, services, repairs, sells and leases passenger vehicles, including Plaintiffs' vehicles. (Id. ¶ 40.) Plaintiffs assert that the manual transmission in their vehicles contains a design defect that causes the clutch pedal to lose pressure, stick to the floor, and fail to engage/disengage gears. (Id. ¶ 3.) As a result, the vehicles equipped with the defective manual transmission "experience stalling, failure to accelerate, and premature failure of the transmission's components, including, but not limited to, the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel." (Id.)

The hydraulic clutch system in the Dodge Dart vehicles at issue in this case includes the clutch pedal, clutch master cylinder, the clutch slave cylinder, a fluid reservoir, a reservoir hose, interconnecting hydraulic line, and modular clutch assembly, which includes the clutch disk, the pressure plate and the flywheel. (Dkt. No. 84-2, Stapleford Decl. ¶ 6 (UNDER SEAL).[1]) The clutch pedal is connected to the clutch master cylinder via a push-rod. (Id.) When the driver depresses the clutch pedal, a piston inside the clutch master cylinder displaces fluid which is pressurized and transmits force through a tube connecting clutch master cylinder to the clutch slave cylinder. (Id.) In turn, a piston inside the clutch slave cylinder pushes against a release bearing or a "throw-out" bearing that disengages the engine from the transmission. (Id.) "When the driver releases the clutch pedal, the pressure is released, allowing the modular clutch assembly to engage, which should allow the gears to engage smoothly." (Id.)

Victorino purchased a 2014 manual-transmission Dodge Dart on or about March 22, 2014. (Dkt. No. 74, Ps' Response to SUMF, No. 1.) Victorino testified that since the first day he owned the vehicle, it would "stall out" nearly every day. (Dkt. No. 55-2,

---

[11] Plaintiffs' expert, Michael Stapleford, provides a description of how the clutch system functions and is not disputed by Defendant.

Wallace Decl., Ex. H, Victorino Depo. at 89:24-90:3.[2])  In the beginning, he thought it was just him getting used to the new vehicle.  (Id.)  But it kept continuing and after the vehicle would stall, it would not turn back on.  (Id.)  In January 2016, the car became "undriveable."  (Id. at 96:11-15.)  On or about January 10, 2016, Victorino "noticed that the gears were not properly 'catching' when attempting to shift."  (Dkt. No. 74, Ps' Response to SUMF, No. 4.)  "The vehicle was bogging down and failing to accelerate as a result" and "while driving on the freeway to the dealership, he was only able to reach approximately 50 or 60 mph in 4th gear."  (Dkt. No. 55-2, Wallace Decl., Ex. J, Ps' Suppl. Response to Interrog. No. 7 at 41.[3])  On or about January 12, 2016, Victorino took his vehicle to San Diego Chrysler Dodge Jeep Ram for service.  (Dkt. No. 74, Ps' Response to SMUF, No. 5.)  Victorino's vehicle showed 34,351 miles on its odometer when it was serviced on or about January 12, 2016.  (Id., No. 6.)  On January 12, 2016, the service advisor described the two issues raised by Victorino as:

1. CUSTOMER REPORTS VEHICLE HAS A LARGE DELAY WHILE SHIFTING INTO GEAR.
CLUTCH INGAGES (sic) AT THE END OF PEDAL TRAVEL.  CLUTCH WORN OUT.
R&R CLUTCH, SLAVE CYLINDER, AND FLYWHEEL.  ALL OVERHEATED AND WARPED.  ROAD TEST – CLUTCH NORMAL.
2. CUSTOMER REPORTS VEHICLE DOES NOT ACCELERATE WHEN IN GEAR. -----ADVISE
CLUTCH IS SHOT
R&R CLUTCH, SLAVE CYLINDER, AND FLYWHEEL

(Dkt. No. 55-2, Wallace Decl., Ex. I at 35-36.)  The flywheel was replaced at no charge and the remaining repairs totaled $1,165.31.[4]  (Id. at 46.)  Victorino's clutch master

---

[2] Page numbers for deposition transcripts are based on the transcript page numbers.
[3] Page numbers are based on the CM/ECF pagination.
[4] While the invoice indicates a charge of $1,165.31, Plaintiffs present the credit card statement indicating a charge of $1,280.31.  (Dkt. No. 55-2, Wallace Decl., Ex. I at 37.)  Neither party has explained the discrepancy.

cylinder was not replaced or repaired and has never been replaced or repaired.  (Dkt. No. 74, Ps' Response to SUMF, Nos. 10, 14.)  Victorino contacted the Customer Assistance Center seeking assistance stating the "clutch is gone and this is a known issue where once repaired the clutch goes out again."  (Dkt. No. 50-7, D'Aunoy Decl., Ex. D at 2.)  According to a Customer Assistance Inquiry Record ("CAIR"), Victorino was advised that "the clutch is normal wear and tear and that the flywheel is covered but not the clutch kit."  (Id.)

