William M. Low (Bar No. 106669)
wlow@higgslaw.com
Edwin Boniske (Bar No. 265701)
boniske@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, CA 92101-7913
Telephone: (619) 236-1551
Facsimile: (619) 696-1410

Kathy A. Wisniewski (admitted *pro hac vice*)
kwisniewski@thompsoncoburn.com
Stephen A. D'Aunoy (admitted *pro hac vice*)
sdaunoy@thompsoncoburn.com
Thomas L. Azar, Jr. (admitted *pro hac vice*)
tazar@thompsoncoburn.com
Scott H. Morgan (admitted *pro hac vice*)
smorgan@thompsoncoburn.com
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri 63101
Telephone: (314) 552-6000
Facsimile: (314) 552-7000

*Attorneys for Defendant FCA US LLC*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO, *et al.* | Case No. 3:16-cv-01617-GPC-JLB |
| Plaintiffs, | **FCA US LLC'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION** |
| v. | |
| FCA US LLC, | Complaint Filed: June 24, 2016 |
| Defendant. | Trial Date: None Set<br>Hearing Date: July 28, 2017<br>Time: 1:30 p.m.<br>Courtroom: 2D<br>Judge: Hon. Gonzalo P. Curiel |

# INTRODUCTION[1]

In opposing Defendant FCA US LLC's Motion to Deny Certification, the lawyers at the Capstone Law Firm ("Capstone"), counsel for Plaintiffs Carlos Victorino and Adam Tavitian, admit that they violated multiple ethical rules in the course of this case: (1) they made the intentional decision not to convey a settlement offer to Victorino and Tavitian in violation of California Rule of Professional Conduct 3-510;[2] (2) in violation of California Rule of Professional Conduct 3-310, they have continued their representation of Victorino and Tavitian even after concluding that a conflict of interest exists between themselves and these clients;[3] and (3) they concealed their opinion about a conflict of interest from Victorino and Tavitian in violation of California Rule of Professional Conduct 3-500.[4]

FCA US did not bring this motion without due consideration; indeed, it has never before filed a motion like this. FCA US takes the filing of such a motion seriously because it is keenly aware that honest mistakes can be made in litigation. But, here, Capstone is not even claiming to have made a "mistake." To the contrary, Capstone makes clear that they intentionally violated obligations imposed on them under the ethical rules, and they try to convince this Court that they were justified in doing so. This suggests that Capstone will act in this exact same manner throughout

---

[1] Plaintiffs make some rather scathing accusations against FCA US LLC in their opposition to its Motion to Deny Certification, *e.g.*, they accuse FCA US of purposely creating an "unwaivable conflict of interest" for their counsel as some type of tactical maneuver. So the record is clear, **before** FCA US made its offer to Plaintiffs Victorino and Tavitian, it consulted with an ethics expert on whether such an offer was proper and was informed that it was. Unfortunately, Plaintiffs' counsel apparently did not follow this same course. If they had, the current issues may not have developed.

[2] *See* Plaintiffs' Opposition to FCA US LLC's Motion to Deny Certification, Docket No. 103 ("Pl. Opp."), pp. 4-8 (arguing the settlement offer did not have to be conveyed); *id.* at p. 11 (Capstone claiming they "could not have communicated the offer to their clients").

[3] *See* Pl. Opp., p. 9 (claiming the settlement offer made by FCA US to Plaintiffs "created an insurmountable conflict of interest between and among Plaintiffs and their counsel").

[4] *See, generally*, Pl. Opp. (admitting Capstone knew of the settlement offer and perceived conflict of interest, admitting the settlement offer was not conveyed to clients, and offering no evidence that the conflict of interest was conveyed to clients).

this case (and perhaps in others). They are clearly not adequate to represent any class when they believe that failing to meet ethical obligations owed to a client can be justified based on a lawyer's self-serving opinions. Because Plaintiffs cannot satisfy the adequacy requirement of Rule 23(a)(4), FCA US's Motion to Deny Certification should be granted.

