William M. Low (Bar No. 106669)
wlow@higgslaw.com
Edwin Boniske (Bar No. 265701)
boniske@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, CA 92101-7913
Telephone: (619) 236-1551
Facsimile: (619) 696-1410

Kathy A. Wisniewski (admitted *pro hac vice*)
kwisniewski@thompsoncoburn.com
Stephen A. D'Aunoy (admitted *pro hac vice*)
sdaunoy@thompsoncoburn.com
Thomas L. Azar, Jr. (admitted *pro hac vice*)
tazar@thompsoncoburn.com
Scott H. Morgan (admitted *pro hac vice*)
smorgan@thompsoncoburn.com
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri 63101
Telephone: (314) 552-6000
Facsimile: (314) 552-7000

*Attorneys for Defendant FCA US LLC*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO, *et al.* | Case No. 3:16-cv-01617-GPC-JLB |
| Plaintiffs, | **FCA US LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE** |
| v. | |
| FCA US LLC, | |
| Defendant. | Complaint Filed: June 24, 2016 |
| | Trial Date: None Set |
| | Hearing Date: October 13, 2017 |
| | Time: 1:30 p.m. |
| | Courtroom: 2D |
| | Judge: Hon. Gonzalo P. Curiel |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................1

II.   RELEVANT FACTS ....................................................................................1

    A.   Plaintiffs' Allegations Of Defect..........................................................1

    B.   Tavitian's Spoliation ............................................................................2

    C.   Victorino's Spoliation...........................................................................5

III.   ARGUMENT ...............................................................................................7

    A.   The Governing Law Regarding Spoliation Of Evidence. .....................7

    B.   Plaintiffs' Conduct Constitutes Sanctionable Spoliation. ..................10

        1.   Tavitian's Conduct Satisfies the Elements of Spoliation..........10

        2.   Victorino's Conduct Satisfies the Elements of Spoliation........11

    C.   The Appropriate Sanctions. ................................................................12

        1.   Dismissal Is The Appropriate Sanction For Tavitian...............13

        2.   An Adverse Inference Is An Appropriate Sanction For Victorino...........................................................................................17

        3.   A Finding That Plaintiffs Are Atypical And Not Adequate Representatives Of The Class Is Warranted. ............................19

        4.   Plaintiffs' Counsel Shares Responsibility For Tavitian's Spoliation.................................................................................20

IV.   CONCLUSION ..........................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241 (N.D. Cal. 2012) ....................... 19

*Andalam v. Trizetto Group, Inc.*, 2013 WL 6076082 (D. Colo. Nov. 19, 2013)........................................................................................................................... 7

*Anheuser-Busch, Inc. v. Natural Beverage Distrib.*, 69 F.3d 337 (9th Cir. 1995) ................................................................................................... 16

*Clear-View Techs., Inc. v. Rasnick*, 2015 WL 2251005 (N.D. Cal. May 13, 2015)................................................................................................... 7, 8, 20

*Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015) .......................................................................... 7, 11

*Cottle-Banks v. Cox Commc'ns, Inc.*, 2013 WL 2244333 (S.D. Cal. May 21, 2013)................................................................................................................ 8

*Dillon v. Nissan Motor Co.*, 986 F.2d 263 (8th Cir. 1993)....................................... 9

*Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, 2009 WL 1949124 (N.D. Cal. July 2, 2009) ..................................................................................... 11

*Doyle v. Chrysler Group, LLC*, 2014 WL 7690155 (C.D. Cal. Oct. 9, 2014), *grant of class cert. rev'd*, 663 F. App'x 576 (9th Cir. 2016) ................ 9, 19

*Erlandson v. Ford Motor Co.*, 2009 WL 3672898 (D. Or. Oct. 30, 2009)............ 9, 17

*Falcon v. Philips Elec. N. Am. Corp.*, 304 Fed. App'x 896 (2d Cir. 2008)......................................................................................................................... 19

*Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005) ......................... 9, 17

*Glass v. Beer*, 2007 WL 1456059 (E.D. Cal. May 17, 2007)..................................... 7

*Glover v. BIC Corp.*, 6 F.3d 1318 (9th Cir. 1993)..................................................... 8

*Graff v. Baja Marine Corp.*, 2007 WL 6900792 (N.D. Ga. Dec. 20, 2007)........................................................................................................................ 9

*Henry v. Gill Indus.*, 983 F.2d 943 (9th Cir. 1993)........................................................16

*HM Elecs., Inc. v. R.F. Techs., Inc.*, 2015 WL 4714908 (S.D. Cal. Aug. 7, 2015), *vacated in part*, 171 F. Supp. 3d 1020 (S.D. Cal. 2016) ........................20

*In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, 2015 WL 2453034 (N.D. Ill. May 21, 2015) ............................................20

*In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060 (N.D. Cal. 2006).....................................................................................................7, 11

*Jimenez v. Menzies Aviation Inc.*, 2016 WL 3232793 (N.D. Cal. June 13, 2016)..........................................................................................................7

*Kearney v. Foley & Lardner, LLP*, 590 F.3d 638 (9th Cir. 2009)................................7

*Knickerbocker v. Corinthian Coll.*, 298 F.R.D. 670 (W.D. Wash 2014) ..................20

*Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006).....................................*passim*

*Lewis v. Ryan*, 261 F.R.D. 513 (S.D. Cal. 2009) ............................................8, 11, 17

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ................................15

*Montoya v. Orange Cnty. Sheriff's Dept.*, 2013 WL 6705992 (C.D. Cal. Dec. 18, 2013) .................................................................................*passim*

*Net-Com Servs., Inc. v. Eupen Cable USA, Inc.*, 2013 WL 4007785 (C.D. Cal. Aug. 5, 2013) ..............................................................................13

*Olney v. Job.com*, 2014 WL 5430350 (E.D. Cal. Oct. 24, 2014) ..............8, 11, 14, 18

*Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932 (S.D. Cal. Jan. 7, 2008), *vacated in part*, 2008 WL 638108 (S.D. Cal. Mar. 5, 2008).....................21

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517 (N.D. Cal. 2009)...............................................................................................11

