Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO and ADAM TAVITIAN, individually, and on behalf of other members of the general public similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>    Defendant. | Case No.: 3:16-CV-01617-GPC-JLB<br><br>**[REDACTION] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>District Judge:  Hon. Gonzalo P. Curiel<br>Magistrate Judge: Hon. Jill L. Burkhardt<br><br>Hearing Date:  January 19, 2018<br>Hearing Time:  1:30p.m.<br>Location:  221 West Broadway<br>    Courtroom 2D, 2nd Fl.<br><br>Action Filed:  June 24, 2016<br>Trial Date:  None Set |

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ...............1

II.     PLAINTIFFS' COMMON PROOF.........................................................2

    A.      Summary of the Defect.............................................................2

    B.      Overview of the Clutch System.................................................3

    C.      The Defective Clutch System is Inherent and Present in
        Every Class Vehicle .................................................................5

    D.      FCA Knew the System Was Defective but Failed to Tell
        Consumers ...............................................................................6

III.    PROPOSED CLASS ...........................................................................11

IV.     THE REQUIRMENTS OF RULE 23(a) ARE SATISFIED...................11

    A.      Ascertainability .....................................................................11

    B.      Numerosity.............................................................................12

    C.      Commonality..........................................................................12

    D.      Typicality ...............................................................................13

    E.      Adequacy................................................................................16

V.      THE PREDOMINANCE REQUIREMENT OF RULE
    23(b)(3) IS SATISFIED .....................................................................17

    A.      Common Proof Will Be Used to Establish Each of
        Plaintiffs' Claims ...................................................................18

    B.      Manifestation is Not Relevant to Class Certification
        Analysis..................................................................................21

    C.      Plaintiffs' Damages Model........................................................22

    D.      Superiority..............................................................................24

VI.     CONCLUSION ..................................................................................25

[REDACTED] MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

*FEDERAL CASES*

*Allen v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 412 (N.D. Ill. 2009) ............... 21

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ................... 20

*Baker v. Microsoft Corp.*, 797 F.3d 607 (9th Cir. 2015) ..........................2, 21, 22

*Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550 (S.D. Cal. 2013) .................... 12

*Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) ................... 12, 18

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) .......................................... 23

*Daffin v. Ford Motor, Co.*, 458 F.3d 549 (6th Cir. 2010) ................................. 21

*Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015) ................................ 19

*Daniel v. Ford Motor Co.,* 2016 WL 2899026, at *7 (E.D. Cal. May
    18, 2016 ...................................................................................................... 22

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) ................................ 24

*Doyle v. Chrysler Grp. LLC*, 2014 WL 7690155 (C.D. Cal. Oct. 9,
    2014), *rev'd and remanded*, 663 F. App'x 576 (9th Cir. 2016) ............... 14, 15

*Edwards v. Ford Motor Co.*, 603 F. App'x 538 (9th Cir. 2015) ..............12, 13, 18

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ........................ 13

*Falco v. Nissan North America, Inc.*, 2016 WL 1327474 (C.D. Cal.
    Apr. 5, 2016) ........................................................................................... 18, 22

*Falcon v. Philips Elecs. N. Am. Corp.*, 304 F. App'x 896 (2d Cir.
    2008) ............................................................................................................ 16

*Hanlon v. Chrysler Corporation*, 150 F.3d 1011 (9th Cir. 1998) ...................... 16

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ...................2, 14, 16

*Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344 (N.D. Ill. 2008) ............... 16

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
    Practices, & Prods Liab. Litig.*, 2012 WL 7802852 (C.D. Cal. Dec.
    28, 2012) ...................................................................................................... 14

*In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015) ................................. 13

*Kearney v. Hyundai Motor Co.,* 2010 WL 9093204, *5 (C.D. Cal. June 4, 2010) ............................................. 22

*Keegan v. American Honda Co., Inc., Inc.*, 284 F.R.D. 530 (C.D. Cal. 2012) ..................................................15, 19, 20, 21

*Leyva v. Medline Indus., Inc.*, 716 F.3d 510 (9th Cir. 2013) ........................ 23, 24

*Lindell v. Synthes USA*, 2014 WL 841738 (E.D. Cal. Mar. 4, 2014).................. 23

*McVicar v. Goodman Glob., Inc.*, 2015 WL 4945730 (C.D. Cal. Aug. 20, 2015) ............................................ 11, 12

*Ornates-Hernandez v. Smith*, 541 F. Supp. 351 (C.D. Cal. 1982) ..................... 12

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008) ......13, 18, 19

*Pecover v. Elec. Arts Inc.*, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ................................................ 24

*Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979, 987 (9th Cir. 2014) ................................................ 23

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) .......................... 19

*Tait v. BSH Appliances Corporation*, 289 F.R.D. 466 (C.D. Cal. 2012) ................................................ 19, 21

*Taragan v. Nissan N. Am., Inc.*, No. C 09-3660 SBA, 2013 WL 3157918 (N.D. Cal. June 20, 2013) ............................................ 4, 20

*Vaccarino v. Midland Nat'l Life Ins. Co.*, 2014 WL 572365 (C.D. Cal. Feb. 3, 2014).......................................... 24

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ................................................ 25

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .................................... 12

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ................................................12, 13, 18, 22

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th

Cir. 2010) ..................................................................................... 23

*STATE CASES*

*In re Tobacco II Cases*, 46 Cal. 4th 326 (2009) ................................... 19

*Massachusetts Mutual Life Insurance Co. v. Superior Court*, 97 Cal.
    App. 4th 1282 (2002)........................................................... 19

*Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906 (2001).............. 17

*FEDERAL STATUTES*

15 U.S.C. §§ 2303 *et seq.* (Magnuson-Moss Warranty Act) .............................. 18

Fed. R. Civ. P. 23 ................................................................................ 11

Fed. R. Civ. P. 23(a)........................................................................ 12, 15

