William M. Low (Bar No. 106669)
wlow@higgslaw.com
Edwin Boniske (Bar No. 265701)
boniske@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, CA 92101-7913
Telephone: (619) 236-1551
Facsimile: (619) 696-1410

Kathy A. Wisniewski (admitted *pro hac vice*)
kwisniewski@thompsoncoburn.com
Stephen A. D'Aunoy (admitted *pro hac vice*)
sdaunoy@thompsoncoburn.com
Thomas L. Azar, Jr. (admitted *pro hac vice*)
tazar@thompsoncoburn.com
Scott H. Morgan (admitted *pro hac vice*)
smorgan@thompsoncoburn.com
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri 63101
Telephone: (314) 552-6000
Facsimile: (314) 552-7000

*Attorneys for Defendant FCA US LLC*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO, *et al.* | Case No. 3:16-cv-01617-GPC-JLB |
| Plaintiffs, | **FCA US LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| v. | |
| FCA US LLC, | Complaint Filed: June 24, 2016 |
| Defendant. | Trial Date: None Set<br>Hearing Date: March 9, 2018<br>Time: 1:30 p.m.<br>Courtroom: 2D<br>Judge: Hon. Gonzalo P. Curiel |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...........................................................................................1

II.  RELEVANT FACTS...................................................................................1

    A.     The Clutch Hydraulic Release System In the Dart Vehicles. ..............1

    B.     The Investigation Of, And Voluntary Remedy For, Excessive Plasticizer..........................................................................................2

    C.     The Purported Basis Of This Case. ....................................................4

    D.     Potential Causes Of Clutch Malfunctions And Repair Costs...............4

    E.     The Testimony Of Plaintiffs' Liability Expert Stapleford. ...................5

    F.     Facts Relevant To Plaintiff Adam Tavitian...........................................7

    G.    Facts Relevant To Plaintiff Carlos Victorino. .....................................9

    H.    Misconduct Issues Affecting Class Certification. ...............................10

III. ARGUMENT ..........................................................................................11

    A.     Plaintiffs' Failure To Address The Real Issues Precludes Certification. .........................................................................................11

    B.     The Class Definition Is Imprecise And Overly Broad. ......................12

    C.     Plaintiffs Have Failed To Prove The Rule 23(a) Requisites. ..............14

    D.     Failure To Prove The Predominance Requisite Of Rule 23(b)(3). ......19

    E.     No Proof Of Superiority As Required By Rule 23(b)(3). ...................25

IV. CONCLUSION ......................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akaosugi v. Benihana National Corp.*, 282 F.R.D. 241 (N.D.Cal. 2012) ..............19

*Alberghetti v. Corbis Corp.*, 263 F.R.D. 571 (C.D.Cal. 2010) ................................19

*Arabian v. Sony Elecs., Inc.*, 2007 WL 627977 (S.D.Cal. 2007)............................21

*Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F.Supp.3d 1306 (C.D.Cal. 2013)................................................................................................................................23

*Brazil v. Dole Packaged Foods, LLC,* 660 Fed.Appx. 531 (9th Cir. 2016) ......22, 23

*Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D.Cal. 2012)......15, 21

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .....................................................22

*Conn. Retirement Plans & Trust Funds v. Amgen. Inc.*, 660 F.3d 1170 (9th Cir. 2011) ..............................................................................................................11

*Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011) .................................................................................................18

*Doyle v. Chrysler Group, LLC*, 2014 WL 7690155 (C.D. Cal. Oct. 9, 2014), *grant of class cert. rev'd*, 663 Fed.Appx. 576 (9th Cir. 2016)...............19

*Duarte v. Ford Motor Co.*, 2013 WL 3146810 (E.D.Cal. 2013) ......................24, 25

*Falco v. Nissan N. Am. Inc.*, 2016 WL 1327474 (C.D.Cal. 2016) .........................23

*Falcon v. Philips Electronics North American Corp.*, 304 Fed.Appx. 896, 2008 WL 4820527 (2d Cir. 2008)...............................................................19

*Gerstle v. Am. Honda Motor Co., Inc.*, 2017 WL 2797810 (N.D.Cal. 2017)..........16

*Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501 (N.D. Cal. 2011)............................................................................................................14

*Grodzitsky v. American Honda Motor Co., Inc.*, 2014 WL 718431 (C.D.Cal. 2014) ........................................................................................15

*Hughes v. Stryker*, 2010 WL 1961051 (S.D.Ala. 2010) ........................................20

*In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litig.*, 2011 WL 6740338 (W.D.Mo. 2011)..........................................................22

*In re Mortg. Elec. Registration Sys. (Mers), Litig.*, 2015 WL 9268189 (D. Ariz. 2015) ...............................................................................................14

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prod. Liab. Litig.*, 915 F. Supp. 2d 1151 (C.D. Cal. 2013) .................................13

*In the Matter of Coale*, 775 N.E.2d 1079 (Ind. 2002)............................................17

ii

*Johnson v. Nissan N. Am., Inc.*, 2017 WL 4570712 (N.D.Cal. 2017) ....................16

*Klee v. Nissan N. Am., Inc.*, Case No. CV12-08238 (C.D.Cal.), Docket No. 50.................................................................................................................................17

*Kulig v. Midland Funding, LLC*, 2014 WL 5017817 (S.D.N.Y. 2014)..................18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)..........................................19

*Major v. Ocean Spray Cranberries, Inc.*, 2013 WL 2558125 (N.D.Cal. 2013).................................................................................................................................15

*Maracich v. Spears*, – U.S. –, 133 S.Ct. 2191 (2013)............................................14

*Mezzadri v. Medical Depot, Inc.*, 2016 WL 5107163 (S.D.Cal. 2016) ..................23

*Pagan v. Abbott Laboratories, Inc.*, 287 F.R.D. 139 (E.D.N.Y. 2012)...................25

*Philips v. Ford Motor Co.*, 2016 WL 7428810 (N.D.Cal. 2016)............................13

*Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157 (9th Cir. 2013)...........................................................................................................17, 18

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)..................16, 18

*Sanchez v. Wal Mart Stores, Inc.*, 2009 WL 1514435 (E.D.Cal. 2009) .................15

*Schellenbach v. GoDaddy.com, LLC,* 2017 WL 2902683 (D.Ariz. 2017) .............13

*Sims v. Kia Motors Am., Inc.*, 2014 WL 12558251 (C.D.Cal. 2014) .....................24

*Thomas v. Cty. of Los Angeles*, – Fed.Appx. –, 2017 WL 3049554 (9th Cir. 2017).................................................................................................................24

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) .............................13

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .........................................11

*Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D.Cal. 2011)...................................13, 25

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012).......................14, 21

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir.) .............................25

**Statutes and Constitutional Provisions**

Cal. Civ. Code § 1791 ...............................................................................................24

Cal. Civ. Code § 1792 ...............................................................................................24

Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.*.......................................14

Song-Beverly Act .......................................................................................................24

**Rules**

Cal. Rule Prof. Cond. 1-400 ................................................................................... 17

Cal. Rule Prof. Cond. 3-510 ........................................................................... 10, 17

Fed. R. Civ. Proc. 23 ........................................................................ 11, 14, 20, 25

**Other Authorities**

ABA Informal Op. 828 (March 3, 1965) .......................................................... 18

http://www.dodgedartlawsuit.com .................................................................. 13

# I. INTRODUCTION

Plaintiffs seek certification of a class of owners of certain model-year 2013 and 2014 Dodge Dart vehicles[1] equipped with a manual-transmission. Their claims are based on the theory that a voluntary customer service action initiated by Defendant FCA US LLC to address a clutch pedal sticking issue was inadequate because it provided only for replacement of the reservoir hose and the clutch master cylinder, and did not provide for replacement of the clutch slave cylinder. Yet, Plaintiffs ignore the remedy issue in seeking certification, choosing to focus entirely on what they claim is a "common" defect. But, Plaintiffs' own expert admits there is no common defect. For this, and a host of other reasons, certification should be denied.

