Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO and ADAM TAVITIAN, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.:  3:16-CV-01617-GPC-JLB<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>District Judge:      Hon. Gonzalo P. Curiel<br>Magistrate Judge: Hon. Jill L. Burkhardt<br><br>Hearing Date:     January 19, 2018<br>Hearing Time:    1:30p.m.<br>Location:            221 West Broadway<br>                          Courtroom 2D, 2nd Fl.<br><br>Action Filed:       June 24, 2016<br>Trial Date:          None Set |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................ 1

II.  ADEQUACY ............................................................................................... 2

III. CLASS DEFINITION ................................................................................. 9

IV.  DAMAGES ............................................................................................... 10

V.   UNIFORM DEFECT ................................................................................ 11

VI.  CONCLUSION ......................................................................................... 14

# TABLE OF AUTHORITIES

***FEDERAL CASES***

*Akaosugi v. Benihana National Corp.*, 282 F.R.D. 241 (N.D. Cal. 2012) ........................ 6

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) ..................... 11

*Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531 (9th Cir. 2016) .................... 10

*Doyle v. Chrysler Grp. LLC*, No. SACV 13-00620 JVS, 2014 WL 7690155
   (C.D. Cal. Oct. 9, 2014) ............................................................................................. 6

*Falcon v. Philips Elec. N. Am. Corp.*, 304 Fed. App'x 896 (2d Cir. 2008) ...................... 6

*Hanlon v. Chrysler Corporation*, 150 F.3d 1011 (9th Cir. 1998) ..................................... 5

*Kulig v. Midland Funding, LLC*, 2014 WL 5017817 (S.D.N.Y. 2014) ............................. 5

*Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir.
   2011) ........................................................................................................................... 4

*Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 7428810
   (N.D. Cal. Dec. 22, 2016) ......................................................................................... 10

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013) ............................. 4

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) ...................................... 12

***STATE CASES***

*In the Matter of Coale*, 775 N.E.2d 1079 (Ind. 2002) ..................................................... 3

Page ii
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## I. INTRODUCTION

In many ways, this case is easier to certify than other car cases involving failures to disclose because FCA already has admitted, in implementing the X62 extended warranty program and repair procedure ("X62 repair"), that there was a common clutch problem in the Class Vehicles. FCA also has admitted that the reservoir hose was defectively designed and that the X62 repair fails to eliminate contaminated fluid from the hydraulic system ("Clutch Defect"). Plaintiffs contend that the X62 service was insufficient because it ignored the systemic effects of fluid contamination caused by a faulty reservoir hose and that the concentric slave cylinder ("CSC") should also have been replaced, per industry standards. FCA disagrees. At class certification, the Court need not decide which party is correct; it need only decide whether Plaintiffs can prove their claims by based on common, class wide evidence, which they can.

Plaintiffs have demonstrated that the Clutch Defect is uniform and present in all the Class Vehicles, and Plaintiffs seek to certify only the Class Vehicles covered by X62 with the defective hose that leached plasticizer. Despite FCA's contention that the clutch system is composed of multiple parts, the faulty reservoir hose and other relevant components have been consistently identified by part numbers common to the Class Vehicles. Plaintiffs have shown that the X62 notice that FCA sent to owners (and on which FCA relies to show that prospective purchasers were exposed to "disparate information") refers exclusively to the clutch master cylinder ("CMC") and the reservoir hose, and omits entirely the problem of systemic contamination. Plaintiffs can prove that every Class Member was damaged, based on the benefit of the bargain theory; that damages can be measured on a class wide basis; and that the measure of damages matches the theory of liability. None of the supposed issues that FCA has identified predominate or preclude certification, nor do they overcome Plaintiffs' central contention that the X62 repair failed to address the Clutch Defect. FCA disagrees with Plaintiffs' evidence, but that is not sufficient

to defeat class certification.

Rather than rebutting Plaintiffs' claims regarding defective design of the Clutch System and FCA's abortive attempts to cure it, FCA's Opposition to class certification seeks to distract by misstating and improperly characterizing the evidence and by defaming Plaintiffs and Plaintiffs' counsel.

