UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CARLOS VICTORINO and ADAM
TAVITIAN, individually, and on behalf of
other members of the general public
similarly situated,

Plaintiffs,

v.

FCA US LLC, a Delaware limited
liability company, ,

Defendant.

Case No.: 16cv1617-GPC(JLB)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**
[REDACTED - ORIGINAL
FILED UNDER SEAL]

**[Dkt. No. 151.]**

Before the Court is Defendant FCA US LLC's motion for summary judgment.[1]
(Dkt. No. 151.) Plaintiffs Carlos Victorino and Adam Tavitian filed an opposition on
May 12, 2017. (Dkt. No. 183.) A reply was filed on January 26, 2018. (Dkt. No. 195.)
Based on the reasoning below, the Court GRANTS in part and DENIES in part
Defendant's motion for summary judgment.

/ / / /

---

[1] This is FCA's second motion for summary judgment. On June 14, 2017, the Court denied Defendant's
motion for summary judgment and ex parte motion to strike. (Dkt. Nos. 91, 96 (UNDER SEAL).)

Plaintiffs Carlos Victorino ("Victorino") and Adam Tavitian ("Tavitian") (collectively "Plaintiffs") filed a purported first amended class action complaint based on defects in the 2013-2016 Dodge Dart vehicles equipped with a Fiat C635 manual transmission that cause their vehicles' clutches to fail and stick to the floor. (Dkt. No. 104, FAC ¶¶ 1, 2.) Defendant FCA US LLC ("Defendant" or "FCA") designs, manufactures, markets, distributes, sells warrants and services these vehicles. (Id. ¶ 1.) Plaintiffs claim the "clutch pedal loses pressure, sticks to the floor, and fails to engage/disengage gears. As a result, the Class Vehicles exhibit stalling, failure to accelerate, and premature failure of the Clutch System's components, including the clutch master cylinder ("CMC") and reservoir hose, clutch slave cylinder ("CSC") and release bearing, clutch disc, pressure plate, and flywheel (the "clutch defect")." (Id. ¶ 2.) The clutch defect is caused by the degradation of the clutch reservoir hose, which releases plasticizer and fibers, causing contamination of the hydraulic fluid that bathes the components of the Clutch System. (Id. ¶ 7.) As a result, the contamination causes the internal and external seals of the CMC and CSC to swell and fail. (Id. ¶¶ 7, 8.) According to Plaintiffs, when fluid in the hydraulic system becomes contaminated, all of the components that have been exposed to the contaminated fluid must be replaced and any steel tubing must also be thoroughly cleaned with brake cleaner and blown out until dry to ensure that none of the contaminants remain. (Id. ¶ 8.) Plaintiffs also claim an additional defect in the CSC which exacerbates the problems with the Clutch System. FCA designed its CSC as an assembly composed of an aluminum body with a clipped-on plastic base whereas other manufacturers' slave cylinders are composed of a single, solid cast aluminum component which creates a rigid base. (Id. ¶ 13.) Defendant's two-piece design destabilizes the cylinder at its base, "which can result in unintended lateral movement and cause the piston inside the cylinder to become jammed." (Id.)

////

////

## A. Victorino's Experience

Victorino purchased a 2014 manual-transmission Dodge Dart on or about March 22, 2014. (Dkt. No. 183-2, Ps' Response to Ds' SSUF, No. 15.) Before his purchase, nobody promised him that his vehicle's clutch would go at least 36,000 miles without needing a repair. (Id., No. 19.) He testified that since the first day he owned the vehicle, it would "stall out" nearly every day. (Dkt. No. 183-4, Padgett Decl., Ex. 12, Victorino Depo. at 89:24-90:3.) In the beginning, he thought it was just him getting used to the new vehicle. (Id.) But it kept continuing and after the vehicle would stall, it would not turn back on. (Id.) It was not turning on the ignition or catching the gear. (Id. at 90:12-16.)

In January 2016, the car became "undriveable." (Id. at 96:11-15.) On or about January 10, 2016, the gears were not properly catching and the vehicle was bogging down and failing to accelerate when entering the freeway. (Id. at 119:20-120:9.) On or about January 13, 2016, with about 34,351 miles on the odometer, Victorino took his vehicle to San Diego Chrysler Dodge Jeep Ram for service. (Dkt. No. 183-4, Padgett Decl., Ex. 16.) On January 12, 2016, the service advisor described the two issues raised by Victorino as:

1. CUSTOMER REPORTS VEHICLE HAS A LARGE DELAY WHILE SHIFTING INTO GEAR.
CLUTCH INGAGES (sic) AT THE END OF PEDAL TRAVEL. CLUTCH WORN OUT.
R&R CLUTCH, SLAVE CYLINDER, AND FLYWHEEL. ALL OVERHEATED AND WARPED. ROAD TEST – CLUTCH NORMAL.
2. CUSTOMER REPORTS VEHICLE DOES NOT ACCELERATE WHEN IN GEAR. -----ADVISE
CLUTCH IS SHOT
R&R CLUTCH, SLAVE CYLINDER, AND FLYWHEEL

(Id.)  The flywheel was replaced at no charge and the remaining repairs totaled $1,165.31.[2]  (Id.)  Victorino's CMC and reservoir hose were not replaced or repaired at this visit.  (Id.)  Victorino learned about the X62 Extended Warranty Program[3] (also known as the January 2016 voluntary customer service action) a week or two later and contacted the Customer Assistance Center seeking assistance stating the "clutch is gone and this is a known issue where once repaired the clutch goes out again."  (Dkt. No. 151-8, Azar Decl., Ex. A at 2[4].)  According to a Customer Assistance Inquiry Record ("CAIR"), on February 4, 2016, Victorino was denied his request for reimbursement because the "repair was because of customer cause", and the X62 Extended Warranty was not on the vehicle at the time of repair, but even if it had, the repairs would not have been covered because the CMC and reservoir hose were not replaced.  (Id. at 4.)

