UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO and ADAM TAVITIAN, individually, and on behalf of other members of the general public similarly situated,<br><br>                      Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company, ,<br><br>                      Defendant. | Case No.: 16cv1617-GPC(JLB)<br><br>**AMENDED ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION**<br><br>**[Dkt. No. 212.]** |

      Defendant FCA US LLC filed a motion for reconsideration of the Court's order on summary judgment filed on February 27, 2018, (Dkt. No. 206). (Dkt. No. 212.) Plaintiffs filed an opposition and Defendant replied. (Dkt. Nos. 223, 227.) Based on the reasoning below, the Court GRANTS Defendant's motion for reconsideration.

### Background

      Plaintiffs Carlos Victorino ("Victorino") and Adam Tavitian ("Tavitian") (collectively "Plaintiffs") filed a putative first amended class action complaint based on defects in the 2013-2016 Dodge Dart vehicles equipped with a Fiat C635 manual

1

transmission that cause their vehicles' clutches to fail and stick to the floor. (Dkt. No. 104, FAC ¶¶ 1, 2.) Defendant FCA US LLC ("Defendant" or "FCA") designs, manufactures, markets, distributes, sells warrants and services these vehicles. (Id. ¶ 1.) Plaintiffs claim the "clutch pedal loses pressure, sticks to the floor, and fails to engage/disengage gears. As a result, the Class Vehicles exhibit stalling, failure to accelerate, and premature failure of the Clutch System's components, including the clutch master cylinder ("CMC") and reservoir hose, clutch slave cylinder ("CSC") and release bearing, clutch disc, pressure plate, and flywheel (the "clutch defect")." (Id. ¶ 2.)

Plaintiffs allege two separate defects in the Clutch System. First, the clutch defect is caused by the degradation of the clutch reservoir hose, which releases plasticizer and fibers, causing contamination of the hydraulic fluid that bathes the components of the Clutch System. (Id. ¶ 7.) As a result, the contamination causes the internal and external seals of the CMC and CSC to swell and fail. (Id. ¶¶ 7, 8.) According to Plaintiffs, when fluid in the hydraulic system becomes contaminated, all of the components that have been exposed to the contaminated fluid must be replaced and any steel tubing must also be thoroughly cleaned with brake cleaner and blown out until dry to ensure that none of the contaminants remain. (Id. ¶ 8.) Second, Plaintiffs claim an additional defect in the CSC which exacerbates the problems with the Clutch System. FCA designed its CSC as an assembly composed of an aluminum body with a clipped-on plastic base whereas other manufacturers' slave cylinders are composed of a single, solid cast aluminum component which creates a rigid base. (Id. ¶ 13.) Defendant's two-piece design destabilizes the cylinder at its base, "which can result in unintended lateral movement and cause the piston inside the cylinder to become jammed." (Id.)

Plaintiffs alleged five causes of action for violations of California's Consumer Legal Remedies Act ("CLRA"), California's unfair competition law ("UCL"), breach of implied warranty pursuant to Song-Beverly Consumer Warranty Act, breach of implied

2

warranty pursuant to the Magnuson-Moss Warranty Act, and unjust enrichment. (Dkt. No. 104, FAC.)

In the Court's order on summary judgment, it granted the motion on the CLRA and UCL causes of action because Plaintiffs failed to demonstrate a "genuine issue of material fact that Defendant knew or should have known about the alleged defects concerning the swelling of the CSC's seal caused by the leaching plasticizer and the two-piece composition of the CSC." (Dkt. No. 206 at 22.) However, with regards to the alleged defect of leaching plasticizer from the reservoir hose affecting the seals of the CMC, FCA acknowledged it had knowledge of this defect in October 2013. (Id.) Therefore, because Victorino purchased his vehicle on March 22, 2014, the Court denied summary judgment as to Victorino. (Id.) The Court also denied Defendant's motion for summary judgment on the breach of implied warranty of merchantability under state and federal law and granted Defendant's motion for summary judgment on the unjust enrichment claim as to Tavitian but not Victorino's claims concerning the defect in the CMC and reservoir hose. (Dkt. No. 206 at 25.)

Defendant moves to reconsider the Court's order because new evidence discovered during a March 20, 2018 repair of Victorino's vehicle's clutch refutes the sole remaining basis for his UCL, CLRA and unjust enrichment claims based on an alleged defect related to the clutch master cylinder and reservoir hose involving leaching plasticizer and seal swelling. (Dkt. No. 212.)

