1
2
3
4
5
6
7
8     UNITED STATES DISTRICT COURT
9     SOUTHERN DISTRICT OF CALIFORNIA
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| CARLOS VICTORINO and ADAM TAVITIAN, individually, and on behalf of other members of the general public similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>               Defendant. | Case No.: 16cv1617-GPC(JLB)<br><br>**TENTATIVE RULING DENYING PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION**<br><br>**[Dkt. No. 215.]** |

Before the Court is Plaintiffs' amended motion for class certification. (Dkt. No. 215.) The motion is fully briefed and a hearing is set on calendar at 1:30 p.m. on June 1, 2018. After a review of the briefs, supporting documentation and the applicable law, the Court issues the following tentative ruling denying Plaintiffs' amended motion for class certification in advance of the hearing.

## Background

Plaintiffs Carlos Victorino ("Victorino") and Adam Tavitian ("Tavitian") (collectively "Plaintiffs") filed a putative first amended class action complaint based on

defects in the 2013-2016 Dodge Dart vehicles equipped with a Fiat C635 manual transmission that cause their vehicles' clutches to fail and stick to the floor against Defendant FCA US LLC ("FCA" or "Defendant"), the manufacturer of these vehicles, including Plaintiffs' vehicles.  (Dkt. No. 104, FAC ¶¶ 1, 2, 52.)  In their amended motion for class certification, Plaintiffs claim a design defect in the 2013-2015 Dodge Dart vehicles equipped with a Fiat C635 manual transmission built on or before November 12, 2014 ("Class Vehicles").  (Dkt. No. 215-1 at 6[1].)

Plaintiffs claim the hydraulic clutch system ("Clutch System") is defective where the "clutch pedal loses pressure, sticks to the floor, and fails to engage/disengage gears. As a result, the Class Vehicles exhibit stalling, failure to accelerate, and premature failure of the Clutch System's components, including the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel." (Dkt. No. 104, FAC ¶ 2.)

Plaintiffs allege two separate defects in the Clutch System.[2]  First, the clutch defect is caused by the degradation of the clutch reservoir hose, which releases plasticizer and fibers, causing contamination of the hydraulic fluid that bathes the components of the Clutch System.  (Id. ¶ 7.)  As a result, the contamination causes the internal and external seals of the clutch master cylinder ("CMC") and clutch slave cylinder ("CSC") to swell and fail.  (Id. ¶¶ 7, 8.)  According to Plaintiffs, when fluid in the hydraulic system

_____

[1] Page numbers are based on the CM/ECF pagination.
[2] While the parties dispute whether Plaintiffs have abandoned the theory of the second defect alleged in the clutch slave cylinder, the Court concludes that for the breach of implied warranty claims, the two defects alleged in the FAC that make the Class Vehicles unmerchantable remain.  Because of the Court's ruling on summary judgment concerning the CLRA and related causes of action granting judgment against Victorino but not Tavitian and granting summary judgment as to the alleged defective construction of the CSC due to FCA's lack of pre-sale knowledge solely on the CLRA and related causes of action, the Court recognizes that there may have been some confusion as to the defects that support the remaining breach of implied warranty claims.

16cv1617-GPC(JLB)

becomes contaminated, all of the components that have been exposed to the contaminated fluid must be replaced and any steel tubing must also be thoroughly cleaned with brake cleaner and blown out until dry to ensure that none of the contaminants remain. (Id. ¶ 8.) Second, Plaintiffs claim an additional defect in the CSC which exacerbates the problems with the Clutch System. FCA designed its CSC as an assembly composed of an aluminum body with a clipped-on plastic base whereas other manufacturers' slave cylinders are composed of a single, solid cast aluminum component which creates a rigid base. (Id. ¶ 13.) Defendant's two-piece design destabilizes the cylinder at its base, "which can result in unintended lateral movement and cause the piston inside the cylinder to become jammed." (Id.)

On January 8, 2016, FCA implemented a voluntary customer service action, Service Bulletin 06-001-16 entitled "Clutch Pedal Operation X62 Extended Warranty" ("X62 Extended Warranty repair") to address the issue of the contaminated hydraulic fluid caused by the degradation of the clutch reservoir hose and involved the "replacement of the hydraulic clutch master cylinder and reservoir hose" for the 2013-2015 Dodge Dart vehicles. (Dkt. No. 216-1, Zohdy Decl., Ex. H at 62; Dkt. No. 183-4, Padgett Decl., Ex. 9 at 19.)

In this litigation, Plaintiffs claim that the X62 Extended Warranty repair failed to fully address and repair the defect and ignores the systemic effect of the contaminated hydraulic fluid. They contend that if the hydraulic fluid is contaminated, all clutch system components are susceptible to damage and the well-known industry standard requires that all component parts within the system must be replaced. (Dkt. No. 216-1, Zohdy Decl., Ex. B, Stapleton Decl. ¶ 9.) According to Plaintiffs, any repair requires replacement of all component parts, including the CSC, thorough cleaning of any steel tubing with brake cleaner and drying before reassembly. (Dkt. No. 232-5, D's Mot. to Exclude, Stapleford Expert Report ¶ 16.)

Defendant's theory, in defense, is that the seal swelling has only manifested itself in 16% of the Class Vehicles because each Class Vehicle has component parts that are manufactured differently. (Dkt. No. 229-1, Benson Decl. ¶¶ 18, 19.) The differences are attributable to the manufacture of reservoir hoses with different amounts of plasticizer, the manufacture of CMCs in different sizes, and variations in the positioning of primary seals on the CMC. (Id.) According to the defense, the existence of the defect depends entirely on the amount of plasticizer in the reservoir hose, the size and position of the clutch system seals and the level of the varying tolerances. (Id.)

The FAC alleged five causes of action for violations of California's Consumer Legal Remedies Act ("CLRA"), California's unfair competition law ("UCL"), breach of implied warranty pursuant to Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), breach of implied warranty pursuant to the Magnuson-Moss Warranty Act ("MMWA"), and unjust enrichment. (Dkt. No. 104, FAC.) After the Court's ruling on Defendant's motion for summary judgment and subsequent motion for reconsideration, (Dkt. Nos. 206, 240), the remaining causes of action are the breach of implied warranty of merchantability under the Song-Beverly Act, the MMWA, and a UCL claim premised on the breach of implied warranty claims.

Because the Court's ruling on reconsideration was filed after the motion for class certification and opposition were filed and addresses the CLRA and related claims, the Court only addresses the issues as it relates to the state and federal claims for a breach of implied warranty of merchantability as well as the UCL claim.

## Discussion

### A. Legal Standard on Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only. In order to justify a departure from that rule, a class representative must be a part of the class and possess the same interest and

suffer the same injury as the class members." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks and citations omitted). A plaintiff seeking class certification must affirmatively show the class meets the requirements of Rule 23. <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426, 1432 (2013) (citing <u>Dukes</u>, 131 S. Ct. at 2551-52). To obtain certification, a plaintiff bears the burden of proving that the class meets all four requirements of Rule 23(a)--numerosity, commonality, typicality, and adequacy. <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970 979-80 (9th Cir. 2011). If these prerequisites are met, the court must then decide whether the class action is maintainable under Rule 23(b). <u>United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union AFL–CIO, CLC v. ConocoPhillips Co.</u>, 593 F.3d 802, 806 (9th Cir. 2010). This case involves Rule 23(b)(3), which authorizes certification when "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court exercises discretion in granting or denying a motion for class certification. <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 953 (9th Cir. 2003).

The Court is required to perform a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question." <u>Dukes</u>, 131 S. Ct. at 2551. "'[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. More importantly, it is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court must consider the merits if they overlap with Rule 23(a) requirements." <u>Ellis</u>, 657 F.3d at 981. Nonetheless, the district court does not conduct a mini-trial to determine if the class "could actually prevail on the merits of their claims." <u>Id.</u> at 983 n.8; <u>United Steel, Paper & Forestry, Rubber, Manufacturing Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v.</u>

ConocoPhillips Co., 593 F.3d 802, 808 (9th Cir. 2010) (citation omitted) (court may inquire into substance of case to apply the Rule 23 factors, however, "[t]he court may not go so far . . . as to judge the validity of these claims.").

Here, the FAC alleges that the "implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Clutch Systems were manufactured, supplied, distributed, and/or sold by FCA were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their Clutch Systems would be fit for their intended use while the Class Vehicles were being operated." (Dkt. No. 104, FAC ¶¶ 131, 141.)

The Song-Beverly Consumer Warranty Act ("Song-Beverly Act") provides that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. "Consumer goods" is defined as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." Cal. Civ. Code § 1791(a). An implied warranty of merchantability under the Song-Beverly Act requires that consumer goods "[a]re fit for the ordinary purposes for which such goods are used." Cal. Civ. Code § 1791.1(a).

