# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO and ADAM TAVITIAN, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company, ,<br><br>Defendant. | Case No.: 16cv1617-GPC(JLB)<br><br>**ORDER DENYING PLAINTIFFS' AMENDED MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF ROBERT BENSON AND MIKE ROYEK**<br><br>**[Dkt. No. 218.]** |

Before the Court is Plaintiffs' amended motion to exclude or limit the expert testimony of Robert Benson and Mike Royek. (Dkt. No. 218.) Defendant filed an opposition on April 27, 2018. (Dkt. No. 228.) Plaintiffs filed their reply on May 4, 2018. (Dkt. No. 237.) The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court DENIES Plaintiffs' motion to exclude.

/ / / /

/ / / /

1

## I. Background

In their amended motion for class certification, Plaintiffs Carlos Victorino ("Victorino") and Adam Tavitian ("Tavitian") (collectively "Plaintiffs") specifically claim a design defect in the 2013-2015 Dodge Dart vehicles equipped with a Fiat C635 manual transmission built on or before November 12, 2014 ("Class Vehicles") by Defendant FCA US LLC ("Defendant" or "FCA"). (Dkt. No. 215-1 at 6.) Plaintiffs assert that their vehicles' clutches fail and stick to the floor which causes their vehicles to stall, fail to accelerate, and results in "premature failure of the transmission's components, including, but not limited to, the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel." (Dkt. No. 104, FAC ¶ 2.)

Robert Benson and Mike Royek are employees of FCA and were designated as non-retained experts on November 8, 2017. Plaintiffs move to exclude their expert testimony under Rule 702 contending that their opinions are not reliable or relevant. Specifically, they contend that despite their qualifications, they do not demonstrate the methodology used to arrive at their opinions. They also demonstrate ignorance as to the underlying facts of the case indicating that their opinions are biased and reflect the self-interest in supporting facts favorable to FCA. Plaintiffs argue there is a risk of prejudice to them if Benson and Royek are presented as "experts" and move to exclude their testimonies as experts and seek to have them admitted as lay opinion testimony.

## II. Analysis

### A. Daubert Legal Standard

The trial judge must act as the gatekeeper for expert testimony by carefully applying Federal Rule of Evidence ("Rule") 702 to ensure specialized and technical evidence is "not only relevant, but reliable." Daubert v. Merrell Dow Pharms. Inc., 509 U.S. 579, 589 &

n.7 (1993); accord Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 147 (1999) (Daubert imposed a special "gatekeeping obligation" on trial judges).

Under Rule 702, a witness "qualified as an expert by knowledge, skill, experience, training, or education, may testify" . . . if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The proponent of the evidence bears the burden of proving the expert's testimony satisfies Rule 702. Lust By & Through Lust v. Merrell Dow Pharm., Inc., 89 F.3d 594, 598 (9th Cir. 1996).

In applying Rule 702, the Ninth Circuit "contemplates a broad conception of expert qualifications." Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1015 (9th Cir. 2004) (quoting Thomas v. Newton Int'l Enters., 42 F.3d 1266, 1269 (9th Cir. 1994)). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010) (citing Daubert, 509 U.S. at 596).

However, the district court must act as a gatekeeper to exclude "junk science." Messick v. Novartis Pharms. Corp., 747 F.3d 1193, 1199 (9th Cir. 2014); Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011) ("Under Daubert, the trial court must act as a "gatekeeper" to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable.").

Under Daubert, scientific evidence must be both reliable and relevant. Daubert, 509 U.S. at 590-91. Scientific evidence is reliable "if the principles and methodology used by an expert are grounded in the methods of science." Clausen v. M/V New Carissa, 339 F.3d 1049, 1056 (9th Cir. 2003). The focus of the district court's analysis "must be solely on

3

principles and methodology, not on the conclusions that they generate." <u>Daubert</u>, 509 U.S. at 595. "[T]he test under <u>Daubert</u> is not the correctness of the expert's conclusions but the soundness of his methodology." <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 43 F.3d 1311, 1318 (9th Cir. 1995) ("<u>Daubert II</u>"). Second, the proposed expert testimony must be "relevant to the task at hand," meaning that it "logically advances a material aspect of the proposing party's case." <u>Daubert</u>, 509 U.S. at 597.

