UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO and ADAM TAVITIAN, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company, ,<br><br>Defendant. | Case No.: 16cv1617-GPC(JLB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S RENEWED MOTION TO EXCLUDE EXPERT TESTIMONY AND REPORT OF MICHAEL STAPLEFORD**<br><br>**[Dkt. No. 232.]** |

Before the Court is Defendant's renewed motion to exclude the testimony and report of Plaintiffs' forensic expert, Michael Stapleford. (Dkt. No. 232.) Plaintiffs filed an opposition on May 11, 2018. (Dkt. No. 243.) Defendant filed its reply on May 18, 2018. (Dkt. No. 250.) The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendant's motion to exclude Plaintiffs' expert Michael Stapleford.

/ / /

1

## I. Background

In their amended motion for class certification, Plaintiffs Carlos Victorino ("Victorino") and Adam Tavitian ("Tavitian") (collectively "Plaintiffs") specifically claim a design defect in the 2013-2015 Dodge Dart vehicles equipped with a Fiat C635 manual transmission built on or before November 12, 2014 ("Class Vehicles") by Defendant FCA US LLC ("Defendant" or "FCA"). (Dkt. No. 215-1 at 6.) Plaintiffs assert that their vehicles' clutches fail and stick to the floor which causes their vehicles to stall, fail to accelerate, and results in "premature failure of the transmission's components, including, but not limited to, the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel." (Dkt. No. 104, FAC ¶ 2.)

## II. Analysis

### A. <u>Daubert</u> Legal Standard

The trial judge must act as the gatekeeper for expert testimony by carefully applying Federal Rule of Evidence ("Rule") 702 to ensure specialized and technical evidence is "not only relevant, but reliable." <u>Daubert v. Merrell Dow Pharms. Inc.</u>, 509 U.S. 579, 589 & n.7 (1993); <u>accord</u> <u>Kumho Tire Co. Ltd. v. Carmichael</u>, 526 U.S. 137, 147 (1999) (<u>Daubert</u> imposed a special "gatekeeping obligation" on trial judges).

Under Rule 702, a witness, "qualified as an expert by knowledge, skill, experience, training, or education, may testify" . . . if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The proponent of the evidence bears the burden of proving the expert's testimony satisfies Rule 702. <u>Lust By & Through Lust v. Merrell Dow Pharm., Inc.</u>, 89 F.3d 594, 598 (9th Cir. 1996).

2

16cv1617-GPC(JLB)

In applying Rule 702, the Ninth Circuit "contemplates a broad conception of expert qualifications." Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1015 (9th Cir. 2004) (quoting Thomas v. Newton Int'l Enters., 42 F.3d 1266, 1269 (9th Cir. 1994)). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010) (citing Daubert, 509 U.S.at 596).

On the other hand, the district court must act as a gatekeeper to exclude "junk science." Messick v. Novartis Pharms. Corp., 747 F.3d 1193, 1199 (9th Cir. 2014); Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011) ("Under Daubert, the trial court must act as a "gatekeeper" to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable.").

Under Daubert, scientific evidence must be both reliable and relevant. Daubert, 509 U.S. at 590-91. Scientific evidence is reliable "if the principles and methodology used by an expert are grounded in the methods of science." Clausen v. M/V New Carissa, 339 F.3d 1049, 1056 (9th Cir. 2003). The focus of the district court's analysis "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1318 (9th Cir. 1995) ("Daubert II"). Second, the proposed expert testimony must be "relevant to the task at hand," meaning that it "logically advances a material aspect of the proposing party's case." Daubert, 509 U.S. at 597.

As one Ninth Circuit court simply stated, the test is "whether or not the reasoning is scientific and will assist the jury. If it satisfies these two requirements, then it is a matter for the finder of fact to decide what weight to accord the expert's testimony." Kennedy v. Collagen Corp., 161 F.3d 1226, 1231 (9th Cir. 1998). "Disputes as to the strength of [an

expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.'" Id. (quoting McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995)).