Victorino received FCA's notice of the X62 Extended Warranty Program[5] (also referred to as the January 2016 voluntary customer service action) regarding an issue with the master cylinder within one or two weeks of having his car repaired.  (Dkt. No. 55-2, Wallace Decl., Ex. H, Victorino Depo. at 138:7-10.)  On February 4, 2016, Victorino applied for reimbursement of the clutch repair but his request was denied because "of customer cause. The reason for the repairs was the clutch was worn out."  (Dkt. No. 50-8, D'Aunoy Decl., Ex. E at 3.)  The warranty did not cover Victorino's repairs as "[t]he extended warranty repair was for the hydraulic clutch master cylinder and reservoir hose."  (Id.)

Victorino testified that since the January 2016 repair, his car still stalls about once every other week, but he explained that it would stall for any manual driver that pushed on the clutch too quickly.  (Dkt. No. 55-2, Wallace Decl., Ex. H, Victorino Depo. at 94:22-95:3.)  The clutch pedal also felt soft and sometimes dropped to the floor; in May 2017, the clutch pedal dropped, became stuck half way down, and when he pressed the

---

[5] On January 8, 2016, Service Bulletin 06-001-16 with the Subject, "Clutch Pedal Operation X62 Extended Warranty" ("X62 Extended Warranty") involved the "replacement of the hydraulic clutch master cylinder and reservoir hose" of the two models of vehicles, including the 2013-2014 Dodge Dart to address a "reduction in clutch pedal stroke."  (Dkt. No. 84-2, Wallace Decl, Ex. E (UNDER SEAL).) On August 26, 2016, Service Bulletin 06-001-16 REV. A, "Clutch Pedal Operation X62 Extended Warranty" superseded the prior Service Bulletin to include additional model year of 2013-2015 Dodge Darts.  (Id., Ex. W (UNDER SEAL).)

pedal, it would not come back up.  (Id., Ex. J, Ps' Suppl. Response to Interrog. No. 7 at 43-44.)  Victorino had to pop the clutch pedal up with his feet.  (Id. at 44.)

The basic limited warranty on Victorino's vehicle was for 36 months or 36,000 miles, whichever comes first.  (Dkt. No. 50-5, D'Aunoy Decl., Ex. B at 9.)  However, the basic limited warranty for "clutch discs or modular clutch assembly" was covered for only 12 months or 12,000 miles.  (Id.)  The Powertrain Limited Warranty for Victorino's vehicle stated that "MANUAL TRANSMISSION CLUTCH PARTS ARE NOT COVERED AT ANY TIME."  (Id. at 13.)

Tavitian purchased a 2013 manual-transmission Dodge Dart in late November 2012.  (Dkt. No. 74, Ps' Response to SUMF, No. 20.)  He testified that within six months of purchasing the car, he noted something off about the clutch.  (Dkt. No. 55-2, Wallace Decl., Ex. K at 103:6-14.)  Every once in a while when he put his foot on the clutch, "it would either feel like it was a heavy clutch or when I took my foot off it would take a second to catch up, like hit my foot on the way up . . . ."  (Id.)

The basic limited warranty for Tavitian's vehicle also was for 36 months or 36,000 miles, (Dkt. No. 50-12, D'Aunoy Decl., Ex. I at 8), but "clutch discs or modular clutch assembly" was warranted for 12 months or 12,000 miles.  (Id.)  The Powertrain Limited Warranty for Tavitian's vehicle states that "MANUAL TRANSMISSION CLUTCH PARTS ARE NOT COVERED AT ANY TIME."  (Id. at 12.)

Tavitian's warranty further stated that "disconnecting, tampering with, or altering the odometer will void your warranties, unless your repairing technician follows the legal requirements for repairing or replacing odometers; or attaching any device that disconnects the odometer will also void your warranties."  (Id. at 15.)  On May 25, 2014, Taviatian replaced his original analog instrument panel cluster to a digital one.  (Dkt. No. 55-2, Wallace Decl., Ex. P at 88.)

In July 2014, when he was driving on the start of a steep incline on Interstate 5 called the "Grapevine", Tavitian's clutch stuck to the floor and he was forced to pull it up after each shift for over 50 miles.  (Id., Ex. L at 72.)  Since it was the weekend, he took

5

the vehicle to the dealership, Rydell Chrysler Dodge Jeep Ram, the following Monday on July 7, 2014. (Id.; Dkt. No. 50-13, D'Aunoy Decl., Ex. J at 3-6.) The service advisor described Tavitian's complaints as follows:

> CUSTOMER STATES CLUTCH KEEPS GETTING STUCK
> WILL NOT ALLOW CUSTOMER TO SHIFT BETWEEN GEARS AT TIMES
> CK AND ADVISE VEHICLE HAS MAX CARE COVERAGE
> CLUTCH MASTER CYLINDER LEAKING

(Dkt. No. 55-2, Wallace Decl., Ex. M at 78.)