## FACTS

The written communications between the parties make it abundantly clear that it was not FCA US who pursued a settlement of the *DeCoteau* case. *See* Supplemental Declaration of Kathy A. Wisniewski ("Supp. Wisniewski Decl."), submitted herewith, ¶ 3. It was Capstone, acting on behalf of the *DeCoteau* plaintiffs, who made a written demand for $10,000 per plaintiff to settle the *DeCoteau* case.[5] *Id.* And, they made this demand before FCA US produced a single document in the *DeCoteau* case or answered a single interrogatory, and before any depositions had been taken.[6] *Id.* at ¶ 5. *Id.* FCA US merely conditionally agreed to accept the unequivocal settlement demand made by Capstone on behalf of the *DeCoteau* plaintiffs for $10,000 per plaintiff, on the condition that Plaintiffs here agree to settle their claims on similar terms.[7] *Id.* at ¶ 3.

---

[5] The failure of Plaintiffs' counsel to tell this Court that the *DeCoteau* plaintiffs had already agreed to accept $10,000 for a settlement creates a misleading scenario and thus violates their duty of candor to this Court. *See* Cal. Rules of Prof. Cond. 5-200 ("In presenting a matter to a tribunal, a member: … [s]hall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law").

[6] The fact that Capstone made a settlement demand for the *DeCoteau* plaintiffs without the benefit of ***any*** discovery makes it obvious that they are not being genuine when they try to convince this Court that their unethical conduct should be excused based on a claimed insufficiency of discovery in this case having impeded their ability to assess potential liability and to determine whether the offer made was "reasonable as to" Victorino and Tavitian. *See* Pl. Opp., pp. 4, 7.

[7] The Declaration of Tarek H. Zohdy submitted by Plaintiffs with their Opposition creates a false picture of the written communications between the parties regarding the *DeCoteau* settlement communications. *See* Docket No. 103-1, PageID 2336-37 at ¶¶ 2-7; *see also* Pl. Opp., pp 2-3. Plaintiffs admit that the written settlement communications between the parties are admissible evidence for purposes of the current motion (Pl. Opp., p. 3 fn.1), yet, inexplicably, they have not submitted the actual written communications. FCA US thus submits them. *See* Supp. Wisniewski Decl. at Exhs. A-D.

The *DeCoteau* plaintiffs made their $10,000 per plaintiff demand before any potential settlement was ever contemplated in this case. *Id.* Thus, after FCA US made its settlement offer to Victorino and Tavitian, all that had to be done to complete a settlement of this case was for: (1) Capstone to inform the *DeCoteau* plaintiffs of the conditional acceptance of their demand by FCA US; and (2) Capstone to inform Plaintiffs here of all terms and conditions of the settlement offer made to them; and (3) Plaintiffs here to express acceptance of the $10,000 offered to them. It is undisputed that the first two of these necessary actions were never carried out by Capstone. As a result, it was impossible for the third to occur.

## ARGUMENT

### A. The Settlement Offer Was An Offer And Had To Be Communicated.

FCA US unequivocally told Capstone that it would give Victorino and Tavitian $10,000 each in exchange for a dismissal of their claims. Capstone does not suggest otherwise. Even though the offer was made in conjunction with agreeing to meet a demand made by Capstone for the plaintiffs in the *DeCoteau* case, there is no law that suggests the offer to Plaintiffs was "invalid." In order to convince this Court that there is authority for this preposterous proposition, Plaintiffs turn to inapplicable state *procedural* statutes, all the while ignoring the Rules setting forth their counsel's ethical obligations. *See* Pl. Opp., pp. 4-8. These arguments should be rejected as the sham that they are.