*Rensel v. Fluidmaster*, 2014 WL 6466853 (C.D. Cal. Nov. 12, 2014).....................20

*Silvestri v. Gen. Motors Corp.*, 271 F.3d 583 (4th Cir. 2001) ...............................9, 17

*Starline Windows Inc. v. Quanex Building Prods. Corp.*, 2016 WL 4485568 (S.D. Cal. Aug. 19, 2016) ...............................................................11, 17

**FCA US LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**

*Steinsnyder v. United States*, 2013 WL 1206451 (E.D.N.Y. Feb. 8, 2013), *report rejected and case dismissed for spoliation of evidence by* 2013 WL 1209099 (E.D.N.Y. Mar. 25, 2013) .................................................. 16

*Sternbenz v. Attina*, 205 F. Supp. 2d 65 (E.D.N.Y. 2002) .......................................... 16

*Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997 (D. Ariz. 2011) .............................................................................................................. 16, 20

*Taylor v. Shippers Transp. Express, Inc.*, 2014 WL 12560879 (C.D. Cal. July 7, 2014) ........................................................................................................... 8

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992) ................................................................................................ 7, 8, 17

*United Factory Furniture Corp. v. Alterwitz*, 2012 WL 1155741 (D. Nev. Apr. 6, 2012) ...................................................................................................... 7

*Waters v. Kohl's Dep't Stores, Inc.*, 2015 WL 1519657 (N.D. Cal. Apr. 2, 2015) .......................................................................................................... 9, 11

*Woodard v. Ford Motor Co.*, 2013 WL 3024828 (D. Or. June 13, 2013) .................. 17

*Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, 2014 WL 6851607 (S.D. Cal. June 16, 2014) ............................................................................... *passim*

*Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004) ........................... 20

**Statutes and Constitutional Provisions**

Cal. Bus. & Prof. Code § 9884.10 .............................................................................. 5, 13

**Other Authorities**

https://www.yourmechanic.com/article/how-long-does-a-clutch-last ....................... 14

iv

# I. **INTRODUCTION**

This case involves an egregious and intentional spoliation of highly relevant evidence. ***After filing this litigation***, Plaintiff Adam Tavitian allowed his vehicle's allegedly defective clutch components, including its original slave cylinder, to be destroyed. Based on the evidence, there can be little doubt that Plaintiffs' counsel knew about Tavitian's plan to replace his clutch components, but, inexplicably, failed to press upon him the need to preserve the components as evidence while, in the same time frame, made express demands on Defendant FCA US LLC to do exactly that. Plaintiff Carlos Victorino, although acting perhaps less egregiously, acted in similar fashion. He discarded the slave cylinder and several other clutch components removed from his vehicle just a few months before filing this case at a time when, as he admits, he was already contemplating litigation and within just a week or two of when he actually engaged with his counsel here.

The intentional and egregious spoliation Tavitian committed ***after*** filing this case plainly warrants a dismissal sanction, as well as some form of sanctions against his counsel for acquiescing in his misconduct. While Victorino's own unilateral and voluntary actions are arguably less culpable, they too warrant sanctions because they have deprived FCA US of an opportunity to fully defend itself. Accordingly, FCA US's Motion for Sanctions for Spoliation of Evidence should be granted.

# II. **RELEVANT FACTS**

## A. **Plaintiffs' Allegations Of Defect.**

In their original Complaint, filed on June 24, 2016, Plaintiffs pleaded that their Dodge Dart vehicles, and others allegedly like them, had a clutch system "defect" which involved "a design flaw in the clutch master cylinder."[1] *See* Docket No. 1, ¶¶ 3-4. Approximately one year later, on June 19, 2017, Plaintiffs filed their First

---

[1]FCA US believed that Plaintiffs' defect allegations were vague from the beginning of this case, and challenged the adequacy of them on a motion to dismiss, but the Court sided with Plaintiffs and ruled that the defect was adequately defined ***as one in the clutch master cylinder***. *See* Docket No. 18, pp. 6-8.

1

Amended Class Action Complaint.  *See* Docket No. 104.  In the First Amended Complaint Plaintiffs changed their defect allegations to include both the clutch master cylinder and the slave cylinder component as having defects.  *Id.* at ¶ 13.

**B.    Tavitian's Spoliation.**

At the time this lawsuit was first filed, Tavitian based his claims on a single repair performed on his Dodge Dart vehicle in 2014, which related to the clutch master cylinder.  *See* Docket No. 1, ¶ 36.  The repair cost Tavitian $298.33.  *Id.* FCA US had declined to provide reimbursement for this repair after discovering that Tavitian had tampered with his odometer.  Exhibit A,[2] pp. 85-86, 115, 228, 287.

On July 11, 2016 – less than one month *after* this lawsuit was filed, and before FCA US had filed any responsive pleading, and before discovery had even started – FCA US received an email which stated, in full, as follows:

> "This weekend, our client Adam Tavitian's clutch failed again.  His vehicle was towed to Glendale Chrysler Jeep Dodge Ram (900 S Brand Blvd, Glendale, CA 91204, (800) 741-4637).  The vehicle is currently at the dealership.  If you wish to attend the repair or inspect the vehicle while it is at Glendale Chrysler Jeep Dodge Ram, please give us notice ASAP.  To the extent any parts are returned to FCA, please take notice that we intend to inspect them and ask that you preserve them.  To the extent you wish to inspect the vehicle but are unavailable for any period of time, we request that FCA provides Mr. Tavitian with a rental vehicle."

Exhibit B.

---

[2] Citations to Exhibits herein refer to those attached to the Declaration of Scott H. Morgan ("Morgan Decl."), filed simultaneously herewith.

FCA US thereafter attempted to inspect the Tavitian vehicle, but during the inspection an issue arose which resulted in a discussion with his counsel, which was confirmed in an email stating as follows:

"This is to confirm our telephone conversation of today's date. As you are aware, our expert is in the midst of his inspection of the Tavitian vehicle. He reports that the vehicle has a host of problems, only one of which is the clutch master cylinder. However, our expert cannot complete his inspection without the clutch master cylinder being repaired to the point of being operational. Thus, FCA US is willing to pay for the clutch master cylinder repair for the sole purpose of completing its inspection.