Fed. R. Civ. P. 23(a)(4) .................................................................... 17

Fed. R. Civ. P. 23(b)(3)................................................................. 17, 24

Fed. R. Civ. P. 23(g)........................................................................ 17

*STATE STATUTES*

Cal. Civ. Code § 1761(d)................................................................. 11

Cal. Civ. Code §§ 1790 *et seq.* (Song-Beverly Consumer Warranty
    Act (Song-Beverly))..................................................... 18

# I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

This case arises out of a defect in the hydraulic clutch system in 2013-2015 Dodge Dart vehicles equipped with a Fiat C635 manual transmission ("Class Vehicles") that FCA's X62 Extended Warranty program and uniform repair procedure failed to resolve.[1] FCA released the X62 Extended Warranty program and repair procedure in January 2016 to address malfunctions in the Class Vehicles' hydraulic clutch system ("Clutch System") caused by contamination of the hydraulic fluid and included a repair procedure limited to the replacement of the reservoir hose and the clutch master cylinder ("CMC"). Plaintiffs allege that the recommended repair ("X62 repair") was incomplete, ignoring the systemic effects of the contaminated fluid and damage to the concentric slave cylinder ("CSC").

The fundamental questions to be resolved by this lawsuit are whether the Clutch System was defectively designed, whether FCA knew and failed to disclose the defect, and whether FCA's X62 repair was sufficient to correct the defect.  The answers to these questions are based on uniform proof that is common to the Class and will resolve this matter in one stroke.  The evidence further confirms that the same Clutch System was present in every Class Vehicle at the time of sale or lease, that all the Class Vehicles suffer from the same defect, and that the X62 repair is inadequate.  Therefore, the predominance requirement, which is the lynchpin to certification, is satisfied.

On behalf of the putative Class, Plaintiffs seek to recover the difference in value between the non-defective vehicles they expected and the defective vehicles that FCA actually delivered.  The inadequacy of the X62 repair in particular provides uniform, class-wide proof that the injury suffered as a result

---

[1] Dkt. No. 91 at 8:12-22 (Order Denying Defendant's Motion for Summary Judgment and Denying Defendant's *Ex Parte* Motion to Strike ("MSJ Order")).

1    of FCA's conduct is common to the Class.  Plaintiffs' damages model, based on

2    benefit-of-the-bargain restitution, thus matches their legal theory and can

3    measure uniformly the economic harm suffered by Class members as a result of

4    FCA's failure to disclose the design defect at the time of purchase or lease.

5        Each Plaintiff and every putative Class Member purchased a Class Vehicle

6    with the same defective Clutch System, about which FCA failed to disclose any

7    information, and FCA has presented no credible evidence of any individual issue

8    or unique defense that would threaten to become the focus of the litigation.

9    *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

10       Accordingly, Plaintiffs' Motion for Class Certification should be granted.

11   **II.    PLAINTIFFS' COMMON PROOF**

12       **A.    Summary of the Defect**

13       Plaintiffs allege a design defect common to Class Vehicles designed,

14   manufactured, marketed, distributed, sold, warranted, and serviced by FCA.

15   Specifically, Plaintiffs have proffered evidence that the Clutch System, which

16   engages and separates the transmission from the engine as the driver uses the

17   clutch pedal to shift gears and change speed, suffers from a defect that causes the

18   clutch pedal to malfunction. The defective design of the Clutch System can result

19   in, among other things, catastrophic failure of the clutch pedal, such that it sticks

20   to the floor and prevents the driver from shifting gears and controlling the

21   vehicle's speed ("the pedal down issue").

22       Plaintiffs' expert, Michael Stapleford, explains the defective design of the

23   Clutch System in detail. (Declaration of Tarek H. Zohdy in support of Plaintiff's

24   Motion for Class Certification ("Zohdy Decl.") ¶ 33, Ex. EE.) Primarily, the

25   system's reservoir hose degrades, causing it to leach plasticizer and release fibers

26   that contaminate the hydraulic fluid. The contaminated fluid circulates

27   throughout the system, causing damage to the CMC and the CSC ("Clutch

28   Defect"). In addition, the design of the CSC makes it unreasonably susceptible to

malfunction as a result of the contamination.

As this Court has noted, FCA admitted that both the CMC and the reservoir hose must be replaced as a result of the defective hose. (MSJ Order at 12). However, FCA's X62 repair failed to cure the Clutch Defect, despite evidence showing that FCA's investigation of the "pedal down issue" in the Class Vehicles revealed other potential root causes, including the CSC and persistent contamination of the Clutch System, that FCA could have resolved.

██████████████████████████████████████████████
██████████████████████████████████████████████
████████████. (Zohdy Decl. ¶ 3, Ex. A at 3598.) With the X62 repair, consumers were still left with a damaged CSC and residual fluid contamination. None of the information FCA provided to consumers reveals these problems or the likelihood of premature repairs. (Zohdy Decl. ¶¶ 36, 37, Exs. HH, II.)

██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████ (Zohdy Decl. ¶¶ 6, 7, Exs. D, E), creating a serious safety risk by affecting drivers' ability to control their cars. (*See* Plaintiffs' First Amended Complaint ("FAC") ¶¶ 68-71.) To date, FCA has provided no notice to the Class members and has failed to address residual contamination or repair the damage caused to the CSC.[2]

**B.    Overview of the Clutch System**

The Clutch System ████████████████████████████
██████████████████████████████████████████████
████████████████████ (Zohdy Decl. ¶ 4, Ex. B at 906.) In

---

[2] Notably, Plaintiffs' expert has provided a model Technical Service Bulletin ("TSB") as part of his report, which updates the X62 repair to resolve the Clutch Defect and further demonstrates that malfunctions can be corrected uniformly in every Class Vehicle. (Zohdy Decl. ¶ 36, Ex. HH (Ex. D).)

short, when the driver depresses the clutch pedal, a piston in the CMC pushes fluid through the steel hydraulic line to the CSC, pressure from which pushes the CSC's piston against the integrated release bearing (also called a "throw-out" bearing or "TO" bearing) that disengages the engine from the transmission. (Zohdy Decl. ¶ 33, Ex. EE ¶ 2.) Releasing the clutch pedal releases the fluid pressure, which should allow the clutch assembly to engage the gears smoothly and efficiently.