# II. RELEVANT FACTS[2]

## A. The Clutch Hydraulic Release System In the Dart Vehicles.

*How It Works*: The clutch hydraulic release system is made up of a (1) brake master cylinder reservoir, (2) a clutch master cylinder, (3) a clutch slave cylinder, a reservoir hose that connects the reservoir to the master cylinder (the line between (1) and (2)), and a high pressure hydraulic line that connects the master cylinder to the slave cylinder (the line between (2) and (3)).



---

[1] The Dart vehicles at issue are only those built on or before November 12, 2014 (hereinafter referred to as "the Dart vehicles").

[2] Plaintiffs' proffered "facts" contain numerous misrepresentations about what documents say. Space limitations allow only for a single example: Exhibit K, an email dated June 10, 2013, is represented to support the notion that FCA US "identified fluid contamination as a possible root cause of the 'pedal down' problem by June 2013," but the email actually states "Root cause unknown at this time." *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Class Certification, Dkt. #140-1 ("Pl. Memo."), p. 7. FCA US asks the Court to carefully examine all exhibits referenced by Plaintiffs, and is sure the Court will find many do not support the arguments made.

*See* Declaration of Robert Benson filed herewith ("Benson Decl."), ¶¶ 7-12.  When a vehicle operator depresses the clutch pedal inside the vehicle, the clutch master cylinder is engaged, pushing fluid through the high pressure hydraulic line to the slave cylinder, which is actuated to disengage the clutch for shifting.  Benson Decl., ¶ 9.

*History Of Hydraulic Release System*:  Model-year 2013 Dodge Dart vehicles were launched in June 2012, and during that launch month it was discovered that due to a manufacturing error, a batch of slave cylinder seals were molded with an inclusion (a small particle of embedded material), which could cause clutch pedals to stick.  *Id.*, ¶¶ 13-16.  Corrective measures were implemented, and by August 2012, the inclusion issue was resolved, after which reports of clutch pedals sticking stopped until June 2013.  *Id.*

**B.**    **The Investigation Of, And Voluntary Remedy For, Excessive Plasticizer.**

In June 2013, FCA US started receiving random reports that customers were experiencing an issue with clutch pedals sticking in the down position in the morning.  *Id.*  On June 7, 2013, FCA US opened an investigation into these reports.  *Id.*

*The Investigation And Root Cause*:  FCA US and Valeo, the supplier of the clutch system components, did testing and analysis on returned parts, exemplar parts and vehicles, and vehicles in the field.  *Id.*, ¶¶ 17-20.  The root cause of the pedal sticking was found to be plasticizer leaching from a reservoir hose, which, in some vehicles, caused the primary seal to swell to the point that the seal blocked the normal flow of hydraulic fluid between the hydraulic fluid reservoir and the high pressure side of the hydraulic clutch release system.  *Id.*

Plasticizer is a normal compound used in the manufacture of rubber components.  *Id.*, ¶ 22.  Some amount of swelling from absorption of plasticizer is natural for all seals, so seal swelling, in and of itself, would not necessarily affect performance of the clutch system; part tolerances play a role.  *Id.*  It is impossible to manufacture any component, including seals and plasticizer, so that they are consistently identical.  *Id.*,

¶ 21. Thus, plasticizer and seals, like other vehicle components, are designed to have permissible manufacturing tolerances. *Id.*

The excessive seal swelling condition would not occur in all model-year 2013-2015 Dodge Dart vehicles because, due to allotted tolerances, not all reservoir hoses were manufactured with the same amount of plasticizer, not all primary master cylinder seals were manufactured the same size, and not all primary seals were positioned on the master cylinder piston in the same way. *Id.*, ¶ 21. It was only when a vehicle contained components that had a combination of high plasticizer amounts ***and*** seals manufactured at the higher end of the tolerance range, and/or seals positioned closer to the port on the piston, that the seal swell blocked the reservoir port and caused a clutch pedal sticking condition. *Id.* These instances were random. *Id.*

Testing revealed that swelling in primary seals of clutch master cylinders varied by as much as 9%, depending on the amounts of plasticizer used in the original manufacture of the reservoir hose, and the size of the seal to begin with. *Id.*, ¶ 22. Ultimately, it was concluded that only a maximum of 16% of Dodge Dart vehicles manufactured prior to November 12, 2014 might be affected by the seal swelling issue. *Id.* If a vehicle was affected by the issue, it generally became symptomatic by the time it was driven 30,000 miles. *Id.*, ¶ 23.

*FCA US's Warranty Extension*: In January 2016, FCA US implemented a voluntary customer service action in the form of an extended warranty on the reservoir hose and clutch master cylinder, known internally as CSN x62 ("x62"), to address the condition with the leaching plasticizer. *Id.*, ¶¶ 24-25. Individual written notice of x62 was given to all owners and lessees of the Dart vehicles, informing them that their vehicles "may experience a loss of clutch pedal operation, including limited pedal travel and limited clutch disengagement." *Id.*, ¶ 25. The owners were instructed to put the written notice of this potential condition and x62 in the glovebox of their vehicle, along with their other vehicle information. *Id.* The notice indicated that vehicle owners could submit a request to FCA US to obtain reimbursement of any costs associated with prior

repairs of the reservoir hose and master cylinder. *Id.*

In connection with x62, FCA US released to its authorized dealerships Service Bulletin 06-001-16 ("SB") that communicated a repair procedure – replacement of the reservoir hose and master cylinder, and bleeding the clutch hydraulic release system – for vehicles that exhibited symptoms of seal swell. *Id.*, ¶ 26. Because the slave cylinder was determined to be unaffected by seal swelling, the SB did not provide for its replacement. *Id.*, ¶¶ 26-30. Out of the approximately 2,000 vehicles sold to residents of California, there have been only 39 warranty claims related to the slave cylinder component, and these claims had a host of different root causes. *Id.*, ¶ 30.

## C.    The Purported Basis Of This Case.

As this Court has recognized, Plaintiffs' theory is that x62 "fixed part of the problem but not all of it," and this is why "Plaintiffs filed this action." Dkt. #91, p. 9. Plaintiffs are purportedly predicating liability on: (1) "the failure of [x62] to provide a complete remedy to the contamination caused by the hydraulic fluid in the clutch system" *i.e.,* x62 "should have also included replacement of the slave cylinder and a thorough cleaning of the metal tubing to remove any contamination"; and (2) "an independent defect in the slave cylinder" involving the use of a plastic base "that causes the slave cylinder to be less stable, results in unintended lateral movements and causes the piston inside the cylinder to become jammed." *Id.*, pp. 10-11.

## D.    Potential Causes Of Clutch Malfunctions And Repair Costs.

*Causes For Clutch Release System Failures*:  Drivers can damage clutch system components, including master cylinders and slave cylinders, by bad driving habits, *e.g.,* resting a foot on a clutch pedal while driving, "feathering" the clutch pedal, "dumping the clutch," or skipping gears.  Benson Decl., ¶¶ 32-35.  Master cylinder and slave cylinder components can also fail or become damaged from accidents or normal wear and tear. *Id.*, ¶¶ 36-38.  The cause of a problem with the clutch system (*e.g.,* whether it was caused by a swollen seal, bad driving habits) can only be determined by inspecting

each affected vehicle.[3]  *Id.*, ¶ 38.