## II. ADEQUACY

FCA's attacks on Plaintiffs and their counsel (Opposition at 10-11, 17-18) are slanderous and sanctionable. Enough is enough. FCA is not entitled to carelessly lob disparaging and baseless accusations at Plaintiffs and their counsel without consequence.

Contrary to FCA's contentions and its misreading of this Court's ruling regarding Plaintiffs' counsel's adequacy in its Order denying FCA's pre-emtpive Motion to deny certification, this Court did *not* find that Plaintiffs' counsel violated any Rule of Professional conduct. Indeed, this Court stated clearly that "[b]ased on the record to date, the Court cannot conclude that Plaintiffs' counsel's conduct creates a 'serious doubt' on their integrity and trustworthiness as representatives for the class." (Dkt. 115 at 12:8-11.) The record on this issue has not changed since the Court denied FCA's motion to deny class certification, and FCA has failed to challenge or even address "whether Plaintiffs can demonstrate the factors under Rule 23(g)(1)(A) or (B)" (Dkt. 115 at 4). Plaintiffs' counsel have continued to represent Plaintiffs zealously and scrupulously in this action. FCA also is fixated on *Klee v. Nissan N. America., Inc.*, No. CV12-8238 (C.D. Cal.), referring to it at any opportunity, despite this Court's express finding that the facts in *Klee* "do not support Defendant's position" concerning Plaintiffs' counsel's adequacy (Dkt. 115 at 12.). FCA also fails to point out, yet again, that (now retired) Judge Kozinski formally withdrew his objection to the settlement and agreed with it.

FCA's contention that Plaintiffs' counsel are involved in "conflict representations" regarding the depositions of two percipient witnesses, David

Tavitian, (Plaintiff Adam Tavitian's father) and Emad Salama, is a falsehood. Mr. Salama was represented for the *limited* purpose of his deposition. *See* Declaration of Karen L. Wallace in Opposition to FCA's Motion for Leave to File Third Party Complaint against Emad Salama at ¶ 29, Ex. E (Salama Deposition at 14:2-11)("MS. WALLACE: "Yes, as we had discussed, we're representing him for purposes of the deposition.")(Dkt. 125-1, Sept. 22, 2017). Plaintiffs addressed the allegedly improper representation of Mr. Salama, including FCA's mischaracterization of his deposition testimony, in their Opposition to FCA's Motion for Leave to File Third-Party Complaint against J&E Auto Services, Inc., (*see* Dkt. 124 at 2: 17-18), a motion which this Court denied, finding that J&E Auto Services, Inc. is not potentially liable in this case for any repairs. (Dkt. 133 at 8). Plaintiffs have no conflict with Mr. Salama, and FCA has provided no support for its spurious allegation that any exists.

With respect to the representation of David Tavitian, FCA makes two arguments regarding misconduct by Plaintiffs' counsel. FCA argues without support that by defending Mr. Tavitian's deposition out of State, Plaintiffs' counsel violated the California Rules of Professional Conduct. Yet under Local Rule 83.4.b, the California Rules of Professional Conduct govern whether an ethical violation has occurred.[1] Rule 1-300 regarding the unauthorized practice of law provides that "[a] member shall not practice in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction." The Indiana Rules of Professional Conduct prohibit lawyers not licensed in Indiana from "establish[ing] an office or other systematic and continuous presence in this jurisdiction for the practice of law" or "hold[ing] out to the public or otherwise represent[ing] that the lawyer is admitted to practice in this jurisdiction." Rule 5.5(b), Unauthorized Practice of Law. However, the Indiana Rules specifically permit the provision of legal services in the

---

[1] FCA relies on *In the Matter of Coale*, 775 N.E.2d 1079 (Ind. 2002), which is inapposite, regarding events that transpired in Indiana.

state if they "arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice." Rule 5.5(c)(4). If nothing else, FCA is holding Plaintiffs' counsel to a standard different than for its own counsel regarding the unauthorized practice of law, given that Scott H. Morgan, the attorney who took Mr. Tavitian's deposition, is not licensed in Indiana. In fact, there was no unauthorized practice of law here (by either party).