After replacing the CSC, Victorino's clutch symptoms for the most part improved, but it still stalls out about "once every other week."  (Dkt. No. 183-4, Padgett Decl., Ex. 12, Victorino Depo. at 94:22- 95:3.)  He also claims that his clutch pedal seems pretty soft and sometimes it feels like the pedal just drops.  (Id. at 97:15-24; 98:17-19.)

In May 2017, Victorino's clutch pedal dropped, became stuck half way down, and when he pressed the pedal, it would not come back up.  (Dkt. No. 183-4, Padgett Decl., Ex. 17, Ps' Suppl. Response to D's Interrog. No. 7.)  Victorino had to pop the clutch pedal up with his feet.  (Id.)

---

[2] While the invoice indicates a charge of $1,165.31, the credit card statement indicates a charge of $1,280.31.  The parties dispute the amount Victorino paid for his repairs.

[3] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"  (Dkt. No. 199-5, Padgett Decl., Ex. 28 (UNDER SEAL).)  On August 26, 2016, Service Bulletin 06-001-16 REV. A, "Clutch Pedal Operation X62 Extended Warranty" superseded the prior Service Bulletin to include additional model year of 2013-2015 Dodge Darts.  (Dkt. No. 183-4, Padgett Decl., Ex. 9.)

[4] Page numbers are based on the CM/ECF pagination.

The basic limited warranty on Victorino's vehicle was for 36 months or 36,000 miles, whichever comes first. (Dkt. No. 151-6, Azar Decl., Ex. C at 2.1(F) at 6.) However, the basic limited warranty for "clutch discs or modular clutch assembly" was covered for only 12 months or 12,000 miles. (Id.) The Powertrain Limited Warranty for Victorino's vehicle stated that "MANUAL TRANSMISSION CLUTCH PARTS ARE NOT COVERED AT ANY TIME." (Id.)

## B. Tavitian's Experience

Tavitian purchased a 2013 manual-transmission Dodge Dart around November 17, 2012. (Dkt. No. 183-2, Ps' Response to D's SUMF, No. 44.) He testified that within six months of purchasing the car, he noted something off about the clutch. (Dkt. No. 183-4, Padgett Decl., Ex. 13, Tavitian Depo. at 103:6-14.) Every once in a while when he put his foot on the clutch, "it would either feel like it was a heavy clutch or when I took my foot off it would take a second to catch up, like hit my foot on the way up . . . ." (Id.) While it did not impair his ability to operate the vehicle, it felt weird since he didn't know where the clutch was going to "bite" and so he was more tentative in his driving. (Id. at 103:17-24.) He testified that the clutch still does it every once in a while even after the repair. (Id. at 105:1-5.) In the beginning, the clutch issue was limited to coming up slowly and there would be a little lag, but in July 2014, when he was driving back from the Bay Area, the clutch did not come all the way back up. (Id. at 187:21-24.) At the start of a steep incline on Interstate 5, called the "Grapevine", Tavitian's clutch stuck to the floor and he was forced to pull the clutch pedal up after each shift for over 50 miles. (Dkt. No. 183-4, Padgett Decl., Ex. 14 at 42.)

Since it was the weekend, he took the vehicle to the dealership, Rydell Chrysler Dodge Jeep Ram, the following Monday on July 7, 2014 with 42,075 miles.[5] (Id., Ex. 18 at VIC_00325.) The service advisor described Tavitian's complaints as follows:

---

[5] It is not clear whether this is the actual odometer reading as Tavitian replaced his odometer with a digital cluster. (Dkt. No. 151-12, Azar Decl., Ex I. at 4.)

CUSTOMER STATES CLUTCH KEEPS GETTING STUCK
WILL NOT ALLOW CUSTOMER TO SHIFT BETWEEN GEARS AT TIMES
CK AND ADVISE VEHICLE HAS MAX CARE COVERAGE
CLUTCH MASTER CYLINDER LEAKING

(Id.)

On July 8, 2014, the same service advisor wrote,

CUSTOMER STATES CLUTCH KEEPS GETTING STUCK.
SOP MASTER CYLINDER IS IN
MASTER CYLINDER LEAKING
REPLACED CLUTCH MASTER CYLINDER

(Dkt. No. 151-12, Azar Decl., Ex. I at 5.)  The repair included a new CMC and Tavitian paid $298.33 for the repair.  (Id.)  While at the dealership, it was discovered Tavitian had removed and replaced his vehicle's odometer with a newer odometer that displayed 28,697 fewer miles than the actual mileage on the vehicle.  (Id. at 4; see also Dkt. No. 151-13, Azar Decl., Ex. J at 2.)  Tavitian replaced the analog instrument panel cluster with a digital cluster from a Dodge Dart Limited.  (Dkt. No. 183-5, Padgett Decl., Ex. 36.) ███████████████████████████████████████████████ ████████████. (Dkt. No. 199-4, Padgett Decl., Ex. 13, Tavitian Depo. at 83:11-13 (UNDER SEAL).)

Tavitian applied for reimbursement of the $298.33 pursuant to the January 2016 voluntary customer service action or X2 Extended Warranty which provided an extended warranty for free repairs of the clutch master cylinder.  (Dkt. No. 151-14, Azar Decl., Ex. K at 2.)  His request for reimbursement was denied because Defendant put a complete restriction on the vehicle's warranty due to changing of the instrument panel cluster from an analog to a digital read out.  (Id.)