**A.    Motion for Reconsideration**

Defendant moves for reconsideration under Federal Rule of Civil Procedure ("Rule") 54(b) based on the court's inherent authority to modify, alter or revoke a non-final order. Rule 54(b) provides that an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

3

Reconsideration of interlocutory orders under Rule 54 is an "inherent" power of the court. City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 888 (9th Cir. 2001); Smith v. Massachusetts, 543 U.S. 462, 475 (2005) ("[a] district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment[.]") (Ginsburg, J., dissenting on other grounds). For purposes of reconsideration under Rule 54, district courts look to the standard on motions for reconsideration under Rule 59 and Rule 60(b). See Hansen v. Schubert, 459 F. Supp. 2d 973, 998 n.5 (E.D. Cal. 2006) ("While the standards applicable to motions for reconsideration of final judgments or orders under Rules 59(e) (final judgments) and 60(b) (final judgments and orders) technically do not delimit the court's inherent discretion to reconsider interlocutory orders, the court nonetheless finds them to be helpful guides to the exercise its discretion."); Cincinnati Ins. Co. v. Harry Johnson Plumbing & Excavating Co., Inc., Case No. 16cv5090-LRS, 2017 WL 5639944, at *1 (E.D. Wash. Oct. 23, 1997) ("As neither Rule 54(b) or this court's Local Rules provide a standard, typically, district courts will apply standards substantially similar to those used under Rule 59(e) and 60(b).").

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).

In addition, Local Civil Rule 7.1(i)(1) provides that a motion for reconsideration must include an affidavit or certified statement of a party or attorney "setting forth the material facts and circumstances surrounding each prior application, including inter alia:

4

(1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) what new and different facts and circumstances are claimed to exist which did not exist, or were not shown upon such prior application." S.D. Local Civ. R. 7.1(i)(1).

**B.    Analysis**

In the Court's order granting in part and denying in part Defendant's motion for summary judgment, the Court, *inter alia*, denied Defendant's motion for summary judgment on CLRA, UCL and unjust enrichment causes of action as to Victorino's claim of an alleged defect in the CMC and reservoir hose caused by leaching plasticizer. (Dkt. No. 206 at 28.)

Defendant argues on reconsideration that new evidence on Victorino's claim of an alleged defect of the CMC and reservoir hose due to leaching plasticizer demonstrates that his claims are without merit and the Court should grant summary judgment on the CLRA, UCL and unjust enrichment causes of action.   Defendant asserts that on March 20, 2018, after the Court's ruling on summary judgment, Victorino took his vehicle, with 78,647 miles, to an FCA US dealership for an inspection due to complaints that the clutch pedal was "sticking to the floor" and the clutch was "slipping." (Dkt. No. 212-3, Royek Decl. ¶ 4.)  After examination of the clutch system, including the clutch master cylinder, slave cylinder, reservoir hose, clutch disc, pressure plate, flywheel and release bearing, it was clear that the clutch master cylinder and reservoir hose were the original, manufacturer-installed components.  (Id. ¶ 6.)  Mike Royek, a Senior Specialist in the Product Analysis group with FCA, inspected the clutch and concluded that the clutch disc, pressure plate, and flywheel needed to be replaced because of wear and tear and there were no signs or evidence that the CMC was failing and no signs of any excessive swelling or other problem with the seals in the CMC as well as no evidence of any leaching plasticizer in any clutch component.  (Id. ¶ 7.)  Defendants argue that because

5

Victorino has not presented any evidence of a defect and will never be able to present such evidence, the Court should reconsider the Court's order and grant summary judgment.

Plaintiffs oppose arguing that FCA is attempting to re-litigate its argument as to the existence of a defect. Plaintiffs argue that despite the repairs on March 20, 2018, the technician did not indicate a root cause for the problems and did not exclude persistent contamination. Moreover, FCA did not provide Plaintiffs with any information about the results of the inspection or how it was conducted. In fact, within an hour of retrieving his car, Victorino called the dealership stating that the clutch pedal was still malfunctioning indicating that there continues to be a defect in the clutch system. Moreover, Plaintiff's expert identified variations of clutch pedal pressure that Victorino describes as a symptom of the Clutch Defect. (Dkt. No. 216-1, Zohdy Decl., Ex. N, Stapleton Decl. ¶ 41.) Plaintiff's expert asserts that "[s]ince the January 2016 repair, Mr. Victorino's clutch pedal felt soft and sometimes just dropped to the floor. In May 2017, the clutch pedal dropped and then become stuck in the half way position. He pressed the pedal and it still would not come back up. He had to pop it up with his feet. In September 2017, the clutch pedal stuck to the floor again. These symptoms confirm that the reservoir hose continued to leach plasticizer and shed debris and caused the replaced CSC to fail." (Id.)

In reply, Defendant notes that Victorino returned to the dealership on April 2, 2018 concerning complaints that his clutch pedal felt "soft" and "loose" but after an inspection and test drive, the dealership found that Victorino's clutch as operating normally and the transmission was shifting normally. (Dkt. No. 227-1, Kleiger Decl. ¶ 7.) The clutch pedal was not soft or loose. (Id.)