The Song-Beverly Act provides for a minimum level of quality. Keegan v. American Honda Motor Co., Inc., 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012); American Suzuki Motor Corp. v. Superior Ct., 37 Cal. App. 4th 1291, 1295-96 (1995) ("Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law . . . . [I]t provides for a minimum level of quality."). For a vehicle, the question is whether the vehicle is fit for driving. Keegan, 838 F. Supp. 2d at 945. California courts "reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the

6

implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." Isip v. Mercedes–Benz USA, LLC, 155 Cal. App. 4th 19, 27 (2007). "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." Id. at 26. "Such fitness is shown if the product "is 'in safe condition and substantially free of defects . . . .'" Mexia v. Rinker Boat Co., Inc., 174 Cal. App. 4th 1297, 1303 (2009) (quoting Isip, 155 Cal. App. 4th at 27). It does not require that a vehicle be inoperable. Avedisian v. Mercedes-Benz USA, LLC, 43 F. Supp. 3d 1071, 1079 (C.D. Cal. 2014).

In California, a current manifestation of malfunction is not an element of a breach of implied warranty claim. Hicks v. Kaufman and Broad Home Corp., 89 Cal. App. 4th 908, 918, 923 (2011); see Wolin v. Jaguar Land Rover N. America, LLC, 617 F.3d 1168, 1173 (9th Cir. 2010) ("proof of the manifestation of a defect is not a prerequisite to class certification."). If there is no current malfunction, the plaintiff need only demonstrate that the product "contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product." Hicks, 89 Cal. App. 4th at 918.

The Magnuson-Moss Warranty Act ("MMWA") provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . ." 15 U.S.C. § 2310(d)(1). Where a plaintiff alleges "a violation of the [Magnuson–Moss] Act only insofar as [the defendant] may have breached its warranties under state law," and where there is "no allegation that [the defendant] otherwise failed to comply with the Magnuson–Moss Act," the plaintiffs' "federal claims hinge on the state law warranty claims." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 n.3 (9th Cir. 2008) (claims under the MMWA "stand or fall with . . . express and implied warranty claims under state law."). In the Court's order on summary judgment, the Court noted that the

7

1   allegations for breach of the implied warranty were similar under state and federal law

2   and therefore concluded that the state and federal breach of implied warranty claims rise

3   or fall together.  (Dkt. No. 206 at 23-24.)  Moreover, in their motion for class

4   certification, Plaintiffs assert that their MMWA implied warranty claims derive from

5   violations of the Song-Beverly Act.  (Dkt. No. 215-1 at 8.)  Therefore, the MMWA

6   stands or falls with the Song-Beverly Act.  <u>See</u> <u>Clemens</u>, 534 F.3d at 1022 n. 3.

7        Here, Plaintiffs seek to certify the following:

8        **<u>Nationwide Implied Warranty Class</u>** to include,
       All persons in the United States or its territories who purchased or leased,

9        from an authorized dealership, a Dart Vehicle.

10       **<u>California Implied Warranty Class</u>** to include,
       All persons who purchased or leased in California, from an authorized

11       dealership, a Dart Vehicle.

12       **<u>Injunctive Relief Class</u>** to include,
       All persons in California who purchased or leased, from an authorized

13       dealership, a Dart Vehicle.

14

15   (Dkt. No. 215-1 at 8.)[3]   In reply, in response to Defendant's argument that the Song-

16   Beverly Act does not apply to used consumer goods, it appeared that Plaintiffs adjusted

17   the class definition of the California Implied Warranty Class to include "those subsequent

18   purchasers whose vehicles were sold by FCA-authorized dealers and are typically

19   warranted by FCA, and who, according to FCA would also receive notice of and

20   coverage under the written X62 warranty extension."  (Dkt. No. 244 at 18.)  However, in

21

22

23

24   [3] Plaintiffs also sought to include an Omissions Class to include, "All persons in California who are

25   'consumers' within the meaning of California Civil Code § 1761(d) (the 'CLRA') and purchased or
  leased, after October 1, 2013, from an authorized dealership, a Dart Vehicle"; however, the Court

26   granted summary judgment on the CLRA claim in the Court's prior orders.  (<u>See</u> Dkt. Nos. 206, 240.)
  Therefore, Plaintiffs' certification of the omissions class is moot.

27                               8

28

their sur-sur-reply, they contend that the statement was merely to explain the logic behind the definition.  (Dkt. No. 254 at 8.)

**B.  Federal Rule of Civil Procedure 23(a)**

**1.  Numerosity and Commonality**

Plaintiffs argue that the class is sufficiently numerous to satisfy Rule 23(a) and that the breach of implied warranty involves a common question.  Defendant does not challenge Plaintiffs' argument that the putative class is sufficiently numerous or that issues of law or fact are common to the class under Rule 23(a).

To establish numerosity, a plaintiff must show that the represented class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); Bates v. United Parcel Serv., 204 F.R.D. 440, 444 (N.D. Cal. 2001).  A court may reasonably infer based on the facts of each particular case to determine if numerosity is satisfied.  Ikonen v. Hartz Mtn. Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988).

Plaintiffs state that over 2000 class vehicles were sold in California.  (Dkt. No. 239-3, Zohdy Decl., Ex. EE at 119 (UNDER SEAL).)  Based on these numbers, the Court concludes that the numerosity element has been met.  See Ikonen, 122 F.R.D. at 262 ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.").

As to commonality, Rule 23(a)(2) requires Plaintiffs to show "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  Dukes, 131 S. Ct. at 2551.  "That common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.  "'What matters to class certification . . . is not the raising of common 'questions' . . .

but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" Id. (emphasis in original) (citation omitted). "[C]ommonality only requires a single significant question of law or fact." Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 589 (9th Cir. 2012) (commonality not disputed as to whether Honda "had a duty to disclose or whether the allegedly omitted facts were material and misleading to the public"); Rodriguez v. Hayes, 591 F.3d 1105, 1122 (9th Cir. 2010) (Commonality is satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.") (quoting Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)).

Plaintiffs assert that the common issue on the breach of implied warranty is whether the vehicles are "merchantable." They claim that there is a common design defect of the Clutch System inherent in every Class Vehicle rendering them unsafe. Defendants do not dispute Plaintiffs' common issues of law and fact under Rule 23(a)(2). The Court concludes that this common question applies to the entire class and satisfies the less rigorous commonality requirement. See In re Hyundai and Kia Fuel Economy Litig., 881 F.3d 679, 691 (9th Cir. 2013) ("The Rule 23(b)(3) predominance inquiry is 'far more demanding' than Rule 23(a)'s commonality requirement."); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (recognizing that commonality under Rule 23(a)(2) to be "less rigorous" than the predominance companion requirement under Rule 23(b)(3)); Mazza, 666 F.3d at 589 (referring to Rule 23(a)(2) commonality requirement as a "limited burden").

## 2.   Typicality[4]

---

[4] Defendant confusingly conflates the arguments on typicality and adequacy. Typicality and adequacy require different analyses and the Court has attempted to separate out their arguments accordingly.

16cv1617-GPC(JLB)

Under typicality, the Court must determine whether the claims or defenses of the representative parties are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Id. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.

Plaintiffs argue that their claims are based on the purchase or lease of the Class Vehicle equipped with a defectively designed clutch system at the time of purchase. Plaintiffs' common injury is the overpayment of their Class Vehicles when they purchased them. As to Tavitian, Defendant argues that his odometer tampering makes him an atypical class representative as other class members will not be negatively impacted by this issue.[5] As to Victorino, Defendant argues that Victorino was not injured by an incomplete X62 Extended Warranty repair because his vehicle never had or even needed the repair, and therefore, he has not suffered the same injury as or sustained the same type of damage as putative class members. Plaintiffs disagree with Defendant's argument as to Tavitian but do not address Victorino's issue in their reply.

In moving for class certification, and as discussed in detail below, Plaintiffs do not need to demonstrate a manifestation of a current defect on a breach of an implied

---

[5] Defendant's argues that Tavitian is not a typical or adequate representative based the Court's order on summary judgment against him on the fraud-based claims. However, on reconsideration, the Court granted summary judgment on the remaining fraud-based claim, and this argument is now moot.

16cv1617-GPC(JLB)

warranty claim.  See Wolin, 617 F.3d at 1173.  Therefore, the fact that Victorino's CMC and reservoir hose has not yet manifested a defect, as the Court concluded in its order on Defendant's motion for reconsideration on the CLRA claim, (Dkt. No. 240 at 7-8), is not a requirement in demonstrating whether a class should be certified for breach of implied warranty.  `Furthermore, Defendant does not explain how the tampering of the odometer affects Tavitian's alleged defect in his Clutch System at the time he purchased the vehicle.  Any conduct by Tavitian after his purchase of the Dodge Dart vehicles is not relevant to whether his vehicle suffered the same defect as the class members at the time of purchase.  Here, Victorino and Tavitain, as well as the proposed class members, allege their Clutch Systems were defective when they purchased their vehicles and seek damages for breach of the implied warranty.  See Wolin, 617 F.3d at 1175 (typicality met because the plaintiffs allege common defect and legal theories as the class members and can be met "despite different factual circumstances surrounding the manifestation of the defect.").  Representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical", Hanlon, 150 F.3d at 1020, and in this case, Plaintiffs have demonstrated that typicality has been met.[6]

### 3.    Adequacy

As to adequacy, Rule 23(a)(4) provides that class representatives must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In analyzing whether Rule 23(a)(4) has been met, the Court must ask two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1031 (9th Cir.