As one Ninth Circuit court simply stated, the test is "whether or not the reasoning is scientific and will assist the jury. If it satisfies these two requirements, then it is a matter for the finder of fact to decide what weight to accord the expert's testimony." <u>Kennedy v. Collagen Corp.</u>, 161 F.3d 1226, 1231 (9th Cir. 1998). "Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.'" <u>Id.</u> (quoting <u>McCullock v. H.B. Fuller Co.</u>, 61 F.3d 1038, 1044 (2d Cir. 1995)).

**B.      Motion to Exclude Mr. Benson**

Benson is an employee of FCA and a Senior Manager-Manual Trans, 4WD System & Driveline Engineering. (Dkt. No. 157, Benson Decl. ¶ 3.) He was deposed by Plaintiffs' counsel as FCA's corporate designee around September 17, 2017. On November 22, 2017, FCA designated Benson as a non-retained expert witness. (Dkt. No. 171-1, Wallace Decl., Ex. A at 4-5.) The designation stated that Benson would testify about the following,

> the function and operation of clutch system components in model-year 2013-2015 Dodge Dart vehicles equipped with a manual transmission; the design, development and testing of the various clutch system components as disclosed in records produced by FCA US; a voluntary customer service action, known internally as CSN x62, to address an issue with leaching plasticizer in the reservoir hose component in some model-year 2013-2015 Dodge Dart vehicles; warranty repairs; and, clutch system component abuse and wear.

4

(Id. at 5.) Moreover, Benson will also testify on "the effects of leaching plasticizer on various components within the clutch system of model-year 2013-2015 Dodge Dart vehicles; the effectiveness of the repair procedure developed in connection with CSN x62; driver abuse and wear of clutch system components; and, materials used in slave cylinder construction." (Id.)

Plaintiffs seek to exclude Benson's opinion as an expert and instead seek to have him testify as a lay witness.[1] They summarily argue that Benson's opinion is not reliable or relevant. They argue that he merely regurgitates the arguments FCA has set forth in this litigation and fails to lay the foundation or methodology for any opinions, tests, determinations and observations. FCA disagrees arguing that Plaintiffs seek to improperly exclude "facts" not opinion testimony and Benson is qualified to offer opinion testimony as he has direct and first-hand knowledge of the design and operation of the specific components at issue as he was the person who was in charge of overseeing its design and development and has sufficient foundation to opine.

Benson has two Bachelor of Science degrees in Manufacturing System Engineering and Mechanical Engineering and a Master's Degree in Automotive Engineering. (Dkt. No. 229-1, Benson Decl. ¶ 2.) He is currently Senior Manager-Manual Trans, 4WD System & Driveline Engineering and has been employed with FCA since June 2009. (Dkt. No. 157, Benson Decl. ¶ 3.) This group of engineers was responsible for the clutch hydraulic release system in model-year 2013-2015 Dodge Dart Vehicles. (Id.) He was Senior Manager in this group prior to the launch of model-year

---

[1] As non-retained experts, Mr. Benson and Mr. Royek did not file expert reports. In seeking to exclude Mr. Benson's opinion, Plaintiffs rely on Benson's declarations filed to date in this case which include his declaration in support of FCA's opposition to class certification filed on November 30, 2017, (Dkt. No. 157, Benson Decl.), and in support of Defendant's motion for summary judgment filed on November 6, 2017. (Dkt. No. 151-18, Benson Decl.) In its opposition to the amended motion for class certification, FCA submitted an updated version of Benson's declaration to address remaining issues in the case which Plaintiffs do not object to and the Court relies on. (Dkt. No. 229-1. Benson Decl.)

2013 Dodge Dart vehicles and currently remains in that position. (Id.) From 1995 until June 2009 Benson was employed by FCA's predecessor, Chrysler LLC, in various positions such as Supervisor, Resident Engineer, and Product Engineer. (Id.) He has over 23 years of professional experience working on vehicle transmissions and related clutch hydraulic release system components. (Id.) Benson has personal knowledge about the design and operation of the components at issue, about the testing that was conducted on these components as well as the results of the testing. (Id. ¶ 4.) He is also familiar with the facts in the case through his work on it. (Id.)