**B.  Motion to Exclude Michael Stapleford**

Defendant seeks to exclude the testimony and report of Michael Stapleford ("Stapleford") as unqualified, unreliable and irrelevant.  It also asks the Court to exclude new information in Stapleford's supplemental declaration dated April 6, 2018 as untimely. Plaintiffs argue that Stapleford is qualified to opine on the Clutch System at issue and his opinions are reliable and relevant as well as timely.

### 1.  Stapleford's Failure to Disclose New Materials

FCA argues that Stapleford's supplemental declaration, dated April 8, 2018, where he supplements his opinions and submits new materials is untimely as the deadline to file expert disclosures passed on October 4, 2017, (Dkt. No. 110), and FCA is prejudiced because it was unable to question Stapleford about these new opinions or designate a rebuttal expert.  (Dkt. No. 216-1, Zohdy Decl., Ex. B, Stapleford Suppl. Decl. ¶ 7.) Plaintiffs contend that after the Court's ruling on summary judgment granting judgment on the CLRA claim concerning the clutch slave cylinder, they recognized that some of Stapleford's opinions were irrelevant to certification and focused on the defective design of the reservoir hose and the incomplete repair of the X62 Extended Warranty repair.  They argue their theory of liability remains the same and the materials they rely on were those submitted by FCA.

"A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).

4

For an expert, the "party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). A supplemental report may not contain "additional opinions or rationales or seek[ ] to 'strengthen' or 'deepen' opinions expressed in the original expert report." Cook v. Rockwell Int'l Corp., 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (citation omitted). "Rather, '[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" Luke v. Family Care & Urgent Med. Clinics, 323 Fed. App'x. 496, 500 (9th Cir. 2009) (quoting Keener v. United States, 181 F.R.D. 639, 640 (D. Mont. 1998)). Rule 26(e) "do[es] not permit a party to introduce new opinions after the disclosure deadline under the guise of a 'supplement.'" Plumley v. Mockett, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010).

Failure to abide by the disclosure requirements in Fed. R. Civ. P. 26 can result in sanctions pursuant to Fed. R. Civ. P. 37(c)(1) that are "self-executing," and "automatic" as they designed to induce compliance with disclosure. Yeti v. Molly, Ltd. v. Deckers, Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37 has even been applied to exclude a litigant's "entire cause of action or defense" for failing to disclose. Id. (citing Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico, 248 F.3d 29, 35 (1st Cir. 2001)). The Ninth Circuit recognized two exceptions under Rule 37(c)(1) if the parties' failure to timely disclose the information was "substantially justified or harmless." Id. "Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith

or willfulness involved in not timely disclosing the evidence." Lanard Toys Ltd. v. Novelty, Inc., 375 Fed. App'x 705, 713 (9th Cir. 2010) (citation omitted).

Defendant argues it will be prejudiced because it did not have an opportunity to question Stapleford about the new opinions and materials and had no opportunity to designate an expert to respond. Plaintiffs argue that the information in the supplemental declaration is timely and substantially justified.

Here, FCA specifically cites to paragraphs 13, 14, and 15 of Stapleford's Supplemental Declaration as new information that should be excluded. (Dkt. No. 216-1, Zohdy Decl. Ex. B, Stapleford Suppl. Decl. ¶¶ 13-15.) Paragraph 13 describes ALLDATA LLC as an online resource for automotive Original Equipment Manufacturer ("OEM") that provides manufacturers' diagnostic and repair information for Automotive Service Professionals. (Id. ¶ 13.) This is not new information as Stapleford testified about ALLDATA in determining labor times in assessing the number of hours it would take for each repair. (Dkt. No. 231-6, Azar Decl., Ex. D, Stapleford Depo. at 219:3-22.)