On July 8, 2014, the same service advisor wrote,

> CUSTOMER STATES CLUTCH KEEPS GETTING STUCK.
> SOP MASTER CYLINDER IS IN
> MASTER CYLINDER LEAKING
> REPLACED CLUTCH MASTER CYLINDER

(Dkt. No. 55-2, Wallace Decl., Ex. HH at 122.) Tavitian paid $298.33 for the repair. (Id.) While at the dealership, it was discovered Tavitian had removed and replaced his vehicle's odometer with a newer odometer that displayed 28,697 fewer miles than the actual mileage on the vehicle. (Dkt. No. 50-13, D'Aunoy Decl., Ex. J at 4.) Around July 7, 2014, Tavitian's vehicle had about 42,075 miles. (Id. at 2.)

Tavitian applied for reimbursement of the $298.33 pursuant to the January 2016 voluntary customer service action which provided an extended warranty for free repairs of the clutch master cylinder. (Dkt. No. 50-14, D'Aunoy Decl., Ex. L at 2.) His request for reimbursement was denied because Defendant put a "complete restriction" on his vehicle where the X62 warranty extension was voided due to changing of the instrument panel cluster from an analog to a digital read out. (Id.) If Tavitian had not altered the instrument panel, his vehicle would have been covered under the extended warranty. (Id.)

Around July 9, 2016, Tavitian's vehicle clutch failed while driving to Palm Springs; it stuck to the floor and he wasn't able to pull it back up. (Dkt. No. 55-2, Wallace Decl., Ex. L at 72-73.) The car was towed to Glendale Dodge Chrysler Jeep

indicating the issue as "clutch pedal stays on the floor and will notcome (sic) back up." (Id. at 73; Dkt. No. 50-16, D'Aunoy Decl., Ex. M at 3-4.) At that time, his odometer showed 33,346 miles but the actual mileage was about 62,043. (Dkt. No. 74, Ps' Response to SUMF, No. 31.) At that visit, a Chrysler legal inspection occurred concerning the clutch failure. (Id., No. 32.) The dealer replaced the clutch master cylinder and the reservoir hose but after bleeding the clutch lines, the clutch pedal was still stuck down. (Dkt. No. 50-16, D'Aunoy Decl., Ex. M at 3-4.) After removing the transmission, it found the throw out bearing coming apart and leaking, and after removing the clutch disc for inspection, it found the clutch worn out and there were signs of overheating. (Id.) He was told the whole clutch system had to be replaced for about $1,700.00. (Dkt. No. 55-2, Wallace Decl., Ex. L at 73; Dkt. No. 50-16, D'Aunoy Decl., Ex. M at 3-4.) Tavitian declined repairs at the dealership. (Dkt. No. 55-2, Wallace Decl., Ex. L at 73.) Instead, he had it repaired in October 2016 with J&E Auto Services, Inc. for $950.70 where a new clutch set and new slave cylinder were installed. (Dkt. No. 55-2, Wallace Decl., Ex. N at 2.)

Tavitian continued to experience symptoms of a stuck clutch pedal and his car was towed to Russell Westbrook Chrysler Dodge Jeep Ram on January 24, 2017. (Dkt. No. 55-2, Wallace Decl., Ex. O.) The technician reconnected the hydraulic clutch master hose that was disconnected and bled the hydraulic clutch system. (Id.)

On August 15, 2014, Defendant released STAR Case S1406000001 concerning "Clutch Pedal Does not Return (Remains on the Floor) After Depressing the Pedal." (Dkt. No. 84-2, Wallace Decl., Ex. T (UNDER SEAL).) It instructs technicians to replace the clutch master cylinder but not the master cylinder reservoir hose. (Id.) The same Star Case S1406000001 was re-released on February 26, 2015 and instructs technicians to replace the clutch master cylinder and the reservoir hose. (Id., Ex. U (UNDER SEAL).) On August 24, 2015, a third version of Star Case S1406000001 was re-released. (Id., Ex. V (UNDER SEAL).)

On January 8, 2016, Service Bulletin 06-001-16 with the Subject, "Clutch Pedal Operation X62 Extended Warranty" involved the "replacement of the hydraulic clutch master cylinder and reservoir hose" of the two models of vehicles, including the 2013-2014 Dodge Dart to address a "reduction in clutch pedal stroke." (Id., Ex. E (UNDER SEAL).) On August 26, 2016, Service Bulletin 06-001-16 REV. A, "Clutch Pedal Operation X62 Extended Warranty" superseded the prior Service Bulletin to include additional model year of 2013-2015 Dodge Darts. (Id., Ex. W (UNDER SEAL).)