Plaintiffs argue that the settlement offer made to them was "invalid" because a lawyer's duty to tell clients of settlement offers is limited only to those offers that qualify as an ***offer of judgment*** under California Civil Procedure Code § 998. *Id.* This argument has no good faith basis, whatsoever. As an initial matter, § 998 is a ***procedural*** rule and thus has no application herein. *See, e.g., Day v. Sears Holdings Corp.*, 213 WL 12125738, at *5 (C.D.Cal. 2013) (rejecting argument that § 998 applied to federal court proceeding because "state rules of civil procedure do not control in federal court"). Furthermore, ***the Ninth Circuit has held that under the***

3

***federal rule governing offers of judgment (Rule 68) an offer is a "valid" offer even if it is contingent on acceptance by multiple plaintiffs***. *See Lang v. Yagman & Yagman, P.C.*, 36 F.3d 73, 75 (9th Cir. 1994) ("We see no reason why a defense offer conditioned upon joint acceptance by both plaintiffs should not qualify for Rule 68 treatment."); *McCiver v. Farooqi Food Management, Inc.*, 2010 WL 3895348, at *2 (S.D.Cal. 2010) (recognizing conditional offer as valid under Rule 68).

The plain wording of California Rule of Professional Conduct 3-510 leaves no doubt that every offer of settlement must be conveyed to a client, and there is nothing in that Rule which even implies that compliance with this mandate is excused if a lawyer unilaterally decides that an offer is "invalid." Rule 3-510 expressly compels an attorney to promptly communicate "[a]ll amounts, ***terms, and conditions*** of any written offer of settlement made to the client." The inclusion of the words "terms" and "conditions" confirms that Rule 3-510 applies to all settlement offers, whether conditional or not. If Capstone was confused by this clear wording, they could have turned to The California Bar Court's opinion in *Matter of Yagman*, 1997 WL 817721, at **3-7 (Cal. Bar Ct. Dec. 31, 1997). That Court long ago held that Rule 3-510 requires that ***all*** settlement offers, even if phrased simply as a "recommendation" for a potential settlement, must be promptly communicated to the client:

> "We conclude that a purpose of rule 3-510 is to require attorneys to advise their clients of written proposals or ***recommendations*** of opposing counsel for settlement. Therefore, we hold that, under rule 3-510, an attorney must promptly communicate all written offers of settlement ***regardless of whether they are binding offers under contract law***."

*Id.* at *5 (emphasis added).

The settlement offer made by FCA US to Victorino and Tavitian was clearly "valid," but, in any event, it was not up to Capstone to unilaterally decide that it was not. Even if, as Plaintiffs now contend, the offer was "not a valid settlement offer"

4

**FCA US LLC'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

Plaintiffs have not, and cannot, cite a single case in support of their argument that Rule 3-510 does not apply to settlement offers unilaterally declared to be "invalid" by an attorney involved in the litigation. Plaintiffs' attempts to distinguish the multitude of cases cited by FCA US in its opening brief supporting its contention that Capstone has violated their ethical obligations are, at best, disingenuous. Class certification should be denied for lack of adequacy.

### B. Post-Violation Statements Do Not Absolve Unethical Conduct.

Next, Plaintiffs argue that their counsel did not violate their ethical obligations because "Plaintiffs …would have *rejected* the individual settlement terms as offered by FCA." Pl. Opp., p. 9 (emphasis in original). Of course, no one actually knows, or even can know, what Plaintiffs would have done months ago, at the time the settlement offer was made, if they had been fully informed of the settlement offer and the risks of proceeding with the litigation. Saying "I wouldn't have taken it anyway" after a settlement offer is withdrawn, and without any assessment of the risks and benefits of moving forward, is hardly credible evidence of what past behavior would have been.