In our call, we agreed that FCA US's payment for the clutch master cylinder repair would not affect any argument that Plaintiff has about "defect." We also agreed that FCA US payment of the clutch master cylinder repair will not be used as evidence of FCA US waiving its right to contest that the vehicle is covered by any warranty. In other words, the parties agree that the payment for the clutch master cylinder repair at this point is irrelevant evidence going forward.

If anything above is incorrect, please advise immediately. Thank you for your cooperation in this matter."

Exhibit C.[3]

---

[3]At the time of this limited inspection, because of the single repair underlying Tavitian's claims and because of what was actually pleaded in the Complaint, FCA US had no notice that any component was at issue other than the clutch master cylinder and thus its inspection – conducted without the benefit of any discovery – was focused on that component. Morgan Decl., ¶ 9.

3

**FCA US LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**

Tavitian (through his counsel) responded to this email as follows:

"We forgot to add during the call that we would request that FCA preserve any removed or replaced parts for purposes of discovery and inspection.

Thanks"

*Id.*

After the clutch master cylinder and reservoir hose were replaced, Tavitian's clutch pedal remained inoperable suggesting that the problem was not in the clutch master cylinder component, and thus FCA US concluded its inspection.  Morgan Decl., ¶ 9.  Further investigation by the dealership's technicians revealed that the problem was actually in a throw-out bearing, and that the clutch disc was "worn out" and showed "signs of overheating."  Exhibit D.  Thereafter, based on records obtained from the dealership via subpoena, FCA US learned that Tavitian declined to have further repairs performed at the dealership, and took possession of his vehicle without it being repaired.  *Id.*

Subsequently, FCA US learned, during the normal course of discovery, that after it inspected Tavitian's vehicle (in October 2016), Tavitian took his vehicle to J & E Auto Services, Inc., and requested that it do the repair for the issues identified by the dealership at the time of FCA US's inspection.  Exhibit A, pp. 250, 254.  Unlike the notice FCA US received when he sought to have the repairs performed at the dealership, FCA US was never informed of Tavitian's intent to have repairs performed on his vehicle at J & E, and was not provided with any information about any planned removal of additional components from Tavitian's vehicle.  Morgan Decl., ¶ 10.  The information obtained during discovery revealed that J & E made a series of unsuccessful attempts to fix Tavitian's vehicle.  Exhibit E, pp. 21-30, 41-47.  These repairs included:  (1) removing and replacing multiple components of the clutch system including the slave cylinder, clutch master cylinder, throw-out bearing, clutch tube clip and union, and flex hose; (2) installing a new clutch set; and (3)

4

repeatedly bleeding the clutch.  *Id.*; *see also* Exhibit F (invoices for repairs and parts).  When it removed and replaced these parts – including the slave cylinder – J & E followed its normal practice of disposing of them after "a few days" when, as here, a customer has given no instructions to the contrary.[4]  Exhibit E, pp. 40-41.

Tavitian admits that he never asked J &E to preserve any of the multiple clutch components removed from his vehicle, and he cannot explain why he failed to do so:

> Q:   Did you ask Emad [Salama] at J & E Auto Services to keep any
>      of the parts he pulled out of your vehicle?
>
> A:   No.  I don't think so.  ***
>
> Q:   Given that you had filed a lawsuit about issues with your
>      clutch, why didn't any of the clutch parts get kept, to your
>      knowledge?
>
> A:   I don't know.

Exhibit A, pp. 264-65; *see also id.* at pp. 43-44; Exhibit E, pp. 40-41.

Tavitian's attorneys,[5] who knew about the planned repairs in advance, also failed to take any action to preserve the clutch components removed from Tavitian's vehicle.  Exhibit E, p. 41 ("Q:  Did any of [Tavitian's] attorneys contact you and ask you to save those parts?  A:  No.").  Ultimately, ***every single clutch component*** that J & E removed from Tavitian's vehicle, including its original slave cylinder, ***was simply tossed "in the junk pile" and discarded***.  *Id.* at pp. 40-47; *see also* Exhibit A, pp. 248, 264-65.

## C.   <u>Victorino's Spoliation.</u>

Victorino had a single repair to his vehicle's clutch, which was in January 2016.  Exhibit G, pp. 36-37.  At that time, he took his vehicle to San Diego

---

[4]California law requires that automotive repair shops retain parts removed from a customer's vehicle only if such a request is made "at the time the work order is taken."  Cal. Bus. & Prof. Code § 9884.10.

[5]Plaintiffs' counsel became J &E's counsel during the course of this case, and have agreed to represent it regarding any claim "related to Mr. Tavitian's vehicle." Exhibit E, pp. 48-49.

Chrysler Dodge Jeep Ram for service because it was "undriveable." *Id.* at pp. 96, 119-20.  After Victorino was informed by the dealership that it could not diagnose the issue without dropping the transmission, at a cost of $1,000, he decided he had been "wronged." *Id.* at pp. 125-26.  He began doing research by visiting "a slew of different websites" where he "started seeing all of these issues about previous lawsuits with the clutch and … people talking about similar issues that I was experiencing." *Id.*; *see also id.* at p. 131.  Victorino also visited a "federal site for wrongs and complaints about cars" that suggested, at least to him, that the problems he was having with his clutch were "a known issue" and "something that came from the factory." *Id.* at pp. 126-27.  At least one of the websites Victorino visited referred to, or was owned by, his counsel in this case (Capstone). *Id.* at p. 176.

Victorino testified that by the time the dealership called him again his thought was that "***this seems to be a defect.***" *Id.* at p. 127.  He told the dealership that he did not want "a defective part" to be replaced "with the same defective part," and instructed the dealership:  "don't even touch my car … I'm going to send a tow truck." *Id.* at pp. 127, 130.  Later, after a service manager called and offered him a discount on labor and parts, Victorino told the dealership to repair his vehicle. *Id.* at 130.  He has explained his reasons for doing so:

> "I figured at that point it would be better to fix it with them because then, if it does go bad again, which at that point I just made the assumption that it [would], at least I could say I got it fixed at the dealership.  And they can't use the fact that I fixed it somewhere else as a cop out."