██████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

████████████████ (Zohdy Decl. ¶ 22, Ex. T.) ███████

████████████████████████████████████████

████████████████████████████ (Zohdy Decl. ¶¶ 29,

Ex. AA.) ███████████████████████████████████

███████████████████████████████

████████████████████████████████

████████████████████████ (Zohdy Decl. ¶ 5, Ex. C at 3877.) A series of service bulletins were released as a result.

Documents and testimony pertaining to the efficacy of the X62 repair and questions regarding damage to the CSC were equally applicable to – and are thus equally relevant to – all the Class Vehicles. For example, internal emails and reports demonstrate FCA's early awareness of the Clutch Defect, including references to Class Members' concerns, that were considered and summarily discarded. Plaintiffs and putative Class Members were thus specifically encouraged by FCA to rely on an incomplete service, disseminated, paid for, and advocated by FCA, with no reason to question its efficacy. Such common evidence demonstrates further that FCA "'sought to suppress information in the public domain or obscure the consumers' ability to discover' it." *Taragan v.*

1  *Nissan N. Am., Inc.*, 2013 WL 3157918, at *7 (N.D. Cal. June 20, 2013) (citation
2  omitted).

3    **C.    The Defective Clutch System is Inherent and Present in Every**
4        **Class Vehicle**

5       The Class Vehicles all share the same Clutch System in which plasticizer
6  leaching from the degrading reservoir hose causes a limited constellation of
7  identifiable (and identified) problems that FCA's remediation failed to resolve.
8  (Zohdy Decl. ¶ 33, Ex. EE ¶¶ 4, 12, 21.) Indeed, in implementing the singular
9  X62 repair, FCA concedes that all the Class Vehicles have the same Clutch
10  System. The Clutch Defect was thus inherent and present at the time of purchase
11  or lease, and FCA's deceptive conduct affected all Class Members in the same
12  way.

13  ████████████████████████████████████████████████
14  ████████████████████████████████████████████████████
15  ██████████████████████████████████████████████████████
16  ████. (Zohdy Decl. ¶¶ 6, 7, Exs. D, E.) ████████████████████
17  ██████████████████████████████████████████████████
18  ████████████████████████████████████████████████████
19  ████████ (Zohdy Decl. ¶ 6, Ex. D.) ████████████████████████
20  ████████████████████████████████████████████████████
21  ██████████████████████████ (Zohdy Decl. ¶ 8, Ex. F at 1682.)

22       In 2014, FCA authorized the re-design of the reservoir hose to reduce the
23  amount of plasticizer its manufacture required. ████████████████████
24  ████████████████████████████████████████████████████
25  ██████████████████████████████████████████
26  ██████████████████████████████████████████████████
27  ████████████████ (Zohdy Decl. ¶ 17, Ex. O at 7110.) Thus, ███
28  ████████████████████████████████████████████████ years,

█████████████████████████████████████████████

███████████████████████████. Indeed, ████████████████

█████████████████████████████████████████████

██████████████████████████████████ (Zohdy Decl. ¶
19, Ex. Q at 4909.) ██████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████ (Zohdy Decl. ¶ 20, Ex. R at 5209.) In fact, a████████████

█████████████████████████████████████████

████████████████████████████████████████ (*Id.*
at 5208.) In addition, FCA focused solely on the leaching plasticizer, ignoring
the debris that also caused damage. (Zohdy Decl. ¶ 33, Ex. EE ¶¶ 19-20.)

    Finally, on ████████████████████████████

█████████████████████████████████████████

███████████████████████[3] (Zohdy Decl. ¶ 9, 10, Exs. G at 3848, H.) ████

████████████████████████████████████████████

████████████████████████████████████████

### D.    FCA Knew the System Was Defective but Failed to Tell
      Consumers

    FCA's own documents confirm that FCA's investigation of the "pedal
down issue" in the Class Vehicles revealed several potential root causes,
including the CSC and fluid contamination. █████████████████████

████████████████████████████ (Zohdy Decl. ¶ 12, Ex. J at 5075-
5081.) For example, a██████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████

---

[3] ████████████████████████████████████████████
███████████████████ (Zohdy Decl. ¶¶ 9, 11, Exs. G at 3841, I.)



(*Id.* at 5082-5083.)

(Zohdy Decl. ¶ 29, Ex. AA at 5033.)

(Zohdy Decl. ¶ 30, Ex. BB at 5086.)

(*Id.*)

(Zohdy Decl. ¶ 13, Ex. K at 7069.)

(*Id.*)

(Zohdy Decl. ¶ 32, Ex. DD at 6661-6663.)

(Zohdy Decl. ¶ 14, Ex. L) Mr. Stapleford's analysis regarding the CSC (or release bearing) is consistent with these assessments. (Zohdy Decl. ¶ 33, Ex. EE ¶ 15, 18.) Indeed,

(Zohdy Decl. ¶ 25, Ex. W.)

(Zohdy

Decl. ¶ 14, Ex. L at 2436), ███████████████████

████████████████████████████████

██████████████████ (Zohdy Decl. ¶ 15, Ex. M.) ████

██████████████████████████████

███████████████████████████████

███████████████████████████████

██████████████████████████████

███████ (*Id.* ¶ 16, Ex. N at 3740.) █████████████

███████████████████████████████

███████████████████████████████

████████████████████████ (Zohdy Decl. ¶ 17, Ex. O at

7109.)