*Repair Costs*:  The costs California dealerships charge to repair a vehicle's reservoir hose, master cylinder or slave cylinder vary widely from location-to-location and dealership-to-dealership, and depend on factors such as labor rates, component costs, technician experience, and vehicle condition.  Declaration of Kirk Irvine, filed herewith, ¶¶ 4-10.  Actual cost can be known only after a repair is completed.  *Id.*

## E.      The Testimony Of Plaintiffs' Liability Expert Stapleford.

*Testimony About Seal Swelling*:  Plaintiffs designated Michael D. Stapleford to testify on their behalf regarding the "defect" that they allege to exist in their vehicles. At deposition, he testified:  some swelling of seals is "just natural" (Exh. A,[4] pp. 170-71); swelling is an issue only when it affects the "operation of a component" (*id.*); plasticizer is a common "additive" used to keep parts "both durable and flexible" (*id.*, pp. 109, 170); it is "impossible to make each and every part exactly the same" (*id.*, p. 91); all vehicle components have tolerances and are built within a range (*id.*, pp. 90-91); in the Dart vehicles the amount of plasticizer used (*i.e*, where it fell on the tolerance range) could mean there are "varying concentrations of plasticizer and fibers getting into the hydraulic system" (*id.*, pp. 159, 163); the amount of plasticizer directly affects whether or not, and the extent to which, component seals might swell and a vehicle with less plasticizer will be less likely to be affected by seal swelling (*id.*, pp. 159-60); the size of "every single part" in the clutch system, in terms of where it fits on the tolerance spectrum, will determine whether seal swelling could actually be an issue (*id.*, pp. 163-164); "it could be a very particular [tolerance] stack-up issue where

---

[3]FCA US inspected Tavitian's vehicle on August 16 and 17, 2016.  *See* Declaration of Michael Royek, filed herewith ("Royek Decl."), ¶¶ 7-9.  The inspection showed evidence of hard and aggressive driving, and an overall lack of maintenance. *Id.*, ¶ 9.  The clutch system was malfunctioning, but it was confirmed that the problems were unrelated to the clutch master cylinder or reservoir hose.  *Id.*, ¶ 10.  FCA US inspected Victorino's vehicle on May 24, 2017, and that inspection showed the clutch system in his vehicle was operating as designed.  *Id.*, ¶¶ 4-6.

[4]The Exhibits referenced herein are those attached to the Declaration of Stephen A. D'Aunoy, filed simultaneously herewith.

you are actually going to get" a pedal-stick issue (*id.*, p. 164); if "the build tolerances in the clutch master cylinder are such that it's not blocking off the port, then in that scenario, you won't get any symptoms" (*id.*, p. 166).

*Testimony About Vehicle Repairs*: Stapleford also testified that: components in the hydraulic clutch system should be replaced "***if [the vehicle] exhibits signs of seal swell***" (*id.*, pp. 156-57); "it's not a good idea to [change] parts that don't need to be changed" (*id.*, p. 192); ***he is not aware of "any" vehicle that underwent a x62 repair and then needed a subsequent clutch system repair, other than Tavitian's vehicle*** (*id.*, pp. 217-218); the amount of time to complete a master cylinder or salve cylinder repair will depend on the dealership, technician level, and technician's experience (*id.*, p. 219); repair time for a slave cylinder could vary by as much as 4 hours (*id.*, p. 220); a dealership can charge any retail price it wants for parts used in a repair (*id.*, p. 221).

*Testimony About Causes Of Clutch Problems*: Stapleford admits that: clutch components can fail for a number of different reasons, including "age", manufacturing issues, "oil contamination", "water contamination", and "corrosion" (*id.*, pp. 113-15, 155); vigorous rapid pumping of the clutch pedal can cause a slave cylinder failure, but only in the Dart vehicles equipped with a 1.4 liter engine (*id.*); driving habits can cause failures of clutch system components, including "riding the clutch," leaving the clutch engaged while at a stop light, "dumping the clutch," "popping the clutch," or using the clutch as a brake during downshifting (*id.*, p 116-19); an inspection is necessary to "diagnose" the cause of a malfunction of a clutch system component like a master cylinder or a slave cylinder (*id.*, p. 116).

*Testimony About Slave Cylinders*: According to Stapleford: ***"the slave cylinder's two-piece design" is "not contributory to the problem"*** at issue (*id.*, pp. 200-201, 225-226); the two-piece design can "exacerbate matters a little bit," but only if abnormal seal swell is present, and he "can understand why the team of FCA and Valeo decided that [this design] was a good idea." (*id.*).

## F.    Facts Relevant To Plaintiff Adam Tavitian.

*Vehicle Purchase And Experience*:  Tavitian purchased a model-year 2013 manual-transmission Dodge Dart in November 2012.  FAC, ¶ 40; Exh. B.  He expected the clutch to last at least as long as the vehicle's 3-year/36,000 mile Basic Limited Warranty, and he admits that his expectation was met.  Exh. C, pp. 37, 92-93.  In fact, it was not until July 2014, and at 42,075 miles, that he first took his vehicle to a dealership to complain that the clutch was sticking and failing at times to shift gears.  *See* Exh. D.  There, the dealership found that Tavitian had removed his vehicle's odometer and replaced it with a newer one which displayed 28,697 less than its actual mileage.  Exh. C, pp.  85-86, 115, 136-137, 149-150; Exh. D; Exh. E.  The dealership replaced the vehicle's clutch master cylinder.  Exh. D.  Tavitian paid $298.33 for the repair, and his subsequent request for reimbursement under x62 was denied because his odometer tampering had voided all warranties.  Exh. F.

On July 11, 2016, **after** this case was filed, Tavitian took his vehicle (which had been driven 62,043 actual miles) to a different dealership complaining of shifting problems.  Exh. G.  FCA US attempted to inspect the vehicle for purposes of this litigation before a repair was started, but found the cause of the current issue with the vehicle could not be determined without replacement of the clutch master cylinder and reservoir hose (the x62 repair), and thus these replacements were made at no charge to Tavitian.  *Id.*; *see also* Dkt. #134, pp. 4-5.  Eventually, however, the dealership found that the problems were caused by a "worn out" clutch that was accompanied by "signs of overheating," and that the "throw out bearing" was "coming apart and leaking."  Exh. G.  Tavitian declined the repairs needed to fix his vehicle.  *Id.*

*J&E Auto Repairs*:  In October 2016, Tavitian took his vehicle to J&E Auto Services, Inc., which is owned by Emad Salama.  At deposition, Salama testified that he attempted to repair Tavitian's vehicle by replacing a variety of clutch-related components, including the slave cylinder; however, none of the repairs he implemented actually fixed Tavitian's vehicle.  Exh. H, pp. 11, 14, 21-30, 41-47; *see also* Exh. C,

pp. 254; Dkt. #134, pp. 5-6.

*The Eventual "Fix"*:  In early 2017, Tavitian again took his vehicle to a FCA US dealership, and at which time it was found that a hydraulic hose needed to be replaced. Dkt. #134, pp. 5-6.  This repair worked, and Tavitian's vehicle has had no further problems since.  Exh. C, pp. 269-270.