FCA also accuses Plaintiffs' counsel, in passing, of improperly soliciting Mr. Tavitian, but fails to identify any basis for this contention; FCA simply refers in a footnote to Cal. Rule Prof. Cond. 1-400 but offers no explanation as to how that Rule has been violated. (Motion at 17, fn. 14.) FCA fails also to identify the specific conflict it alleges arises here.  FCA contends only that Mr. Tavitian disagrees with his son's interpretation of the clutch pedal malfunctions he's experienced and fails utterly to explain how this difference of opinion from a non-party constitutes a conflict of interest in this case.[2]  FCA's mischaracterization of the evidence, with little to no authority in support, is consistent with FCA's established pattern of misdirection and obfuscation. FCA implies further that Plaintiffs' counsel continue to represent Mr. Tavitian and Mr. Salama in this case, yet there are no, and have never been, any claims pending against either.[3] Once again, FCA's allegation is unfounded and spurious.

The cases on which FCA relies are plainly inapposite: the holding in *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1167-68 (9th Cir. 2013) pertains to a "conditional-incentive-awards provision"; the holding in *Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011), which this Court

---

[2] FCA mischaracterizes almost all Mr. Tavitian's deposition testimony and his obvious and demonstrated lack of knowledge about the facts of the case.

[3] Mr. Tavitian testified explicitly that Plaintiffs' counsel only represented him for purposes of deposition. (Tavitian Depo at 16:21-25.) Plaintiffs addressed the alleged improper representation of Mr. Salama, including FCA's mischaracterization of his deposition testimony, in their Opposition to FCA's Motion for Leave to File Third-Party Complaint against J&E Auto Services, Inc., which was denied. (*See, e.g.*, Dkt. 124 at 2, 17-18.)

has already distinguished, pertains to misrepresentations made to clients; and the holding in *Kulig v. Midland Funding, LLC*, 2014 WL 5017817, *3-6 (S.D.N.Y. 2014) pertains to offers of settlement. Plaintiffs' counsel cannot reasonably be expected to defend themselves against inflammatory accusations of misconduct with no legal or factual basis.

In the Ninth Circuit, courts consider whether Plaintiffs and their counsel "have any conflicts of interest with other class members" and whether Plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler Corporation*, 150 F.3d 1011, 1020 (9th Cir. 1998). Unable to challenge either of these factors credibly, FCA has resorted to attacks on Plaintiffs' counsel's ethics and trustworthiness. FCA's conduct is defamatory and should not be condoned.

FCA's attacks on the named Plaintiffs themselves also are scurrilous. The Court also declined to find that Plaintiff Tavitian is an inadequate representative because of the adverse instruction, (Dkt. 134 at 25), and the sanction does not prevent him from testifying at trial. While the Court invited fuller briefing regarding Plaintiff Tavitian's adequacy in support of motions regarding class certification, FCA did not do so.  FCA's briefing simply reiterates the points FCA already has made and still fails to show that Plaintiff Tavitian or his counsel are inadequate. Indeed, while the Court issued an evidentiary sanction against Plaintiff Tavitian for failing to preserve evidence, (Dkt. 134 at 21), the Court expressly found that "Defendant provides no evidence, besides an inference, to support its allegations that Plaintiffs' counsel failed to adequately oversee Tavitian's discovery efforts." (Dkt. 134 at 26.) Further, as the Court already has ruled on the allegation against Plaintiff Tavitian and the sanction already has been issued, there is no danger of a unique defense on this issue. Now, FCA would have the Court doubly sanction Plaintiff Tavitian, his counsel, and the Class for the same action that the Court has already considered and decided.