Around July 9, 2016, Tavitian's vehicle clutch failed while driving to Palm Springs; it stuck to the floor and he wasn't able to pull it back up.  (Dkt. No. 183-4, Padgett Decl., Ex. 14 at 42.)  The car was towed to Glendale Dodge Chrysler Jeep indicating the issue as "clutch pedal stays on the floor and will notcome (sic) back up."

(Dkt. No. 151-15, Azar Decl., Ex. L at 3.) At that time, his odometer showed 33,346 miles, (id.), but the actual mileage was about 62,043. At that visit, a Chrysler legal inspection occurred concerning the clutch failure. The dealer replaced the clutch master cylinder and the reservoir hose but after bleeding the clutch lines, the clutch pedal was still stuck down. (Id., Ex. L at 3-4.) After removing the transmission, it found the throw out bearing coming apart and leaking, and after removing the clutch disc for inspection, it found the clutch worn out and there were signs of overheating. (Id.) He was told the whole clutch system had to be replaced for about $1,700.00 but Tavitian declined repairs at the dealership. (Id. at 3.) He retrieved his car on August 31, 2016. (Dkt. No. 151-4, Padgett Decl., Ex. 19.)

Instead, he had it repaired in October 2016 with J&E Auto Services, Inc. for $950.70 where J&E attempted to repair the vehicle and replaced the slave cylinder, the clutch master cylinder and a connecting hose. (Dkt. No. 151-16, Azar Decl., Ex. M at 7.) Tavitian continued to experience symptoms of a stuck clutch pedal and his car was towed to Russell Westbrook Chrysler Dodge Jeep Ram on January 24, 2017. (Dkt. No., Padget Decl., Ex. 21.) The technician reconnected the hydraulic clutch master hose that was disconnected and bled the hydraulic clutch system. (Id.)

The basic limited warranty for Tavitian's vehicle also was for 36 months or 36,000 miles, (Dkt. No. 151-11, Azar Decl., Ex. H at Sec. 2.1(F) at 5), but "clutch discs or modular clutch assembly" was warranted for 12 months or 12,000 miles. (Id.) The Powertrain Limited Warranty for Tavitian's vehicle states that "MANUAL TRANSMISSION CLUTCH PARTS ARE NOT COVERED AT ANY TIME." (Id. at 2.4(E) at 9.)

Tavitian's warranty further stated that "disconnecting, tampering with, or altering the odometer will void your warranties, unless your repairing technician follows the legal requirements for repairing or replacing odometers; or attaching any device that disconnects the odometer will also void your warranties." (Id. at 3.1(B) at 12.) On May

25, 2014, Taviatian replaced his original analog instrument panel cluster to a digital one. (Dkt. No. 151-12, Azar Decl., Ex. I at 4.)

**C.    FCA's Actions**

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████" (Dkt. No. 199-4, Padgett Decl., Ex. 7 (UNDER SEAL).)    ██████████████████

██████████████████████████████████████████████████    (<u>Id.</u>)   ████

█████████████████████████████████████████████████████████

████████████████████████████████████████████    (<u>Id.</u>, Ex. 8 (UNDER SEAL).)

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████  (Dkt. No. 199-5, Padgett Decl., Ex. 28 (UNDER SEAL).)  On August 27, 2016, Service Bulletin 06-001-16 REV. A, "Clutch Pedal Operation X62 Extended Warranty" superseded the prior Service Bulletin to include additional model year of 2013-2015 Dodge Darts.   (Dkt. No. 183-4, Padgett Decl., Ex. 9)

According to Plaintiffs, the x62 Extended Warranty was a voluntary service action in response to the case of <u>Hardt v. Chrysler Group LLC</u>, Case No. 8:14cv1375 AJO(VBKx) (C.D. Cal.), a purported class action filed on August 27, 2014 alleging a transmission defect in 2013-2014 Dodge Dart vehicles making almost the same allegations concerning the defect alleged in this case.  In the prior motion for summary judgment, the parties acknowledged that the x62 Extended Warranty was a voluntary service action "which included reimbursements for past repairs and an extended warranty period for free replacements of the reservoir hose and clutch master cylinder – was implemented by FCA US to address an issue involving seal-swelling from the use of a particular kind of leaching plasticizer in a reservoir hose in the clutch system."  (Dkt. No.

91 at 8.) By implementing the voluntary action, FCA admits that the "Clutch Master Cylinder's reservoir hose leaches plasticizer, which causes it to degrade and release fibers, to contaminate the hydraulic fluid, and to damage the Clutch Master Cylinder's seals. This contamination necessitates replacement of both the master cylinder and the reservoir hose." (Id.)

Plaintiffs allege five causes of action for violations of California's Consumer Legal Remedies Act ("CLRA"), California's unfair competition law ("UCL"), breach of implied warranty pursuant to Song-Beverly Consumer Warranty Act, breach of implied warranty pursuant to the Magnuson-Moss Warranty Act, and unjust enrichment. (Dkt. No. 104, FAC.) The allegations are based on the theory that Defendant knew about these alleged defects and failed to disclose and/or intentionally concealed the defects in the Clutch System. (Id. ¶¶ 18, 25.)

## Discussion

### A. Legal Standard on Motion for Summary Judgment

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the initial burden,

9

summary judgment must be denied and the court need not consider the nonmoving party's evidence. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. <u>Id.</u> at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." <u>Fontana v. Haskin</u>, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. <u>Anderson</u>, 477 U.S. at 255.