On a claim for failing to disclose a defect under the CLRA and UCL, "a party must allege '(1) the existence of a design defect; (2) the existence of an unreasonable safety hazard; (3) a causal connection between the alleged defect and the alleged safety hazard;

and that the manufacturer knew of the defect at the time a sale was made.'" Williams v. Yamaha Motor Co. Ltd., 851 F.3d 1015, 1025 (9th Cir. 2017) (citations omitted) (asserting claims under the CLRA, UCL and other state consumer fraud statutes).

In its motion for summary judgment, Defendant relied solely on the second and third factors arguing that the defect did not pose an unreasonable safety hazard and that it did not know about the defects at the time of Plaintiffs' purchases. (Dkt. No. 151-1.) Defendant did not specifically raise an issue on the first factor on whether Plaintiffs' vehicles had a "defect" although there was an implication that Plaintiffs' clutch system had no defects.

In the summary judgment motion, Defendant noted that when Victorino took his vehicle to the dealership on January 12, 2016, the technicians concluded that the clutch, slave cylinder and flywheel were overheated and warped concluding the issue was due to normal wear and tear. (Dkt. No. 151-4, Azar Decl., Ex. A.) At that time, the dealership did not identify any problems with or replace the reservoir hose or CMC. (Id.) Victorino had only the single clutch repair at 34,351 miles that did not involve replacing the CMC or reservoir hose. (Id.; Dkt. No. 151-5, Azar Decl., Ex. B, Victorino Depo. at 36:25-37:5; 101:17-102;1; 143:4-10.) At 60,000 miles, his CMC and reservoir hose had yet been replaced. (Dkt. No. 151-5, Azar Decl., Ex. B, Victorino Depo. at 101:17-23; 143:4-10.)

Most recently, on March 20, 2018, Defendant presents new evidence that its technician noted that Victorino's CMC and reservoir hose were never replaced and that there were no signs that the CMC was failing or any signs of leaching plasticizer in any clutch component. Moreover, Plaintiff's expert, Mr. Stapleton testified he never inspected Victorino's vehicle and never saw any of the components of his vehicle. (Dkt. No. 162-2, Stapleton Depo. at 47:21-23; 208:9-11.) In response, Plaintiffs argue that Victorino still continues to experience clutch problems of feeling soft or loose; however, they have not presented any specific evidence that Victorino's CMC and reservoir hose
7

have a defect based on contamination due to leaching plasticizer. They do not dispute that Victorino has not yet had his CMC or reservoir hose replaced at 78,647 miles. Mr. Stapleton's opinion is not supportive because he addressed the CSC and not the CMC of Victorino's vehicle. (Dkt. No. 216-1, Zohdy Decl., Ex. N, Stapleton Decl. ¶¶ 38-41.) Interestingly, Mr. Stapleton never inspected Victorino's vehicle.

Once Defendant bears the initial burden on summary judgment showing it is entitled to judgment as a matter of law, Plaintiff must affirmatively demonstrate by "specific facts" that there are triable issues of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Plaintiffs have failed to present specific facts demonstrating there is a defect in the CMC and reservoir hose caused by leaching plasticizer in Victorino's vehicle. Therefore, the Court GRANTS Defendant's motion for reconsideration and GRANTS summary judgment on the remaining CLRA, UCL and unjust enrichment causes of action as to Victorino.

Furthermore, in opposition, Plaintiffs argue that if the Court is inclined to reconsider any issue on summary judgment, it should reconsider the date on which FCA became aware of the alleged defect. (Dkt. No. 223 at 4.) They argue that newly discovered evidence confirms that FCA knew about the issues concerning the clutch slave cylinder seals and the two-piece composition of the clutch slave cylinder by 2012. Without filing a motion for reconsideration, Plaintiffs improperly seeks a reconsideration of the Court's order in their opposition to Defendants' motion for reconsideration. See 625 3rd Street Assocs., LP v. Alliant Credit Union, No. C 09-564 WHA, 2009 WL 3517608, at *5 (N.D. Cal. Oct. 26, 2009) ("Because Alliant has not asked for nor received leave to file a motion for reconsideration as required under Civil Local Rule 7–9, its request for reconsideration in the midst of its opposition here is improper.") The Court declines to address Plaintiffs' arguments seeking reconsideration of the Court's summary judgment order as procedurally improper.

8

**Conclusion**

Based on the above, the Court GRANTS Defendant's motion for reconsideration, and therefore, GRANTS Defendant's motion for summary judgment on Victorino's claims concerning the CMC and the reservoir hose under the UCL, CLRA and unjust enrichment causes of action. The remaining claims in the case are the causes of action for breach of implied warranty of merchantability under state and federal law as well as a California unfair competition law claim based on these breaches. The hearing date set for May 11, 2018 shall be **vacated.**

IT IS SO ORDERED.

Dated: May 10, 2018

Hon. Gonzalo P. Curiel
United States District Judge