---

[6] In the typicality analysis, FCA contends that Plaintiffs are not typical of those class members who purchased used vehicles. The Court addresses the "used vehicle" issue in the predominance question.

12

2012) (quoting <u>Hanlon</u>, 150 F.3d at 1020).  "Several courts have held that "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  <u>Hanon</u>, 976 F.2d at 508. A motion for class certification should not be granted if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."  <u>Id.</u> (citation omitted).  "Defendants need not show that these unique defenses will necessarily succeed, but rather that they will shape the focus of litigation in a way that may harm class members and ultimately risk the class' chance of recovery."  <u>Schaefer v. Overland Express Family of Funds</u>, 169 F.R.D. 124, 129 (S.D. Cal. 1996).

Plaintiffs summarily assert that their interests do not conflict with the interests of the Class and are seeking the same remedies as the class based on the same core of operative facts, and that their counsel is more than adequate to represent the class. Defendant opposes arguing that Plaintiffs and Plaintiffs' counsel are inadequate.

### a.     Adequacy of Counsel

Plaintiffs generally claim that they have retained highly qualified and competent counsel with significant experience litigating class actions.  (Dkt. No. 216-1, Zohdy Decl., 41, Ex. MM.)  They note that during this litigation they have defeated FCA's motion for leave to file a third party complaint, (Dkt. No. 133), reconsideration on a motion to compel, (Dkt. No. 136), and obtained a partial denial of summary judgment. (Dkt. No. 206.)

In opposition, Defendant argues that proposed class counsel is not adequate to represent the class as actions during the litigation raise questions as to their integrity and trustworthiness.  First, the Court, in a prior order, concluded that class counsel violated California Rule of Professional Conduct 3-510 for failing to communicate settlement offers to their clients.  (Dkt. No. 115 at 8.)  Moreover, during the litigation, Defendant contends that Plaintiffs' counsel violated ethical rules by improperly soliciting and

engaged in the unauthorized practice of law by representing David Tavitian, a third-party witness, who is also the father of Plaintiff Adam Tavitian, at his deposition in Indiana. Moreover, Plaintiffs' counsel may have engaged in improper solicitation of third-party witness Emad Salama by contacting him in person and offering to represent him for purposes of his deposition and potentially any claims made against him concerning his work on Tavitian's vehicle. Plaintiffs respond that they did not act improperly by representing David Tavitian solely for the purpose of the deposition and without charging him a fee. As to representing Salama at his deposition, Plaintiffs claim that Defendant presents no legal authority to support its argument.

In the Court's prior order on July 25, 2017, the Court denied Defendant's motion to deny class certification as premature. (Dkt. No. 115.) The Court conducted an in-depth analysis on the adequacy of counsel under Rule 23(a)(4) and related Rule 23(g). (Dkt. No. 115 at 3-5.) The Court concluded that Plaintiffs had satisfied Rule 23(g)(A) by showing that counsel has been diligently prosecuting the case and expended substantial resources to represent the class, and counsel had extensive experience in class actions, particularly in automotive defect class actions. (Id. at 5-6.) In considering other factors under Rule 23(g)(B), the Court concluded that "Plaintiffs' counsel's failure to communicate Defendant's settlement offer was contrary to California Rule of Professional Conduct 3-510 which raises a question as to counsels' integrity and trustworthiness to represent the interests of the class." (Id. at 12.) The Court noted, there were reasons, albeit incorrect, why Plaintiffs' counsel did not believe they needed to communicate the settlement offer." (Id.) Based on a review of the cases, the Court concluded that failure of counsel to communicate a settlement offer, itself, does not demonstrate inadequacy of counsel under Rule 23(a)(4) and Rule 23(g). (Id. at 9.)

Adequate representation depends upon "an absence of antagonism [and] a sharing of interests between representatives and absentees." Molski v. Gleich, 318 F.3d 937, 955

(9th Cir. 2003), <u>overruled on other grounds</u> by <u>Dukes v. Wal–Mart Stores, Inc.</u>, 603 F.3d 571 (9th Cir. 2010). In <u>Radcliffe v. Experian Info. Solutions</u>, 715 F.3d 1157, 1167-68 (9th Cir. 2013), the Ninth Circuit held class representatives were inadequate because they faced significantly different financial incentives than the rest of the class due to the conditional incentive awards that are built into the structure of the settlement and counsel was also inadequate "because as soon as the conditional-incentive-awards provision divorced the interests of the class representatives from those of the absent class members, class counsel was simultaneously representing clients with conflicting interests." <u>Id.</u> at 1167.

In support of its argument, Defendant cites to <u>In the Matter of Coale</u>, 775 N.E. 2d 1079, 1080-81 (Ind. 2002) for the argument that Plaintiffs' counsel violated Indiana law by soliciting David Tavitian. In <u>Coale</u>, two out-of-state attorneys were disciplined for their acts of solicitation seeking to represent survivors and family members of those killed in a cargo plane crash in Indiana. <u>Id.</u> at 1080-81. The attorneys send letters, tapes, and folders to the victims' families and survivors attempting to procure them as clients without using the words "advertising material" on them. <u>Id.</u> at 1081. The Supreme Court of Indiana held that while mail solicitation of prospective clients is permitted, they must comply with Indiana law concerning its content. <u>Id.</u> at 1083. In the case, the attorneys failed to label the materials as "advertising materials", failed to file the materials with the Commission prior to disseminating them, and contained "false, fraudulent, misleading, deceptive, self-laudatory or unfair statements or claims" in violation of the Rules of Professional Conduct. <u>Id.</u> at 1084. The facts in <u>Coale</u> is distinguishable from the facts in this case and is not supportive of Defendant's argument.

Here, Defendant does not cite to a specific provision of the Indiana Rules of Professional Conduct that was violated by Plaintiffs' counsel. In response, Plaintiffs cite to the following relevant Indiana Rules of Professional Conduct, "[a] lawyer . . . shall not

15

by in-person, live telephone, or real-time electronic contact solicit professional employment from a prospective client when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the person contacted: (1) is a lawyer; or (2) has a family, close personal, or prior professional relationship with the lawyer." Ind. Prof. Cond. R. 7.3(a). Also, a "lawyer who is not admitted to practice in this jurisdiction, but is admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that . . . and arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice." Ind. Prof. Cond. R. 5.5(c)(4).

Plaintiffs' counsel claims the representation of David Tavitian was a courtesy for Plaintiff Adam Tavitian solely for the purposes of the deposition and the representation was done without charge to David. Therefore, there was no violation of the Rules of Professional Conduct. The Court agrees and concludes that Defendant has failed to demonstrate an ethical violation under the Indiana Rule of Professional Conduct. FCA also claims there is a conflict of interest because David testified that he does not believe Plaintiff's vehicle has a defect, but FCA does not explain how David's testimony will be used at trial and how it conflicts with Plaintiffs' counsels' representation of the class.

As to Salama, Defendant claims that Plaintiffs' counsel's representation of Salama "may" violate California Rules of Professional Conduct 1-400 but fails to specifically cite to the provision that applies. Rule 1-400 is entitled "Advertising and Solicitation" with many provisions which Defendant fails to specifically reference. Moreover, FCA provides no authority that Plaintiffs' counsel cannot represent a third party witness. Lastly, FCA's argument that Salama potentially bears liability for one of the repairs at tissue is also unavailing. The Court denied FCA's motion for leave to file a third party complaint against Salama and FCA has not indicated that it intends to file a separate lawsuit seeking relief against Salama.

1    Besides Plaintiffs' counsel's failure to communicate a settlement offer, which by

2    itself, does not demonstrate inadequacy of counsel, Defendant has not demonstrated that

3    Plaintiffs' counsel's representation is inadequate.  Thus, the Court concludes that

4    Plaintiffs' counsel is adequate pursuant to Rule 23(a).

5                    **b.        Adequacy of Plaintiffs**

6            Defendant asserts that Tavitian's claim is not adequate because the Court

7    sanctioned Tavitian in the form of an adverse jury instruction due to spoliation of

8    evidence based on his failure to preserve the slave cylinder, the clutch master cylinder

9    and a connecting hose that were removed from his vehicle by J&E Auto Services in

10   October 2016, four months after the complaint was filed.  (Dkt. No. 134 at 6, 18-19.)

11   Plaintiffs argue that the Court declined to find Tavitian inadequate based on the

12   imposition of the adverse instruction.  They argue that a finding that Tavitian is

13   inadequate will be tantamount to a double sanction for the same conduct which the Court

14   has already ruled.  Finally, they argue that the evidentiary sanction has no relevance to

15   the breach of implied warranty claim because such a claim looks at merchantability at the

16   time of sale, not subsequent events.  Because Tavitain's vehicle also contained an

17   inherent design defect in its Clutch System, the sanction should play no role, and he is an

18   adequate representative.