The United States Supreme Court has distinguished between cases where expert testimony will rest upon scientific foundations and in other cases where expert testimony is based on personal knowledge or experience. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999) ("Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases . . . . In other cases, the relevant reliability concerns may focus upon personal knowledge or experience."); United States v. Hankey, 203 F.3d 1160, 1169 (9th Cir. 2000) ("The Daubert factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it."). Therefore, an expert's experience, training and education can provide a sufficient foundation for reliability. See Hangarter v. Provident Life and Accidental Ins. Co., 373 F.3d 998, 1018 (9th Cir. 2004). Rule 702 also provides that an expert may be qualified by "knowledge, skill, experience, training, or education" as long as the specialized knowledge will help the trier of fact to under the evidence or to determine a fact in issue." Fed. R. Civ. P. 702.
 Expert testimony is admissible under Rule 702 if the "subject matter at issue is beyond the common knowledge of the average layman . . . ." United States v. Morales, 108 F.3d 1031, 1038 (9th Cir. 1997).

One Ninth Circuit court noted, "[w]here, as here, the experts' opinions are not the "junk science" Rule 702 was meant to exclude . . . the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system-'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof'- to 'attack[ ] shaky but admissible evidence . . . .'" Wendell v. GlaxoSmithKline LLC, 858 F.3d 1227, 1237 (9th Cir. 2017) (internal citations omitted).

Here, Mr. Benson was Senior Manager of the group responsible for the clutch hydraulic release system in the 2013-2015 model year Dodge Dart vehicles prior to their launch and has remained in that position. (Dkt. No. 229-1, Benson Decl. ¶ 3.) He oversaw Defendant's development, investigation and testing efforts that are described in his declaration. (Id.) He has over 23 years of experience working on vehicle transmissions and related clutch hydraulic release systems components. (Id.) He states that he has personal knowledge about the design and operation of the components at issue in the model year 2013-2015 Dodge Dart vehicles that were built on or before November 12, 2014 that are equipped with a Fiat C635 manual transmission. (Id. at 4.) He also has personal knowledge about the testing that was performed on the components at issue and the results of the testing. (Id.) Benson's personal experience with the design and operation of the specific technology at issue, and the specific model years at issue as well as the testing that was performed prior to the X62 Extended Warranty provide the foundation of Benson's expert opinion. Moreover, this specialized knowledge will assist the trier of fact on the issues in this case. Finally, any disagreement with Benson's conclusions[2] or any bias goes to the weight of the testimony, not to its admissibility and

---

[2] For example, in challenging Benson and Royek's opinion, Plaintiffs argue that Defendants FCA still fails to address that neither Benson or Royek recognize the clutch system's fundamental flaw or applied

7

may be challenged at trial. Accordingly, the Court DENIES Plaintiffs' motion to exclude the testimony of Mr. Benson.

**C. Motion to Exclude Mike Royek**

On November 22, 2017, FCA designated Royek as a non-retained expert witness. (Dkt. No. 171-1, Wallace Decl., Ex. A.) Royek is a Senior Specialist – Product Investigations at FCA and will testify about "the conditions found upon inspection of Plaintiffs' vehicles" and "the clutch system operation of Plaintiffs' vehicles at the time of his inspections." (Id. at 5-6.) He has worked at FCA since June 2009 and before that he was employed by Chrysler LLC and its predecessors in various positions from 1984 to June 2009 including those involving the analysis of hydraulic clutch release system components. (Dkt. No. 229-23, Royek Decl. ¶ 2.) During the course of his employment, he has become familiar with the design and operation of the model years 2013-2015 Dodge Dart vehicles and the Fiat C635 manual transmission. (Id. ¶ 3.) This includes the function and operation of the components, both individually and collectively, that make up the hydraulic clutch release system and the clutch assembly used in connection with the Fiat C635 manual transmissions. (Id.)

On May 24, 2017 and March 20, 2018, Royek conducted in-person inspections of Victorino's Dodge Dart Vehicle. (Id. ¶¶ 4, 7.) He also conducted an in-person inspection of Tavitian's model-year 2013 Dodge Dart vehicle on August 16 and 17, 2016. (Id. ¶ 11.)