Next, paragraph 14 states it attaches, as Exhibit C, ALLDATA's standard diagnosis and repair procedure for contaminated brake fluid which was published by FCA for five different Dodge vehicles, with model years ranging from 2001 and 2014, including the Class Vehicles. (Dkt. No. 216-1, Zohdy Decl. Ex. B, Stapleford Suppl. Decl. ¶ 14.) According to the repair procedure, it directs all technicians to replace all the rubber components in a contaminated brake fluid hydraulic system. (Id.) The data referenced in Exhibit C was not previously disclosed in Stapleford's expert report or deposition testimony. With this new information, Plaintiffs seek to bolster their argument demonstrating the repair standard for contaminated brake fluid and how that standard also applies to the hydraulic clutch system at issue. However, Plaintiffs have not demonstrated that this information was not available at the time of the initial disclosures. Therefore, the new information is not timely and this information should have been disclosed by October

6

16cv1617-GPC(JLB)

4, 2017. The Court next considers the factors to determine whether Plaintiffs have demonstrated that their failure to disclose was "substantially justified or harmless."

First, Defendant's argument of prejudice is not convincing. The ALLDATA was discussed during Stapleford's deposition for purposes of determining labor times in assessing the number of hours it would take for each repair. (Dkt. No. 231-6, Azar Decl., Ex. D, Stapleford Depo. at 219:3-22.) Plaintiffs' correlation between the hydraulic clutch and the hydraulic brake systems was also raised in his deposition. (Dkt. No. 243-1, Wallace Decl., Ex. A, Stapleford Depo. at 28:19-29:3; 30:13-32:4.) Defendant questioned Stapleford about the similarities between the hydraulic clutch system and the hydraulic brake system. (Id.) Moreover, it is not clear whether FCA would need to designate an expert to respond to his opinions. Lastly, the data relied on in Exhibit C were provided by FCA and are its own diagnostic and repair procedures diminishing the prejudice for Plaintiffs' failure to disclose.

While the data in Exhibit C from ALLDATA may be new, the theory behind the data is not new. If FCA seeks to depose Stapleford on this new information prior to trial, it may seek leave to do so. Trial in this case has not been set so it will not disrupt the trial, and no bad faith has been alleged for Plaintiffs' failure to timely disclose the information. Therefore, the court concludes that the harmless factor has been met. See Lanard Toys Ltd., 375 Fed. App'x at 713. Thus, the Court denies Defendant's request to exclude the new information and data in Stapleford's supplemental declaration.

Defendant also seeks to exclude paragraph 15 which asserts that FCA has been in the business of making brake-fluid filled hydraulic systems since at least the 1930s and has been clearly aware of the industry standard practice. (Dkt. No. 216-1, Zohdy Decl. Ex. B, Stapleford Suppl. Decl. ¶ 15.) FCA disputes paragraph 15 as not a proper subject of expert testimony and because Stapleford did not consider whether FCA US even existed at the

7

time he claims it had knowledge. Plaintiffs argue that FCA has never disputed that it has been in business since 1924 despite the different corporate changes throughout the years. The Court agrees with Defendant that Stapleford's attempt to impute Chrysler's institutional knowledge to FCA is not supported by any fact in his declaration or testimony. Accordingly, the Court GRANTS FCA's motion to exclude paragraph 15 and any reference to Chrysler in paragraph 14.

Finally, FCA argues that even if the Court considers the new information, it should be excluded since Stapleford is unqualified and his opinions lack reliability. Based on the discussion below, the Court denies FCA's motion to exclude paragraphs 13 and 14.

### 2. Unqualified

Next, Defendant argues that Stapleford is unqualified to offer expert opinion since he does not have the education, employment or practical personal experience regarding clutch systems, in general, and specifically to opine on a clutch hydraulic release system, the effects of plasticizer and fibers on components in that system, standards for repairing the clutch system, and whether the X62 extended warranty was sufficient to resolve the issue because he testified that these topics fall outside his own expertise and he has no professional experience designing analyzing, testing, repairing or working on hydraulic clutch release systems. Plaintiffs respond that Defendant mischaracterizes Stapleford's deposition testimony and he is qualified as an expert in this case.