According to Plaintiffs, the X62 Extended Warranty was a voluntary service action in response to the case of Hardt v. Chrysler Group LLC, Case No. 8:14cv1375 AJO(VBKx) (C.D. Cal.), a purported class action filed on August 27, 2014 alleging a transmission defect in 2013-2014 Dodge Dart vehicles making almost the same allegations concerning the defect alleged in this case.[6] The parties acknowledge that the X62 Extended Warranty was a voluntary service action "which included reimbursements for past repairs and an extended warranty period for free replacements of the reservoir hose and clutch master cylinder – was implemented by FCA US to address an issue involving seal-swelling from the use of a particular kind of leaching plasticizer in a reservoir hose in the clutch system." (Dkt. No. 50-1 at 6 n.1; see also Dkt. No. 55 at 7, 9.) By implementing the voluntary action, FCA admits that the "Clutch Master Cylinder's reservoir hose leaches plasticizer, which causes it to degrade and release fibers, to contaminate the hydraulic fluid, and to damage the Clutch Master Cylinder's seals. This contamination necessitates replacement of both the master cylinder and the reservoir hose." (Dkt. No. 84-2, Stapleford Decl. ¶ 8 (UNDER SEAL); see also Dkt. No. 65 at 2.)

---

[6] ███████████████████████████████████████ (Dkt. No. 87, D's Response to Ps' SMUF, No. 51) (UNDER SEAL), it has acknowledged, in its motion to dismiss, that during the Hardt case, it announced a voluntary customer service action to address complaints of clutches going "soft" and "sticking to the floor" in certain Dodge Dart vehicles including those owned by Plaintiffs. (Dkt. No. 12-1 at 7.) As a result, the Hardt case settled. (Id.)

In this case, Plaintiffs argue that the voluntary service action, that resulted from the case of <u>Hardt</u> case fixed part of the problem but not all of it. (Dkt. No. 1, Compl. ¶¶ 18, 65.) The <u>Hardt</u> action settled on an individual basis and Defendant implemented the X62 Extended Warranty and related service bulletins purportedly to provide complete relief to all Class Members concerning the "Transmission Defect" (Dkt. No. 55 at 9.) According to Plaintiffs, this did not fix the defect and Plaintiffs filed this action.

<b>Discussion</b>

**A.   Legal Standard on Motion for Summary Judgment**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. <u>Celotex Corp.</u>, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. <u>Id.</u> at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex,</u>

9

477 U.S. at 324.  If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law.  Id. at 325.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party."  Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001).  The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact.  Anderson, 477 U.S. at 255.

**B.    Scope of Defect**

A threshold issue on Defendant's motion for summary judgment is the scope of the transmission defect alleged in the complaint as both parties' arguments are based on their different interpretation of the complaint.  Defendant's argument is premised on a design defect limited to the "clutch master cylinder" which allows "debris" to contaminate "internal and external seals."  (Dkt. No. 50-1 at 11.)  It further argues that since Plaintiffs now rely on a theory of defect not alleged in the complaint, summary judgment should be granted as new issues raised for the first time on summary judgment are subject to dismissal.

On the other hand, Plaintiffs contends that the entire "hydraulic clutch system" is defective as it causes the clutch pedal "to lose pressure, stick to the floor, and fail to engage/disengage gears."  (Dkt. No. 55 at 5.)  Specifically, Plaintiffs allege two design defects.  One is the failure of the X62 Extended Warranty to provide a complete remedy to the contamination caused by the hydraulic fluid in the clutch system.  (Dkt. No. 55 at 20-21.)  They contend that when the hydraulic fluid is contaminated by debris from the degrading reservoir hose, the entire clutch system is compromised and the failure to replace all component parts with swollen seals may cause other component parts to fail.  (Id.)  They claim that the X62 Extended Warranty should have also included replacement of the slave cylinder and a thorough cleaning of the metal tubing to remove any

contamination. (Id.) Second, Plaintiffs contend that there is an independent defect in the slave cylinder due to Defendant's use of a plastic base clipped to an aluminum cylinder that causes the slave cylinder to be less stable, results in unintended lateral movements and causes the piston inside the cylinder to become jammed. (Id.) This causes friction where the clutch parts slip against each other and generates extreme heat that warps the clutch disc, the pressure place and the flywheel. (Id.)

The complaint in this case describes the defect as "a design flaw in the clutch master cylinder wherein the internal and external seals are ineffective in preventing debris from contaminating and prematurely wearing the seals, resulting in the deprivation of hydraulic fluid to the slave cylinder and, thus, causing collateral damage to the vehicle's clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel." (Dkt. No. 1, Compl. ¶ 4.) The defect is further exacerbated by the use of a plastic clutch master cylinder which is susceptible to corrosion by constant exposure to hydraulic fluid. (Id.) The design defect causes "the clutch pedal to lose pressure, stick to the floor, and fail to engage/disengage gears." (Id. ¶ 3.) This results in premature "failure of the transmission component parts, including, but not limited to, the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel (the 'Transmission Defect')." (Id.)