In any event, contrary to what Plaintiffs tell this Court, Victorino's deposition testimony ***does not come close*** to supporting their argument that that he would have refused FCA US's offer. *See* Pl. Opp., pp. 8-9. Plaintiffs' representation to this Court that it does offer such support is yet another violation of their duty of candor. *See* Cal. Rules of Prof. Cond. 5-200. All that Victorino said on the deposition pages that Plaintiffs cite is that he still owes "12 or 13" thousand dollars on his vehicle, and he made this comment only in the context of responding to the question of whether he knew what the "present value" of his vehicle is. *See* Pl. Opp. at Exh. B. If, as Plaintiffs contend, Victorino's position is that he would not have accepted the settlement offer one would think he would have attested to that fact by now. He has never done so. And, it is noteworthy that Victorino made clear in his deposition that he thought it was important to know, and that he would want to know, of FCA US's

5
**FCA US LLC'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

settlement offer, and he "would expect" his attorneys to communicate such things to him. *See* Dkt. 58-2, at Ex. B, pp. 166. This testimony supports only the notion that Victorino disagrees with Capstone's intentional decision to conceal the settlement offer from him.

It is true that at deposition, having just heard of FCA US's settlement offer for the first time, Tavitian blurted out that he would not have accepted it. *See* Supp. Wisniewski Decl., at Exh. E, p. 290:23-24. But, as courts have found, Tavitian's after-the-fact stream of consciousness does not act to either condone or negate his counsel's ethical violations. Indeed, in *Kulig v. Midland Funding, LLC*, 2014 WL 6769741 (S.D.N.Y. Nov. 20, 2014), the plaintiff's attorney tried an identical argument, and submitted a declaration stating that his client, after learning about the defendant's settlement offer in her deposition, had ultimately decided not to accept the offer.[8] The *Kulig* court rejected that argument and denied class certification, explaining that the attorney's "deliberate disregard" of his ethical duties "gives the Court little confidence in his ability to represent the class fairly." 2014 WL 6769741 at *4.

Moreover, Plaintiffs ignore the fact that their counsel's duty to communicate settlement offers is not just a duty owed to them, but also "a duty which a lawyer owes to his adversaries and the court as well." *Byes v. Telecheck Recovery Servs., Inc.*, 173 F.R.D. 421, 428 (E.D. La. 1997) (*quoting Deadwyler v. Volkswagen of Am., Inc.*, 134 F.R.D. 128, 140 (W.D.N.C. 1991)); *see also Blowers v. Lerner*, 2016 WL 4575315, at **6-8 (E.D. Va. Aug. 31, 2016) (holding that attorney's failure to communicate settlement offer to his client was a breach of the attorney's duties to his client, the court, and the opposing party, and warranted sanctions under 28 U.S.C. § 1927). Even if Plaintiffs could somehow excuse Capstone's ethical violations (which they cannot), FCA US does not excuse them and the potential severe

---

[8]The *Kulig* court refers to the attorney declaration and its contents, but does not repeat the actual attestations. For clarity, FCA US submits the actual attorney declaration provided to the *Kulig* court. *See* Supp. Wisniewski Decl. at Exh. F.

FCA US LLC'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION

prejudice that these violations arguably caused to it in the form of having to continue to expend business and financial resources to defend against a case which may have ended if Capstone had complied with their ethical duties.

### C. The Perceived Conflict Of Interest Does Not Excuse Plaintiffs' Counsel.

In an incredible argument, Capstone seems to want to excuse its complete failure to comply with California Rule of Professional Conduct 3-510 on the basis that it believed FCA US's settlement offer "created an insurmountable conflict of interest between and among Plaintiffs" and themselves. Pl. Opp., pp. 9-11. While acknowledging that there is an "ethical stricture" "barring attorneys from representing clients with adverse interests," Capstone essentially admits that they did nothing to inform their clients about this perceived conflict of interest. And, they seem to be telling this Court that it was perfectly acceptable to completely ignore the conflict they perceived, even to the extent of violating Rule 3-500 and withholding vital information from their clients about a perceived conflict. *Id.*