*Id.*

Victorino never asked the dealership to retain any of the components removed from this vehicle, and he cannot produce them now. *Id.* at pp. 36-37, 141. Yet, it was only a week or two later that he contacted his counsel of record about filing a lawsuit on his behalf. *Id.* at pp. 177-78.

6

## III. **ARGUMENT**

**A.    The Governing Law Regarding Spoliation Of Evidence.**

"Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (citation omitted). "The court has inherent power to sanction parties or their attorneys for improper conduct … which includes spoliation of evidence." *Glass v. Beer*, 2007 WL 1456059, at *2 (E.D. Cal. May 17, 2007); *see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).

Spoliation sanctions are appropriate where: (1) the person in control of the evidence had a duty to preserve it; (2) the loss/destruction of the evidence was done with a "culpable state of mind"; and (3) the lost evidence was "relevant" to a claim or defense at issue. *See, e.g.*, *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 2251005, at *7 (N.D. Cal. May 13, 2015); *Montoya v. Orange Cnty. Sheriff's Dept.*, 2013 WL 6705992, at *7 (C.D. Cal. Dec. 18, 2013). These elements each have their own standard.

*First*, every party has a duty to preserve relevant evidence. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). This duty "arises as soon as a potential claim is identified." *Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, 2014 WL 6851607, at *9 (S.D. Cal. June 16, 2014) (citation omitted); *see also In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (same); *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015) (same). Once the duty to preserve evidence is triggered, it continues throughout the litigation. *See, e.g.*, *Jimenez v. Menzies Aviation Inc.*, 2016 WL 3232793, at *4 (N.D. Cal. June 13, 2016); *Andalam v. Trizetto Group, Inc.*, 2013 WL 6076082, at *2 (D. Colo. Nov. 19, 2013); *United Factory Furniture Corp. v. Alterwitz*, 2012 WL 1155741, at *2 (D. Nev. Apr. 6, 2012).

*Second*, a "culpable state of mind," includes negligence.  *See, e.g.*, *Cottle-Banks v. Cox Commc'ns, Inc.*, 2013 WL 2244333, at *14 (S.D. Cal. May 21, 2013); *Lewis v. Ryan*, 261 F.R.D. 513, 522 (S.D. Cal. 2009); *see also Unigard Sec. Ins. Co.*, 982 F.2d at 368-69 (spoliation sanctions were warranted where a party negligently allowed evidence to be destroyed, even though disposal occurred when the party believed it had no legal claim).  Thus, where a party loses evidence or fails to protect it from destruction after having "some notice" that it is potentially relevant to pending or contemplated litigation, the "culpable state of mind" element is satisfied. *Leon*, 464 F.3d at 959; *see also Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("Surely a finding of bad faith will suffice, but so will simple notice of 'potential relevance to the litigation.'"); *Zest IP Holdings, LLC*, 2014 WL 6851607, at *8 ("Simple notice of 'potential relevance to the litigation' suffices to support sanctions for destruction or spoliation of evidence.").

It is well established that no affirmative or intentional act of destruction by the spoliator need be shown; simply failing to take appropriate measures to protect evidence from destruction or loss constitutes spoliation and is sanctionable.  *See, e.g.*, *Olney v. Job.com*, 2014 WL 5430350, at *14 (E.D. Cal. Oct. 24, 2014) (failure of plaintiff or his counsel to "mirror image his hard drive or ascertain whether data on the computer was being destroyed" warranted spoliation sanctions); *Taylor v. Shippers Transp. Express, Inc.*, 2014 WL 12560879, at *9 (C.D. Cal. July 7, 2014) (defendant's failure to prevent employees from deleting potentially relevant text messages warranted spoliation sanctions); *Lewis*, 261 F.R.D. at 522 ("Because Defendants were on notice that the documents were relevant and have shown no effort to protect the documents from destruction, the records were destroyed with a culpable state of mind").

*Third*, evidence is deemed to be relevant when "it would have clarified a fact at issue in the trial and otherwise would naturally have been introduced into evidence." *Clear-View Techs.*, 2015 WL 2251005, at *10; *Olney*, 2014 WL

5430350, at *22.  Because the precise relevance of destroyed evidence often "cannot be clearly ascertained because [it] no longer exist[s]," spoliation sanctions are warranted wherever the destroyed evidence is generally of the type that one would expect to be used in the litigation.  *Leon*, 464 F.3d at 959; *see also Waters v. Kohl's Dep't Stores, Inc.*, 2015 WL 1519657, at *4 (N.D. Cal. Apr. 2, 2015) (relevancy, in a spoliation analysis, "is a very broad standard").

Notably, in a vehicle-defect case, courts universally agree that the plaintiff's own vehicle, and any allegedly defective components, are ***"central to his case," "critically important,"*** and ***"the most crucial and reliable evidence available to the parties."*** *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945-47 (11th Cir. 2005) (emphasis added); *see also Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 593-94 (4th Cir. 2001) (vehicle itself was not only "the central piece of evidence in [the] case," but "the only evidence from which [defendant] could develop its defenses adequately"); *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993) ("plaintiffs' expert and plaintiffs' attorney knew or should have known that the car was an important piece of evidence and should have been preserved in its entirety"); *Doyle v. Chrysler Group, LLC*, 2014 WL 7690155, at **2-3 (C.D. Cal. Oct. 9, 2014), *grant of class cert. rev'd*, 663 F. App'x 576 (9th Cir. 2016) ("When one is … making a claim that a vehicle is defective, it takes no special training or particular sophistication to recognize the potential relevance of that vehicle as evidence"); *Erlandson v. Ford Motor Co.*, 2009 WL 3672898, at *4 (D. Or. Oct. 30, 2009) (rejecting argument that allegedly defective vehicle disposed of by plaintiff was "not relevant"); *Graff v. Baja Marine Corp.*, 2007 WL 6900792, at *4 (N.D. Ga. Dec. 20, 2007) ("The court will not tolerate litigants tampering with the very component they contend is defective.").