█████████████████████████████

███████████████████████████████

(Zohdy Decl. ¶ 18, Ex. P at 3149),[4] █████████████

████████████████████████████

██████████████████████████ (Zohdy Decl. ¶

14, Ex. L at 2429.) ████████████████████

██████████████████ (Zohdy Decl. ¶ 23, Ex. U at 6874), and

████████████████████████████████

███████████████████ (Zohdy Decl. ¶ 14, Ex. L at

2429-2430.)[5] ██████████████████████

██████████████████████████

███████████ (*Id.* at 2429.) FCA's efforts also failed to address

---

[4] *See also* Zohdy Decl. ¶ 36, Ex. HH at 6648-6649, and 6650-6672 (master cylinder seals were swollen due to contamination from incompatible rubber hose).

[5] Zohdy Decl. ¶ 14, Ex. L at 2426-2436.

continuing exposure to plasticizer and fibers still circulating throughout the Clutch System, though the issue was raised. In December 2014, for example, an FCA employee asked, ███████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

(Zohdy Decl. ¶ 24, Ex. V at 5336.) ██████████████████████

███████████████████████████████████████████

██████ (Zohdy Decl. ¶ 26, Ex. X at 2708.) In fact, ████████████

█████████████████████████████████████

██████████████████████████████████████████████

████ (Zohdy Decl. ¶ 27, Ex. Y.)

███████████████████████████████████████████

██████ (Zohdy Decl. ¶ 14, Ex. L at 2429), ██████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ (Zohdy Decl. ¶ 19, Ex. Q at 4908.) █

█████████████████████████████████████████

████████████████████████████████████████████ (*Id*. at 4909), ██████████████████████████████████████

████████████████ (*Id*.) █████████████████████

█████████████ (*Id*. at 4908.) ███████████████████████

███████████████████████████████████████

██████████████████ (Zohdy Decl. ¶ 28, Ex. Z.) ████████████

██████████████████████████████████████

███████████████████████████ (Zohdy Decl. ¶ 21, Ex. S at 5171-5172.)

██████████████████████████████████████

███████████████████████████████████████████



1 ■. (Zohdy Decl. ¶ 22, Ex. T.) For example, in an undated FCA document

4 (*Id.*)

6 (Report ID. 30727),

7 (Report ID. 145632),

9 (Report ID. 639563.) (*Id.*) Nevertheless,

12 (Zohdy Decl. ¶ 9, Ex. G at 3848.) In addition, the letter FCA sent to

13 owners and lessees regarding the X62 warranty extension stated expressly that

14 "if you do not experience this ["pedal down"] condition, then your hydraulic

15 clutch master cylinder / reservoir hose is operating correctly and no repair is

16 necessary." (Zohdy Decl. ¶ 38, Ex. JJ.)

18 (Zohdy Decl.

19 ¶ 4, Ex. B at 907),

23 (*Id.* at 911-915.)

27 (*Id.* at 930),

1   ███████████ (*Id*. at 945.) According to its own quality controls, the ████

2   ██████████████████████████████████████████ (*Id*. at 931.)

3   ████████████████████████████████████████

4   ████████████████████████████████████████████

5   █████████████████████████████████████████

6   ███████████████████ (*Id*. at 909-910.) FCA clearly knew or

7   should have known of the Clutch Defect based on is own practice, policy, and

8   procedure.

## III.   PROPOSED CLASS

Plaintiffs seek to certify the following Class and Subclass (collectively, the "Class"):

> **Class**: All individuals in California who purchased or leased a Dodge Dart vehicle, built on or before November 12, 2014, equipped with a Fiat C635 Manual Transmission.[6]

> **CLRA Sub-Class**: All members of the Class who are "consumers" within the meaning of California Civil Code § 1761(d).

## IV.   THE REQUIRMENTS OF RULE 23(a) ARE SATISFIED

### A.   Ascertainability

Although not strictly a part of the requirements of Rule 23, a threshold requirement for class certification is the existence of an identifiable and ascertainable class. *McVicar v. Goodman Glob., Inc*., 2015 WL 4945730, at *5

---

[6] Plaintiffs' proposed Class definition is based on discovery conducted to date, including information showing that a new reservoir hose made with less plasticizer was installed in Dodge Dart vehicles equipped with a Fiat C635 manual transmission built after November 12, 2014.  These vehicles are excluded from the X62 warranty extension and repair. (Zohdy Decl. ¶10, Ex. H.) While this motion is limited to certifying the Class of vehicles to which the X62 Extended Warranty program applies.██████████████████████████████ ████████████████████████████ (*See e.g*., Zohdy Decl. ¶ 5, Ex. C at 3877.)  Plaintiffs reserve the right to amend the Class definition, as necessary, based on further discovery.

(C.D. Cal. Aug. 20, 2015), *appeal denied* (Nov. 19, 2015) (citation omitted).

Here, the Class is ascertainable, as it consists of owners and lessees of the same vehicles already confirmed by FCA as eligible for the X62 Extended Warranty program who can be identified through FCA's records. Further, ascertainability is satisfied where a defendant's own warranty databases would provide sufficient information, and Class Members can be identified through FCA's records pertaining to diagnoses and repair of the defective clutch system, and. *McVicar, supra,* 2015 WL 4945730, at *5. Information regarding current owners and lessees can also be obtained through third-party administrators.

## B.    Numerosity

Rule 23(a) provides that numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable." ███████████ ███████████████████████████████████████████ (Zohdy Decl. ¶ 31, Ex. CC.) Further, the Court can reasonably infer from FCA's STAR Case and X62 bulletins that FCA considers the Class to be sufficiently numerous. *See e.g.*, *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 558 (S.D. Cal. 2013) ("In determining whether numerosity is satisfied, the court may consider reasonable inferences drawn from the facts before it.") (citation omitted); *Ornates-Hernandez v. Smith*, 541 F. Supp. 351, 369 (C.D. Cal. 1982) ("Where the exact size of the class is unknown but general knowledge and common sense dictate that it is large, the numerosity requirement is satisfied.").