*Involvement In This Case And Damage Claims*:  Tavitian got involved in this case after finding the Capstone firm via an internet search.  Exh. C, pp. 302-03.  All he knows about the firm is that it has been involved in prior litigation against FCA US. *Id.*, p. 305.  He does not know that this case involves allegations of leaching plasticizer (*id.*, p. 158); he does not believe that he has any responsibilities with respect to how much his attorneys seek in fees (*id.*, p. 319); ***he understands that his situation is unique because his vehicle's warranties were voided due to odometer tampering*** (*id*, pp. 164, 166); and, he admits that he provided incorrect responses to interrogatories (*id.*, pp. 173, 175).  What Tavitian wants from this case is the amounts he paid for past repairs, including that billed to him by J&E (which he did not pay), as well as costs associated with vehicle towing and a rental car.  Exh. C, pp. 273-74, 278-79.  He also wants his voided warranties reinstated.  *Id.*, p. 274.

*Testimony of Witness David Tavitian*:  David is Plaintiff Tavitian's father, and sold him the Dart vehicle at a discount when he was employed in vehicle sales at a FCA US dealership.  Exh. I, pp. 6, 25, 40, 100-01.  He has a degree in mechanical engineering, has been involved in the restoration of vehicles as a hobby his entire life, and has worked on clutches.  *Id.*, pp. 49, 54-56.  When asked whether he believes his son's Dart vehicle has a defect, he responded "[d]efective, no," and went on to say that the only problem related to his son's vehicle is the voiding of the warranty.  *Id.*, p. 132. It is his belief that, as of when he was deposed in late June 2017, his son's Dart vehicle was "operating fine," and when he last saw the vehicle its overall condition was "very good".  *Id.*, pp. 86-87.

## G. Facts Relevant To Plaintiff Carlos Victorino.

*Vehicle Purchase And Experience*: Victorino purchased a model-year 2014 manual-transmission Dodge Dart vehicle in March 2014. Exh. J. He knew that manual transmission clutch components were "wear items" and would "wear out over time" and need replacement. Exh. K, pp. 83-85. After driving his Dart vehicle for almost two years, Victorino noticed that it had started "bogging down," and that the gears were not properly "catching" when shifting. Exh. L, #7. After "a week or two," on January 12, 2016, Victorino took his vehicle (which had been driven 34,351 miles) to a third-party dealership. Exh. K, pp. 121-123; Exh. M. The dealership determined that the clutch was simply "worn out," and that the clutch, slave cylinder, and flywheel were all "overheated and warped." *Id.* The dealership found this resulted from "normal wear and tear"; there was no "defect" or swollen or damaged seals found. Exh. N. There was no problem with the clutch master cylinder in Victorino's vehicle. Exh. M. The flywheel was replaced at no charge, and the remaining repairs to the clutch system cost him $1,165.31. *Id.* Victorino requested reimbursement of this amount under x62, but the request was declined because the dealership reported that "[t]he reason for the repair was the clutch was worn out," and there was no replacement of the hose or clutch master cylinder, *i.e.*, the components covered by x62. Exh. K, p. 138; Exh. N. As of April 2017, Victorino's vehicle had been driven "about 60,000 miles," and had required only that single clutch repair. Exh. K, pp. 36-37, 101-102, 143. Victorino never reported to any dealership that the clutch pedal in his Dart vehicle was sticking to the floor. *Id.*, p. 99.[5] No dealership has ever diagnosed any issue with swollen seals in Victorino's vehicle.

*Involvement In This Case*: Victorino got involved in this case after finding the Capstone firm while doing an internet search. Exh. K, p. 178. He does not recall

---

[5]In a declaration filed with his Motion for Class Certification, Victorino now claims that since January 2016, the clutch pedal on his vehicle has dropped to the floor three times. *See* Pl. Exh. HH., ¶ 11. There is no indication that Victorino has ever sought a diagnosis or repair of the condition, and thus it is impossible to relate it to the defect he puts at issue here.

reviewing the Complaint before it was filed. *Id.*, p. 109. He believes his claims are about a defect, but he has no understanding of what the defect is (*id.*, p. 102); he doesn't know what vehicles are at issue (*id.*, pp. 26-27); he has no understanding of his duties and responsibilities as a class representative (*id.*, p. 187); he believes he has no interest and no responsibilities with respect to how much his attorneys will seek in fees (*id.*, p. 190); he believes he has no financial obligations (*id.*, pp. 190-191); and, he admits that he gave inaccurate information in discovery responses (*id.*, pp. 197-98). Victorino was told by the Capstone firm that they would seek an incentive award for him. *Id.*, p. 169. He believes that he has been damaged by the amounts he paid for the single repair to his vehicle. *Id.*, pp. 163-64.

**H.     Misconduct Issues Affecting Class Certification.**

*The Court's Finding That Ethical Rules Have Been Violated*: This Court has already found that, during the course of this litigation, the Capstone firm (proposed class counsel) violated California Rule of Professional Conduct 3-510 for failing to communicate individual settlement offers to their clients. *See* Dkt. #115. By operation of time, the offers were rejected without Plaintiffs knowing of them. *Id.*

*The Court's Finding That Evidence Has Been Spoliated*: When Tavitian took his Dart vehicle to J&E/Salama, numerous components were removed from it. *See* Dkt. #134. Salama threw these components away after holding them for several days and receiving no request for their return. *Id.* This Court has entered spoliation sanctions in the form of an adverse jury instruction for this spoliation. *Id.*

*The Improper Solicitation And Two Separate Conflict Representations*: The Capstone firm is involved in two conflict representations related to this case.

*First*, they represent David Tavitian ("David"), Plaintiff Tavitian's father and the individual who sold the Tavitian vehicle. On May 18, 2017, David was served by FCA US in Indiana with a subpoena for a deposition. Exh. O; *see also* Exh. I, pp. 4-5. The subpoena directed him to appear for deposition in Indiana on June 9, 2017. *Id.* In late May 2017, the Capstone firm informed FCA US that they represented David (*see*

Exh. P); however, David testified that he was not contacted by the Capstone firm until, at the earliest, the first week of June (Exh. I, p. 13). Prior to being contacted by Cody Padgett of the Capstone firm, David had never heard of the firm, he had not been expecting a call from anyone at the firm, and he had never discussed the firm with anyone, even his son. Exh. I, pp. 12-14. During the initial call with the Capstone firm, David was told that the problem with his son's vehicle was a "clutch slave cylinder" and the scheduling of his deposition was discussed. *Id.*, pp. 15-16. The Capstone firm offered to represent him for free. *Id.*, pp. 17-18, 159.

*Second*, after FCA US subpoenaed Emad Salama (J&E Auto Repairs) for deposition, the Capstone law firm approached him and offered to represent him for purposes of his deposition and for all claims made against him related to the work done on Tavitian's vehicle. *See* Exh. H, pp. 13-14, 48-49. Salama agreed to the representation, and on May 26, 2017, the Capstone firm confirmed in writing that Salama was their client. *Id.*; *see also* Exh. Q.