FCA claims that "[e]very court to have been faced with such a circumstance has concluded adequacy is lacking" is disingenuous and inaccurate. (Motion at 19.) Each case is clearly distinguishable and fails to support a finding that Plaintiff Tavitian or his counsel are inadequate. In *Falcon v. Philips Elec. N. Am. Corp.*, 304 Fed. App'x 896, 897 (2d Cir. 2008), the court found no abuse of discretion in concluding that the plaintiff could not serve as an adequate class representative because the plaintiff, among other problems, disposed of crucial evidence before the defendant had the opportunity to examine it, presenting the danger of a defense unique to the plaintiff against a charge of spoliation. In this case, as discussed in Plaintiffs' opposition to FCA's motion for sanctions (Dkt. 124), FCA had already inspected Plaintiff Tavitian's vehicle and determined that it should perform the X62 repair but not replace the CSC, despite determining that it was defective. And because this Court has already ruled on the charge of spoliation, there is no danger of a unique defense on that basis.

In *Akaosugi v. Benihana National Corp.*, 282 F.R.D. 241, 257 (N.D. Cal. 2012), the Court found that the defendant "raised credible accusations" as to the plaintiff's "attempts to conceal his wrongdoing" based on the steps he took to deprive the defendant of documents to which it was entitled in discovery. In the instant matter, as Plaintiffs have argued at length, (*see* Dkt. 124), FCA had already inspected the evidence that it faults Plaintiff Tavitian for failing to preserve, and FCA does not challenge the Court's finding that there was no bad faith. Indeed, the relevant events support Plaintiffs' contentions regarding the insufficiency of the X62 repair.

In *Doyle v. Chrysler Group, LLC*, the plaintiff sold her car, which was the subject of proposed litigation, before she'd even retained counsel. *Doyle v. Chrysler Grp. LLC*, No. SACV 13-00620 JVS, 2014 WL 7690155, at *2 (C.D. Cal. Oct. 9, 2014), *rev'd and remanded*, 663 F. App'x 576 (9th Cir. 2016). While the court held that an adverse instruction inference was sufficient to find that plaintiff was atypical

and thus inadequate to represent the class, the facts are significantly different from Plaintiff Tavitian's. As discussed, the evidence at issue in this case was not despoiled until after FCA had inspected the vehicle for purposes of litigation and concluded that it was defective. Further, the court has *already ruled on this issue* and has provided for a jury instruction that would address the very concern that FCA would have the Court address here again.

More importantly, Plaintiffs seek certification on the grounds that the Clutch System suffers from fluid contamination because FCA failed properly to remedy the defect, which originates with the reservoir hose, not the CSC. FCA's own argument is that "the existence of the defect depends on the size and position of the clutch system seals, and the amount of plasticizer in each reservoir hose," and not on the design of the CSC. (Motion at 12.) FCA has failed utterly to show that a jury is likely to presume that the lost evidence is both relevant and favorable to FCA.

FCA's assertion that the evidence "clearly suggests that [Plaintiffs] have simply ceded control to their attorneys to make all decisions, including whether any settlement should be accepted or rejected," (Motion at 18) and that Plaintiffs are inadequate based on their ignorance of the claims at issue and lack of involvement in the litigation is a blatant mischaracterization of Plaintiffs' deposition testimony.[4] The evidence supports a finding that both Plaintiff Tavitian and Plaintiff Victorino can adequately represent the Class.

Plaintiff Victorino testified expressly that he "keeps up to date with his lawyers" and reads all the documents they send him. (*Id*. at 171-172.) He also understands that he acts on behalf of "anybody that is affected by the clutch defect." (*Id*. at 175.) Indeed, Plaintiff Victorino has experienced the symptoms of the clutch defect from the first day of ownership to as recently as September 2017, when his clutch pedal "fell to the floor." *See* Zohdy Decl In Support of Plaintiffs' Motion for

---

[4] Some of FCA's accusations regarding Plaintiff Victorino were already addressed in Plaintiffs' Opposition to FCA's sanctions motion. (Dkt. 124.)

Class Certification, ¶ 33, Ex. EE (Stapleford Decl. at ¶ 38-41).