## B. CLRA and UCL

Defendant seeks summary judgment on the CLRA and UCL claims arguing that it had no duty to disclose the alleged defect since the alleged defect was not an unreasonable safety hazard and it had no pre-sale knowledge of the defect. It also argues that any claims based on an alleged affirmative misrepresentations should also be dismissed. Plaintiffs respond that there are genuine issues of material fact whether the defects are an unreasonable safety hazard and whether FCA had pre-sale knowledge of the defect. Plaintiffs do not oppose Defendant's argument that their claims are not based on an alleged affirmative misrepresentations.

First, Defendant moves for summary judgment on a potential claim of an alleged affirmative misrepresentation as asserted in one sentence in the FAC under the UCL claim. (<u>See</u> Dkt. No. 104, FAC ¶ 118.) The FAC asserts that, "Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature

16cv1617-GPC(JLB)

of the Class Vehicles and their transmission." (Dkt. No. 104, FAC ¶ 118.) The bulk of Plaintiffs' allegations in the FAC concern Defendant's failure to disclose or concealment of the alleged defects. The statement in paragraph 118 appears to be in line with Plaintiffs' failure to disclose claim as it is claiming a failure to disclose the defect which renders Defendant's disclosure partial. There appears to be no indication that Plaintiffs are asserting an affirmative misrepresentation claim in their FAC. However, to the extent Plaintiffs do not oppose Defendant's argument, and the allegation could broadly be interpreted to include a claim of affirmative misrepresentation, the Court GRANTS Defendant's motion for summary judgment on an affirmative misrepresentation claim under the UCL as unopposed.

Next, Defendant seeks summary judgment on Plaintiffs' claims that Defendant failed to disclose the alleged defects. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The UCL, prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §17200.

On a claim for failing to disclose a defect under the CLRA and UCL, "a party must allege '(1) the existence of a design defect; (2) the existence of an unreasonable safety hazard; (3) a causal connection between the alleged defect and the alleged safety hazard; and that the manufacturer knew of the defect at the time a sale was made.'" Williams v. Yamaha Motor Co. Ltd., 851 F.3d 1015, 1025 (9th Cir. 2017) (citations omitted) (asserting claims under the CLRA, UCL and other state consumer fraud statutes).

Defendant argues that Plaintiffs cannot demonstrate the second and third factors asserting that the alleged defects are not an unreasonable safety hazard and it did not know about the defect at the time the vehicles were sold to Plaintiffs. Plaintiffs oppose arguing there are disputed issues of fact on both these factors.

**1. Existence of an Unreasonable Safety Hazard**

Defendant, relying on <u>Williams</u>, 851 F.3d at 1028-29, argues that Plaintiffs have not presented any evidence of a defect in the Clutch System but instead are merely alleging symptoms due to "normal wear and tear" which are not actionable. Moreover, it asserts that the alleged defects do not implicate any safety issues because the defect manifested itself to provide advance warning to Plaintiffs so that repairs could be sought before a serious issue arose. In response, Plaintiffs argue that the clutch defect is not due to "normal wear and tear" as indicated by FCA's internal documents, and Plaintiffs' stuck clutch pedal issue prevented them from shifting gears on the freeway which created a safety issue.

The Court already concluded in its order on Defendant's previous summary judgment that Plaintiffs had demonstrated a genuine issue of material fact that the alleged clutch defect was not due to "normal wear and tear." (Dkt. No. 91 at 17.) Defendant has not presented any additional facts that would alter the Court's conclusion. The next question is whether the alleged defects constitute an unreasonable safety hazard.

In <u>Williams</u>, the Ninth Circuit affirmed the dismissal of the complaint by the district court because it found that the allegations did not adequately plead that the alleged dry exhaust defect constituted an unreasonable safety hazard. <u>Williams</u>, 851 F.3d at 1028-29. The Ninth Circuit explained that the complaint merely alleged that the purported defect merely accelerates the normal and expected process of corrosion in the motors. <u>Id.</u> at 1028. The court also concluded that the alleged safety risk was speculative and not supported by the factual allegations. <u>Id.</u> There was no allegations that any customer, including the plaintiff, experienced a fire onboard. <u>Id.</u> at 1028-29.

In <u>Borkman</u>, the district court denied a motion to dismiss and found that allegations that the Oil Filter Housing Defect "creates hazardous conditions, whereby leaking oil and coolant result in sudden loss of power during operation, engine overheating, and, potentially, engine failure" and "can cause engine malfunctions at any time and under any driving conditions or speeds, thereby increasing the risk of accidents and injury by severely compromising a driver's ability to control the vehicle during

operation" were sufficient to state a claim that the defect rises to the level of an "unreasonable safety hazard." Borkman v. BMW of N. America, LLC, Case No. 16-2225 FMO(MRWx), 2017 WL 4082420, At *6 (C.D. Cal. Aug. 18, 2017); see also Philips v. Ford Motor Co., Case No. 14cv2989-LHK, 2015 WL 4111448, at *10 (N.D. Cal. 2015) ("Whether the alleged defects are an unreasonable safety hazard is a question of fact, and based on the allegations in the [complaint], the Court cannot say that Plaintiff' allegations in that regard are deficient as a matter of law."); Avedisian v. Mercedes-Benz USA, LLC, No. CV 12-936 DMG(CWx), 2013 WL 2285237, at *6 (C.D. Cal. May 22, 2013) ("California law does not speak to the severity of injury necessary to characterize something as a safety defect, only that there be a 'safety concern.' ") (quoting Daugherty v. American Honda Motor Co., Inc., 144 Cal. App. 4th 824, 836 (2006)).