19           The Court's imposition of an adverse inference jury instruction at trial was not

20   based on bad faith on the part of Tavitian but due to negligence.  (Dkt. No. 134 at 21.)

21   The Court noted that prejudice to FCA was mitigated by FCA's inspection of his clutch

22   system prior to Tavitian's failure to preserve.  (Id.)  In the Court's order, contrary to

23   Plaintiffs' argument, the Court deferred ruling on whether Tavitain was an adequate class

24   representative until fuller briefing on class certification.  (Dkt. No. 134 at 25.)  In

25   opposition, Defendant does not expand on its briefing and merely repeats its arguments

26   and cites to the same cases where courts have found a lack of adequacy when there has

27

28

been spoliation of highly relevant evidence.  (<u>Compare</u> Dkt. No. 116 at 24 <u>with</u> Dkt. No. 229 at 28.)  In <u>Doyle</u>, the district court imposed sanctions against the plaintiff in the form of an adverse inference instruction because she disposed of her vehicle prior to retaining counsel but after she had investigated the possibility she had a claim by visiting counsel's website.  <u>Doyle v. Chrysler Group LLC</u>, No. SACV 13-620 JVS(ANX), 2014 WL 7690155, at *2-3 (C.D. Cal. Oct. 9, 2014), <u>reversed and remanded on other grounds by</u> <u>Doyle v. Chrysler Group, LLC</u>, 663 Fed. App'x. 576 (2016).  Due to the adverse inference instruction, the court also found that she was an inadequate representative because unlike other class members, she will be required to overcome any adverse inference a jury may draw as a result of the sale of her vehicle.  <u>Id.</u>  In <u>Akaosugi v.</u> <u>Benihana Nat'l Corp.</u>, 282 F.R.D. 241, 257 (N.D. Cal. 2012), while the district court denied the motion for sanctions, it held that the issues unique to the plaintiff, which are the issues raised in the motion for sanctions, will impede his ability to vigorously represent the interest of the class and found him an inadequate representative.  <u>Id.</u> at 257. In <u>Akaosugi</u>, the plaintiff had copied company documents from a work computer onto a USB drive provided to him by the employer and he deleted the documents from the USB drive prior to sending the drive to the defendant.  <u>Id.</u> at 257.  Because the plaintiff did not permanently destroy the documents, sanctions were denied but questions were raised as to the plaintiff's actions in erasing the documents before providing the drive to defendant. <u>Id.</u>

In <u>Falcon v. Philips Elecs. N. America Corp.</u>, 304 Fed. App'x 896, 898 (2d Cir. 2008), the Second Circuit affirmed the district court's finding that the plaintiff could not serve as an adequate class representative because the disposal of the product at issue, a television, made the plaintiff an inadequate representative because she will be subject to unique defenses against a charge of spoliation of evidence.  <u>Id.</u> at 898.

Here, the Court sanctioned Tavitain in the form of an adverse jury instruction due to his spoliation of evidence.  (Dkt. No. 134.)  Similar to the facts in the cases cited above, Tavitian will be unable to vigorously prosecute the action while he will be subject to questions arising from the spoliation of evidence and overcoming the mandatory presumption that the lost evidence is relevant and favorable to FCA.  (See id. at 21.)  The Court disagrees with Plaintiffs' argument that finding Tavitian inadequate would amount to a double sanction as unavailing.  See Doyle, 2014 WL 7690155, at *2-3 (imposing sanctions and finding the plaintiff an inadequate class representative).  Moreover, the Court disagrees with Plaintiffs' argument that evidentiary sanctions are not relevant for purposes of adequacy on a breach of implied warranty claim because the claim looks at the events at the time of sale.  The Court disagrees.  At trial, Plaintiffs will have to demonstrate either a manifestation of a defect or "an inherent defect which is substantially certain to result in malfunction during the useful life of the product."  Hicks, 89 Cal. App. 4th at 918.  Adequacy looks at whether plaintiff will prosecute the action vigorously on behalf of the class which will require Tavitian to defend himself and/or rebut the mandatory presumption at trial, an issue only relevant to Tavitian.  Accordingly, the Court concludes that Tavitian is not an adequate representative.

Defendant also argues that Plaintiffs lack sufficient knowledge of the claims and events in this case and they have given total control of their case to their attorneys to make all decisions, including whether to accept or reject a settlement.  FCA asserts there is no evidence that Plaintiffs are in charge of their own case.[7]  In response, Plaintiffs cite to the parties deposition testimony where Victorino testified that he keeps up to date with his attorneys and look into the case from time to time and has read all the documents his attorneys have sent him.  (Dkt. No.244-1, Lurie Decl., Ex. 2 at Victorino Depo. at

---

[7] FCA's argument concerning the purchase of used vehicles is addressed with the predominance factor.

171:12-172:7.)  He stated that the class is made up of anyone that is affected by the clutch defect.  (Id. at 174:25-175:6.)  The Court concludes that Victorino is an adequate representative.

In sum, based on the reasoning above, the Court concludes Rule 23(a) factors have been met with the exception that the adequacy of Tavitian has not been satisfied under Rule 23(a).

## C.     Federal Rule of Civil Procedure 23(b)(3)

Under Rule 23(b)(3), the plaintiff must demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" and that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Predominance is satisfied "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  Hanlon, 150 F.3d at 1022 (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1777 (2d ed. 1986)).  Superiority requires a consideration of "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(a)-(d).  In addition, class damages must be sufficiently traceable to plaintiffs' liability case.  See Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013).

### 1.     Predominance

#### a.     Nationwide Class

In their motion, Plaintiffs, in two sentences, support a Nationwide Implied Warranty Class under the MMWA by the simple observation that FCA's violation of

Song-Beverly Act creates a MMWA federal claim. (Dkt. No. 215-1 at 8-9.) They do not address any due process or choice of law issues raised by seeking a nationwide class. In response, Defendant argue that Plaintiffs cannot maintain a nationwide class because they failed to meet their initial burden of demonstrating that due process would not be violated by applying California law to a nationwide class, and in any event, predominance is lacking because the Court will have to apply the implied warranty laws of 50 different jurisdictions for a nationwide implied warranty class. (Dkt. No. 229 at 23-24.) Plaintiffs reply claiming, without any legal authority, they do not have to conduct any choice of law or due process analysis because despite the fact that their MMWA claim is predicated on breach of the Song-Beverly Act, once a MMWA violation is created, the MMWA can apply to all persons nationwide who purchased or leased the Dodge Dart Vehicles.

Plaintiffs' argument that they do not have to address any choice of law or due process issue is contradicted by settled law. Because Plaintiffs' MMWA cause of action is premised on California's Song-Beverly Act, Plaintiffs must demonstrate that the application of California law to a nationwide class comports with due process. See Kas v. Mercedes-Benz USA, LLC, Case No. CV 11-1032-VBF(PJWx), 2011 WL 13238744, at *3 (C.D. Cal. Aud. 23, 2011) (while the plaintiff only alleged one claim of a nationwide class under the MMWA, "[u]ltimately, Plaintiff must demonstrate that the differences in state laws implicated by the putative class action are nonmaterial" where the plaintiff claimed the MMWA incorporated the state law warranty standard) (citing Walsh v. Ford Motor Co., 807 F.2d 1000, 1016 (D.C. Cir. 1986) ("state warranty law lies at the base of all warranty claims under Magnuson-Moss")).

Certifying a nationwide class under the MMWA which is based on California's Song-Beverly Act must comport with due process. See Phillips Petroleum, Co. v. Shutts, 472 U.S. 797, 818 (1985). A forum state, may apply its own substantive law to claims of a nationwide class without violating the federal due process clause if the forum state has

16cv1617-GPC(JLB)

a "'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [the forum state's] law is not arbitrary or unfair." Id. at 821-22. "When considering fairness in this context, an important element is the expectation of the parties." Shutts, 472 U.S. at 822 (finding that parties could not expect that Kansas law would control where 97% of plaintiffs did not reside in Kansas and 99% of gas leases at issue were located outside Kansas).

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 589 (9th Cir. 2012) (quoting Zinser v. Accufix Research Institute, 253 F.3d 1180, 1187 (9th Cir. 2001)). Here, the Court has diversity jurisdiction under 28 U.S.C. § 1332(d), (Dkt. No. 104, FAC ¶ 57), the Class Action Fairness Act; therefore, it applies California's choice-of-law rules. See Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 538 n. 7 (C.D. Cal. 2011). "Under California's choice of law rules, the class action proponent bears the initial burden to show that California has 'significant contact or significant aggregation of contacts to the claims of each class member.'" Wash. Mut. Bank v. Superior Ct., 24 Cal. 4th 906, 921 (2001). Once Plaintiffs have demonstrated that due process is satisfied, the burden shifts to the defendants to demonstrate that the laws of another state should apply. Id.