Plaintiffs seek to exclude Royek's testimony arguing there is no foundation for his conclusions. They claim his declaration is perfunctory and offers nothing requiring special knowledge or expertise to assist the trier of fact. It is asserted that Royek's

---

the correct industry standard to subsequent attempts to resolve the issue. (Dkt. No. 237 at 5.) They challenge Benson and Royek's failure to address conclusions propounded by them.

inspection of Plaintiffs' vehicles are both cursory and conclusory because it was merely a visual inspection.  Further, the observations and inferences are based on insufficient data and no methodology and therefore, they lack relevance and reliability.  Defendant asserts that Royek has more than 30 years of industry experience and is an investigator and Senior Specialist in Defendant's Product Analysis group and has direct personal experience with the system and components at issue.  He provides testimony about his own background and experience and his personal observations and conclusions during the inspection of Victorino and Tavitians' vehicle inspections.

Plaintiffs' citation to Ollier v. Sweetwater Union High Sch. Dist., 768 F.3d 843, (9th Cir. 2014) is not persuasive.  Ollier dealt with Title IX where the defense sought to introduce the proposed testimony of a retired superintendent of a different school district who would have testified about the "the finances of schools and high school athletic programs, as well as equitable access to school facilities at Castle Park" and the district court excluded his testimony finding that the opinion was based on his personal opinions and speculation rather than an systematic assessment of athletic facilities and program. Id. at 860.  His in-person inspection was described as superficial as he only walked the softball and baseball fields when it was not in season and concluded the softball field was in excellent shape. Id.  While he opined about renovations to the softball field, he did not enter the softball or baseball dugouts or batting cages. Id. at 860-61.  The district court also excluded the proposed expert testimony of an assistant principal at a different high school who would testify about the "unique nature of high school softball and its role at Castle Park" as speculative and inherently unreliable and unsupported by the facts. Id.  She was a former softball coach and proposed as an expert on all aspects of softball. Id. at 861.  Her on-site visit was also cursory. Id.  While she toured the softball and baseball fields and the locker rooms and was present while a baseball and softball game were being played, she observed the playing services, dugout areas, field condition, fencing,

bleachers, and amenities from afar. Id. The Ninth Circuit held that the district court did not abuse its discretion in excluding these expert testimonies. Id.

Here, in contrast, Royek's in-person inspection was not merely visual. First, Royek has specific personal experience with the design and operation of the Class Vehicles and has been involved with analyzing hydraulic clutch release system components. He conducted an in-person inspection of Victorino's vehicle twice on May 24, 2017 and March 20, 2018 which included a test drive and a careful inspection for him to conclude that "there was an oil leak coming from the oil reservoir", (Dkt. No. 229-23, Royek Decl. ¶ 5), that the CMC and reservoir hose were the original, manufacturer-installed components, (id. ¶ 9), and that there "were no signs or evidence of any excessive swelling or other problem with the seals in the clutch master cylinder, (id. ¶ 10). Royek also conducted an inspection of Tavitian's vehicle which was not as detailed because the dealership replaced the clutch master cylinder and reservoir hose and those parts were confirmed to be operational. (Id. ¶ 14.) The Court concludes his testimony is relevant, as it will assist the trier of fact on the issues in this case and is reliable as his opinions are based on his knowledge, skill, experience, and training with working on the Class Vehicles.

Plaintiffs essentially disagree as to Royek's conclusion about the driving habits of Victorino and Tavitian; however, any challenges to Royek's conclusions can be challenge on cross-examination. See Daubert, 509 U.S. at 595. Accordingly, the Court DENIES Plaintiffs' motion to exclude the expert testimony of Mike Royek.

**D.     Request for Judicial Notice**

Plaintiffs filed a request for judicial notice of two articles, "Reference Guide on Estimation of Economic Damages," *Reference Manual on Scientific Evidence, Third Edition*, Federal Judicial Center (2001) and "Reference Guide on Engineering," *Reference*

10

16cv1617-GPC(JLB)

*Manual on Scientific Evidence, Third Edition*, Federal Judicial Center 2011). (Dkt. No. 218-1.) Defendant objects to the request for judicial notice. (Dkt. No. 228-4.)

Judicial notice is available only if the particular "fact" is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a). Here, Defendant argues that Plaintiffs never identify what "facts" from the articles they want the court to take judicial notice and the alleged facts are subject to reasonable dispute. Because the Court agrees with the position of the Defendnat, the Court DENIES Plaintiffs' request for judicial notice.

## Conclusion

Based on the above, the Court DENIES Plaintiffs' amended motion to exclude or limit the expert opinions of Robert Benson and Mike Royek.

IT IS SO ORDERED.

Dated: June 4, 2018

Hon. Gonzalo P. Curiel
United States District Judge