Rule 702 requires that an expert possess "knowledge, skill, experience, training, or education" sufficient to "assist" the trier of fact, which is "satisfied where expert testimony advances the trier of fact's understanding to any degree." Abarca v. Franklin Cnty. Water Dist., 761 F. Supp. 2d 1007, 1029-30 (E.D. Cal. 2011) (citations omitted). "The threshold for qualification is low for purposes of admissibility; minimal foundation of knowledge, skill, and experience suffices." PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd., No. C 10–00544 JW, 2011 WL 5417090, at *4 (N.D. Cal. Oct. 27, 2011) (citing

8

Hangarter, 373 F.3d at 1015-16) (25 years working in the insurance industry in general provided "minimal foundation of knowledge, skill, and experience" to qualify as expert in practices and norms of insurance companies in the context of a bad faith claim). "A witness can qualify as an expert through practical experience in a particular field, not just through academic training." Rogers v. Raymark Indus., Inc., 922 F.2d 1426, 1429 (9th Cir. 1991).

"Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert," Thomas, 42 F.3d at 1269, and "[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility," Abarca, 761 F. Supp. 2d at 1028 (quoting Robinson v. GEICO General Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006)) (internal quotation marks omitted). An expert's lack of specialization affects the weight of his or her testimony and not its admissibility. In re Silicone Gel Breast Implants Prods. Liab. Litig., 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004) (citing Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996)); see also Hangarter, 373 F.3d at 1015-16 (finding the district court did not abuse its discretion in permitting expert witness with general qualifications in insurance field to testify specifically about bad faith claims); United States v. Garcia, 7 F.3d 885, 889 (9th Cir. 1993) ("lack of particularized expertise goes to the weight accorded her testimony, not to the admissibility of her opinion as an expert.").

Stapleford has a bachelor's degree in mechanical engineering. (Dkt. No. 232-3, D'Aunoy Decl., Ex. A.) While he is not certified by the National Institute of Automotive Service Excellence ("ASE") in manual transmission, he is ASE-certified in the subjects of engine repair, automotive braking systems, automatic transmission/transaxle, non-structural analysis and repair and structural analysis and repair. (Dkt. No. 232-5, Ex. B at 26.) His technical areas of specialization include mechanical failure analysis and vehicle systems analysis. (Id.) He testified that as a mechanical engineer, he specializes in "design

defect, manufacturing defect, repair analysis, [and] damages analysis." (Dkt. No. 243-1, Wallace Decl., Ex. A. Stapleford Depo.at 24:6-11.)

While Stapleford does not have specific experience or certification with manual transmissions, including hydraulic clutch systems, his background, and experience in engine repair, automatic transmissions, mechanical failure analysis and vehicle systems analysis provide a sufficient bases for purposes of admissibility. Because the admissibility standard for an expert's qualification is low, the Court concludes that Stapleford is qualified as an expert to opine on the hydraulic clutch system. Any challenges to his qualifications, including his lack of specialization, affects the weight of the testimony and may be made at trial. See Thomas, 42 F.3d at 1269; In re Silicone Gel Breast Implants Prods. Liab. Litig., 318 F. Supp. 2d at 889 (an expert's lack of specialization affects the weight of his or her testimony and not its admissibility).

### 3. Reliability

FCA further argues that Stapleford's opinions should be excluded because they are not reliable because he failed to provide a foundation based on Daubert factors for his opinions. Plaintiffs argue that Stapleford's opinions are based on the standard of automotive repair accepted in the scientific community, and the Failure Mode and Effect Analysis ("FMEA") which is the standard in the industry for component design. (Dkt. No. 232-5, D'Aunoy Decl., Ex. C, Stapleford Expert Report ¶ 10; Dkt. No. 243-1, D'Aunoy Decl., Ex. A, Stapleford Depo. at 125:9-16.) Moreover, they contend that Stapleford primarily used FCA's own documents, including data and testing FCA performed.