Defendant selectively cites to portions of the complaint and the Court's prior order on its motion to dismiss to argue that Plaintiffs are only asserting an alleged defect involving solely the "clutch master cylinder." On the other hand, Plaintiffs argue broadly that the entire hydraulic clutch system is defective. Neither parties' assessment of the scope of the defect is supported by the complaint. The complaint alleges a design defect originating in the clutch master cylinder caused by contamination that prematurely wears the internal and external seals and causes damage not only to the clutch master cylinder but also causes collateral damage to the vehicle's clutch slave cylinder and related components. (Id.)

16cv1617-GPC(JLB)

In its motion, Defendant moves for summary judgment solely on the design defect in the clutch master cylinder that causes contamination of "internal and external seals." However, in its reply, Defendant concedes that it has never disputed that Plaintiffs' vehicles may have been manufactured with a reservoir hose that could leach plasticizer and cause damage to seals and the clutch master cylinder. (Dkt. No. 65 at 2.) Plaintiffs also claim that the defect alleged in the complaint is the same defect subject to the X62 Extended Warranty but the warranty did not resolve the issue. Since the filing of the complaint, (Dkt. No. 1, Compl. ¶¶ 18, 65), in Plaintiffs' opposition to Defendant's motion to dismiss, (Dkt. No. 15 at 7), and in their opposition to Defendant's motion for summary judgment, (Dkt. No. 55 at 9), Plaintiffs have claimed that their case originates from the <u>Hardt</u> action and that the X62 Extended Warranty, replacing solely the clutch master cylinder and the hose reservoir, did not fix the defect and prompted Plaintiffs to file this lawsuit to seek full relief. Therefore, it appears there is no dispute that the clutch master cylinder defect and contamination of the seals were recognized by the parties in the <u>Hardt</u> action, and the remaining issue is whether the collateral damage to the slave cylinder and related components were caused by the contamination of the hydraulic fluid and should have also been replaced and/or cleaned. Since Defendant and Plaintiffs acknowledge that there was an issue as to the clutch master cylinder due to contamination of the seals that was subject to the X62 Extended Warranty, it is curious why Defendant moves for summary judgment on an undisputed issue. [7]

Defendant also moves for summary judgment on a new design defect not alleged in the complaint. In their opposition, Plaintiffs argue there is a disputed issue of material

---

[7] Defendant has not directly asserted that the design defect concerning the master clutch cylinder and contamination and premature wearing of the seals alleged in the complaint is distinct from the issue of the reservoir hose leaching plasticizer causing damage to the seals that was subject to the X62 Extended Warranty. It claims that the defect in the complaint is "different" from the issue related to the X62 Extended Warranty but does not explain how it is different. Plaintiffs claim that they are alleging the same defect as the <u>Hardt</u> case which subsequently was settled when Defendant issued the X62 Extended Warranty.

fact whether the clutch slave cylinder is defective. 

(Dkt. No. 84-4, Stapleford Decl. ¶¶ 20-35 (UNDER SEAL).)

(Id. ¶ 25 (UNDER SEAL).)  The Court agrees with Defendant that the design defect of the clutch slave cylinder is not alleged in the complaint.

When a plaintiff raises a new theory at the summary judgment and where a defendant will be prejudiced, the Ninth Circuit has held that plaintiff cannot raise a new theory for the first time in opposition to summary judgment.  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292–93 (9th Cir. 2000).  "A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."  Coleman, 232 F.3d at 1292.  In Coleman, Plaintiffs who stated an ADEA claim of disparate treatment in their complaint sought to add a claim of disparate impact for the first time at summary judgment.  Id.  The Court noted that discovery had closed and adding a new theory of liability would prejudice the defendant because a disparate impact would require entirely different defenses.  Id. at 1292.  The court noted that Plaintiffs did not seek leave to amend the complaint until their reply to the summary judgment motion and good cause had not been shown because they did not make it known during discovery that they intended to pursue a disparate impact theory.  Id. at 1294-95.

The Ninth Circuit has also held that "when issues are raised in opposition to a motion to summary judgment that are outside the scope of the complaint, [t]he district court should [] construe[] [the matter raised] as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time."  Desertrain v. City of Los Angeles, 754 F.3d 1147, 1154 (9th Cir. 2014) (district court abused its discretion

16cv1617-GPC(JLB)

by not amending the complaint to conform to the evidence and argument, and not considering the new issue on the merits) (internal quotations and citations omitted); Roberts v. Arizona Bd. of Regents, 661 F.2d 796, 798 n. 1 (9th Cir. 1981) (the addition of new issues during the pendency of a summary judgment motion can be treated as a motion for leave to amend the complaint); see also Schwarzer et al., Federal Procedure Before Trial, at § 14:27.1 ("courts *may* treat a party's raising new claims or defenses on a summary judgment motion as a *motion for leave to amend* the pleadings, which is normally granted *absent prejudice* to the opposing party.")  "Amendments for the purpose of adding new claims are clearly permitted by Rule 15 and may be introduced and considered during the pendency of a motion for summary judgment." William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc., 668 F.2d 1014, 1053 n. 68  (9th Cir. 1981) (citation omitted).  A plaintiff need not request that an opposition be construed as a motion for leave to amend and a plaintiff need not tender a formal amendment. Edwards v. Occidental Chem. Corp., 892 F.2d 1442, 1445 n. 2 (9th Cir. 1990) (citing Simons v. United States, 497 F.2d 1046, 1049 n. 2 (9th Cir. 1974)).