It is the work of this Court or the Bar to determine whether the settlement offer created a true conflict of interest for Capstone, not FCA US. But assuming Capstone truly had a belief that a conflict situation had been created, the rules make clear that Capstone's decision to simply ignore the conflict constituted a separate ethical violation. Under Rule 3-310(C) of the California Rules of Professional Conduct, the ***sole*** remedy for such a conflict of interest is to ***fully disclose*** the perceived conflict. In fact, Rule 3-310 expressly contemplates situations where settlement offers are jointly made to more than one of a lawyer's clients, and allows for such settlements to occur upon "the informed written consent of each client." *See* Cal. Rule Prof. Conduct 3-310(D). This leaves no doubt that Capstone had a clear, affirmative duty to tell Victorino and Tavitian about the perceived conflict and not to conceal it from them. If, after revealing such information, they could not obtain a written consent waiving the conflict that they perceived to exist, then their duty was to either withdraw their representation (*Carroll v. Superior Court*, 101 Cal. App. 4th 1423,

7
**FCA US LLC'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

1425 (2002)), or to face potential disqualification (*State Compensation Ins. Fund v. Drobot*, 192 F. Supp. 3d 1080, 1114-16 (C.D. Cal. 2016)). No law suggests they could ignore the perceived conflict and continue representation unabated.

Plaintiffs' argument that FCA US's settlement offer created a "risk of disclosing confidential information from *DeCoteau*" to Victorino and Tavitian is puzzling (and disingenuous). *Id.* at 11. Capstone's duty to Victorino and Tavitian required nothing more than that they: (1) tell them that a settlement offer had been made for $10,000 each and it was contingent on four persons accepting it, two in this case and two in another case where they were counsel; and (2) inform them of the risks and potential benefits of accepting/rejecting the settlement **with respect to their own individual situations**. Capstone could have provided this information to each person separately and asked them for a response. If not all of them accepted, they could have merely informed their clients that all conditions for effectuating the settlement were not met. None of this would have been "confidential" information. Plaintiffs' bald claim that they would have needed information about whether the offer was "reasonable" for the *DeCoteau* plaintiffs, and that they would need "work product" from the *DeCoteau* case related to FCA US's "potential liability" in that case, before they could assess whether the settlement offer made to them was reasonable and acceptable is illogical and desperate. *See* Pl. Opp., p. 11.

Arguments that some perceived "conflict of interest" excuses Capstone from meeting their ethical obligations to promptly advise clients about settlement offers, to reveal perceived conflicts to clients, and to keep clients reasonably informed of significant aspects of their case demonstrates a fundamental misunderstanding of ethical obligations. No class should ever be represented by counsel who so blatantly disregard the duties they owe to their clients. *See, e.g., Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 590 (W.D. Tex. 2002) (attorneys who represented different plaintiffs in multiple class actions against defendant, and concealed the defendant's global settlement offer from their clients, were not adequate class counsel). This Court

**FCA US LLC'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

should grant FCA US's Motion to Deny Certification.

### D. **Capstone Is Unqualified Because They Violated Their Ethical Duties.**

Capstone's argument that their blatant breach of the ethical rules can be overlooked based on their self-serving and unsupported assertions that they have "thoroughly investigated" the claims at issue,[9] have "expended substantial resources" on this case, and have "extensive experience" in other class actions, is contrary to law. Pl. Opp., pp. 12-14. It is indisputable that no class can be certified absent an affirmative finding that class counsel has, and will continue to, discharge their duties in the case at hand in a competent and ethical manner. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 fn.20 (1997); *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 1167 (9th Cir. 2013).

Here, Capstone's admissions prove that they have made intentional decisions in litigating this case which resulted in violations of multiple ethical rules.[10] *See, supra*. It does not matter that Capstone has managed to get appointed class counsel in other cases; this is not proof that they met any of their ethical duties here. In fact, it is not even proof that they met their ethical duties in other cases. They could have committed ethical violations in other cases that neither the courts nor defendants learned of. Indeed, as previously noted, this case is not the first time that Capstone's ability to comply with their loyalty and fiduciary duties to clients and a class have

---

[9] Most of the time spent "investigating" thus far was directed to a defect theory that Plaintiffs have now abandoned. Plaintiffs are basically starting over because the Court ordered them to file an amended complaint directed to a new defect theory not previously pleaded. This, of course, has impeded a "vigorous" prosection.