**B.**     **Plaintiffs' Conduct Constitutes Sanctionable Spoliation.**

   **1.**     ***Tavitian's Conduct Satisfies the Elements of Spoliation.***

There can be no earnest dispute that ***after*** he filed his lawsuit based on alleged defects in the clutch system in his vehicle, Tavitian had a duty to preserve his vehicle and the clutch components in it.  Likewise, Tavitian cannot genuinely dispute that he had "some notice" that the clutch components in his vehicle were "potentially relevant evidence" when he had already filed a complaint alleging that the clutch system had a defect.  And, because Tavitian knew of their relevance, his failure to take any steps to preserve them is, in and of itself, sufficient to satisfy the requisite "culpable state of mind."  *See, e.g.*, *Zest IP Holdings, LLC*, 2014 WL 6851607, at *8.

Tavitian could not possibly have believed that clutch components removed from his vehicle – including the now-at-issue original slave cylinder – were "irrelevant" to his claims when he was making the claim that the clutch system had a defect which affected multiple components within that system.  Any reasonable person would know that these parts were crucial evidence from the very beginning of a case alleging that a vehicle has a clutch system defect.  *See* Complaint, Docket No. 1, ¶¶ 3-4.  And, the fact that Tavitian subsequently made clear in his First Amended Complaint that "the Clutch Slave Cylinder ***itself*** is defectively designed" makes the relevance of the evidence undebatable.  *See, e.g.*, Docket No. 55-3, ¶ 10 (emphasis in original); *see also id.* at ¶ 44; Docket No. 104, ¶ 13.

Tavitian's duty and sanctionable conduct is crystal clear in light of two particular facts:  (1) he reviewed the complaint "around when we filed this case," and thus had actual knowledge of what his claims were about (Exhibit A, p. 153); and (2) through his attorneys, he repeatedly made a demand on FCA US, ***prior*** to his own spoliation, that it preserve as evidence all "removed or replaced" components.  *See* Exhibit C.  It does not matter that it was J & E, rather than Tavitian personally, that destroyed the clutch components.  It was Tavitian who had the duty to preserve the

evidence and he admits that he did nothing to even attempt "to protect [them] from destruction."  *Lewis*, 261 F.R.D. at 522; *see also* Exhibit A, pp. 248, 264-65.

Accordingly, Tavitian's duty to preserve, his "culpable state of mind," and the relevance of the destroyed evidence have all been established.

### 2. *Victorino's Conduct Satisfies the Elements of Spoliation.*

Victorino's own admissions establish that he allowed highly relevant evidence to be lost and destroyed after he had already formed the belief that he had been "wronged" and that the clutch system in his vehicle had a "defect."  Exhibit G, pp. 125-27.  The fact that Victorino's destruction of evidence occurred a few months prior to the filing of this lawsuit does not change the spoliation analysis.  *See, e.g.*, *Starline Windows Inc. v. Quanex Building Prods. Corp.*, 2016 WL 4485568, at **10-11 (S.D. Cal. Aug. 19, 2016); *Compass Bank*, 104 F. Supp. 3d at 1055-56; *Waters*, 2015 WL 1519657, at **2-3; *Olney*, 2014 WL 5430350, at *10; *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, 2009 WL 1949124, at **5-6 (N.D. Cal. July 2, 2009); *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 523-24 (N.D. Cal. 2009).

In fact, a future lawsuit need not be "imminent" for a duty to preserve evidence to arise.  *In re Napster, Inc.*, 462 F. Supp. 2d at 1068.  Instead, courts throughout the Ninth Circuit agree that "[a]s soon as a potential claim is identified," or a party "should know" that evidence "may be relevant to future litigation," any destruction of evidence is sanctionable.  *Realnetworks, Inc.*, 264 F.R.D. at 523-24; *see also Zest IP Holdings, LLC*, 2014 WL 6851607, at *9 ("[a] litigant's duty to preserve potentially relevant evidence arises 'as soon as a potential claim is identified'") (citation omitted); *Montoya*, 2013 WL 6705992, at *7 (potential evidence must be preserved from "the moment that litigation is reasonably anticipated"); *Dong Ah Tire & Rubber Co.*, 2009 WL 1949124, at *5 ("once a potential dispute matures to the point that litigation may well follow, relevant evidence should be preserved").

Victorino admits that **before** he directed a dealership to replace the slave cylinder and other clutch components, and before his clutch components were disposed of, he already: "felt wronged"; visited a "slew of websites" about "issues" and "previous lawsuits with the clutch"; visited a website set up by his current attorneys which had information about a lawsuit involving the clutches; believed that the complaints and lawsuits he saw on the internet involved the same issues he was experiencing; and concluded that the problem with his clutch was "a known issue," "something that came from the factory," and resulted from a "defect." Exhibit G, pp. 125-27, 130-31, 176. Even beyond this, he formed the assumption that the dealership would simply replace one "defective part … with the same defective part" when it removed his clutch components. *Id.* at pp. 127, 130.

It cannot earnestly be disputed that a consumer is on notice of a potential legal claim when he believes, as Victorino admits he did here, that his vehicle has a "defective part" and is already the subject of one lawsuit. Particularly when, as here, within just a week or two of the repair and evidence destruction, he contacted a plaintiffs' law firm about the supposed "defect." *Id.* at 177-78.

Believing he had been "wronged" due to his vehicle being equipped with what he believed to be a "defective" component, while, at the same time, failing to take any steps at all to preserve the evidence that would be absolutely necessary to prove or disprove that belief, Victorino clearly acted with a "culpable state of mind" when he did nothing to preserve the evidence which is highly relevant to his claims. Thus, Victorino's duty to preserve, his "culpable state of mind," and the relevance of the destroyed evidence have all been established.

**C.** **The Appropriate Sanctions.**

As demonstrated, spoliation has occurred. This Court has broad discretion in fashioning an appropriate sanction, including financial sanctions, an adverse jury instruction, or outright dismissal of a spoliating party's claims. *See, e.g.*, *Montoya*, 2013 WL 6705992 at *4. In determining the type and severity of the sanction to be

imposed, this Court should consider: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Net-Com Servs., Inc. v. Eupen Cable USA, Inc.*, 2013 WL 4007785, at *3 (C.D. Cal. Aug. 5, 2013).