## C.    Commonality

Commonality is satisfied when there are questions of law or fact common to the class. Plaintiffs need show only that there is one common question and that the determination "of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). For purposes of Rule 23(a)(2), even a single common question will do. *Id*. at 2556 (citation omitted). In cases involving

defective products, commonality is established when the questions at issue concern the existence of a defect. *See e.g., Edwards v. Ford Motor Co.*, 603 F. App'x 538, 540 (9th Cir. 2015) ("[C]ommonality is satisfied when '[t]he claims of all prospective class members involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model.'") (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010)); *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005) (common failure to disclose the existence of an engine defect); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 595-96 (C.D. Cal. 2008) (common contention regarding clutch flywheel system defect).

In *Wolin*, the Ninth Circuit held that commonality is satisfied, where, as here, the common questions are 1) whether a defect exists, 2) whether defendant knew about the defect, 3) whether defendant concealed the defect, and 4) whether that conduct violated consumer protection laws. 617 F.3d at 1172; *Edwards*, 603 F. App'x at 540 ("[C]ommonality is satisfied when '[t]he claims of all prospective class members involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model.'"). In addition, FCA effectively acknowledged that a single defect exists when it implemented what amounts to class-wide relief through the X62 program. *See, e.g., Edwards*, 603 F. App'x at 541 ("[B]y providing classwide relief through its notice and repair program, Ford has acknowledged that a single class defect exists."). Moreover, in this case, FCA's implementation of the X62 Extended Warranty program strongly suggests that the Class Vehicles as a whole were not merchantable at the time of sale or lease.

### D. Typicality

Typicality rests on whether the Class has the same or similar injury, whether the action is based on conduct not unique to the plaintiffs, "and whether other class members have been injured by the same course of conduct." *Ellis*,

657 F.3d at 984. Putative class members' interests and claims need not be identical to the plaintiffs' to satisfy typicality, if, as here, their claims are based on the same legal theory. *Id.* Finally, "[t]ypicality under Rule 23(a)(3) should be determined with reference to the [defendant's] actions, not with respect to particularized defenses it might have against certain class members." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 594 (N.D. Cal. 2015) (citation omitted).

In this case, Plaintiffs' common injury – that the undisclosed design defect in the Clutch System caused them to overpay for their Class Vehicles when they purchased them – is typical of the class. In other words, Plaintiffs' claims, like those of the putative Class, are based on the purchase of a Class Vehicle equipped with a Clutch System that FCA neglected to disclose was defective at the time of sale. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods Liab. Litig.*, 2012 WL 7802852, at *2-3 (C.D. Cal. Dec. 28, 2012) (claims, including those of the named plaintiffs, arose from a common automobile defect and uniform deceptive conduct). Plaintiffs' action is based on FCA's conduct, which is not unique to them, and alleges that other Class Members have been injured by the same course of conduct. Accordingly, because their claims "are reasonably co-extensive with those of absent class members" because all "allegedly suffered the same injury entitling them to relief under the same legal theories," the named Plaintiffs' claims are typical of the class. *Hanon*, 976 F.2d at 508.

Relying on *Doyle v. Chrysler Grp. LLC*, 2014 WL 7690155, at *3 (C.D. Cal. Oct. 9, 2014), *rev'd and remanded*, 663 F. App'x 576 (9th Cir. 2016), FCA has argued that an adverse inference evidentiary sanction makes Plaintiff Tavitian's claim atypical. (Dkt No. 116-1:5-14.) *Doyle* is inapposite. In *Doyle*, the Court imposed an adverse evidentiary sanction on one of the named plaintiffs because she sold the product at issue before the complaint had even been filed. *Doyle*, 2014 WL 7690155 at *3 ("When one is contemplating making a claim

that a vehicle is defective, it takes no special training or particular sophistication to recognize the potential relevance of that vehicle as evidence of one's claim.") As a consequence of that sanction, the Court found that her "claim against Chrysler will be subject to an additional obstacle which does not burden the claims of the other class members." *Id.* Unlike the plaintiff in *Doyle*, Plaintiff Tavitian still owns his vehicle, and the clutch continues to malfunction. Moreover, questions regarding Plaintiff Tavitian's culpability in failing to preserve the CSC will not overwhelm or distract from the Class' claims as this Court already has determined that he did not act in bad faith. (Dkt. No. 134 at 21:9-10.)

Plaintiffs allege that FCA sold the Class Vehicles with a known defect, and Plaintiff Tavitian purchased a Class Vehicle just like other Class Members. His experience is clearly typical of the Class. Furthermore, FCA cannot argue that Plaintiff Tavitian's Clutch System was not defective, as it has already effectively admitted through implementation of the X62 Extended Warranty program that it was.

Finally, because FCA replaced the CMC in Plaintiff Tavitian's vehicle *prior* to the third-party repair (and presumably preserved the old part), the only part it puts at issue is the CSC, which FCA had already determined was leaking and falling apart, a markedly different set of circumstances than in *Doyle*. An adverse inference here does not require FCA to mount a different defense because, as the Ninth Circuit found on appeal in *Doyle*, the question of typicality pertains to the underlying claims, which are the same for both Plaintiffs and the Class in this case, and not the supervening sanction. *Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576, 579 (9th Cir. 2016). Thus, despite FCA's arguments, the focus of the typicality requirement is on *FCA's conduct*, not Plaintiff Tavitian's. *Keegan v. American Honda Co., Inc.,* 284 F.R.D. 530, 524-545 (C.D. Cal. June 12, 2012). Moreover, because FCA had already performed its inspection at the

1  time of the third-party repair, trial – not this motion – is the place for Plaintiff

2  Tavitian to address the adverse inference instruction, which is not sufficient to

3  make his claims atypical.