### III. ARGUMENT

The party seeking class certification bears the burden of demonstrating that the requirements of Rule 23 are satisfied. *Conn. Retirement Plans & Trust Funds v. Amgen. Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011). The Rule "does not set forth a mere pleading standard"; a party "must affirmatively demonstrate [] compliance" with its requisites. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

### A. Plaintiffs' Failure To Address The Real Issues Precludes Certification.

In seeking certification, Plaintiffs proffer circular arguments which, in the end, are so vague and indecipherable no certification could possibly be granted. As an initial matter, Plaintiffs have apparently abandoned their quest for certification based on "an independent defect in the slave cylinder" theory, as they do not mention it and their own expert admits that the design of this component is not the problem (best case scenario for Plaintiffs, the design of the slave cylinder "exacerbate[s] [the issues] a little bit" if abnormal seal swelling has already occurred). *See* § II.E. And, remarkably, while

Plaintiffs at first declare that this case is simply about the single issue of whether x62 provided a sufficient repair when it was limited to only the reservoir hose and clutch master cylinder, and did not include replacement of the clutch slave cylinder (Pl. Memo, pp. 1-3), they completely ignore this single issue in the context of arguing the certification requisites are satisfied. The sole focus of Plaintiffs' arguments on the class requisites is the purported issue of whether a "defect" exists. There is no mention of whether x62 went far enough. Plaintiffs simply argue that the defect issue alone is sufficient to satisfy the class requisites because, by implementing x62, FCA US has already admitted that there is a common defect. *See, e.g., id.*, pp. 13, 15, 17-18, 19. In other words, Plaintiffs seem to be saying that the class requisites are satisfied because the main issue is whether there is a defect, while declaring that there is really no issue to resolve as to whether a defect exists.

Even if one were to accept Plaintiffs' arguments that the issue of whether there is a defect is the definitive one, certification must be denied. The only things that FCA US witnesses and Plaintiffs' expert agree on is that the issue of whether the Dart vehicles have the "defect" is *not* common because the existence of the defect depends on the size and position of the clutch system seals, and the amount of plasticizer in each reservoir hose, and these factors vary from vehicle-to-vehicle. *See* §§ II.B, II.E. In other words, this case involves a "manufacturing" defect that happens randomly, and only if seal size *and* seal position *and* plasticizer amount *all* converge in a single Dart vehicle. Plaintiffs try to divert this Court from this fact by labeling the purported "defect" as one in "design" (*see, e.g.,* Pl. Memo, pp. 1, 2, 14, 18, 20), and by arguing about a "clutch system" that is of the same design (*id.*, p. 5). These characterizations ignore the reality that the "clutch system" is composed of multiple parts, and, as Plaintiffs' own expert admits, the parts are not the same.

**B.** **The Class Definition Is Imprecise And Overly Broad.**

The Ninth Circuit has made clear that a class cannot be certified where it includes "large numbers of class members who were never exposed to the challenged conduct to

---

12

begin with." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) (citation omitted). Plaintiffs have made no attempt here to narrow the class to ensure it includes only those damaged by the alleged wrongful conduct. To the extent the wrongful conduct is supposed to be the insufficiency of the x62 repair, Plaintiffs have not limited the class to those who needed a repair under x62. To the extent the wrongful conduct is about the failure to disclose a defect, the class is way overbroad because it includes purchasers of the 84% of vehicles that do not have the manufacturing defect complained of. *See* Benson Decl., ¶ 22. The issue here is not whether the Dart vehicles have the same "clutch system", but, rather, whether that system's component parts (seals, plasticizer) and processes (seal placement) are all the same. Plaintiffs' own expert admits they are not.[6] Courts have rejected certification bids when so many not exposed to the alleged wrongful conduct are included in a class. *See, e.g., Schellenbach v. GoDaddy.com, LLC,* 2017 WL 2902683, at *7 (D.Ariz. 2017); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 498 (C.D.Cal. 2011).

The class is also overbroad because it includes everyone who ever purchased one of the Dart vehicles, whether new or ***used***, and thus improperly includes consumers who: (1) bought and resold without having any clutch-related issue[7]; (2) purchased a used vehicle with notice of the defect because the owner heeded FCA US's instruction and put the x62 notice in the glovebox of the vehicle;[8] (3) had knowledge of the plasticizer issue through information in the public domain, like the website maintained by Plaintiffs' counsel[9]; and/or (4) purchased their vehicle before FCA US had

---

[6]*See* Exh. A, pp. 158-160, 162-64, 166, 170-71.

[7]*See In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prod. Liab. Litig.*, 915 F. Supp. 2d 1151, 1159 (C.D. Cal. 2013) (consumers who use a product without incident "received precisely what [they] bargained for").

[8]*See Philips v. Ford Motor Co.*, 2016 WL 7428810, at *16 (N.D.Cal. 2016) (no certification where class included members who knew about the alleged defect).

[9]*See* http://www.dodgedartlawsuit.com.

13

knowledge of the alleged plasticizer defect.[10]  The inclusion of used vehicle purchasers raises the additional problem of a class definition that is not "sufficiently definite." *See, e.g., Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 508 (N.D. Cal. 2011).  Including "all" purchasers results in an amorphous class, one that is growing every day as the Dart vehicles are resold to new purchasers in California.  This is improper.  *See In re Mortg. Elec. Registration Sys. (Mers), Litig.*, 2015 WL 9268189, at *5 (D. Ariz. 2015).  The inclusion of used vehicle purchasers also creates a problem in membership identification and ascertainability, which, Plaintiffs admit, they must satisfy.  *See* Pl. Memo., pp. 11-12.  Plaintiffs do not explain how used vehicle purchasers can be identified when FCA US is not required to keep records of them, and the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721, *et seq.*, regulates and limits the disclosure of personal information in state motor vehicle records.  *See Maracich v. Spears*, – U.S. –, 133 S.Ct. 2191 (2013).

**C.** **Plaintiffs Have Failed To Prove The Rule 23(a) Requisites.**

*Commonality*:  The only common questions that Plaintiffs identify are those squarely related to whether there is a defect.  *See* Pl. Memo, pp. 12-13.  They do not even contend that there is any common question when it comes to the issue of the sufficiency of the repair.  *Id.*  And, of course, they argue that "defect" is not really an issue that needs to be litigated since their claims are premised on the same "defect" that FCA US already admitted to exist in the context of x62.  In any event, commonality is lacking even as to the purportedly "common" defect-related questions identified by Plaintiffs because they all assume the Dart vehicles have *identical* clutch system components, but even their own expert admits this is not true.  *See* § II.E.  Because putative class members did not did not purchase vehicles with identical clutch components, the "answer" to the purportedly common questions implicating the issue of whether there is a "defect" could be "yes" for one, and "no" for others, and this means

---

[10]*See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) (CLRA and UCL claims premised on alleged product defects require proof that "defendant was aware of a defect *at the time of sale*" (emphasis added)).

that the defect question is not a common one. *See, e.g., Grodzitsky v. American Honda Motor Co., Inc.*, 2014 WL 718431, *6 (C.D.Cal. 2014) (finding common questions listed by the plaintiff were dependent on a common answer to the "defect" question, and, thus, because there was no common answer to the "defect" question, the other identified questions were not common); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 551-56 (C.D.Cal. 2012) (same).

*Typicality*: Courts find typicality lacking where, as here, there are variations in the products at issue (*see, e.g., Major v. Ocean Spray Cranberries, Inc.*, 2013 WL 2558125, *3 (N.D.Cal. 2013), and where the claims pleaded implicate a consumer's knowledge in purchasing decisions (*see, e.g., Sanchez v. Wal Mart Stores, Inc.*, 2009 WL 1514435, at *3 (E.D.Cal. 2009). Plaintiffs do not address these issues but, instead, devote almost the entirety of their typicality discussion to relitigating this Court's finding that Plaintiff Tavitian spoliated evidence. *See* Pl. Memo., pp. 14-15. While it is crystal clear that Tavitian is atypical because of his spoliation, by focusing solely on this issue Plaintiffs miss a host of facts that make clear typicality is lacking.