Plaintiff Tavitian testified similarly, stating expressly his understanding that he would act on behalf of "a large group of people who are experiencing similar problems" and, as one of those people, he would be "put forward as an example of the rest…for the purposes of standardizing the costs incurred and such for various similar vehicles and similar issues with that master cylinder. And to protect the interests of those other people as well." (Tavitian Depo. at 293:1-10.) FCA's contention that "Plaintiff simply cannot prove that they have no disqualifying conflict of interest," (Motion at 18), turns the standard on its head and relies on Plaintiffs' refusal to produce their retainer agreements, despite Magistrate Burkhardt's express rulings that FCA is not entitled to these documents. *See* Dkt. No. 52 (Order Denying FCA's Motion to Compel Production of Plaintiffs' Retainer Agreements); Dkt. No 136 (Order Denying FCA's Motion for Reconsideration). Because it is simply impossible here to correct every misinterpretation that FCA attributes to Plaintiffs, suffice it to say that FCA misstates almost every aspect of their respective testimony. There is a clear and disturbing pattern to FCA's arguments, which distort or simply ignore the truth.

Finally, FCA repeatedly accuses Plaintiff Tavitian of "tampering" with his odometer, a criminal offense under both state and federal law.  This accusation is factually wrong as Plaintiffs have demonstrated. *See* Plaintiffs' Opposition to FCA's Motion for Summary Judgment (Dkt. No. 55 at p. 10-12); *see also* Plaintiffs' Response to FCA's Statement of Material Facts in Support of FCA's Motion for Summary Judgment (Dkt. No. 183-2 at pp. 30-31); Dkt. No. 183-1 at ¶¶ 73-74. The accusation is libelous, and disparages Plaintiff Tavitian's ethics, morals, integrity and behavior in violation of Local Rule 83.4.2.a. (*See, e.g.,* Dkt. 55 at 10-12.) Moreover, not only is the accusation demonstrably false, it is completely irrelevant to Plaintiffs' claims in this case involving the Clutch System and yet another example of FCA's strategy of trying to avoid having to litigate Plaintiffs' claims on

the merits by resorting to untruths.

## III.   CLASS DEFINITION

Plaintiffs' Class definition is carefully crafted to include only the vehicles already covered by the X62 service action. It is hard to imagine that this Class definition is overbroad as FCA's own X62 program covers these exact vehicles. Moreover, the Clutch Defect was present in the factory installed Clutch System in all of the Class Vehicles at the time of purchase or sale, effectively mooting all of FCA's challenges based the inclusion of used cars in the Class definition.[5]

Similarly, FCA's conclusory assertion that the disparate remedies available to subsequent purchasers defeats Rule 23 typicality is without merit. (Motion at 16:18-24.) FCA, by its own argument, demonstrates the applicability of Plaintiffs' claims to subsequent purchasers. FCA states affirmatively that "those who purchased after the announcement of x62 most likely were told this very information [about the clutch defect] since prior owners were instructed to put the notice of it in the glovebox and leave it with the vehicle." (Motion at 16:11-15.) Despite FCA's claim that these subsequent purchasers defeat typicality under Rule 23(b)(3) because their presumed exposure to the 2016 X62 notice constitutes exposure among the Class to "disparate information, (Motion at 16), this argument fails because the X62 notice refers exclusively to the CMC and the reservoir hose, omitting any mention of the need to replace the CSC or clean the system's piping. Claiming to have provided notice to subsequent purchasers means that FCA also *concedes* its duty to disclose the defect to them.[6] More importantly, by claiming that it disclosed the "clutch system defect," FCA effectively concedes that the defect exists and is common to

---

[5]   Accordingly, the Class, as defined by Plaintiffs is accurate and should be certified. The Court also retains the right to redefine the Class, to limit the Class to new Class vehicles or to create a subclass of used Class Vehicles.

[6] This is also true of the other means of dissemination FCA claims. (Motion at 16:15-18.)

the Class Vehicles.