Unlike Williams, Tavitian and Victorino both lost use of the clutch pedal while driving on the freeway and getting on to the freeway.   (Dkt. No. 183-4, Padgett Decl., Ex. 12, Victorino Depo. at 119-24-120:12 (explaining the his gears were not properly catching, were bogging down and he was unable to accelerate as he was entering the freeway); id., Ex. 13, Tavitian Depo. at 186:16-20; 187:23-24; id., Ex. 14, Tavitian's Suppl. Response to D's Interrogatory No. 7 (clutch would not return all the way up while driving on a steep incline on Interstate 5, also known as the "Grapevine", and had to pull over to a narrow shoulder to wait for the clutch to cool down and was forced to pull up the clutch pedal after each shift for the remaining 50+ miles).)  Both Plaintiffs experienced the clutch pedal's failure on the freeways and the Court concludes Plaintiffs presents a genuine issue of material whether their experience creates an unreasonable safety hazard.  See Sloan v. General Motors, LLC, Case No. 16-cv-07244-EMC, 2017 WL 3283998, at *6 n. 3 (N.D. Cal. Aug. 1, 2017) (noting a distinction where a plaintiff experiences a failure due to a defect which constitutes a safety concern with a plaintiff who does not experience a failure and who speculates on a potential risk.)

FCA further relies on a ruling by the National Highway Traffic Safety Administration ("NHTSA") concerning a transmission related issue similar to Plaintiffs' complaints. See Denial of Motor Vehicle Defect Petition, 81 Fed. Reg. 75,907 (Nov. 1, 2016). The NHTSA's ruling was based on federal standards for motor vehicle safety. Id. at 75920. Here, the Court's "unreasonable safety hazard" standard is not based on the federal "unreasonable risk of accidents" safety standard. See Avedisian, 2013 WL 2285237, at 6 (noting that the defendant's reliance on another court's discussion of the National Highway Traffic Safety Act concerning "unreasonable risk of accidents" standard was misplaced in determining unreasonable safety hazard under CLRA). Moreover, even if applicable, the NHTS's ruling was based on the progressive nature of the defect which provides notice to the driver, and noted that a recall is justified when the conditions include "lack of warning or precursor symptoms to the driver; stalling during power-demand situations such as accelerating or to maintain highway speeds/uphill grades; and an inability to immediately "restart" or restore mobility to a stranded vehicle." Id. at 75920. Here, Plaintiffs have presented their testimony that their vehicles stalled while trying to accelerate onto a freeway and when ascending on a steep incline on the I-5 freeway creating a disputed issue of fact on whether their clutch pedal issue is an unreasonable safety hazard.

In sum, Plaintiffs have presented a genuine issue of material fact as to whether the clutch defect alleged was not due to to "normal wear and tear" and whether an unreasonable safety hazard exists.

## 2. Pre-Sale Knowledge

Defendant argues that it is separately entitled to summary judgment on the CLRA and UCL claims because it did not know about the alleged defects at the time Plaintiffs purchased their vehicles. It contends that the documents Plaintiffs cite demonstrating it had knowledge of the defect are not supportive to show knowledge of the specific defects alleged or that is should have known about the defects. Plaintiff argues that FCA knew,

as early as May 2012, prior to Tavitian's purchase, that the clutch pedal was prone to lose pressure, stick to the floor and fails to engage/disengage gears.

To state a claim for fraudulent omission under the CLRA and UCL, a plaintiff must establish that Defendants had "knowledge of a defect" or "was aware of a defect" at the time of sale. Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 (9th Cir. 2012). A plaintiff must demonstrate the defendant was "aware that the defect posed a safety hazard." Id. at 1146. In Wilson, the plaintiffs claimed the defendant laptop computer manufacturer, HP, was aware of the specific defect. Id. The plaintiffs complained that their laptops would run on battery power, even when plugged into an a/c adapter, which could result in "severe overheating often resulting in the Laptops [sic] catching on fire." Id. at 1143. The plaintiffs asserted that HP knew about the defect since it began manufacturing the laptops because of its access to aggregate information and data about the risk of overheating, another lawsuit against HP involving the same defect on a different model of laptop computers, and the plaintiffs produced several customer complaints about the defect made by others. Id. at 1146. The Ninth Circuit determined that access to information and data about the risk of overheating was speculative and did not show how any tests or information could have alerted HP. Next, the claim that the other lawsuit involved the same defect should have put HP on notice was not compelling because the class action did not include one of the plaintiff's laptop and while the complaint alleges the computer involved in the class action suffers from the same common defect, the specific defect did not allege that any of the computers were prone to overheating or catching on fire. Id. Finally, the court noted that most of the customer complaints were undated and from an unknown origin and did not demonstrate an inference of pre-sale knowledge. Id. at 1147.

When addressing a defendant's pre-sale knowledge, courts have held that the defendant must have knowledge of the specific defect alleged, not a general defect. See Sloan v. General Motors LLC, Case No. 16cv7244-EMC, 2017 WL 3283998, at *7 (N.D.

Cal. Aug. 1, 2017); <u>Resnick v. Hyundai Motor America, Inc.</u>, Case No. CV 16-593-BRO(PJWx), 2017 WL 1531192, at *14 (C.D. Cal. Apr. 13, 2017).