In their motion, Plaintiffs failed to conduct any due process analysis. However, in reply, they alternatively argue, for the first time, that they can demonstrate that California "has sufficient significant contacts to apply its own laws to citizens of foreign states" due to the "expectation of the parties" under Shutts. They argue this expectation interest exists because "all 50 states have a shared interest in the predictability and uniformity of results for claims based on the same course of conduct, as well as a related and shared interest in the ease of applying the relevant law." (Dkt. No. 244 at 17.) However,

16cv1617-GPC(JLB)

Plaintiffs misapply and misunderstand the "expectation of the parties" standard. The proper focus is on the parties' contacts with the forum state demonstrating "significant contact or significant aggregation of contacts" by defendants in the forum state that would determine the expectation of the parties that California's implied warranty law would apply to a nationwide class. See AT&T Mobility LLC v. AU Optronics Corp., 707 F.3d 1106, 1113 (9th Cir. 2013) (after determining defendant's conduct within the state was a "significant aggregation of contacts", defendant could not complain that application of California law outside of state would be unfair when the alleged conspiracy took place, in part, in California). An analysis under Shutts focuses on the plaintiffs' and defendants' contacts with the forum state. In re Seagate Tech Sec Litig., 115 F.R.D. 264, 270, 272 (N.D. Cal. 1987). Here, Plaintiffs wholly fail to address Plaintiffs and Defendant's contacts with California.

Plaintiffs also summarily argue that because the MMWA is covered by the Uniform Commercial Code, ("UCC"), and that the "U.C.C. has been considered by every state and adopted in some form by nearly all, FCA could reasonably expect that the controlling law, pursuant to Mag-Moss, would conform to the U.C.C." (Dkt. No. 244 at 18.) The Plaintiffs have not provided any legal authority that FCA could reasonably have expected California law to apply nationwide because of the UCC and have failed to sufficiently demonstrate that due process would not be violated by the application of California law to a nationwide class.

Because Plaintiffs have not met their initial burden of demonstrating that due process is satisfied for purposes of a nationwide class, they cannot demonstrate that common issues predominate over the different questions posed by each state's law. Accordingly, the Court DENIES Plaintiffs' motion to certify a Nationwide Implied Warranty Class.

      **b.**    **Damages**

Plaintiffs present two damages models.  First, Plaintiffs argue in one sentence that damages as to the California Implied Warranty Class can be calculated on a class wide basis because the Song-Beverly Act provides a measure of damages but fails to identify, apply or analyze any specific provision.  (Dkt. No. 215-1 at 9.)  Second, they rely on a benefit of the bargain damages model as offered by their expert Steven Boyles.  Defendant does not address whether the statutory damages provided under the Song-Beverly Act complies with Comcast but opposes the benefit of the bargain damages model.  In reply, Plaintiffs assert that because FCA does not challenge statutory damages, they concede that damages can be calculated on a class-wide basis and disagree with FCA's argument on the benefit of the bargain damages model.

Plaintiffs must present a damages model that is consistent with their liability case, and the court "must conduct a rigorous analysis to determine whether that is so." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013) (internal quotation marks omitted).  Plaintiffs "must be able to show that their damages stemmed from the defendant's actions that created the legal liability." Leyva v. Medline Industries, Inc., 716 F.3d 510, 514 (9th Cir. 2013). While a plaintiff must present the likely method for determining class damages, "it is not necessary to show that [this] method will work with certainty at this time." Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 379 (N.D. Cal. 2010). Comcast demands that Plaintiffs demonstrate, with evidence, that there is a class-wide method of determining damages that is consistent with their theory of liability. See Comcast Corp., 133 S. Ct. at 1433.

Plaintiffs summarily assert that the statutory damages provision of the Song-Beverly Act, their theory of liability, applies but they fail to conduct an analysis on which of the different specific provisions is applicable as the damages differ depending on type of warranty and type of acceptance

Damages under the Song-Beverly Act provides the following:

(b) The measure of the buyer's damages in an action under this section shall include the rights of replacement or reimbursement as set forth in subdivision (d) of Section 1793.2, and the following:

(1) Where the buyer has rightfully rejected or justifiably revoked acceptance of the goods or has exercised any right to cancel the sale, Sections 2711, 2712, and 2713 of the Commercial Code shall apply.

(2) Where the buyer has accepted the goods, Sections 2714 and 2715 of the Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform.

Cal. Civ. Code § 1794(b). The reference to section 1793.2(d) in section 1794(b) allows a buyer the right of replacement or restitution for breach of an express warranty and does not apply in this case. See Gavaldon v. DaimlerChrysler Corp., 32 Cal. 4th 1246, 1263 (2004); Philips v. Ford Motor Co., Case No. 14cv2989-LHK, 2016 WL 7428810, at *24 (N.D. Cal. Dec. 22, 2016) (noting buyer's right to replacement or restitution is available only for breach of an express warranty). In their sur-sur-reply, Plaintiffs assert that the court in Galvaldon, 23 Cal. 4th at 1259, provides a strong argument that the replacement and restitution remedies apply to implied warranty. However, Gavaldon did not hold that section 1793.2(d) applies to implied warranty claims and courts have held the contrary. See Keegan, 838 F. Supp. 2d at 948 n. 55 (section 1793.2(d) does not apply to claims for breach of implied warranty) (citing Mocek v. Alfa Leisure, Inc., 114 Cal. App. 4th 402, 406-08 (2003) ("The Act's provisions requiring repairs after breach of an express warranty are lengthy and detailed. There is no reason to believe failure to set out the same process in case of a breach of the implied warranty of merchantability was an oversight"); Music Acceptance Corp. v. Lofing, 32 Cal. App. 4th 610, 620 (1995) (section 1793.2 applies only to express warranties and has no relevance to the implied warranty of merchantability).

16cv1617-GPC(JLB)

Based on the facts of this case, it appears that section 1794(b)(2) applies because Plaintiffs accepted the Dodge Dart vehicles.[8]  Under the damages provision, "[w]here the buyer has accepted the goods, Sections 2714 and 2715 of the Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform."  Cal. Civ. Code § 1794(b).  Section 2714 of the California Commercial Code provides that, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."  Cal. Com. Code § 2714.

In Guido v. L'Oreal, USA, Inc., Nos. CV 11-1067 CAS(JCx), 11-5465 CAS (JCx), 2013 WL 3353857, at *13 (C.D. Cal. July 1, 2013), the district court analyzed a statutory damages claim under section 1794 for a claim of breach of an implied warranty and held that the plaintiffs had not provided evidence to support statutory damages on a class wide basis.  Id. at *13.  In Guido, the court described Commercial Code section 2714 as "the monetary equivalent of the benefit of his bargain."  Id. at *14; Ironshore Specialty Ins. Co. v. 23andMe, Inc., Case No. 14cv3286-BLF, 2015 WL 2265900, at *4 (N.D. Cal. May 14, 2015) ("Under California law the remedies for breach of the implied warranty include "benefit of the bargain" damages" citing to Commercial Code section 2714.).  The measure of damages was the difference between the "true market value" or what the class actually received and "the historical market value" or the value of the product in merchantable condition and this provides a measure of class wide relief.  Guido, 2013 WL 3353857, at *14.  Because the plaintiff did not submit expert testimony demonstrating a gap between the true market price and its historical market price, they

---

[8] In their sur-sur-reply, Plaintiffs allege that section 1794(b)(1) may apply ???

26

did not meet their burden of demonstrating common questions predominate over individual ones.  Id. at 16.

As noted above, Plaintiffs have failed to conduct a damages analysis under section 2714 demonstrating the "difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." See Cal. Comm. Code § 2714.  However, because Plaintiffs' alternate damages theory, discussed below, is the benefit of the bargain theory which is akin to statutory damages under section 2714 of the Commercial Code, the Court looks to Plaintiffs' arguments on the benefit of the bargain analysis in determining whether the implied warranty damages under section 2714 satisfies Comcast.

Plaintiffs' alternate argument is that the benefit of the bargain uniformly measures the "economic harm caused by FCA's failure to disclose the alleged design defect at the point of sale or before based on the difference in value between a defective and a defect-free Clutch System."  (Dkt. No. 215 at 28.)  Defendant responds that Plaintiffs' damages model is essentially a full refund of an allegedly defective component and it is clear that the reservoir hose, master cylinder and slave cylinder components are not valueless. Defendant cites to a recent district court decision in Nguyen v. Nissan North America, Case No. 16cv5591-LHK, 2018 WL 1831857, at *7 (N.D. Cal. April 9, 2018), where the plaintiffs' counsel, the same counsel in this case, argued the same damages theory, also by Plaintiffs' expert, Steven Boyles, and the court held it did not satisfy predominance. In reply, Plaintiffs disagree with Defendant arguing that the benefit of the bargain model is distinct from a full refund model.