FCA argues at length that because Stapleford did not conduct any testing, his opinions are unreliable and without foundation. Specifically, FCA contends that he did not test to determine what kind of rubber is used in the clutch components' seals, how much plasticizer is released from any reservoir hose, or how much might remain after the X62 Extended Warranty repair is performed, whether plasticizer can actually affect the slave

cylinder's seals or its operation, did not test any seals' tolerances for swelling and whether the fibers that are released from the reservoir hose can actually affect the operation of CMC and CSC. Furthermore, FCA contends that Stapleford conducted no testing to determine whether the rubber seal on a CSC, if exposed to plasticizer, can actually swell to the point that it would affect its operations, no testing of any seals' tolerance for exposure to plasticizer or what type of rubber was used in the Class Vehicles slave cylinder seals, does not know the formulation of plasticizer that was used, and no testing to determine whether the fibers that are released from the reservoir hose in connection with leaching plasticizer can actually affect the CMC or CSC's operation. FCA's theory of non-liability is that because the component parts are not manufactured the same in terms of size, and not all primary seals are positioned on the master cylinder piston the same way, tolerances exist and only when a vehicle contains components at the higher end of the tolerance range will the clutch pedal sticking condition occur and this condition manifests itself infrequently and randomly. (Dkt. No. 229-1, Benson Decl. ¶ 18.)

These tests that FCA contends Stapleford did not conduct are the bases of FCA's theory and conclusion, and not Plaintiffs' theory of liability. Its argument is based on Stapleford's failure to test on issues related to FCA's conclusions. In essence, FCA is challenging Stapleford's conclusions and disagrees with his methodology. Stapleford opines that the Clutch System is the same in all Class Vehicles. (Dkt. No. 232-5, D'Aunoy Decl., Ex. C, Stapleford Expert Report ¶ 14 (UNDER SEAL).) He claims that the industry standard requires that when "fluid in a hydraulic system becomes contaminated, all of the components that have been exposed to the contamination must be replaced . . . [and] any steel tubing must also be thoroughly cleaned with brake cleaner and dried completely before reassembly to ensure none of the contaminants remain." (Id. ¶ 16.) The contaminated fluid contaminates all the component parts of the Clutch System. (Id.)

11

Therefore, the X62 Extended Warranty repair was not complete since it failed to replace the CSC and thoroughly clean and dry the steel tubing. (Id. ¶ 20.)

FCA's challenges to Stapleford's conclusions and disagreement with his methodology are not bases for exclusion and Defendant may challenge Stapleford's opinions at trial. See Kennedy, 161 F.3d at 1231.

### 4. Relevance

Lastly, FCA contends that Stapleford's opinions are irrelevant because he testified that he did not know whether the seals in the slave cylinder can swell in a way that would affect its operation and he has never seen any evidence of such swelling. (Dkt. No. 243-1, Wallace Decl., Ex. A, Stapleford Depo. at 185:11-17.) FCA misconstrues Stapleford's deposition testimony. Stapleford responded "no" to the question whether he conducted any testing "that any fiber gets to a clutch slave cylinder seal in any way that affects its operation." (Id.) Instead, in his report, Stapleford concluded that the failure to replace the clutch slave cylinder as part of the X62 Extended Warranty repair will "likely to occur at some point in time in all Class Vehicles." (Dkt. No. 232-5, D'Aunoy Decl., Ex. C, Stapleford Expert Report ¶ 20.) Therefore, Stapleford acknowledges that a vehicle need not exhibit a current defect.[1] The Court disagrees with FCA that Stapleford's opinions regarding the clutch slave cylinder are irrelevant.

### Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Defendant's renewed motion to exclude the expert opinion testimony and report Michael Stapleford.

/ / / /

/ / / /

/ / / /

---

[1] A manifestation of a current defect is not required on a breach of an implied warranty claim. Wolin v. Jaguar Land Rover N. America, LLC, 617 F.3d 1168, 1173 (9th Cir. 2010).

12

Specifically, the Court excludes paragraph 15 and any reference to Chrysler in paragraph 14 of Stapleford's supplemental declaration dated April 6, 2018.

IT IS SO ORDERED.

Dated: June 4, 2018

Hon. Gonzalo P. Curiel
United States District Judge