Therefore, following the Ninth Circuit's direction, the Court construes the new alleged defect not asserted in the complaint concerning a defect in the clutch slave cylinder as a request to amend the pleadings under Rule 15 even though Plaintiffs have not sought leave to amend.  See Desertrain, 754 F.3d at 1154.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  This liberal policy is subject to considerations of undue prejudice to the opposing party, bad faith, futility of amendment, and undue delay.  See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). Undue delay by itself is insufficient to justify denying a motion to amend. Id.  "Prejudice to the opposing party is the most important factor" Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31 (1971) (trial court "required" to take potential prejudice into account in deciding Rule 15(a) motion)).  "Absent

prejudice or a strong showing of any of the remaining [ ] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1051 (9th Cir. 2003).

Based on the record in this case, the Court concludes there is no evidence of bad faith. The Court also concludes there has been no undue delay since the case is in the midst of discovery. This is not a typical case where a motion for summary judgment was filed after discovery closed; Defendant filed an early motion for summary judgment on April 17, 2017. The discovery deadline is set on September 22, 2017 with expert discovery concluding on August 18, 2017. (Dkt. No. 26.) Moreover, the deadline for seeking leave to amend the complaint only recently expired on February 10, 2017. (Dkt. No. 26.) Lastly, the Court concludes that Defendant will not suffer any prejudice by granting Plaintiffs leave to amend to add the facts to support a defect concerning the clutch slave cylinder.[8] Defendant has had notice as of May 12, 2017, when Plaintiffs filed their opposition, about the new issue in the clutch slave cylinder. Discovery is still open and will allow Defendant to conduct discovery on this issue. Accordingly, the Court GRANTS Plaintiffs' leave to amend the complaint to add facts to support the alleged new defect in the clutch slave cylinder.

**C.    Motion for Summary Judgment**

Even if Defendant did not concede there was an issue with the reservoir hose that could leach plasticizer and cause damage to seals and the clutch master cylinder, (Dkt. No. 65 at 2), the Court concludes that Plaintiffs have demonstrated a genuine issue of material fact precluding summary judgment.

---

[8] In its motion, when arguing that the Court should grant summary judgment on the "new" alleged defect not raised in the complaint, Defendant did not assert it would be prejudiced but instead focused on the narrow technicality that the defect was not alleged in the complaint. <u>See</u> <u>Grisham v. Philip Morris, Inc.</u>, 670 F. Supp. 2d 1014, 1023 (9th Cir. 2009) ("Defendants appear to seek victory on a narrow technicality" and not that they would suffer any prejudice and Defendants would not be prejudiced as Defendants had been aware of the new issue during discovery).

Defendant moves for summary judgment arguing that Plaintiff has not presented any evidence of a defect in the clutch master cylinder that allows "debris" to contaminate "internal and external seals" but instead the evidence shows that the symptoms are due to "normal wear and tear." It argues that Plaintiffs drove their vehicles for almost two years with 34,351 and 42,075 miles, before experiencing a clutch problem. The service advisor determined that Victorino's problem was due to wear and tear and not due to any design defect. (Dkt. No. 50-8, D'Aunoy Decl., Ex. E at 3.) The dealership did not identify a problem with Victorino's clutch master cylinder which has never been replaced. (Dkt. No. 55-2 Wallace Decl., Ex. I at 35-36; Dkt. No. 74, Ps' Response to SUMF, Nos. 10, 14.) As to Tavitian, his clutch slave cylinder was not replaced until the vehicle had over 62,000 miles, and even after the replacement of the slave cylinder, he still continued to have problems with the clutch. (See Dkt. No. 55-2, Wallace Decl., Ex. O.)

Plaintiffs respond that Defendant's own internal documents reveal that the clutch repair issue was more than "normal wear and tear." ███████████████████ ███████████████████████████████████████████████ █████████████████████████████████████████ Dkt. No. 84-2, Wallace Decl., Ex. S at 129-32 (UNDER SEAL).) ██████████████ ████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████████████ (Dkt. No. 84-2, Wallace Decl., Exs. T at 138, U at 144, V at 146 (UNDER SEAL).) In January 2016, FCA issued X62 Extended Warranty which also required the replacement of the master cylinder and the reservoir hose if a customer complained of due to "a reduction in clutch pedal stroke." (Id., Ex. E at MCPS004026.) Plaintiffs contend that these internal documents reveal that the clutch issue is not "normal wear and tear."