[10] Capstone may have engaged in further unethical conduct when, after FCA US subpoenaed a critical third-party witness for deposition, they approached that witness about representing him, and then undertook such representation. *See* Supp. Wisniewski Decl., at Exh. G, pp. 13-14, 48. The witness, Emad Salama, is a mechanic who performed repairs on Tavitian's vehicle in 2016, none of which were successful. Not only is it possible that the work done by Salama may have caused some of the problems complained about by Tavitian, Salama is the person who, during the course of this litigation, spoliated critical evidence when he removed and discarded the allegedly defective slave cylinder in Tavitian's vehicle that is critical to his new defect theory. Yet, according to Salama's sworn testimony, ***Capstone has agreed to represent him against any claims made by anybody about the work done on Tavitian's vehicle***. *Id.* at p. 48-49. These facts raise potential conflict of interest and solicitation issues. *See* Cal. Rules of Prof. Cond. 1-400, 3-310.

**FCA US LLC'S REPLY IN SUPPORT OF ITS MOTION TO DENY CLASS CERTIFICATION**

been in question. As Plaintiffs acknowledge, in *Klee v. Nissan N. Am., Inc.*, Case No. CV12-08238 (C.D.Cal.), the Honorable Judge Kozinski objected to a proposed class settlement Capstone asked to have finally approved by the court, calling it "a sham," "bogus," "a betrayal of the class," and "easy money for Plaintiffs' counsel, who have clearly placed their interests above those of the class to whom they owe fiduciary duties." *See Klee*, Case No. CV12-08238, at Docket No. 50. While Plaintiffs are correct that Judge Kozinski subsequently withdrew his objection to the settlement (Pl. Opp., p. 14 fn.5), they neglect to tell this Court that the withdrawal of the objection was due entirely to Capstone having to return to mediation and work to obtain an acceptable settlement for the class. *See Klee*, Case No. CV12-08238 at Docket No. 113 (referring case to mediation to renegotiate settlement). It is, of course, no surprise that Judge Kozinski withdrew his objection after his actions forced Capstone to do what they should have done in the first place, *i.e.,* get the best class settlement possible.

Notably, even now, Capstone does not seem to understand their ethical obligations, as they continue to advocate that their actions in not conveying vital information to their clients are acceptable. *See*, *generally*, Pl. Opp. While Capstone makes no claim that they simply made a mistake, such would not serve to excuse their violations anyway. *See, e.g.*, *Abeles v. State Bar*, 9 Cal. 3d 603, 611, 510 P.2d 719, 724 (1973) (finding attorney's violation of the Rules of Professional Conduct to be willful, explaining that "[i]t is immaterial that petitioner may have been mistaken as to the scope of [the] rule"). Because Capstone is clearly inadequate to represent the class, certification should be denied.

## **CONCLUSION**

For all the reasons set forth, and those in its opening Memorandum, this Court should find the adequacy requisite of Rule 23(a)(4) cannot be satisfied, and grant FCA US LLC's Motion to Deny Class Certification.

Dated: June 30, 2017  **HIGGS FLETCHER & MACK LLP**

By: */s/ Edwin Boniske*
William M. Low (Bar No. 106669)
Edwin Boniske (Bar No. 265701)

**THOMPSON COBURN LLP**
Kathy A. Wisniewski
Stephen A. D'Aunoy
Thomas L. Azar, Jr.
Scott H. Morgan

*Attorneys for FCA US LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on June 30, 2017 on all counsel of record, who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ.L.R. 5.4(d).

By: */s/ Edwin Boniske*
Edwin Boniske (Bar No. 265701)