### 1.   *Dismissal Is The Appropriate Sanction For Tavitian.*

The factors relevant to the type of spoliation sanction to be imposed weigh overwhelmingly in favor of dismissing Tavitian's individual claims.

*First*, the fault here could not be clearer. Tavitian destroyed evidence ***after*** he filed a nationwide class action lawsuit seeking potentially millions of dollars in damages. At the time of the destruction, he had the benefit of counsel who could explain (and should have explained) the importance of preserving his vehicle and its clutch components as evidence. Indeed, his attorneys had already recognized the need to preserve such evidence, placing demands on FCA US to do exactly that. *See* Exhibit C.

Tavitian's spoliation is egregious because the effort needed to comply with his preservation duty could not have been any easier: he simply needed to ask J & E to keep all clutch parts removed from his vehicle, and it would have been legally compelled to do so. *See* Cal. Bus. & Prof. Code § 9884.10. Tavitian cannot explain why he failed to take this elementary step, and, as a result, the only conclusion that can be reached is that he made a conscious and voluntary decision to allow evidence to be destroyed. *See* Exhibit A, p. 265.

*Second*, the prejudice here is profound. Prejudice results when the spoliating party's actions impair the other party's ability to go to trial, threaten to interfere with the rightful decision of the case, or force the non-spoliating party "to rely on incomplete or spotty evidence" at trial. *Leon*, 464 F.3d at 959. Once spoliation is shown, "the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation because that party is in a much better position

13

to show what was destroyed and should not be able to benefit from its wrongdoing." *Montoya*, 2013 WL 6705992, at *11 (citation omitted); *see also Olney*, 2014 WL 5430350, at *22 (same).

Here, there can be no doubt that FCA US has been subjected to significant prejudice as a result of Tavitian's blatant spoliation of evidence, particularly with respect to the destruction of his vehicle's original slave cylinder component which Tavitian did not identify as being "defective" when he filed his claims. Because Tavitian destroyed the clutch system components removed from his vehicle with no notice to FCA US, and at a time when even he had not fully investigated his claims and the bases for them, FCA US was deprived of any opportunity to fully test and inspect the components subsequently identified as being at issue in this case. This is particularly troublesome in a case like this involving vehicle components (*e.g.*, clutch components in a manual transmission vehicle) that are known to wear out and fail for a variety of different reasons that have nothing to do with any "defect," and their expected useful life is known to be dependent on many factors.[6]

The prejudice to FCA US is evident, for example, in the fact that FCA US cannot now prove with the most direct evidence that the original slave cylinder installed in Tavitian's vehicle did not have a defect, that a defect did not cause the need for a repair, and/or that its replacement was not even necessary. Tavitian just recently changed the theory of his case to allege that his vehicle has some sort of "contamination" in its slave cylinder and other clutch components, and that its internal piston became "jammed." *See* Docket No. 104, ¶¶ 10, 13. How can FCA US fully defend itself against such allegations when Tavitian discarded the slave cylinder before even telling FCA US that he intended to make such allegations? To rebut a claim that the slave cylinder was "contaminated," the logical starting point

---

[6]*See, e.g.,* https://www.yourmechanic.com/article/how-long-does-a-clutch-last ("If you follow these few simple suggestions, you can reasonably expect at least 50,000 miles out of your clutch.").

14

would be to test that component to show no such contamination exists.  Likewise, to rebut a claim that the slave cylinder failed because its piston "jammed," FCA US's defense starts, and succeeds, by offering the slave cylinder itself as evidence that no such "jamming" occurred.  Tavitian's misconduct makes all this impossible.

By spoliating the slave cylinder and other clutch components, Tavitian's actions not only impact FCA US's ability to defend against the ultimate liability question in this case, but its ability to oppose class certification as well.  Examining the slave cylinder and other components after removal is a fundamental and critical step in showing that something other than a defect caused Tavitian's repairs.  Testing these components could have (indeed, likely would have) shown that Tavitian's claims are subject to unique defenses (*e.g.*, accident damage, misuse/abuse of the vehicle, ignoring early warning signs, or failing to perform routine maintenance). That such evidence could impact liability, as well as the typicality and predominance requisites of class certification, cannot earnestly be disputed.  *See, e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 603-04 (3d Cir. 2012) (in case alleging defect in tires resulting in flats, district court erred with respect to finding of predominance because plaintiffs' argument that damages could be measured by cost of replacement tires ignored fact that tires can "go flat" for reasons completely unrelated to a defect, and thus factual causation issues were "pivotal").

The narrow and limited inspection that FCA US performed on Tavitian's vehicle did nothing to mitigate this prejudice.  At the time that FCA US was allowed to inspect the vehicle, discovery had not even begun, and, as this Court later found, Plaintiff had not pleaded facts showing, or otherwise put FCA US on notice that, he intended to claim that the slave cylinder component was defective, let alone that it was "contaminated" or "jammed."  *See* Docket No. 91.  An inspection completed long before Tavitian revealed the nature and extent of the defect he intended to base his claims on did not provide FCA US with any meaningful opportunity to develop the evidence, and certainly did not give Tavitian a license to destroy evidence.  *See,*

15

*e.g.*, *Steinsnyder v. United States*, 2013 WL 1206451, at *15 (E.D.N.Y. Feb. 8, 2013) (all litigants are entitled to a "meaningful opportunity to inspect the evidence"), *report rejected and case dismissed for spoliation of evidence by* 2013 WL 1209099, at *8-9 (E.D.N.Y. Mar. 25, 2013); *Sternbenz v. Attina*, 205 F. Supp. 2d 65, 73 (E.D.N.Y. 2002) (defendant entitled to a "meaningful opportunity to inspect the vehicle").