4  **E.  Adequacy**

5  The final requirement under Rule 23(a) is that "the representative parties

6  will fairly and adequately protect the interests of the class." In the Ninth Circuit,

7  courts use a two-prong test to determine if the adequacy requirement is met: 1)

8  whether Plaintiffs and their counsel "have any conflicts of interest with other

9  class members," and 2) whether Plaintiffs and their counsel will "prosecute the

10  action vigorously on behalf of the class." *Hanlon v. Chrysler Corporation*, 150

11  F.3d 1011, 1020 (9th Cir. 1998). Both of these requirements are satisfied here.

12  Plaintiffs' interests do not conflict with the interests of the Class, and

13  Plaintiffs are seeking the same remedies as the Class, based on the same core of

14  operative facts. Furthermore, Plaintiffs are familiar with the claims in this matter

15  and have actively participated in this litigation by producing documents,

16  providing written discovery responses, providing their vehicles for inspection,

17  and sitting for deposition. (Zohdy Decl. ¶¶ 36, 37, Exs. HH (¶¶ 14-15), II (¶¶ 20-

18  21).)

19  FCA also has challenged Plaintiff Tavitian's adequacy.  (Dkt. No. 116-

20  1:5-14.)  As with its argument regarding typicality, FCA relies on a case in

21  which the named Plaintiff disposed entirely of the product at issue, which meant

22  she would "likely have much more difficulty showing design defect than would

23  someone who could produce the product for examination." *Falcon v. Philips*

24  *Elecs. N. Am. Corp.*, 304 F. App'x 896, 897 (2d Cir. 2008). As discussed above,

25  Plaintiff Tavitian's purchase transaction did not vary from other Class

26  Members', he was injured at the time of purchase by the very same failures to

27  disclose as experienced by the rest of the Class, and FCA's X62 repair applies

28  equally to his vehicle.

A "unique defense" is a basis for disqualification only when it "threaten[s] to become the focus of the litigation," (*Hanon*, 976 F.2d at 508), which is not the case here. And, "[t]o the extent that there may be some unique defenses applicable to certain class members, there is no evidence that resolution of these individual issues will consume more time or resources than the resolution of the common issues in the case." *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 350 (N.D. Ill. 2008).

Finally, Plaintiffs have also retained highly qualified and competent counsel with significant experience litigating class actions. (*See* Zohdy Decl. ¶ 35, Ex. GG.) As this Court already has noted that "the history of this case reveals that Plaintiffs' counsel have been diligently prosecuting this case with vigor" and that the adequacy requirements under Rule 23(a)(4) and Rule 23(g) have been met. (Dkt. No. 115 at 5:24-6:1.) There is no reason to depart from that determination.[7]

## V.     THE PREDOMINANCE REQUIREMENT OF RULE 23(b)(3) IS SATISFIED

Under Rule 23(b)(3), plaintiffs must show that "the questions of law or fact common to class members predominate over any questions affecting only individual class members." Class Members' claims do not need to be identical. The inquiry is whether the variations are enough to defeat predominance under Rule 23(b)(3) and whether the individual issues "swamp" the common issues. *See, e.g.*, *In re Myford Touch Consumer Litig.*, 2016 WL 7734558 at *13 (N.D. Cal. Sept. 14, 2017).

As discussed, common issues regarding defect and liability predominate

---

[7] Since that motion, Plaintiffs and their counsel also have defeated FCA's Motion to Compel Production of Plaintiffs' Retainer Agreements (Dkt. No. 52), Motion for Leave to File Third Party Complaint against J&E Auto Services (Dkt. No. 126) and Motion for Reconsideration of Order Denying FCA's Motion to Compel Plaintiffs' Retainer Agreements (Dkt. No. 136).

under Rule 23(b)(3). Plaintiffs have demonstrated that the Clutch System has a uniform defect that the X62 repair did not fix, primarily because it omits the CSC. Plaintiffs also have demonstrated, through common proof, that FCA was aware that the CSC should be replaced. The inadequacy of the X62 repair affects all Class Vehicles.

District courts in the Ninth Circuit have found that the predominance requirement is satisfied in car cases where, as here, Plaintiffs argue that uniformly designed cars contained a defect, that FCA knew about the defect and failed to disclose it, and that the defect presented a common unreasonable safety risk, all of which are susceptible to proof by "generalized" evidence. *See Wolin*, 617 F.3d at 1173; *Edwards, supra,* 603 F. App'x 538; *Chamberlan v. Ford Motor, Co*., 402 F.3d 952, 962 (9th Cir. 2005); *Parkinson,* 258 F.R.D. 580; *Falco v. Nissan North America, Inc*., 2016 WL 1327474, at *4 (C.D. Cal. Apr. 5, 2016). At the class certification stage, the Court need only decide whether Plaintiffs' allegations are susceptible to common, class-wide proof, which they are.

## A.     Common Proof Will Be Used to Establish Each of Plaintiffs' Claims

Plaintiffs allege claims on behalf of a proposed class and subclasses for violations of the UCL and the CLRA and for breach of implied warranty under the Song-Beverly Consumer Warranty Act ("Song-Beverly") (Cal. Civ. Code §§ 1790, *et seq*.), and the Magnuson-Moss Warranty Act ("Mag-Moss") (15 U.S.C. §§ 2303 *et seq*.).

All Plaintiffs' claims will turn, in whole or in part, on common evidence 1) that FCA knew about the "pedal down issue," 2) that FCA had a duty to disclose the defect, 3) that FCA deliberately did not disclose the defect, 4) that the defect created an unreasonable safety risk, 5) that FCA concealed the defect to encourage purchase of the Class Vehicles, as well as to shift repair costs to

Class Members and 6) that the vehicles were unmerchantable at the time of sale. Specifically, evidence, including the fact that FCA itself addressed the "pedal down issue" as a problem common to all Class Vehicles, shows a uniform Clutch Defect in all Class Vehicles, inherent and present at the time of purchase or lease for all Class Members.