Plaintiffs' theory that x62 did not go far enough is entirely dependent on the extent and effect of seal swelling in the clutch system parts. But, Plaintiffs ignore how different their claims are from others with respect to these issues. The sole repair performed on Victorino's vehicle was for a "worn out" clutch. He never had ***any*** repair under x62 (let only one that was simply inadequate), and, notably, his vehicle has never had any seal swelling issue in any clutch system component.[11] And, while it is possible that the clutch master cylinder repair done to Tavitian's Dart vehicle puts him among the 16% of owners having vehicles with all the conditions required for the "defect", the fact is that he tampered with his odometer and ***he outright admits that this is an issue unique to him***. *See* § II.F. This makes him atypical of every other vehicle owner

---

[11]Victorino's new self-serving attestation that the clutch pedal in his Dart vehicle has "dropped" three times since January 2016 (*i.e.,* in the past ***2 years***), is irrelevant because (1) he has never pleaded a claim based on this; and (2) he has never even sought a repair for this purported condition, let alone received a diagnosis that it is related to an issue in this case such as seal swelling.

15

whose claims are not negatively impacted by a spoliation sanction.

Plaintiffs' vehicle purchase dates also highlight the lack of typicality. Tavitian purchased his vehicle in November 2012, and Victorino purchased his in March 2014. *See* §§ II.F, II.G. The undisputed evidence proves that between these two purchases FCA US's knowledge related to the clutch sticking issue in the Dart vehicles changed dramatically. *See* § IIB. Furthermore, Plaintiffs' admitted knowledge that the clutch systems in their vehicles would wear out and need replacement, and, particularly, Tavitian's admission that the clutch system in his vehicle met his personal longevity expectations, renders them atypical of vehicle owners who lacked such knowledge or who expected something different/ more than Plaintiffs expected. *See* §§ II.F, II.G.

The lack of typicality is even more evident when it comes to those who, unlike Plaintiffs, purchased their vehicles used. Plaintiffs claim they were not told of the clutch system defect, but those who purchased after the announcement of x62 most likely were told this very information since prior owners were instructed to put the notice of it in the glovebox and leave it with the vehicle. *See* § II.B. Even before this, Plaintiffs' counsel put notice of the purported defect in the public domain though their website making it possible that purchasers of used vehicles had actual knowledge through that source (or publicly-posted complaints). *Id.* Plaintiffs are also atypical of the used vehicle purchasers in their proposed class because they have Song-Beverly and unjust enrichment claims while used vehicle purchasers do not. *See, e.g., Johnson v. Nissan N. Am., Inc.*, 2017 WL 4570712, at *7 (N.D.Cal. 2017) (Song–Beverly does not create implied warranty against manufacturer for used goods); *Gerstle v. Am. Honda Motor Co., Inc.*, 2017 WL 2797810, at *14 (N.D.Cal. 2017) (no unjust enrichment based on purchase of used cars).

***Adequacy***: Demonstration of compliance with the adequacy requisite is vital to due process. *See, e.g., Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 959 (9th Cir. 2009). As Plaintiffs admit, both they and their counsel must independently satisfy the adequacy requisite. *See* Pl. Memo, p. 16.

_Proposed Class Counsel_:  Plaintiffs effectively argue that proposed class counsel satisfies the adequacy requisite because they are licensed attorneys and have pursued this case with vigor, winning a few motions along the way.  Pl. Memo, p. 17.  Plaintiffs act as though this is enough regardless of their counsels' ethics and trustworthiness.  This is simply not the law.  _See, e.g., Radcliffe v. Experian Information Solutions, Inc._, 715 F.3d 1157, 1167 (9th Cir. 2013) (holding "[c]lass counsel has a fiduciary duty to the class as a whole" and finding that ethical violations rendered class counsel inadequate).  And, here, there are significant questions as to proposed class counsel's adequacy because the actions set forth below occurred ***during this litigation*** and raise questions as to their integrity and trustworthiness:[12]

- as this Court has found, they violated California Rule of Professional Conduct 3-510 by not communicating settlement offers to their clients "rais[ing] a question as to counsels' integrity and trustworthiness to represent the interests of the class" (*see* § II.H);

- they rejected their clients' settlement offers without their consent leaving the specter that, via their retainer agreements or otherwise, Plaintiffs have improperly ceded all control of the case to their counsel (*id.*);

- they violated ethical rules by improperly soliciting legal work from a third-party witness (David Tavitian) in Indiana where they are not licensed,[13] and engaged in the unauthorized practice of law by representing him in Indiana at a deposition he had been subpoenaed to appear at (*id.*);[14] and

- they violated ethics rules when they undertook representation of ***two*** witnesses with interests that conflict with Plaintiffs, one (Salama) who potentially bears liability for one of the repairs at issue, and one (David Tavitian) who testified that he does not believe Plaintiffs' claim that a

---

[12]FCA US is not the first to question proposed class counsel's actions in prosecuting a class action.  *See Klee v. Nissan N. Am., Inc.*, Case No. CV12-08238 (C.D.Cal.), Docket No. 50, at pp. 2-3 & *passim* (the Honorable Judge Kozinski objecting to proposed class action settlement negotiated by the Capstone firm, and challenging settlement as "a sham," "bogus," "a betrayal of the class," and "easy money for Plaintiffs' counsel, who have clearly placed their interests above those of the class to whom they owe fiduciary duties").

[13]*See, e.g., In the Matter of Coale*, 775 N.E.2d 1079 (Ind. 2002) (holding it is improper for an attorney not licensed to practice in Indiana to solicit legal business from Indiana residents).

[14]Plaintiffs' counsel may have also engaged in improper solicitation of third-party witness Emad Salama by contacting him directly in person and offering to represent him.  *See* Cal. Rule Prof. Cond. 1-400.

vehicle defect exists (*id.*).[15]

These actions by proposed class counsel compel a finding that the adequacy requisite cannot be satisfied. Indeed, far fewer acts of unethical or questionable conduct of even lesser magnitude by proposed class counsel have been found to raise questions as to their loyalty to the class and to compel denial of certification. *See, e.g., Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1167-68 (9th Cir. 2013) (class counsel inadequate for representing clients with conflicting interests); *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011) (counsel inadequate where they misled parties as to ability to keep information confidential and falsely implied class had already been certified); *Kulig v. Midland Funding, LLC*, 2014 WL 5017817, *3-6 (S.D.N.Y. 2014) (counsel inadequate based solely on failure to communicate settlement offer).

*Plaintiffs*: The evidence proves that both Tavitian and Victorino lack sufficient knowledge of the claims and events in this case, and it clearly suggests that they have simply ceded control to their attorneys to make all decisions, including whether any settlement should be accepted or rejected. *See* § II.H. And, having resisted with full force the disclosure of their retainer agreements, Plaintiff simply cannot prove that they have no disqualifying conflict of interest (and the burden is on them to prove this).[16] *See, e.g., Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 959-60 (9th Cir. 2009). Adequacy is lacking because there is no proof that Plaintiffs are in charge of their own case, and there is no proof that they do not have a conflict of interest with the class. *See, e.g., id.* (conflict of interest created by retainer agreement made plaintiffs inadequate); *Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 577-80 (C.D.Cal. 2010) (plaintiffs are not adequate if they simply lend their name to a lawsuit).

---

[15]The Ninth Circuit has made clear that "California ethics rules [] prohibit representation of clients with conflicting interests." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013) (citations omitted); *see also* ABA Informal Op. 828 (March 3, 1965) ("it is not proper for the attorney [of a party] to invite the witness to engage him as attorney to represent the witness during the deposition").

[16]Plaintiffs vehemently fought throughout the litigation to avoid production of their retainer agreements. *See* Dkt. ##52, 136. They offer nothing which proves that those agreements do not create a conflict of interest or cede all control to counsel.