## IV. DAMAGES

FCA misstates the requirements for certification relating to damages, arguing that "there must be evidence of both the value given for the purchase and the value of the product received." (Motion at 22:11-12.) This is simply wrong. FCA relies on *Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531, 534- 35 (9th Cir. 2016), which held that "a plaintiff cannot be awarded a full refund unless the product she purchased was worthless" where her damages theory seeks restitution or disgorgement of the premium paid in reliance on misrepresentations that the defendant's packaged fruit was "all natural." In *Brazil*, the plaintiff failed to isolate and establish the value of the alleged "premium." The case is inapposite, as the overpayment in the instant matter is not a "premium" based on misrepresentations that the product at issue is of a higher or better quality than comparable products. FCA refers erroneously to "Plaintiffs' full refund damage theory" (Motion at 23:1); Plaintiffs' theory of damages is based on a benefit-of-the-bargain approach, which limits recovery to the value of the defect. Under that theory, Plaintiffs' proposed damages model both isolates and assigns a uniform, class-wide monetary value to the overpayment at point of sale for a product that was of a lower quality than what was advertised and expected. FCA's assertion that commonality is necessarily defeated by the fact that "[v]ehicle prices are individualized negotiated transactions," (Motion at 25:5-7), derives from a theory of expected utility, not benefit of the bargain, and is irrelevant to Plaintiffs' damages model. *See, e.g.*, *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 7428810, at *20 (N.D. Cal. Dec. 22, 2016) ("An 'expected utility' framework measures consumers' perceptions of the risk of failure and calculates consumers' willingness to pay based on these measurements.")

Again, Plaintiffs' damages model matches their theory of liability by seeking redress for the injury that occurred at point of sale, which value was determined by

the costs FCA has assigned to the parts and labor required to render the hydraulic clutch system defect-free. FCA's additional assertion that the data on which the sample calculation was based are invalid is simply of no consequence, since that is not the standard under Rule 23.

## V. UNIFORM DEFECT

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Nevertheless, the bulk of FCA's argument in support of its opposition to certification is regarding the merits of Plaintiffs' claim that the Class was injured by FCA's failure to resolve the Clutch System's defective design. FCA contends that the manufacture of the Clutch System's component parts varies sufficiently to defeat certification on the grounds of commonality and typicality under Rule 23(a) and predominance under Rule 23(b)(3). FCA ignores the central issue in this case, which is that there was a uniform undisclosed defect in the factory-installed Clutch System at the time of purchase or lease. Plaintiffs meet all requirements for certification under Rule 23 on this basis. FCA does not dispute that the subject reservoir hose was defectively designed, nor does FCA dispute that its X62 repair fails to eliminate contaminated fluid from the system. FCA's position is premised on nothing more than the assumption, without any evidentiary support, that the industry standard identified by Plaintiffs' expert does not apply to the Class Vehicles.

Contrary to FCA's contention (Motion at 1), Plaintiffs' design expert does not, and has not, admitted, that there is no common defect. The issues that Stapleford supposedly has "admitted" are all basic issues about the design of the Clutch and in no way undercut or contradict his opinion or testimony that the Clutch System is defectively designed. Interestingly, FCA does not proffer its own expert report to refute the conclusions of Plaintiffs' expert.

Further, FCA's own argument supports Plaintiffs' evidence of a uniform

1    defect in the Class Vehicles. FCA describes the factory-installed "clutch hydraulic
2    release system," (Opp at 1), including the reservoir hose that was determined by
3    FCA to leach plasticizer beyond the tolerance of other system components and was
4    re-designed for use in the Clutch System. (Motion at 2:19-20) ("The root cause of
5    the pedal sticking was found to be plasticizer leaching from a reservoir hose.") To
6    support its assertion that there are design differences in the Clutch System, FCA
7    claims that "not all reservoir hoses were manufactured with the same amount of
8    plasticizer," (Motion at 3:3:7), yet the hose has been consistently identified by one
9    part number common to the Class Vehicles, as have other relevant components.
10   (See, e.g., Declaration of Kirk Irvine In Support of FCA's Opposition to Class
11   Certification [Dkt. 159] ¶ 4.)

12        FCA contends the seals in the CSC are not identical to the seals in the CMC,
13   which precludes certification, (*see, e.g*., Motion at 4:5-7).  However, all the seals are
14   rubber, and they are all susceptible to damage from hydraulic fluid.  Significantly,
15   FCA still has not offered any rebuttal of Plaintiffs' expert's opinion that it is the
16   industry standard to replace all components in a contaminated hydraulic system or
17   how the seals in the CSC are uniquely immune.  FCA's remaining arguments are
18   similarly based on the weight of the evidence, not the Rule 23 requirements for class
19   certification.  FCA does nothing more than offer a different interpretation of the
20   evidence available and ignore the fact that willful ignorance is not a defense, where
21   FCA was in a superior position to know the true state of facts about the Clutch
22   Defect and simply chose to limit its remedy to the CMC and the reservoir hose.