In <u>Sloan</u>, the plaintiffs alleged their engines consumed an abnormally high quantity of oil that exceeded industry standards an can cause engine damage. 2017 WL 3283998, at *2. They alleged that high level of oil consumption was caused by defective "low-tension oil control rings." <u>Id.</u> They argued that the defendant had knowledge of the defect because a Technical Service Bulletin ("TSB") addressing oil loss provided it notice but the Court disagreed noting that while the TSB addressed oil loss, it addressed two causes that were not related to the alleged defect that plaintiffs asserted. <u>Id.</u> at *7. Also, the plaintiffs claimed that the defendant had knowledge due to 81 consumer complaints to NHTSA and consumer forums about excessive oil consumption and resulting oil damage. <u>Id.</u> The district held that these complaints, while they notified GM about the general excessive oil consumption problems, they did not establish that GM knew that the "low-tension oil control rings" was the cause of the problem. <u>Id.</u>

Similarly, in <u>Resnick</u>, the district court noted that general "concerns" about the alleged paint defect were not sufficient to establish the defendant was aware of any alleged paint defect when the plaintiffs purchased their vehicles as they did not allege who had the concerns, the substance of the concern and whether the concerns were ever communicated to the defendant. <u>Resnick v. Hyundai Motor America, Inc.</u>, Case No. CV 16-593-BRO(PJWx), 2017 WL 1531192, at *14 (C.D. Cal. Apr. 13, 2017). The court also noted that it is not clear whether the Ninth Circuit's standard of knowledge is actual knowledge or a should have known standard. <u>Id.</u> Despite the lack of clarity, in this case, Defendant argues it did not know nor should it have known about the defects prior to the sale to Plaintiffs.

Tavitian purchased his vehicle on November 17, 2012 and Victorino purchased his vehicle on March 22, 2014. They allege the leached plasticizer from the reservoir hose contaminated the Clutch System's hydraulic fluid and caused swelling of the CMC's and CSC's rubber seals. (Dkt. No. 183-6, Stapleford Decl. ¶ 23.) Moreover, Plaintiffs allege

16cv1617-GPC(JLB)

a separate design defect of the slave cylinder because the aluminum body is clipped to a plastic base making it structurally unstable and causes unintended lateral movement "which is caused by the swelling of the piston seal due to the contaminated fluid." (Id. ¶ 15.)

FCA acknowledges that after reports of pedal sticking to the floor it received in June 2013, in October 2013, testing revealed that the root cause of the pedal sticking condition could potentially involve the "reservoir hose through which hydraulic fluid for the system flows. (Dkt. No. 151-18, Benson Decl. ¶ 5.) Then, after extensive testing with the supplier, the root cause was determined to be plasticizer leaching from reservoir hoses that causes the seal of the master cylinder to swell blocking the flow of hydraulic fluid. (Id. ¶ 6.)

The issue is whether Defendant knew about the alleged swelling of the CSC seals from the contaminated hydraulic fluid and about the alleged defect in the use of a two-piece CSC prior to the sale of the vehicles to Plaintiffs.

Defendant argues that it did not have knowledge of the alleged defects prior to both Plaintiffs' purchase dates. It states it currently has no knowledge nor has it learned during their investigation that the clutch slave cylinders have issues resulting from the leaching plasticizer and has not found any "seal swelling" in the CSC that affects the component's performance. (Dkt. No. 151-18, Benson Decl. ¶ 8.) It states that the seals in the master cylinder and clutch slave cylinders are different shapes and sizes, have different functional requirements and different operating characteristics. (Id. ¶ 8.) Moreover, FCA has not discovered any issue with the "two-piece" design or "plastic base" of the CSC in the 2013-2015 Dodge Dart vehicles. (Id. ¶ 9.) FCA asserts that out of the about 2000 vehicles sold to California residents, there have been 39 warranty claims concerning the CSC that deal with a number of different root causes such as accidents or heat damage resulting from abused or worn clutches. (Id. ¶ 10.)

Plaintiffs counter that FCA was aware of the "pedal down condition" as early as May 2012. They contend that there was a systemic contamination that began well before 2014 when FCA considered other causes that were discarded.

█████████████████████████████████████████████████████████

█████████████████ (Dkt. No. 199-4, Padgett Decl., Ex. 4 at MCPS005075-5081 (UNDER SEAL).) █████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████."

(Dkt. No. 199-5, Padgett Decl., Ex. 31 at MCPS005033 (UNDER SEAL).) Next,

██████████████████████████████████████████████████████████

████████████████████████████████████████. (Id., Ex. 32 at MCPS005086 (UNDER SEAL).)

Defendant responds and the Court agrees ██████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████ (Dkt. No. 199-4, Ex. 4 at MCPS005072, -76, -82 (UNDER SEAL); Dkt. No. 199-5, Ex. 31 at MCPS005026 (UNDER SEAL).) ██████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████. (Dkt. No. 199-4, Ex. 4 at MCPS005072-73 (UNDER SEAL); Dkt. No. 199-5, Ex. 31 at MCPS005026 (UNDER SEAL).) ████████████████

███████████████████████████████ (Dkt. No. 199-4, Ex. 4 at MCPS005072, -76, -77, -82 (UNDER SEAL).)

These documents do not provide Defendant's notice concerning the specific defects of the slave cylinder being bathed in leaching plasticizer by the reservoir hose or an issue with the plastic base used for the CSC. According to Defendant, corrective

measures were implemented in August 2012 on all vehicles, before any were sold to the public, and FCA received no more reports of clutch pedals sticking until June 2013. (Dkt. No. 157[6], Benson Decl. ¶¶ 16-17.)

Next, Plaintiffs ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████. No. 199-5, Padgett Decl., Ex. 44 at VALEO000310 (UNDER SEAL).) Responding, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████. (Id.) ████████████████████████████████████████████████████████████████████████████████████. Therefore, Plaintiffs alleged defect of leakage from leaching plasticizer from the reservoir hose is not contained in this report and does not support Plaintiffs' position.