According to Plaintiffs' damages expert, Steven Boyles, the Clutch Defect can be cured and class members can be made whole and receive the value they bargained for at the point of sale.  (Dkt. No. 216-1, Zohdy Decl., Ex. K, Boyles Decl. ¶ 9.)  The benefit-of-the-bargain model limits recovery to the difference in value at the point of sale

between a Class Vehicle with a defective clutch system and one with a defect-free clutch system.  (Id. ¶ 10.)  The benefit of the bargain theory measures the "difference in the value represented and the value actually received (what the vehicle is worth with and without the defect) and are susceptible of measurement across the entire class."  (Id.)  In determining this measurement, Boyles proposes that "[p]ayment in the amount of the cost necessary to cure the Clutch Defect would make Class Members whole and provide them with the benefit of their bargain."  (Id. ¶ 11.)  According to Boyles, his formula, "(hours x labor rate + part cost)" "provides a measure of the difference in value of a Class Vehicle without the defect as compared to a Class Vehicle with the defect."  (Dkt. No. 239-2, Zohdy Decl., Ex. L, Boyles Decl. ¶ 26 (UNDER SEAL).)

Boyles correctly states the theory behind the benefit of the bargain damages which is to place the consumer in the position he or she would have been had he or she received a merchantable product, which is the difference between the value of the item as represented and the actual value of the item.  (Dkt. No. 239-2, Zohdy Decl., Ex. L, Boyles Decl. ¶ 16 (UNDER SEAL).)  However, the formula he presents does not correlate to his theory.  Instead, Boyles' benefit of the bargain damages formula is akin to a full refund of the purchase price of the component parts and does not place the plaintiff where they would have been when they purchased the car but overcompensates them.  It does not assess the difference between the value of the component parts accepted and the value as merchantable.  The benefit of the bargain assumes there is some value to the product at the time of acceptance.  Boyles' formula impliedly determines that the value of the accepted component part was $0.

In Nguyen, the plaintiff alleged a defect in the manual transmission of her vehicle arguing that the CSC has a design flaw because of its material make-up, including plastic, and does not effectively transfer heat.  Nguyen v. Nissan N. America, Inc., Case No.

16cv5591-LHK, 2018 WL 1831857, at *1 (N.D. Cal. Apr. 9, 2018).[9]   As a result, the hydraulic fluid boils as it circulates through the CSC causing air bubbles to form and collapse which causes the fluid pressure to stop suddenly and prevents the CSC from working properly and causing the vehicle's clutch to lose pressure and prevents the gears from engaging/disengaging.  Id.  On motion for class certification, the plaintiff proposed that the benefit-of the bargain damages model opined by Steven Boyles, the same expert in this case, for claims under the CLRA, Song-Beverly Act and the MMWA.  (Id. at 3.) As in this case, the benefit of the bargain damages model is the difference between the value represented by the defendant and the value actually received or "what the vehicle is worth with and without the defect.  Id. at *5.  Boyles determined damages to be the cost of an aluminum CSC, new hydraulic fluid, other necessary parts and 3.9 hours of labor totaling $723.95 to cure the defect.  Id.  The district court explained that the damages proposed is in essence a full refund model.  Id.  Because the difference between the value represented and the value received equals the cost to replace the defective CSC then consumers would have deemed the defective part valueless.  Id.  Boyles' damages model assumed the consumer received no value from the defective CSC; however, the evidence in the case demonstrated that the plaintiff's extended use of the CSC indicates some value to the plaintiff.  Id. at *6.  The court denied certification based on Plaintiffs' failure to demonstrate predominance due to the damages model.  Id. at 8.

Plaintiffs cite to Falco where they argue the district court endorsed a similar model based on the benefit of the bargain.  In Falco, the plaintiffs complained that their vehicles had a defective timing chain system.  Falco v Nissan N. America, Case No. CV 13-686 DDP, (MANx), 2016 WL 1327474, at *1 (C.D. Cal. Apr. 5, 2016).  As to the statutory

---

[9] On April 23, 2018, Plaintiffs filed a petition for permission to appeal the district court's decision with the Ninth Circuit.

16cv1617-GPC(JLB)

class that already had repairs done, the plaintiffs sought restitution for amounts already spent to diagnose and repair the defective timing chain systems.  Id. at *2, *11.  As to the fraud and breach of warranty class, those who had not yet had the defective system fully repaired, the plaintiffs sought the "benefit of the bargain damages" based on Nissan's fraudulent behavior inducing them to purchase the vehicles and had the defect been disclosed they would have paid less.  Id. at *2, *12.  The benefit of the bargain was the "average amount each member can expect to pay to have the defecting timing chain system repaired at an authorized Nissan dealership."  Id. at *12.  The Court concluded that the class wide damage formula for the classes exist and as to the fraud based claims, "[b]y receiving restitution in the amount of average repairs, the class would be getting the benefit of their bargain they would be put in the same position they would have been had the car not been sold with the defective timing chain system – it is the cost necessary to make the vehicles conform to the value Plaintiffs thought they were getting in the price tendered."  Id.

The court in Nguyen distinguished the ruling in Falco explaining it awarded damages for the cost to repair the allegedly defective part rather than the cost to replace it.  Nguyen, 2018 WL 1831857, at *7.  Moreover, Judge Koh noted that Falco court failed to consider the possibility that awarding repair costs might overcompensate the class members.  Id.

The Court agrees with the reasoning in Nguyen in part.  The benefit of the bargain requires an inquiry into the value accepted and the value as merchantable.  A full refund of the purchase price of the component parts does not satisfy the inquiry.  If Plaintiffs seek damages based on the benefit of the bargain as asserted by their expert, they need to demonstrate the "difference in the value represented and the value actually received", (Dkt. No. 216-1, Zohdy Decl., Ex. K, Boyles Decl. ¶ 9), which they have failed to assess. Because Plaintiffs have not set forth a damages model that is consistent with their theory

of liability, the Courts finds that predominance has not been met as to damages under Civil Code section 1794 and the benefit of the bargain model.

### c. Merchantability

Plaintiffs argue that common issues and common evidence prevail on whether the vehicles are "merchantable" and whether the defects constitute an unreasonable safety risk. They claim that all Class Vehicles inherently contain the same defectively designed Clutch System and involve a serious safety risk. (Dkt. No. 232-5, D'Aunoy Decl., Ex. C, Stapleford Expert Report at 18.) They also claim that by implementing the X62 Extended Warranty repair that applies to all Class Vehicles, FCA acknowledged that the defect was inherent in all vehicles at the time of sale which presents common issues as to whether the class vehicles were merchantable. They further assert that the inquiry for a breach of implied warranty is made at the time of sale and therefore, any individual issues raised by Defendant on whether the defect manifested in all class members, whether the reservoir hose was actually defective, whether the defect resulted in contamination of the clutch system, whether the reservoir hose defect was fixed by the X62 Extended Warranty repair and issues concerning failure rates, the efficacy of the X62 Extended Warranty repair and the nature of the rubber seals and reservoir hoses are merit inquiries, and not ones conducted at class certification.

In opposition, Defendant argues that the alleged defect is not a common issue because each Class Vehicle has component parts that are manufactured differently where all reservoir hoses are not manufactured with the same amount of plasticizer, all CMCs are not manufactured the same size and the seals are not positioned the same way on every CMC. (Dkt. No. 229-1, Benson Decl. ¶ 18.) As a result, FCA determined that only 16% of the Class Vehicles had problems with the swelling of the seals caused by the leaching plasticizer. (Id. ¶ 19.) According to FCA, the existence of a defect depends entirely on the amount of plasticizer in the reservoir hose, the size and position of the

clutch system seals and the level of the varying tolerances, and therefore, the factors necessary for the defect to exist will vary for each vehicle and require individual inquiries that defeat predominance.

On a breach of implied warranty claim, while a current manifestation of a current defect is not an element of a claim, a plaintiff must instead provide "substantial evidence of a defect that is substantially certain to result in malfunction during the useful life of the product." <u>Hicks</u>, 89 Cal. App. 4th at 918. On class certification, it is established that proof of a current manifestation of a defect for a warranty claim is not required. <u>See</u> <u>American Honda Motor Co. v. Superior Ct.</u>, 199 Cal. App. 4th 1367, 1375 (2011) ("<u>Hicks</u> and <u>Wolin</u> are in agreement that proof of current manifestation of the defect is not necessary in a breach of warranty class action"); <u>Wolin</u>, 617 F.3d at 1173 ("proof of the manifestation of a defect is not a prerequisite to class certification.") (citing <u>Blackie v. Barrack</u>, 524 F.2d 891, 901 (9th Cir. 1975) ("[N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule.")).

In <u>Wolin</u>, the Ninth Circuit concluded that the district court erred by denying certification because the plaintiffs, alleging violations of Michigan and Florida's consumer protection and breach of warranty claims, did not prove that the defect, an alignment geometry defect that causes tires to prematurely wear, manifested in a majority of the class's vehicles. 617 F.3d at 1173. Moreover, the Ninth Circuit rejected the defendant's argument and evidence that the class members' vehicles do not have the same common defect because tire wear can be due to individual factors such as driving habits and weather. <u>Id.</u> It held that manifestation of a current defect is not required at class certification. <u>Id.</u>

In American Honda, the California court of appeal rejected the Ninth Circuit's ruling in Wolin and held that while plaintiffs moving for class certification do not have to demonstrate a current manifestation of a defect, they "must provide substantial evidence of a defect that is substantially certain to result in malfunction during the useful life of the product." 199 Cal. App. 4th at 1375. It noted that the inquiry must be made when determining the merits of the plaintiffs' claim but also when determining class certification. Id. The court of appeal reversed the trial court's ruling because it relied on Wolin and distinguished Wolin as not addressing California law but dealt with federal procedural law, and Florida and Michigan substantive state law. Id. at 1375-76. The Court notes that Wolin did not have occasion to address the issue of whether additional evidence by plaintiff was needed to show a defect that will substantially result in malfunction during the useful life of the product at the class certification stage.