Moreover, Plaintiff's expert, Michael Stapleford, further█████████████ ████████████████████████████████████████████ ██████████████████████████████████████████████

████████████. (Dkt. No. 84-2 Stapleford Decl. ¶ 17 (UNDER SEAL).)  Failure to replace the clutch slave cylinder and to thoroughly clean steel tubing with brake cleaner and be blown out to dry so that no contaminants remain will result in recurring problems even after the master cylinder and reservoir hoses are replaced.  (Id. ¶¶ 15, 17.)

Furthermore, contrary to Defendant's assertion that Plaintiffs did not experience clutch issues until they brought their vehicles into the dealers, Victorino testified that his car would "abnormally stall out" ever since the first day he purchased the vehicle.  (Dkt. No. 55-2, Wallace Decl., Ex. H, Victorino Depo. at 89:24-25.)  He initially thought it was just an adjustment with the new vehicle but it kept stalling out and the car would not turn back on.  (Id. at 89:25-90:3.)  Tavitian purchased his Dodge Dart in November 2012 and his vehicle exhibiting symptoms of a heavy clutch or when he took his foot off it would take a second to catch up and hit his foot on the way up within six months of purchase.  (Dkt. No. 55-2, Wallace Decl., Ex. K, Tavitian Depo. at 103:6-14.)

Therefore, in viewing the evidence in the light most favorable to Plaintiffs, they have presented a genuine issue of material fact that the clutch defect alleged was not due to "normal wear and tear."  The facts demonstrate that some issues exist concerning the components of the hydraulic clutch issue in Plaintiffs' vehicles, besides wear and tear, and the Court cannot conclude that Defendant has met its burden on summary judgment that Plaintiffs have failed to make a showing of a defect or that the defect caused Plaintiffs' clutch pedal issues.

Next, as to the alleged "new" defect, Defendant argues that, in the alternative, if the Court were to address Plaintiffs' new defect theory, summary judgment is still warranted as there is no causal link between Plaintiffs' new purported slave cylinder defect and their claimed injuries because they present no admissible evidence to support their allegations and cannot be based on expert testimony by an expert who has not examined the defective component parts of Plaintiffs' vehicles.

As discussed below, the Court overrules Defendant's objection to Plaintiffs' expert declaration.  The expert declaration presents a detailed description of Stapleford's

opinion concerning a defect in the slave cylinder based on the use of a plastic base causing the slave cylinder to become unstable and causing the problems that Plaintiffs complain. Moreover, Defendant's internal documents show that there was discussion whether the slave cylinder should have been replaced as part of the fix. ███████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████ (Dkt. No. 84-2, Wallace Decl., Ex. Y at 164 (UNDER SEAL).) ███████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████ (Id., Ex. T at 135 (UNDER SEAL).)

████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████ (Id., Ex. AA at 178-81.) ███████████

████████████████████████████████████ (Id. at 178.)

I███████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████ (Id., Ex. CC at 184.)   These internal documents reveal attempts by Defendant to investigate the loss of clutch pedal pressure and that the clutch slave cylinder could be an issue.

Therefore, in viewing all evidence in the light most favorable to the non-moving party, the Court DENIES Defendant's motion for summary judgment on the alleged defect of the slave cylinder.[9]

**D.    Evidentiary Objections**

Defendant objects to the Plaintiffs' expert declaration of Michael Stapleford arguing it should be stricken.  (Dkt. No. 65-3.)  It contends that because Michael Stapleford did not inspect the relevant components parts that were removed in Victorino's and Tavitian's vehicles, his expert opinion lacks a proper foundation.  It does not appear that Victorino has in his possession the slave cylinder, clutch disk, pressure plate, and flywheel removed from his vehicle in January 2016.  (Dkt. No. 50-9, Victorino's Response to RFP No. 29 at 4.)  Likewise, it does not appear that Taviatian retained the slave cylinder and clutch set that J&E removed from his vehicle in October 2016.  (Dkt. No. 50-19, D'Aunoy Decl., Ex. P, Tavitian's Response to RFP No. 29 at 3.) Moreover, Defendant argues that Stapleford does not even address other possible causes of the clutch issue.

"Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993).  Relaxing the usual requirement of firsthand knowledge "is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline."  Id. Federal Rule of Evidence 703 allows an expert to his base his opinions on facts or data that the expert has been made aware of.  Fed. R. Evid. 703.  Moreover, "to the extent firsthand experience  . . . is relevant, it goes . . . to the weight and not the admissibility of the testimony."  Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1244 (10th Cir. 2000).

---

[9] In the event the Court was going to grant summary judgment in favor of Defendant, Plaintiffs also argue that the motion should be denied pursuant to Rule 56(d) since discovery has not yet been completed.  Because the Court DENIES Defendant's motion for summary judgment, the Court need not address Plaintiffs' Rule 56(d) request.