It cannot be earnestly disputed that the facts here support a sanction of dismissal of Tavitian's claims.  Dismissal as a sanction is warranted when the conduct is "due to willfulness, fault, or bad faith."  *Anheuser-Busch, Inc. v. Natural Beverage Distrib.*, 69 F.3d 337, 348 (9th Cir. 1995).  As the Ninth Circuit has explained, "[a] party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the [evidence was] ***potentially*** relevant to the litigation before [it was] destroyed."  *Leon*, 464 F.3d at 959 (emphasis in original); *see also Henry v. Gill Indus.*, 983 F.2d 943, 948 (9th Cir. 1993) ("disobedient conduct [within] the control of the litigant is all that is required to demonstrate willfulness, bad faith or fault").  Tavitian clearly had such notice.

Notably, the specific factors enunciated by the Ninth Circuit for imposing dismissal as a spoliation sanction are all met here:  "(1) the public's interest in expeditious resolution of the litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."  *Leon*, 464 F.3d at 958 (citation omitted); *see also Anheuser-Busch*, 69 F.3d at 348.

Where there is a finding that spoliation has occurred the first two factors – expeditious resolution and management of docket – are deemed to weigh in favor of dismissal.  *See, e.g.*, *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 997, 1008-09 (D. Ariz. 2011).  And, the prejudice to FCA US resulting from Tavitian's spoliation is particularly acute in this case, given that Tavitian destroyed unique physical evidence in the form of the very clutch components he is suing over and

16

claims to be defective.  *See Starline Windows Inc.*, 2016 WL 4485568, at **10-11 ("Physical evidence is different.  Its destruction often means its value as evidence is lost forever").  While the policy favoring disposition of cases on the merits would always weigh in favor of a sanction other than outright dismissal, courts agree that nothing short of dismissal can remedy the prejudice a defendant suffers when the very evidence that would disprove a plaintiff's theory of his case has been spoliated.  *See, e.g.*, *Flury*, 427 F.3d at 945-47 (plaintiff's spoliation of allegedly defective vehicle resulted in "extreme prejudice" that was "incurable by any sanction other than dismissal"); *Silvestri*, 271 F.3d at 594 (failure to preserve allegedly defective vehicle was a "highly prejudicial act warranting dismissal"); *Woodard v. Ford Motor Co.*, 2013 WL 3024828, at **4-5 (D. Or. June 13, 2013) (where plaintiff spoliated allegedly defective seatbelt, holding that "dismissal is the only appropriate sanction given the irreparable prejudice to Ford"); *Erlandson*, 2009 WL 3672898, at *4 (in vehicle defect case, "there is not any adequate substitute for the vehicle itself," and therefore "a lesser sanction than dismissal will not cure the prejudice to Defendant"); *see also Leon*, 464 F.3d at 960 (holding that any sanction for plaintiff's destruction of unique evidence short of dismissal would be "futile," and affirming dismissal); *Unigard Sec. Ins. Co.*, 982 F.2d at 369 (affirming entry of summary judgment in favor of defendant because plaintiff's spoliation "destroyed all reliable evidence" about the specific product plaintiff purchased).

For the reasons outlined above, FCA US requests that this Court dismiss the claims of Tavitian as a sanction for spoliation of evidence.  Alternatively, in the event this Court finds that dismissal is not warranted, FCA US requests that this Court impose sanctions in the form of an adverse inference instruction, and, consequently, find that Tavitian is not a proper class representative.  *See infra.*

## 2.     *An Adverse Inference Is An Appropriate Sanction For Victorino.*

A finding that a party spoliated evidence is, in and of itself, sufficient to impose sanctions in the form of an adverse inference instruction.  *See, e.g.*, *Lewis*,

17

261 F.R.D. at 521.  This is because such a sanction "may be imposed with the minimum level of culpability … the elements are the same as the threshold for imposing any spoliation sanction." *Olney*, 2014 WL 5430350, at *16.

"An adverse inference instruction is an instruction to the trier of fact that 'evidence made unavailable by a party was unfavorable to that party.'" *Montoya*, 2013 WL 6705992, at *13 (quoting *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008)).  Such instructions can take several forms, which range in degree of severity.  *Zest IP Holdings, LLC*, 2014 WL 6851607, at **14-15.  At the most severe level, where the spoliating party has acted "willfully or in bad faith," the jury may be instructed "that certain facts are deemed admitted and must be accepted as true." *Id.* at *15 (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 470-71 (S.D.N.Y. 2010)).  At the intermediate level, where the spoliating party has acted "willfully or recklessly," the Court may impose "a mandatory presumption which can be rebutted" by other evidence. *Olney*, 2014 WL 5430350, at *22.  "The least harsh instruction permits – but does not require – the jury to presume lost evidence is both relevant and favorable to the innocent party." *Id.*

Where, as here, there is no alternative source for the spoliated evidence, "only a strongly worded jury inference will adequately address the harm" to the innocent party.  *Id.*  Accordingly, FCA US requests that the Court impose sanctions against Victorino in the form of an instruction to the jury that it is deemed admitted, and must be accepted as true, that his spoliated components were not defective or, alternatively, issue this instruction as a mandatory but rebuttable presumption.[7]

---

[7]Should the Court determine that an adverse instruction, rather than dismissal, is the most appropriate sanction for Tavitian, the most severe level of instruction is plainly appropriate.  *See, e.g.*, *Olney*, 2014 WL 5430350, at *22 (most severe level of adverse instruction was appropriate where plaintiff failed to ensure that PC Optimizer software installed on his computer did not delete data from his computer during litigation).