Further, there are no predominating individual issues relating to materiality, causation, or reliance. Under the CLRA, the standard for causation and reliance is an objective one, susceptible to generalized proof on a class basis. Causation and an "inference of reliance" for the Class "can be shown as to the entire class by proving materiality." *Keegan,* 284 F.R.D. at 531. Materiality can be determined under the CLRA on a class-wide basis by using the objective "reasonable consumer standard." *See e.g., Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). Moreover, in this case, the "clutch pedal down issue" is clearly material, as, after over three years of investigations and testing, FCA instituted an entire warranty program and uniform repair procedure to address it. Accordingly, relief here is available "without individualized proof of deception, reliance and injury" because causation for the Class' common injury is established by the materiality of the omission, giving rise to a presumption of reliance. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022-23 (9th Cir. 2011) (citations omitted); *Tait v. BSH Appliances Corporation*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (UCL is "ideal" for certification).

Similarly, there are no individual determinations as to deception, reliance, or injury for restitution under the UCL's fraudulent prong, as Plaintiffs need only show that members of the public are likely to be deceived by FCA's conduct. *In re Tobacco II Cases*, 46 Cal. 4th 326, 312, 326 (2009); *see also Massachusetts Mutual Life Insurance Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292–93 (2002) ("[P]laintiffs satisfy their burden of showing causation as to each by showing materiality as to all."). In *Keegan*, for example, the court explained that

"a violation of the UCL can be proved with common evidence regarding the nature of the design defect in question, the likely effect of the defect on class vehicles, its likely impact on vehicle safety, what [a defendant] knew or did not know, and what it disclosed or did not disclose to consumers." *Id*. at 534. Thus, unlike common law fraud, the focus in the UCL claim is on FCA's conduct, not Class Members' reactions. *See, e.g., Parkinson*, 258 F.R.D. at 596 (predominance satisfied as to all three UCL prongs in case involving defectively designed and uniformly used clutch flywheel.)

Common proof can also show breach of implied warranty under Song Beverly. At the time of sale, every Class Vehicle had an identical Clutch System with the same latent defect, and, therefore, every Class Vehicle was sold with the same likelihood of experiencing a Clutch System malfunction, subject to the potentially serious safety risks that follow. Plaintiffs' implied warranty claims rest on all the Class Vehicles being defective in the same way. The same defect was inherent and present in all the Class Vehicles when they left FCA's factory, and the manifestation of the common defect in Plaintiffs' vehicles, as a result of which they suffered injury, is sufficient to state a viable claim. *See Taragan*, 2013 WL 3157918, at *4-5. Determining whether the Clutch Defect rendered the Class Vehicles unmerchantable can also be answered through common proof. *Keegan*, 284 F.R.D. at 537. The same common issues predominate as to Plaintiffs' claim for unjust enrichment. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'").

Again, the relevant evidence applies equally to every Class Vehicle because FCA itself addressed the Clutch Defect as a common problem. Indeed, the X62 remedy alone shows that a significant percentage of Class Vehicles displayed the "pedal down issue," such that manifestation of the defect can be

established on a class-wide basis. The "pedal down issue" in the Class Vehicles reflects a latent defect that made the entire system susceptible to premature wear and catastrophic failure, which can be demonstrated using evidence common to the Class. Therefore, Plaintiffs can show with common proof that the defect is "substantially certain" to arise in all Class Vehicles during their useful life.

### B. Manifestation is Not Relevant to Class Certification Analysis

Evidence shows the "pedal down" issue has not been fixed. First, Plaintiffs' expert has opined that leaching plasticizer resulting from the defect will eventually contaminate all Class Vehicles and require the remediation he suggests. Second, that some Class Vehicles have not yet manifested symptoms of the Clutch Defect is, on its own, insufficient to defeat commonality or predominance. *See Daffin v. Ford Motor, Co*., 458 F.3d 549, 553-54 (6th Cir. 2010) (certification proper even though the defect only manifested itself in some vehicles); *Keegan*, 284 F.R.D. at 524 (certification was proper even though "some vehicles have not yet manifested premature or excessive . . . wear"); *Tait*, 289 F.R.D. at 479 (holding commonality to be satisfied where the plaintiffs alleged a design defect that made the subject appliances prone to developing bacteria and odors); *Allen v. Am. Honda Motor Co., Inc*., 284 F.R.D. 412 (N.D. Ill. 2009) (commonality satisfied where the plaintiffs alleged that motorcycles suffered from design defect even though many class members had not yet felt the effects).

The Ninth Circuit expressly addressed this issue in *Baker v. Microsoft Corp*., 797 F.3d 607, 613 (9th Cir. 2015), *cert. granted in part*, 136 S. Ct. 890 (2016), and *rev'd and remanded on other grounds*, 137 S. Ct. 1702 (2017), finding that the plaintiffs' claim presented common questions of fact and law: "is there a defect?" and "does that defect breach the express warranty?" *Id*. The Court, relying heavily on its ruling in *Wolin* for the proposition that a product's value may be diminished by a design defect, irrespective of the defect's

manifestation, *Id*. at 614-615, determined that "the timing and extent" of the damage the defect caused did not defeat class treatment. *Id*. at 613.

In *Wolin*, the Ninth Circuit emphasized the distinction between the *nature* of the defect alleged and its *consequences* and noting specifically that the plaintiffs' allegations regarding defendant's failure to reveal material facts when it sold a defective vehicle in violation of consumer protection laws are susceptible to proof by generalized evidence. *Wolin*, at 1173. Proof of a defect's manifestation, therefore, while relevant to the merits and measure of damages, "is not a prerequisite for class certification." *Baker*, 797 F.3d at 610-611 (citation omitted).