Furthermore, both Plaintiffs have a direct and irreconcilable conflict with putative class members who purchased used vehicles. Plaintiffs seek to recover damages under a theory that they were injured at the point of sale by paying too much for a vehicle that was "defective". Pl. Memo, pp. 1, 22. This damage claim results in a clear and irresolvable conflict because only one person in the chain of ownership can suffer such damages. This is because an original owner who paid "too much" either discloses at the time of resale/trade the purported "defect" and gives a discount for it (thereby keeping the damage claim), or he fails to disclose what he knows and gets paid for a non-defective vehicle at the time of resale thereby recouping his loss. Clearly, there will be conflicts between class members as to who paid what and when, and who owns a "paid too much" damage claim and who does not.

But, there are even more significant reasons that Plaintiffs are not adequate. Tavitian is subject to an adverse jury instruction due to spoliation of evidence. Every court to have been faced with such a circumstance has concluded adequacy is lacking.[17] And, Victorino is not an adequate representative because he lacks standing to pursue the theory underlying all the claims at issue. Plaintiffs posit that the purported defect is one involving a clutch pedal "sticking" caused by "seal swelling." However, Victorino has never made a complaint of a clutch pedal sticking and his vehicle has never experienced any seal swelling issue. *See* § II.G. He thus cannot possibly have an injury traceable to the wrongful conduct he complains about making clear he lacks standing to pursue the pleaded claims. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

## D.  Failure To Prove The Predominance Requisite Of Rule 23(b)(3).

Plaintiffs seek certification under Rule 23(b)(3), and it is thus their burden to prove common questions of fact and law predominate. They have not done so.

*The Defect Issue Is Not Common:* Ignoring the question of the sufficiency of the

---

[17] *See, e.g., Falcon v. Philips Electronics North American Corp.*, 304 Fed.Appx. 896, 897, 2008 WL 4820527, *1 (2d Cir. 2008); *Akaosugi v. Benihana National Corp.*, 282 F.R.D. 241, 257 (N.D.Cal. 2012); *Doyle v. Chrysler Group, LLC*, 2014 WL 7690155, at **2-3 (C.D. Cal. Oct. 9, 2014), *grant of class cert. rev'd*, 663 Fed.Appx. 576 (9th Cir. 2016).

repair and the clear individual issues surrounding it, Plaintiffs posit that predominance is met because the elements of their claims all focus on a common defect. *See* Pl. Memo., pp. 18-22. Plaintiffs declare that the defect at issue is "common" because FCA US said so when it gave notice of x62. But, this argument is not actually supported by what FCA US said when it issued x62. What FCA US said was that "some" vehicles (*i.e.,* those that had vehicles with components that **all** were at the outside tolerance levels) "may experience" loss of clutch pedal operation." *See* § II.B. This does not admit a "common" defect, and, in fact, that very notion was expressly dispelled in the notice: "**Conversely, if you do not experience this condition, then your Hydraulic Clutch Master Cylinder/Reservoir Hose is operating correctly and no repair is necessary**." (emphasis in original).[18]

The evidence here – including the testimony of Plaintiffs' own expert – makes it beyond dispute that there is not a common "defect" in the Dart vehicles. *See* §§ II.B, II.E. The ultimate issue is purported seal swelling, and it is undisputed that whether seal swelling actually creates a defective condition in any vehicle depends on the size of the seals in that vehicle, the position of the seals in that vehicle, and the amount of plasticizer in the reservoir hose in that vehicle. *Id.* And, the size and position of the seals, and the amount of plasticizer, is not the same for all the vehicles. *Id.* All of the purportedly predominating common questions identified by Plaintiffs – knowledge, duty, safety risk, concealment – are simply **not** common because each and every one presupposes the existence of a common defect, and there is no common defect. Indeed, Plaintiff Victorino's own experience in driving his vehicle for 60,000 miles without ever having a seal swelling issue ever being diagnosed supports the notion that the defect is not common. This District has denied certification when, as here, a non-uniform manufacturing defect is at issue. *See, e.g., Arabian v. Sony Elecs., Inc.*, 2007 WL 627977, at *12 (S.D.Cal. 2007); *see also Cholakyan v. Mercedes-Benz, USA, LLC,*

---

[18]In any event, the idea that a manufacturer's notice of a possible defect can act as an admission of a classwide common defect has been squarely rejected. *See, e.g., Hughes v. Stryker*, 2010 WL 1961051 (S.D.Ala. 2010).

281 F.R.D. 534, 553 (C.D.Cal. 2012).

*Duty To Disclose Is Not Common*:  A duty to disclose is essential for Plaintiffs' CLRA and UCL claims, and requires proof that FCA US had pre-sale knowledge of a defect.  *See Wilson,* 668 F.3d at 1142-43, 1145; *see also* Pl. Memo., p. 18.  Presale knowledge is not a common issue here.  The defect that FCA US purportedly had pre-sale knowledge of is that the reservoir hose in the Dart vehicles had excessive plasticizer that would "leach … and release fibers that contaminate the hydraulic fluid" which consequently caused swelling of seals in the master cylinder and slave cylinder. Pl. Memo, p. 2.  Plaintiffs contend that pre-sale knowledge of this defect is common to the class because by June 2013 it had identified "fluid contamination as a possible root cause of the 'pedal down' problem."[19]  *Id.*, p. 7.  But this argument ignores the fact that a host of putative class members, including Tavitian, purchased vehicles prior to June 2013.  *See* FAC, ¶ 40 (Tavitian purchased in November 2012).  And, Plaintiffs cannot rely on documents discussing an unrelated seal inclusion issue that was corrected in mid-2012 (*see* § II.A), as evidence of presale knowledge.  Yet, this is all they point to.  *See* Pl. Memo, pp. 6-7.

What the evidence proves is that FCA US did not even get any notable reports of pedal sticking problems until June 2013, and that it did not conclude its investigation into those reports until October 2013, at which point it finally identified the leaching plasticizer issue.  *See* § II.B.  This makes it is indisputable that FCA US's knowledge changed significantly, and in outcome determinative ways, during the class period which encompasses vehicles sold as early as June 2012 and as late as November 2014. This precludes certification.  *See, e.g., In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litig.*, 2011 WL 6740338, *5 (W.D.Mo. 2011) (duty to disclose not a common issue where available scientific information "changed during the class period").  And, the knowledge issue is complicated further due to the fact that, even as

---

[19]Plaintiffs are wrong that FCA US identified a root cause by June 2013; that was when the investigation ***began*** that eventually resulted in that root cause finding.

21

of today, FCA US does ***not*** know that the x62 remedy was inadequate and that it should have included the slave cylinder. *See* § II.B.

*Damage Issues Are Not Common*: Plaintiffs say that they are seeking "to recover the difference in value between the non-defective vehicles they expected and the defective vehicles that FCA actually delivered." Pl. Memo, p. 1; *see also id.*, p. 22. But, their damage model does not come close to meeting the requisites laid down in *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013), because it does not actually compensate such "overpayment" damages, and it contemplates an impermissible full refund for all class members.

The Ninth Circuit has made clear that to certify a class seeking "paid too much" damages there must be ***evidence*** of ***both*** the value given for the purchase ***and*** the value of the product received. *See, e.g., Brazil v. Dole Packaged Foods, LLC,* 660 Fed.Appx. 531, 534- 35 (9th Cir. 2016). But, neither Plaintiffs, nor their expert, even attempt to present such evidence here. Instead, they proffer up the cost of new "replacement components" claiming it is a substitute measure for such damages. Exh. R, pp. 57-59. But, the holding in *Brazil* precludes this.