23        FCA cites *Torres v. Mercer Canyons Inc*., 835 F.3d 1125, 1136 (9th Cir.
24   2016) to support its opposition, claiming that "a class cannot be certified where it
25   includes 'large numbers of class members who were never exposed to the
26   challenged conduct to begin with.'" FCA fails to explain that the plaintiffs in *Torres*
27   alleged that the defendant employer failed to inform them of the availability of
28   certain jobs for which they were eligible and that those omissions were injurious. *Id*.

at 1137. The court noted that the defendant had "not shown that the class as a whole was exposed to 'disparate information from various representatives of the defendant,'" finding that "the conduct at issue is reasonably uniform as the crux of Plaintiffs' legal challenge involves a common failure to disclose information," such that the existence of a class-wide policy or practice of non-disclosure was a common question sufficient to show predominance. *Id*. at 1137-1138. The court also opined that, pursuant to Rule 23, "the court's task at certification is to ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." *Id*. at 1138 (quotations and citations omitted.) Plaintiffs' claims should be certified under *Torres*.

FCA further contends incorrectly that Plaintiffs fail to mention "whether x62 went far enough" to repair the defect FCA has admitted exists in the Class Vehicles, (Motion at 12:6-7), ignoring not only Plaintiffs' expert's opinions and conclusions almost in their entirety, but also Plaintiffs' express allegation that "the central facts demonstrating FCA's liability are part and parcel of FCA uniform, class wide failure to address the Clutch Defect which FCA's X62 Extended Warranty program and uniform repair procedure failed to resolve." (Plaintiffs' Motion for Class Certification at 2.) FCA's position is disingenuous to say the least, given that it has consistently denied the existence of any defect, claiming a variety of other explanations for the failure of its X62 repair to resolve the issue of contaminated hydraulic fluid. (See e.g., Motion at 4:21-27.)  In fact, despite offering no rebuttal of Plaintiffs' expert's report or testimony, FCA insists simply that clutch pedal malfunctions will necessarily require an inspection of "each affected vehicle." (Motion at 4:27-5:1.) To support this assertion, however, FCA does nothing more than reiterate the conclusions of the dealership technicians who repaired Plaintiffs' respective vehicles, only one pursuant to the X62 service action, none of whom has been designated an expert. (*See e.g.*, Motion at 5, fn. 3.) FCA's contentions are

conclusory and speculative, and FCA demands from Plaintiffs proof to a certainty that Rule 23 simply doesn't require.

FCA improperly frames as a Rule 23 issue the parties' conflicting interpretation of the evidence. (Motion at 21.) It is no surprise that FCA defends its decision to ignore problems regarding contamination and focus on a more easily resolved manufacturing error. FCA continues to deny "that the x62 remedy was inadequate and that it should have included the slave cylinder." (Motion at 22:1-2.) FCA's claim that it did an "indepth investigation" does not mean that the Clutch System is not defective or preclude a finding of superiority. (Motion at 25.) FCA simply raises factual questions are for a jury on the merits, which does not defeat certification.

## VI. CONCLUSION

FCA's opposition to class certification ignores the overwhelming weight of legal authority presented by Plaintiffs, instead making a series of unpersuasive, confusing, and diversionary arguments that flout widely accepted class certification standards and impugn Plaintiffs and their counsel. FCA's tactics should not be validated by the Court.

For the foregoing reasons, Plaintiffs respectfully request that the Court certify this action for class treatment, appoint the named Plaintiffs as class representatives, and appoint Plaintiffs' counsel as Class Counsel.

Dated: January 15, 2018

Respectfully submitted,

Capstone Law APC

By: /s/ Jordan L. Lurie
Jordan L. Lurie
Tarek H. Zohdy
Cody R. Padgett
Karen L. Wallace

Attorneys for Plaintiffs and the Putative Class