Next, Plaintiffs argue that Defendant's own practice, policy and procedure should have put it on notice about the alleged defects in the Clutch System. They claim that FCA's mandatory performance testing since 2010 includes assessment of clutch component parts, including the CSC, and testing protocols should have ensured that the "pedal down issue" was addressed and resolved completely before the Class Vehicles release in 2012. However, Plaintiffs do not provide any evidence that Defendant failed to comply with its own practice, policy and procedure concerning their investigation of the 2012 CSC seal issue or during testing of the Clutch System prior to the release of the Class Vehicles.

Plaintiffs' argument is based on the FCA's knowledge of different issues in the Clutch System since 2012. They contend that these issues are systemic and provides FCA with knowledge of the alleged defects because it considered other causes which

---

[6] This declaration was filed in opposition to Plaintiffs' motion for class certification.

were discarded in their attempt to resolve the issue without considering the seal of the CSC and the construction of the two-piece CSC. All this past knowledge of these issues provides FCA with knowledge of the issues in this case. In support, Plaintiffs cites to Philips v. Ford Motor Co., No. 14cv2989-LHK, 2016 WL 7428810, at *17 (N.D. Cal. Dec. 22, 2016), where the court noted that that "an accretion of knowledge" over time supports pre-sale knowledge. In Philips, the plaintiffs alleged their vehicles were defective because the Electronic Power Assisted Steering ("EPAS") systems contained unreliable electro-mechanical relays. Id. at 2. In support of their claim that the defendant knew of the alleged defect prior to sales of any class vehicles, the plaintiffs provided evidence of emails and internal documents demonstrating that the defendant knew that the EPAS systems were defective based on the unreliable relays well before the first consumer purchased the class vehicle. Id. at 17. Philips does not support Plaintiffs' argument that general knowledge of a defect without specificity is sufficient to demonstrate pre-sale knowledge by a defendant. In Philips, the defendant had pre-sale knowledge of the specific defect, the unreliable relays, alleged by the plaintiffs. In this case, FCA did not have knowledge about the specific alleged defect of the leaching plasticizer affecting the CSC and the two-piece construction of the CSC prior to the sale of the vehicles to Plaintiffs. In fact, Defendant denies that it has any current knowledge of the alleged defects.

As a last ditch effort, Plaintiffs argue that it is not necessary for them to prove that FCA knew the root cause of the clutch defect, but they just have to demonstrate the Clutch System had a propensity to lose pressure, stick to the floor and fail to engage/disengage gears. (Id.) Plaintiffs' citation to Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 256 (2011) is not supportive and addressed a motion for judgment on the pleadings. The court in Collins stated that a fact is "material" and requires a knowledgeable defendant to disclose it to a reasonable consumer who would deem it important. Id. The complaint alleged the defendant knew of the defect at issue while Plaintiffs did not. Id. In this case, the evidence does not support the allegation the FCA

knew about the specific defect of the CSC prior to Plaintiffs' purchase of their vehicles and Plaintiff have not demonstrated an issue of material fact sufficient to survive summary judgment.

Next, after resolution of the 2012 issue regarding the cut seals in the CSC, reports concerning stuck clutch pedals arose again in June 2013. (Dkt. No. 157[7], Benson Decl. ¶¶ 16-17.) On June 7, 2013, FCA US opened an investigation as a result of those reports and began collecting, inspecting, and testing suspect components. (Dkt. No. 151-18, Benson Decl. ¶ 4.) After testing, in October 2013, FCA discovered the root cause of the pedal sticking condition could potentially involve the reservoir hose through which hydraulic fluid for the system flows. (Id. ¶ 5.) Prior to October 2013, FCA had no reason to know there was an issue with the reservoir hoses installed in Dodge Dart vehicles. (Id.)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. No. 199-5, Padgett Decl., Ex. 41 at MCPS001220-1222 (UNDER SEAL).) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This document is consistent with FCA's discovery of the leached plasticizer from the reservoir hose causing damage to the CMC.

On August 15, 2014, Defendant released STAR Case S1406000001 which was subsequently amended on February 26, 2015 and August 24, 2015. In January 2016, Defendant implemented a voluntary customer service action, CSN x62, to address the leaching plasticizer in the reservoir hose.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. No. 199-4, Padgett Decl., Ex. 5, MCPS007070 (UNDER SEAL).) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[7] This declaration was filed in opposition to Plaintiffs' motion for class certification.

16cv1617-GPC(JLB)

███████████████████████████████████████████████

██████████████████████████████. (<u>Id.</u>) █████████████████████

████████████████████████████████████

████████ (<u>Id.</u>, Ex. 7 (UNDER SEAL).) █████████████████████

██████████████████████████████. (<u>Id.</u>, Ex. 8 (UNDER

SEAL).)

Defendant does not dispute that it had knowledge about the leaching plasticizer from the reservoir hose affecting the seals of the CMC in October 2013. Meanwhile, Plaintiffs have not demonstrated a genuine issue of material fact that Defendant knew or should have known about the alleged defects concerning the swelling of the CSC's seal caused by the leaching plasticizer and the two-piece composition of the CSC. Therefore, the Court GRANTS Defendant's motion for summary judgment on these two alleged defects as to Plaintiffs Victorino and Tavitian.

As to the leaching plasticizer issue related to the CMC and reservoir hose, since FCA knew this issue before Victorino purchased his vehicle on March 22, 2014, the Court DENIES Defendant's motion for summary judgment as to Victorino; however, since FCA did not know about the defect with the CMC and reservoir hose until after Tavitian purchased his vehicle on November 17, 2012, the Court GRANTS summary judgment as to Tavitian.

**C.     Implied Breach of Warranty of Merchantability**

Defendant moves for summary judgment on the claim of implied breach of warranty of merchantability because Plaintiffs' vehicles were fit for its purpose which is driving. Plaintiffs disagree.

An implied warranty of merchantability under the Song-Beverly Act requires that consumer goods: "(1) Pass without objection in the trade under the contract description[;] (2) Are fit for the ordinary purposes for which such goods are used[;] (3) Are adequately contained, packaged, and labeled[; and] (4) Conform to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1(a). Unless specific

disclaimer methods are followed, an implied warranty of merchantability accompanies every retail sale of consumer goods in the state. Cal. Civ. Code § 1792.

The Song-Beverly Act provides for a minimum level of quality. Keegan v. American Honda Motor Co., Inc., 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012). For a vehicle, the question is whether the vehicle is fit for driving. Id. California courts "reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." Isip v. Mercedes–Benz USA, LLC, 155 Cal. App. 4th 19, 27 (2007). "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." Id. at 26. "Such fitness is shown if the product "is 'in safe condition and substantially free of defects . . . .'" Mexia v. Rinker Boat Co., Inc., 174 Cal. App. 4th 1297, 1303 (2009) (quoting Isip v. Mercedes-Benz USA, LLC, 155 Cal. App. 4th 19, 27 (2007)).

Because the Court concluded that Plaintiffs Victorino and Tavitian raised a genuine issue of fact whether the alleged defects in the Clutch System was an unreasonable safety hazard, the Court necessarily concludes that they have raised a genuine issue of material fact whether the alleged defects breached the implied warranty of merchantability. The Court DENIES Defendant's motion for summary judgment on the Song-Beverly Act.

**D.  Magnuson-Moss Act**

Where a plaintiff alleges "a violation of the [Magnuson–Moss] Act only insofar as [the defendant] may have breached its warranties under state law," and where there is "no allegation that [the defendant] otherwise failed to comply with the Magnuson–Moss Act," the plaintiffs' "federal claims hinge on the state law warranty claims." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 n.3 (9th Cir. 2008). Here, the allegations of the breach of the implied warranty under state and federal law are similar. (Dkt. No. 104-

FAC 127-47.)  Therefore, the federal and state law claims rise or fall together.  Thus, the Court DENIES Defendant's motion for summary judgment on the Magnuson-Moss Act.

**E.     Unjust Enrichment**

Defendant contends that because Plaintiffs' vehicles are subject to an express warranty, the unjust enrichment claim must fail since the express warranty defines the parties' rights and expectations.  Defendant also contends that the unjust enrichment claim must also be dismissed because it is based on the same allegations as their statutory consumer fraud claims of failing to disclose known defects.  Plaintiffs oppose.

The unjust enrichment claim is based on Defendant's failure to disclose known defects.  (Dkt. No. 104, FAC ¶ 150.)  Because the Court grants Defendant's summary judgment motion as to Tavitian on the CLRA and UCL claims and grants in part the summary judgment motion as to Victorino on these claims, the Court GRANTS Defendant's motion for summary judgment on the unjust enrichment claim based on the CLRA and UCL claims as to Plaintiff Tavitian, and as to Plaintiff Victorino but only as to the alleged defects in the CSC.  See Gerard v. Toyota Motor Sales, USA, Inc., 316 Fed. App'x 561, 563 (9th Cir. 2008) ("unjust enrichment claim also fails since Toyota's non-deceptive advertising does not entitle him to restitutionary relief."); Sloan, 2017 WL 3283998, at *10 (dismissing unjust enrichment claims because claims depend on the allegation that GM wrongfully obtained a benefit by concealing the low-tension oil ring defect).

As to Victorino's remaining CLRA and UCL claims concerning the CMC and reservoir hose, the Court DENIES the summary judgment motion on the unjust enrichment claim.  In the Court's order on Defendant's motion to dismiss, it held under Astiana v. Hain Celestial Group, Inc., 783 F.3d 753, 762 (9th Cir. 2015), that while an unjust enrichment claim is not a stand alone cause of action, a court may construe such a claims as a "quasi-contract claim seeking restitution."  (Dkt. No. 18 at 19.)  Therefore, "[a]n action based on quasi-contract cannot lie where a valid express contract covering the same subject matter exists between the parties."  Resnick, 2017 WL 1531192, at *22

(unjust enrichment dismissed because there is an express contract between the parties) (quoting <u>Gerlinger v. Amazon.Com. Inc</u>., 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004)); <u>see also</u> <u>Gerstle v. American Honda Motor Co., Inc.</u>, No. 16cv4384-JST, 2017 WL 2797810, at *14-15 (N.D. Cal. June 28, 2017) (same).

Here, Defendant argues that because there is an express warranty contract between the parties the unjust enrichment claim is not legally viable. However, Plaintiff notes that Defendant claims that there was no valid express contract between the parties because the clutch system components are "wear items" that are not covered by the warranty. These facts raise triable issues whether FCA's express warranty coverage includes the Clutch System. Accordingly, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment on this claim.

## Conclusion

Based on the reasoning above, the Court GRANTS in part and DENIES Defendant's motion for summary judgment. Specifically, the Court GRANTS Defendant's motion for summary judgment on the CLRA and UCL causes of action with the exception of Plaintiff Victorino's claims of an alleged defect of the CMC and the reservoir hose due to leaching plasticizer. The Court DENIES Defendant's motion for summary judgment on the breach of implied warranty of merchantability under state and federal law. The Court GRANTS Defendant's motion for summary judgment on the unjust enrichment claim with the exception of Plaintiff Victorino's claims concerning the defect in the CMC and reservoir hose.

IT IS SO ORDERED.

Dated: Feb 27, 2018

Hon. Gonzalo P. Curiel
United States District Judge

16cv1617-GPC(JLB)