Since American Honda, district courts are divided as to whether determining class certification of a breach of the implied warranty under California law requires a class representative plaintiff to demonstrate, with evidence, an inherent defect which is "substantially certain to result in malfunction during the useful life of the product." See Torres v. Nissan N. America Inc., Case No. CV 15-3251 RGK(FFMx), 2015 WL 5170539, at *5 (C.D. Cal. Sept. 1, 2015) (denying class certification on warranty claims because plaintiffs failed to provide evidence that "all class members are substantially certain to experience a malfunction from the alleged defect."); but see Keegan v. American Honda Motor Co., 284 F.R.D. 504, 535 (C.D. Cal. June 12, 2012) (granting class certification on implied warranty claim without requiring evidence that "all class members are substantially certain to experience a malfunction from the alleged defect."); Miller v. Fuhu, Inc., 14cv6119-CAS-AS, 2015 WL 7776794, at *14 (C.D. Cal. Dec. 1, 2015) (following Keegan and related cases and finding common questions predominated on warranty claim).

In Keegan, after carefully reviewing the courts' analysis in Wolin, American Honda Motor Co., and Hicks, the district court explained that the American Honda court appears to have conflated California's substantive law on breach of warranty and California's procedural law governing class certification.  Keegan, 284 F.R.D. at 535. The Keegan court concluded that while the court of appeal in American Honda applied California procedural law, it must follow federal procedural law.  Id. at 535-36 ("the court cannot discern why, at the class certification stage, plaintiffs must adduce evidence that a defect is substantially certain to arise in all class vehicles during the vehicles' useful life.  A merits inquiry will resolve that question in one stroke . . . .").  Applying federal procedural law on class certification as applied by the Ninth Circuit in Wolin, the district court in Keegan granted class certification on the breach of implied warranty claim concluding that the claim is susceptible to common proof.  Id. at 536.  It concluded that the question of whether the design defect is "substantially certain" to manifest can be answered in "one stroke."  Id. at 537.

The Court finds Keegan's reasoning persuasive as it applies federal procedural law on class certification.  On class certification, the Ninth Circuit has cautioned that the district court should not determine the merits of any claims.  Ellis, 657 F.3d at 981; ConocoPhillips Co., 593 F.3d at 808 ("court may not go so far . . . as to judge the validity of these claims.").  The requirement of American Honda that a plaintiff must demonstrate that all class members' vehicles' defect will substantially be certain to experience a malfunction from the alleged defect during its useful life is a determination on the merits which this Court does not find proper on class certification.  See id.  Therefore, the Court concludes that Plaintiffs do not have to demonstrate a manifestation of a current defect or that there is a substantial certainty of manifestation in the future but only to show that their claim of breach of implied warranty are susceptible to common proof.

In this case, Mr. Stapleford opined that all Class Vehicle inherently contain the same defectively designed Clutch System at the time of sale. (Dkt. No. 232-5, D'Aunoy Decl., Ex. C, Stapleford Expert Report at 18 (UNDER SEAL).) Because the leaching plasticizer causes the swelling of rubber components throughout the Clutch System, and causes premature wearing on these components, the X62 Extended Warranty repair was inadequate. (Id.) The plasticizer that leached into the hydraulic fluid causing contamination will eventually cause damage to the CSC seal and the clutch system malfunction "[will] likely to occur at some point in time in all of the Class Vehicles." (Id.) Plaintiffs' allegation of a common defect present in all Class Vehicles at the time of purchase and that the defect will likely occur at some point during the lifetime of the class vehicles demonstrate predominance of common issues on the claim for breach of implied warranty. Defendant raises numerous issues that would require individual inquiries such as the different reasons why the clutch system can fail and that only 16% of the Class Vehicles manifested any issues; however, these are not relevant when ruling on a motion for class certification.

Next, Defendant argues that the Song-Beverly Act only applies to "new" goods sold or leased at retail in California for personal, family or household use, and the class is overbroad because it includes used owners of the Class Vehicles. See Cal. Civ. Code §§ 1791(a), 1792. Plaintiffs reply that the implied warranty applies to leases of new or used consumer goods, Cal. Civ. Code § 1795.4, and to sale of used consumer goods that are accompanied by an express warranty. Cal. Civ. Code § 1795.5. In their sur-sur-reply, Plaintiffs agree with Defendant that the Song-Beverly Act does not apply to vehicles purchased used from private parties but it does apply to used vehicles purchased from an authorized dealership or retail seller.

The Song-Beverly Act's breach of implied warranty applies to sales of "consumer goods" which are defined as "new product[s]." Cal. Civil Code §§ 1791, 1792; however,

it also applies to "used consumer goods" that are covered by an express warranty where the obligation is on behalf of the distributor or retail seller and not the original manufacturer.  See Cal. Civil Code § 1795.5; see Johnson v. Nissan North America, Inc., 272 F. Supp. 3d 1168, 1178-79 (N.D. Cal. 2017) (section 1795.5 imposes obligation of warranties on the distributor or retail seller, not the original manufacturer; therefore no cause of action against original manufacturer under Song-Beverly Act where used vehicle was purchased from third party retail seller, CarMax).

Plaintiffs agrees that Song-Beverly Act does not apply to vehicles purchased from private parties, but argue it applies to vehicles purchased from an authorized dealership either used or new as long as the used vehicle is sold with the manufacturer's new car warranty and cites to Cal. Civil Code § 1793.22 and Jensen v. BMW of N. America, Inc., 35 Cal. App. 4th 112, 123 (1995).  Plaintiffs rely on the definition of "new motor vehicle" which includes a "motor vehicle sold with a manufacturer's new car warranty." Jensen, 35 Cal. App. 4th at 123 (under section 1793.22, cars sold with a balance remaining on the manufacturer's new motor vehicle warranty fall within definition of "new motor vehicle.")

However, the definition of "new motor vehicle" under section 1793.22(e) specifically states it only applies to section 1793.2(d), which the Court concluded above only applies to express warranties, and section 1793.22, the Tanner Consumer Protection Act,[10] Cal. Civ. Code § 1793.22(e), which does not reference implied warranties. Dagher v. Ford Motor Co., 238 Cal. App. 4th 905, 920 (2015) (noting "new motor vehicle" as defined in section 1793.22(e)(2) applies to sections 1793.2(d) and 1793.22.)

---

[10] Section 1793.22, also known as the Tanner Consumer Protection Act provides the reasonable number of attempts to repair a vehicle before relief may be sought.

In <u>Jensen</u>, the court dealt with whether the plaintiff could seek relief against the manufacturer for breach of an express warranty of her "new" car purchase by a dealership sold with the manufacturer's new car warranty and not a breach of the implied warranty. <u>Jensen,</u> 35 Cal. App. 4th at 112.

Plaintiffs have not demonstrated that the Song-Beverly Act applies to the class members' purchase of used vehicles from authorized dealerships for breach of implied warranty. Thus, the class is overbroad because the class definition includes purchasers of used vehicles from authorized dealerships.[11] Therefore, questions of fact common to the class members do not predominate. The Court concludes that Plaintiffs have failed to demonstrate the predominance factor.

## 2. Superiority

Rule 23(b)(3) requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It sets forth four non-exhaustive factors in determining 'superiority': (A) class members' interests in individually controlling the litigation; (B) the extent and nature of any litigation concerning the controversy already begun by class members; (C) the desirability of concentrating the litigation in the particular forum; and (D) likely difficulties in managing a class action. <u>Id.</u> The purpose of this requirement is to assure the class action is the "most efficient and effective means" of resolving the issue. <u>Wolin</u>, 617 F.3d at 1175.

---

[11] In their motion for class certification, Plaintiffs assert that the class is identifiable and ascertainable. However, the Ninth Circuit has declined to adopt an ascertainability and/or administrative feasibility requirement for class plaintiffs to demonstrate for purposes of class certification explaining that "Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification." <u>Briseno v. ConAgra Foods, Inc.</u>, 844 F.3d 1121, 1126, 1133 (9th Cir. 2017) (joining Sixth, Seventh Eighth Circuits and declining to impose an additional hurdle beyond those delineated in Rule 23). The court explained that policy concerns concerning administratively feasibility are already addressed by Rule 23. <u>Id.</u> at 1133; <u>see</u> <u>Torres v. Mercer Canyons Inc.</u>, 835 F.3d 1125, 1136-39 (9th Cir. 2016) (addressing an overbroad class definition as part of predominance issue).

16cv1617-GPC(JLB)

"Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." Id.

Without any analysis on the four factors, Plaintiffs conclusorily argue that that the case meets all four factors making class action the superior litigation choice given the size of the class and the costs of litigating individually for a potentially small recovery. Defendants disagree arguing that the numerous individual issues it raises would require separate mini-trials and make the case unmanageable.

Plaintiffs, as the parties, seeking certification bears the burden of demonstrating superiority. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001) ("As the party seeking class certification, [the plaintiff] bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).").

However, when a plaintiff fails to satisfy the predominance requirement, the court need not address the superiority requirement. Soares v. Flowers Food, Inc., 320 F.R.D. 464 484 (2017). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" Zinser, 253 F.3d at 1192. Therefore, because Plaintiffs have not met the predominance factor, the Court need not address superiority.

**D.** **Rule 23(b)(2)**

In their moving brief, Plaintiffs assert, in one sentence, that they seek a declaration pursuant to Rule 23(b)(2) that the Clutch Defect is safety related and an order "compelling Defendant to remove, repair, and/or replace the Class Vehicles' defective Clutch System components with suitable alternative components that do not contain the defect(s) alleged herein." (Dkt. No. 215 at 10.) Defendant opposes arguing the case is about the recovery of money damages, and therefore, Rule 23(b)(2) certification should be denied. In reply, Plaintiffs provide additional analysis on this issue.

16cv1617-GPC(JLB)

Plaintiffs seek to certify a damages class for their breach of implied warranty claims under Rule 23(b)(3) and a class for injunctive relief under Rule 23(b)(2) arguing that the Song-Beverly Act provides for both legal and equitable remedies and the UCL provides broad remedial relief. Despite this general proposition, they provide no legal authority for their attempt to obtain both damages and injunctive relief. See Phillips, 2016 WL 7428810, at *24 ("Plaintiffs point to no caselaw, and the Court is aware of none, granting an injunction" "for repair or replacement despite having an adequate remedy at law.").

Rule 23(b)(2) permits class treatment when "the party opposing the class has acted or refuses to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2009). For Rule 23(b)(2) certification, Plaintiffs must show that "(1) the opposing party's conduct or refusal to act must be 'generally applicable' to the class and (2) final injunctive or corresponding declaratory relief must be requested for the class.'" Cholakyan v. Mercedes-Benz, USA, LLC, 281 F.R.D. 534, 558 (C.D. Cal. 2012) (quoting 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 1775, at 41 (2005)). The Advisory Committee Note states that certification under Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23 advisory committee's note (1966).

In Dukes, the Supreme Court held that the claims for backpay were not properly certified under Rule 23(b)(2) and held that a Rule 23(b)(2) class may not be certified where the "monetary relief is not incidental to the injunctive or declaratory relief." 564

U.S. at 360. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted-the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Id. (quotation and citation omitted). "When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident." Id. at 362-63. In Dukes, the backpay class involved individualized awards of monetary damages because the defendant was entitled to individualized determinations of each employee's eligibility for backpay and injunctive relief could not be applied to the entire class. Id. at 360-61. The backpay issue would require additional court proceedings to determine the scope of individual's relief. Id.

Courts have stated that a Rule 23(b)(2) and a separate Rule(b)(3) class may be certified in the appropriate case. Kartman v. State Farm Mut. Auto. Ins. Co., 634 F.3d 883, 895 (7th Cir. 2011), cert. denied 132 S. Ct. 242 (2011) ("[I]n an appropriate case, a Rule 23(b)(2) class and a Rule 23(b)(3) class may be certified where there is a real basis for both damages and an equitable remedy.") (citations omitted); In re ConAgra Foods, Inc., 90 F. Supp. 3d 919, 977 (C.D. Cal. 2015) ("[T]he court can separately certify an injunctive relief class and, if appropriate, also certify a Rule 23(b)(3) damages class" and citing Ninth Circuit cases suggesting certification of separate Rule 23(b)(2) and 23(b)(3) classes). However, in Kartman and In re ConAgra Foods, certification was denied under Rule 23(b)(2).

In Kartman, the Seventh Circuit held that an injunctive relief class was not justified because an injunction was not a proper remedy for an alleged "underpayment of their insurance claims for hail damage to their roofs." 634 F.3d at 888-89. Injunctive relief must be "appropriate" and must seek "final injunctive relief." Id. at 886. In Kartman,

injunctive relief would not provide "final" relief under Rule 23(b)(2) because the injunction requiring State Farm to reinspect all class members' roofs pursuant to a uniform and objective standard for evaluating hail damage provides an "evidentiary foundation for subsequent determinations of liability." Id. at 893. The injunction proposed would not result in "final relief." In fact, the injunction would result in thousands of individual proceedings to determine breach and damages. Id. The court further explained that the underpayment of insurance claims for hail damage is an action for damages and not a dual remedy sought of an injunction plus damages. Id. at 888-89.

Similarly, Plaintiffs' claim their common injury is the overpayment of the purchase price of their Class Vehicles and therefore, monetary damages is the appropriate form of damages. See id.; see Philips, 2016 WL 7428810, at *25; McManus v. Fleetwood Enters., Inc., 320 F.3d 545, 553 (5th Cir. 2003) (reversing the district court's class certification of Rule 23(b)(2) class because the ordinary relief for breach of warranty was money damages, not injunctive relief). In Philips, a car defect case, the district court denied the plaintiff Rule 23(b)(2) certification seeking an injunction requiring the manufacturer to "uniformly repair and/or replace the defective EPAS systems in each of the Class Vehicles" because the ordinary relief under the Song-Beverly Act is money damages. Id. at *25.

Both parties cite to Cholakyan v. Mercedes-Benz, USA, LLC, 281 F.R.D. 435 (C.D. Cal. 2012) in support. The district court in Chokakyan denied Rule 23(b)(2) certification for numerous reasons, one of which was the declaration and injunction would not benefit the class as a whole because former owners of the class vehicles would not benefit from the injunction and Rule 23(b)(2) requires that the plaintiff seek "an indivisible injunction benefitting all its members at once." Id. at 559. In this case, the class definition includes those who purchased and sold their vehicles; therefore, Plaintiffs have not demonstrated that the injunction they seek is applicable to the entire class.

1    Those who purchased and then sold their vehicles would not get the benefit of the
2    injunction.

3         In sum, Plaintiffs have failed to demonstrate that a Rule 23(b)(2) class may be
4    certified and the Court DENIES Plaintiffs' motion to certify a class under Rule 23(b)(2).

5    **F.     Defendant's Evidentiary Objections**

6         Defendant filed evidentiary objections to Plaintiffs' amended motion for class
7    certification to Victorino's and Tavitian's recent declarations dated April 5, 2018 that
8    contradict their deposition testimony taken in April 2017.  (Dkt. No. 229-24.)  FCA also
9    objects to Exhibit Z to D'Aunoy's declaration.  (Id.)  Plaintiffs oppose.  (Dkt. No. 244-2.)

10        In considering a motion for class certification, strict adherence to the Federal Rules
11   of Evidence is not required and inadmissible evidence may be considered.  Gonzalez v.
12   Millard Mall Servs., Inc., 281 F.R.D. 455, 459 (S.D. Cal. 2012) (citing Eisen v. Carlisle
13   and Jacquelin, 417 U.S. 156, 178 (1974)); Dominguez v. Schwarzenegger, 270 F.R.D.
14   477, 483 n. 5 (N.D. Cal. 2010) (citations omitted); Smith v. Microsoft Corp., 297 F.R.D.
15   464, 473-74 (S.D. Cal. 2014) (courts may consider inadmissible evidence in determining
16   whether a class should be certified).  Therefore, the Court may consider the alleged sham
17   affidavits of Victorino and Tavitian as well as Exhibit Z to D'Aunoy's declaration.

18        Moreover, the Court notes that the sham affidavit rule that FCA relies on for
19   exclusion addresses evidentiary objections in summary judgment motions, not motions
20   for class certification.  "[A] party cannot create a genuine issue of fact sufficient to
21   survive summary judgment simply by contradicting his or her own previous sworn
22   statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn
23   deposition) . . . ."  Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999); Van
24   Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir. 2009) ("[A]s we have explained,
25   if a party who has been examined at length on deposition could raise an issue of fact
26   simply by submitting an affidavit contradicting his own prior testimony, this would

27
28

greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").  Therefore, in order for the sham affidavit rule to apply, the court must make a factual determination that the contradiction was actually a "sham" and the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit."  Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) (citation omitted).

Since the Court is ruling on a motion for class certification, the sham affidavit rule is not applicable.  Nonetheless, the Court may consider inadmissible evidence on class certification.  Accordingly, the Court overrules Defendant's evidentiary objections.

### Conclusion

Counsel are advised that the Court's rulings are tentative and the Court will entertain additional arguments at the hearing.

IT IS SO ORDERED.

Dated:  June 1, 2018

Hon. Gonzalo P. Curiel
United States District Judge

16cv1617-GPC(JLB)