In this case, Defendant does not challenge Stapleton's knowledge or experience but solely the fact he had not examined the defective component parts in Plaintiffs' vehicles and therefore, his declaration lacks foundation. Mr. Stapleford's inability to inspect the alleged defective components of Victorino and Tavitian's vehicles does not preclude him from expressing his expert opinion concerning the cause of the defect. Defendant's citation to Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1222 (9th Cir. 1995) is distinguishable. In Triton, the Ninth Circuit affirmed the grant of summary judgment in favor of the defendant noting that Plaintiff's expert had never examined the allegedly defective circuit breaker, that was purchased 20 years ago, that caused the fire. Id. at 1222. Therefore, the failure to inspect the defective document impaired the expert's ability to present a reliable opinion. Id. Plaintiff had to demonstrate that the circuit breaker was defective when it passed to the hands of the purchaser 20 years ago. Id. The Court noted that there was no other reliable evidence to establish that the circuit breaker was defective; therefore, the foundation of the expert testimony was questionable. Id.

However, in this case, while Stapleford did not examine the alleged defective component parts of Plaintiffs' vehicles, his opinion is based on other evidence and include ███████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████ (Dkt. No. 84-2, Stapleford Decl. ¶ 11 (UNDER SEAL).) He is permitted to rely on these records as well as his knowledge, experience, training and education.

Next, Defendant argues that Stapleford did not address other possible causes of the clutch issue but Defendant has not cited any legal authority that an expert must investigate or rule out other possible causes. Such questioning may be conducted at his

deposition or at trial. Therefore, the Court overrules Defendant's objections to Stapleford's expert declaration.

**E.    Defendant's Ex Parte Motion to Strike**

During the pendency of the motion for summary judgment, on June 7, 2017, Defendant FCA US LLC's ("FCA") filed an ex parte motion to strike Plaintiffs' responses to statement of undisputed material facts and the declaration of Tarek H. Zohdy. (Dkt. No. 70.) Plaintiffs filed an opposition on June 8, 2017. (Dkt. No. 55.)

Defendant seeks the Court strike these two non-confidential documents as both documents were lodged with the Court under a lodged sealed filing that is not subject to public viewing and Plaintiffs did not provide a courtesy copy of these documents until after the motion was fully briefed.

Defendant filed its motion for summary judgment on April 17, 2017. (Dkt. No. 50.) On May 12, 2017, Plaintiffs filed an opposition and publicly filed redacted copies of their summary judgment and supporting documents. Plaintiffs lodged the unredacted versions of these documents with the Court under a lodged sealed filing for approval by the Court. When Plaintiffs served Defendant with the copies of the lodged sealed filings, Plaintiffs' responses to statement of undisputed facts and the declaration of Zohdy were not included.

On May 26, 2017, Defendant filed its reply brief. When the arguments in the reply brief revealed that these two documents were not publically filed and Defendant had not received a copy of them, on June 1, 2017, Plaintiffs contacted Defendant stating that the two documents lodged with the Court under seal had never been served on Defendant. Plaintiffs served Defendant with the documents and attempted to remediate the error with Defendant allowing it to file a response to these document prior to the hearing date.

Instead, Defendant filed the instant ex parte application seeking to strike these two documents as they were never properly filed and served until a week after the motion was fully briefed. In response, Plaintiffs argue that the filing of the two documents under a lodged proposed sealed filing was a clerical error that they have diligently attempted to

address and resolve the issue with Defendant. Plaintiffs argue that the motion should be denied as no prejudice has been shown. Since, Plaintiffs have withdrawn the two documents that were conditionally filed under seal, (Dkt. No. 75) and publically filed them on June 7, 2017. (Dkt. Nos. 73, 74.)

The Court concludes that Defendant has not been prejudiced by the late receipt of the two documents. In fact, in its ex parte application, Defendant addresses the substance of the two documents. Plaintiffs acknowledge and apologize for the inadvertent filing of the two documents as a lodged sealed filing. While inconvenient to Defendant, no prejudice has been shown. Since Defendant responded to the substance of the two documents, additional time to allow Defendant to respond was not necessary. The Court has reviewed and considered Defendant's responses in this Court's order. Accordingly, the Court DENIES Defendant's ex parte motion to strike.

## Conclusion

Based on the reasoning above, the Court DENIES Defendant's motion for summary judgment. The Court directs Plaintiffs to file an amended complaint adding the facts to support the alleged new defect in the slave cylinder within five (5) days of the filed date of this Order. The Court further DENIES Defendant's ex parte motion to strike. The hearing date set for June 16, 2017 shall be **vacated**.

IT IS SO ORDERED.

Dated: June 14, 2017

Hon. Gonzalo P. Curiel
United States District Judge

16cv1617-GPC(JLB)