### 3. A Finding That Plaintiffs Are Atypical And Not Adequate Representatives Of The Class Is Warranted.

Should this Court find that a sanction in the form of an adverse instruction is appropriate, FCA US requests that the Court enter an order finding that Victorino and Tavitian (if his claims are not dismissed) are not proper class representatives. A class representative is atypical of, and is inadequate to represent, class members when faced with the obstacle of an adverse instruction that should not burden the claims of other class members. *See, e.g.*, *Doyle*, 2014 WL 7690155, at **2-3. Indeed, members of any certified class would be severely prejudiced if their interests were entirely dependent on a plaintiff who was sanctioned for spoliation of evidence, and, as a result, can prevail on his own claims only by overcoming an instruction allowing the fact finder to employ a presumption that an allegedly defective product was not defective at all. In other words, because Plaintiffs' spoliation subjects them to unique defenses, they are, *ipso facto*, inadequate class representatives. *See, e.g.*, *Falcon v. Philips Elec. N. Am. Corp.*, 304 Fed. App'x 896, 897 (2d Cir. 2008) (affirming denial of class certification based on finding that plaintiff was not adequate representative because disposal of allegedly defective television put plaintiff in position of, among other things, having to "defend[] against a charge of spoliation of evidence"); *Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 257 (N.D. Cal. 2012) (finding plaintiff inadequate representative of class despite having staved off sanctions for spoliation because acts giving rise to spoliation motion were "unique" to plaintiff and could affect ability to protect class).

A finding of inadequacy is also appropriate because of the prejudice which Plaintiffs' spoliation has caused FCA US in its ability to challenge class certification. FCA US has been deprived of any opportunity to show by direct evidence that the facts underlying Plaintiffs' claims are not typical of others in the class and raise questions and issues affecting the predominance inquiry. The only way to cure this prejudice is to find that Plaintiffs cannot represent the class.

19

Notably, while disqualification as a class representative would not, technically, act as a "sanction" for spoliating evidence, if it could be classified as such it would clearly be considered a "lesser" one than dismissal since it still allows a plaintiff to continue to pursue his own individual claims.  Accordingly, in the event this Court awards the least drastic sanction of an adverse instruction, it should find that, consequently, Plaintiffs are atypical and inadequate representatives of the class.

### 4.   *Plaintiffs' Counsel Shares Responsibility For Tavitian's Spoliation.*

The responsibility for ensuring that evidence is preserved "runs first to counsel, who has 'a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.'" *Montoya*, 2013 WL 6705992, at *10 (citation omitted); *Surowiec*, 790 F. Supp. 2d at 1006 (same); *see also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) (counsel "must take affirmative steps to monitor compliance" so discoverable evidence is preserved and produced).

"As such, counsel's failure to oversee a client's discovery efforts may merit sanctions." *Knickerbocker v. Corinthian Coll.*, 298 F.R.D. 670, 677-78 (W.D. Wash 2014) (sanctioning party's counsel for its "lackluster search for documents, failure to implement a litigation hold," and other misconduct); *see also Clear-View Techs.*, 2015 WL 2251005, at **8-11 (imposing sanctions on party and its attorneys where "potentially critical evidence" was lost because of failure to implement a litigation hold); *HM Elecs., Inc. v. R.F. Techs., Inc.*, 2015 WL 4714908 (S.D. Cal. Aug. 7, 2015), *vacated in part*, 171 F. Supp. 3d 1020 (S.D. Cal. 2016) (holding that defendant's attorneys "engaged in sanctionable discovery practices" by failing to "craft and implement a litigation hold, or otherwise communicate to [their clients] the importance of preserving relevant documents"); *Rensel v. Fluidmaster*, 2014 WL 6466853, at **3-4 (C.D. Cal. Nov. 12, 2014), *vacated sub nom. In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, 2015 WL 2453034 (N.D. Ill. May 21, 2015) (striking class allegations as sanction against plaintiffs' attorneys for

20

permitting destructive testing on allegedly defective product); *Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932 (S.D. Cal. Jan. 7, 2008), *vacated in part*, 2008 WL 638108 (S.D. Cal. Mar. 5, 2008) (sanctioning attorneys for failing to ensure that their client complied with its discovery and preservation obligations and making several disciplinary referrals to the State Bar of California).

The evidence here compels the conclusion that Plaintiffs' counsel (the Capstone Law Firm) failed to adequately oversee Plaintiff Tavitian's discovery efforts and to advise him of the need to preserve evidence, and that these failures occurred during the exact time frame that these same counsel were making demands on FCA US to preserve evidence.  Exhibit C.  Indeed, it is admitted that ***four months after this lawsuit was filed*** Tavitian destroyed highly relevant and significant evidence in the form of the very vehicle components he was suing about.  Only one of two conclusions can be reached based on these undisputed facts:  either counsel completely failed to communicate the duty to preserve evidence to Tavitian; or they failed to communicate that duty in a way that Tavitian could understand it.  This is inexcusable in light of the fact that, just weeks before Tavitian spoliated evidence, Plaintiffs' counsel admonished FCA US of its duty to "preserve any removed or replaced parts."  *Id.*

FCA US has been irreparably prejudiced by the failure of Plaintiffs' counsel to carry out their very basic duty of informing Tavitian of the need to preserve evidence.  While no sanction can remedy the prejudice that has occurred, certainly a sanction – at least in the form of some type of an admonishment to avoid future violations of their basic duty to instruct their clients about preserving evidence – is appropriate.  FCA US thus respectfully requests that this Court exercise its broad discretion to fashion an appropriate sanction for Plaintiffs' counsel.

## IV. <u>CONCLUSION</u>

For the reasons set forth herein, Defendant FCA US LLC respectfully requests that this Court grant its motion seeking sanctions for spoliation of evidence, and

21

(1) dismiss Plaintiff Adam Tavitian's individual claims or order that an adverse inference instruction be given at trial on his claims, (2) order that an adverse inference instruction be given at trial on the claims made by Plaintiff Carlos Victorino, (3) find that Plaintiffs are not typical of, and are inadequate representatives of, the putative class, and (4) sanction Plaintiffs' counsel as the Court deems appropriate.

Dated:  August 22, 2017        **HIGGS FLETCHER & MACK LLP**

By:   */s/ Edwin Boniske*
William M. Low (Bar No. 106669)
Edwin Boniske (Bar No. 265701)

**THOMPSON COBURN LLP**
Kathy A. Wisniewski
Stephen A. D'Aunoy
Thomas L. Azar, Jr.
Scott H. Morgan

*Attorneys for FCA US LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on August 22, 2017 on all counsel of record, who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ.L.R. 5.4(d).

By:   */s/ Edwin Boniske*
Edwin Boniske (Bar No. 265701)