## C. Plaintiffs' Damages Model

Plaintiffs seek to recover the difference in value between the non-defective vehicles FCA promised and the defective vehicles that were delivered. (Zohdy Decl. ¶ 34, Ex. FF ¶¶ 11-13.) Plaintiffs' damages model is clearly tied to Plaintiffs' legal theory and can measure uniformly the economic harm FCA's failure to disclose the "pedal down issue" at the time of purchase or lease caused the Class. (Zohdy Decl. ¶ 34, Ex. FF ¶ 16.) Recently, in *Falco v. Nissan*, the court endorsed a similar damages model based on "benefit of bargain damages," and "average repair prices," noting that "by receiving restitution in the amount of average repairs, the class would be getting the benefit of their bargain because they would be put in the same position they would have been had the car not been sold with the defective timing chain system – it is the cost necessary to make the vehicles conform to make the value Plaintiffs thought they were getting in the price tendered." *Falco*, 2016 WL 1327474, at *12. *See also Kearney v. Hyundai Motor Co.,* 2010 WL 9093204, *5 (C.D. Cal. June 4, 2010) ("the receipt of a vehicle whose alleged defects reduced the car's value and deprived the consumer of the benefit of the bargain, even when the alleged defects did not later materialize -- i.e., the loss was suffered at the moment of purchase");

1 *Daniel v. Ford Motor Co.*, 2016 WL 2899026, at *7 (E.D. Cal. May 18, 2016)

2 ("a reasonable jury could conclude that a consumer would demand that the

3 purchase price of a vehicle with a defect be reduced by the cost of remedying the

4 defect.") In this case, the Clutch Defect, common to the Class Vehicles, requires

5 putative Class Members to spend money that they would not have spent had

6 FCA either disclosed the defect or cured it. Restitution in the amount of the

7 average cost to cure the defect puts the Class in the position it would have been

8 had the value of the Class Vehicles been that of the defect-free vehicles they

9 thought they were getting in the price tendered. (Zohdy Decl. ¶ 34, Ex. FF ¶ 17.)

10       Plaintiffs' damages model also complies with the requirements in *Comcast*

11 *Corp. v. Behrend*, 133 S. Ct. 1426 (2013), in which the Supreme Court clarified

12 that it is the plaintiff's burden to offer a damages model showing that "damages

13 are susceptible of measurement across the entire class for purposes of Rule

14 23(b)(3)." 133 S. Ct. at 1433. In the Ninth Circuit, *Comcast* requires that

15 "plaintiffs must be able to show that their damages stemmed from the

16 defendant's actions that created the legal liability." *Leyva v. Medline Indus., Inc.*,

17 716 F.3d 510, 514 (9th Cir. 2013). The Ninth Circuit has admonished that "[i]n

18 this circuit, . . . damage calculations alone cannot defeat certification. We have

19 said that '[t]he amount of damages is invariably an individual question and does

20 not defeat class action treatment.'" *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594

21 F.3d 1087, 1094 (9th Cir. 2010) (citation omitted). Notably, even after *Comcast*,

22 *Yokoyama* remains the law. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d

23 979, 987 (9th Cir. 2014) ("[s]ince *Comcast*, we have continued to apply

24 *Yokoyama's* central holding."). Further, "[i]n measuring damages, California law

25 requires only that some reasonable basis of computation of damages be used, and

26 the damages may be computed even if the result reached is an approximation . . .

27 [T]he fact that the amount of damage may not be susceptible to exact proof or

28 may be uncertain, contingent or difficult of ascertainment does not bar

recovery." *Pulaski*, 802 F.3d at 989. "So long as the damages can be determined and attributed to . . . plaintiff's theory of liability, damage calculations for individual class members do not defeat certification." *Lindell v. Synthes USA*, 2014 WL 841738, at \*14 (E.D. Cal. Mar. 4, 2014). Moreover, the Ninth Circuit recently held that at the class certification stage, plaintiffs need only propose a valid method for calculating class wide damages. *Leyva*, 716 F.3d at 514. As long as the damages model is "susceptible of class-wide measurement," Plaintiffs' damages model need not be perfect, and it need not be "precisely correct." *See Vaccarino v. Midland Nat'l Life Ins. Co.*, 2014 WL 572365, at \*10-13 (C.D. Cal. Feb. 3, 2014). Plaintiffs' damages model, which calculates money expended to diagnosis and/or repair the Clutch Defect by the uniform application of basic economic principles to common, class-wide evidence, is capable of measuring the economic harm caused by FCA's misconduct. (Zohdy Decl. ¶ 34, Ex. FF ¶ 18, 22-23.)

**D.  Superiority**

Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule provides four factors the Court must consider in Rule 23(b)(3)(A) through (D).[8] This case meets all the factors, and the class action is the superior litigation choice based on the size of the class and the potentially small individual damages, especially relative to the costs of litigating on an individual basis. *See Pecover v. Elec. Arts Inc.*, 2010 WL 8742757, at \*25 (N.D. Cal. Dec. 21, 2010) ("[T]he modest amount at stake for each purchaser renders individual prosecution impractical. Thus, class treatment likely represents

---

[8] The factors are: class members' interests in individually controlling the prosecution or defense; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of the claims in the particular forum; and the difficulties of managing a class action.

plaintiffs' only chance for adjudication."); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device."). Furthermore, concentrating class-wide claims in one forum also resolves common legal and factual issues, thus reducing inefficiencies in the use of judicial resources. *See Vinole v. Countrywide Home Loans, Inc*., 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy"). Finally, vehicle defect cases are prosecuted fairly regularly as class actions by consumers, demonstrating that there are no particular difficulties in managing them when appropriate.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify this action for class treatment, appoint the named Plaintiffs as class representatives, and appoint Plaintiffs' counsel as Class Counsel.

Dated: October 18, 2017

Respectfully submitted,

Capstone Law APC

By: /s/ Jordan L. Lurie
Jordan L. Lurie
Tarek H. Zohdy
Cody R. Padgett
Karen L. Wallace

Attorneys for Plaintiffs