Plaintiffs' expert formula simply measures damages by giving every purchaser of the Dart vehicles, (both new and used), an amount equal to the average "cost of repair" which was arrived at by adding the price of a ***new*** clutch master cylinder, plus the price of a ***new*** reservoir hose, plus the price of a ***new*** slave cylinder, plus labor costs. *Id.* This, effectively, amounts to a full refund of the price of the originally installed components. But, in *Brazil* the Ninth Circuit held that unless a product is totally useless, certification is not proper where the damage model proffered by the plaintiff contemplates only a "full refund." 660 Fed.Appx. at 534- 35. ***This District agrees***. *See Mezzadri v. Medical Depot, Inc.*, 2016 WL 5107163, **10-11 (S.D.Cal. 2016) (denying certification based on, *inter alia*, lack of a damages model because consumers could not collect full reimbursement for misrepresented body slings that had a useful life of 6 months, even though they were not as durable as represented).

Plaintiffs' full refund damage theory does not work because it is beyond dispute that the reservoir hose, master cylinder, and slave cylinder components in the Dart vehicles are not useless. Indeed, Victorino got years and tens of thousands of miles of use out of his reservoir hose and clutch master cylinder and is still using them today (*see* § II.G), but the proffered damage theory would give him a full "average cost" refund for all. Under *Brazil* and *Mezzadri*, certification must be denied.[20]

The fact that damages is not a common issue is even clearer when it comes to used vehicle purchasers. In fact, Plaintiffs' damage "expert" did not even contemplate these purchasers in forming his opinions. Exh. R, p. 6. A model that seeks to award both new and used vehicle purchasers the same amounts for an "overpayment" (regardless of how it is calculated) improperly requires FCA US to pay damages/ restitution twice, or more, for one alleged wrongful act. This is a significant shortcoming in the model because almost 40% of the vehicles at issue have been resold at least once, and almost 7% have been sold two or more times. *See* Benson Decl., ¶ 40. The used vehicle purchaser damage issues are compounded by the fact that there is not any common evidence what FCA US obtained from such sales as is necessary for the UCL restitution and unjust enrichment claims. *See, e.g., Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F.Supp.3d 1306, 1324 (C.D.Cal. 2013).

Finally, even if all these other problems could be overcome (which they cannot), Plaintiffs' proffered damage model is legally flawed because it is based on the erroneous assumption that the cost of repairs will be the same for every class member. Both FCA US witnesses, and Plaintiffs' own expert, agree that the cost of repairs varies significantly depending on many factors, including who is doing the repair, and the condition of the vehicle. *See* §§ II.D, II.E. This is not formulaic, and necessitates

---

[20]Plaintiffs cite a host of pre-*Brazil* cases contending they support use of their "cost of new replacement component" damage theory, the most discussed being *Falco v. Nissan N. Am. Inc.*, 2016 WL 1327474, at *12 (C.D.Cal. 2016). *See* Pl. Memo, pp. 22-24. But, the court in *Falco* allowed an average "cost of repair" damage model only because it was designed to return to class members what they had already paid "to repair or diagnose their vehicles," not, as here, what they might never pay. 2016 WL 1327474, at *12.

individualized fact finding and obtaining information from third parties. This precludes certification. *See Thomas v. Cty. of Los Angeles*, – Fed.Appx. –, 2017 WL 3049554, *1 (9th Cir. 2017) (no certification where damages were "insufficiently similar to be established through representative testimony").

*Causation Is Not Common*: Predominance is lacking where the issue of causation is not susceptible to common proof. *See, e.g., Duarte v. Ford Motor Co.*, 2013 WL 3146810, *6 (E.D.Cal. 2013) (causation not common in suspension defect case because proving defect caused tire wear in the named plaintiff's vehicle would "not resolve the same question for other class members who might have experienced different types of tire wear caused by different factors"). Here, it is indisputable that clutch components – including a master cylinder, slave cylinder, and reservoir hose – can need replacement for a host of reasons having nothing to do with leaching plasticizer. *See* § II.D. Causation is an individual issue because not all repairs result from a "defect", further making clear common questions do not predominate.

*Song-Beverly Is Not Susceptible To Common Proof*: Plaintiffs' Song-Beverly Act claim requires resolution of numerous issues that are simply, on their face, not susceptible to common proof. The Act applies only to new goods, sold or leased at retail in California, for personal, family, or household purposes. Cal. Civ. Code §§ 1791(a), 1792. Yet the class includes those who purchased ***used*** vehicles, outside California, from private parties, and those who purchased for purposes other than "personal, family or household." In addition, unmerchantability contemplates a vehicle is "unfit," or, at a minimum, that it has a defect which is ***substantially certain to result in malfunction during the useful life of the product.*** *Sims v. Kia Motors Am., Inc.*, 2014 WL 12558251, at *3 (C.D.Cal. 2014). In a case like this where the undisputed evidence proves that a maximum of 16% of the vehicles within the class have the "defect", such issues cannot be classified as anything other than individual ones, making clear that common issues could never predominate on such a claim. *See, e.g, Daniel v. Ford Motor Co.*, 2013 WL 3146810, *4 (E.D.Cal. 2013).

*Unjust Enrichment Is Not Susceptible To Common Proof*:  Plaintiffs' unjust enrichment claim, like their fraud-based claims, fails the predominance test because it, too, requires proof of knowledge and causation, which are individualized inquiries.  In addition to this, the very nature of an unjust enrichment claim suggests its lack of suitability for certification.  Vehicle prices are individualized negotiated transactions so the amount of any "benefit" conferred could never be common and would necessitate inquiry into each transaction and repair.

**E.** **No Proof Of Superiority As Required By Rule 23(b)(3).**

The numerous individual issues identified above would require separate mini-trials and hence make this case unmanageable.  This precludes a finding of superiority.  *See, e.g., Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir.).  Plaintiffs ignore the serious manageability problems inherent in their claims, and simply proclaim that because other vehicle defect cases have been found to be manageable this one is too.  *See* Pl. Memo, pp. 24-25.  But, Plaintiffs must actually ***prove*** that a trial would be manageable and that the superiority requisite is met.  *See Zinser*, 253 F.3d at 1189.  They have not even attempted to do so.

Furthermore, the fact that FCA US had already done an indepth investigation of, and provided voluntary relief for, the alleged "defect" at issue here weighs against a finding of superiority.  *See Webb*, 272 F.R.D. at 504 (superiority lacking where defendant already offering relief to class); *Pagan v. Abbott Laboratories, Inc.*, 287 F.R.D. 139, 150 (E.D.N.Y. 2012) ("rational class members would not choose to litigate a multiyear class action just to procure refunds that are readily available here and now").  And, the issue of whether this voluntary relief is "enough" does not, standing alone, make classwide treatment superior since many, if not all, putative class members will never need the "more" Plaintiffs seek.

## IV.  CONCLUSION

For the reasons outlined herein, Defendant FCA US LLC respectfully submits that Plaintiffs' Motion for Class Certification should be denied.

Dated: November 30, 2017

**HIGGS FLETCHER & MACK LLP**

By: _/s/ Edwin Boniske_
William M. Low (Bar No. 106669)
Edwin Boniske (Bar No. 265701)

**THOMPSON COBURN LLP**
Kathy A. Wisniewski
Stephen A. D'Aunoy
Thomas L. Azar, Jr.
Scott H. Morgan

_Attorneys for FCA US LLC_

**FCA US LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on November 30, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which sent notification to all counsel of record, who are deemed to have consented to electronic service via the CM/ECF system per CivLR 5.4(d).

By: _/s/ Edwin Boniske_
Edwin Boniske (Bar No. 265701)

FCA US LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION