1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO and ADAM TAVITIAN, individually, and on behalf of other members of the general public similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FCA US LLC, a Delaware limited liability company, <br><br> Defendant. | Case No.: 16cv1617-GPC(JLB) <br><br> **ORDER DENYING PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION** <br><br> **[Dkt. No. 215.]** |

Before the Court is Plaintiffs' amended motion for class certification filed on April 6, 2018. (Dkt. No. 215.) Defendant filed an opposition on April 27, 2018. (Dkt. No. 229.) On May 1, 2018, the Court granted Defendant's ex parte motion for leave to amend its opposition by interlineation. (Dkt. Nos. 234, 236.) Plaintiffs filed their reply on May 11, 2018. (Dkt. No. 244.) With leave of Court, Defendant filed a sur-reply on May 21, 2018. (Dtk. No. 252.) Plaintiffs filed a sur-sur-reply on May 23, 2018. (Dkt. No. 254.) A hearing was held on June 1, 2018. (Dkt. No. 256.) After a careful review of

the briefs, supporting documentation, the applicable law, and hearing oral argument, the

Court DENIES Plaintiffs' amended motion for class certification.

### Background

Plaintiffs Carlos Victorino ("Victorino") and Adam Tavitian ("Tavitian") (collectively "Plaintiffs") filed a putative first amended class action complaint based on defects in the 2013-2016 Dodge Dart vehicles equipped with a Fiat C635 manual transmission that cause their vehicles' clutches to fail and stick to the floor against Defendant FCA US LLC ("FCA" or "Defendant"), the manufacturer of these vehicles, including Plaintiffs' vehicles.   (Dkt. No. 104, FAC ¶¶ 1, 2, 52.)  In their amended motion for class certification, Plaintiffs claim a design defect in the 2013-2015 Dodge Dart vehicles equipped with a Fiat C635 manual transmission built on or before November 12, 2014 ("Class Vehicles").  (Dkt. No. 215-1 at 6[1].)

Plaintiffs claim the hydraulic clutch system ("Clutch System") is defective where the "clutch pedal loses pressure, sticks to the floor, and fails to engage/disengage gears. As a result, the Class Vehicles exhibit stalling, failure to accelerate, and premature failure of the Clutch System's components, including the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel." (Dkt. No. 104, FAC ¶ 2.)

Plaintiffs allege two separate defects in the Clutch System.[2]  First, the clutch defect is caused by the degradation of the clutch reservoir hose, which releases plasticizer and

---

[1] Page numbers are based on the CM/ECF pagination.

[2] While the parties dispute whether Plaintiffs have abandoned the theory of the second defect alleged in the clutch slave cylinder, the Court concludes that for the breach of implied warranty claims, the two defects alleged in the FAC that make the Class Vehicles unmerchantable remain.  Because of the Court's ruling on summary judgment concerning the CLRA and related causes of action granting judgment against Victorino but not Tavitian and granting summary judgment as to the alleged defective construction of the CSC due to FCA's lack of pre-sale knowledge solely on the CLRA and related

fibers, causing contamination of the hydraulic fluid that bathes the components of the Clutch System.  (Id. ¶ 7.)  As a result, the contamination causes the internal and external seals of the clutch master cylinder ("CMC") and clutch slave cylinder ("CSC") to swell and fail.  (Id. ¶¶ 7, 8.)  According to Plaintiffs, when fluid in the hydraulic system becomes contaminated, all of the components that have been exposed to the contaminated fluid must be replaced and any steel tubing must also be thoroughly cleaned with brake cleaner and blown out until dry to ensure that none of the contaminants remain.  (Id. ¶ 8.)  Second, Plaintiffs claim an additional defect in the CSC which exacerbates the problems with the Clutch System.  FCA designed its CSC as an assembly composed of an aluminum body with a clipped-on plastic base whereas other manufacturers' slave cylinders are composed of a single, solid cast aluminum component which creates a rigid base.  (Id. ¶ 13.)  Defendant's two-piece design destabilizes the cylinder at its base, "which can result in unintended lateral movement and cause the piston inside the cylinder to become jammed."  (Id.)

On January 8, 2016, FCA implemented a voluntary customer service action, Service Bulletin 06-001-16 entitled "Clutch Pedal Operation X62 Extended Warranty" ("X62 Extended Warranty repair") to address the issue of the contaminated hydraulic fluid caused by the degradation of the clutch reservoir hose and involved the "replacement of the hydraulic clutch master cylinder and reservoir hose" for the 2013-2015 Dodge Dart vehicles.  (Dkt. No. 216-1, Zohdy Decl., Ex. H at 62; Dkt. No. 183-4, Padgett Decl., Ex. 9 at 19.)

In this litigation, Plaintiffs claim that the X62 Extended Warranty repair failed to fully address and repair the defect and ignores the systemic effect of the contaminated

---

causes of action, the Court recognizes that there may have been some confusion as to the defects that support the remaining breach of implied warranty claims.

hydraulic fluid. They contend that if the hydraulic fluid is contaminated, all clutch system components are susceptible to damage and the well-known industry standard requires that all component parts within the system must be replaced. (Dkt. No. 216-1, Zohdy Decl., Ex. B, Stapleton Decl. ¶ 9.) According to Plaintiffs, any repair requires replacement of all component parts, including the CSC, thorough cleaning of any steel tubing with brake cleaner and drying before reassembly. (Dkt. No. 232-5, D's Mot. to Exclude, Stapleford Expert Report ¶ 16.)

Defendant denies that the alleged defects exist. The defense points out that the seal swelling condition could affect only 16% of the Class Vehicles because each Class Vehicle has component parts that are manufactured differently. (Dkt. No. 229-1, Benson Decl. ¶¶ 18, 19.) The differences are attributable to the manufacture of reservoir hoses with different amounts of plasticizer, the manufacture of CMCs in different sizes, and variations in the positioning of primary seals on the CMC. (Id.) According to the defense, the existence of the defect depends entirely on the amount of plasticizer in the reservoir hose, the size and position of the clutch system seals and the level of the varying tolerances. (Id.)

The FAC alleged five causes of action for violations of California's Consumer Legal Remedies Act ("CLRA"), California's unfair competition law ("UCL"), breach of implied warranty pursuant to Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), breach of implied warranty pursuant to the Magnuson-Moss Warranty Act ("MMWA"), and unjust enrichment. (Dkt. No. 104, FAC.) After the Court's ruling on Defendant's motion for summary judgment and subsequent motion for reconsideration, (Dkt. Nos. 206, 240), the remaining causes of action are the breach of implied warranty of merchantability under the Song-Beverly Act, the MMWA, and a UCL claim premised on the breach of implied warranty claims.

Because the Court's ruling on reconsideration was filed after the motion for class certification and opposition were filed and discusses the CLRA and related claims, the Court only addresses the issues as it relates to the remaining state and federal claims for a breach of implied warranty of merchantability as well as the UCL claim. Furthermore, after the hearing on class certification, on June 4, 2018, the parties filed a notice of a potential settlement with Plaintiff Tavitian.[3] (Dkt. Nos. 259, 260.) Accordingly, the Court DENIES Plaintiff Tavitian's motion for class certification as moot and solely addresses class certification as it relates to Plaintiff Victorino.

## Discussion

## A.     Legal Standard on Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only. In order to justify a departure from that rule, a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks and citations omitted). A plaintiff seeking class certification must affirmatively show the class meets the requirements of Rule 23. Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013) (citing Dukes, 131 S. Ct. at 2551-52). To obtain certification, a plaintiff bears the burden of proving that the class meets all four requirements of Rule 23(a)--numerosity, commonality, typicality, and adequacy. Ellis v. Costco Wholesale Corp., 657 F.3d 970 979-80 (9th Cir. 2011). If these prerequisites are met, the court must then decide whether the class action is maintainable under Rule 23(b). United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union AFL–CIO, CLC v. ConocoPhillips Co., 593

---

[3] Based on the notice of potential settlement as to Tavitian's claims, on June 5, 2018, the Magistrate Judge set a settlement disposition conference on June 22, 2018. (Dkt. No. 261.)

F.3d 802, 806 (9th Cir. 2010).  This case involves Rule 23(b)(3), which authorizes certification when "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  It also involves Rule 23(b)(2), which permits certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The Court exercises discretion in granting or denying a motion for class certification.  Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003).

The Court is required to perform a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question."  Dukes, 131 S. Ct. at 2551.  "'[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class.  More importantly, it is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court must consider the merits if they overlap with Rule 23(a) requirements."  Ellis, 657 F.3d at 981.  Nonetheless, the district court does not conduct a mini-trial to determine if the class "could actually prevail on the merits of their claims."  Id. at 983 n.8; United Steel, Paper & Forestry, Rubber, Manufacturing Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC, 593 F.3d at 808 (citation omitted) (court may inquire into substance of case to apply the Rule 23 factors, however, "[t]he court may not go so far . . . as to judge the validity of these claims.").

Here, the FAC alleges that the "implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Clutch Systems were manufactured, supplied, distributed, and/or sold by FCA were safe and reliable for providing transportation; and

6

(ii) a warranty that the Class Vehicles and their Clutch Systems would be fit for their intended use while the Class Vehicles were being operated." (Dkt. No. 104, FAC ¶¶ 131, 141.)

The Song-Beverly Consumer Warranty Act ("Song-Beverly Act") provides that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. "Consumer goods" is defined as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." Cal. Civ. Code § 1791(a). An implied warranty of merchantability under the Song-Beverly Act requires that consumer goods "[a]re fit for the ordinary purposes for which such goods are used." Cal. Civ. Code § 1791.1(a).

The Song-Beverly Act provides for a minimum level of quality. Keegan v. American Honda Motor Co., Inc., 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012); American Suzuki Motor Corp. v. Superior Ct., 37 Cal. App. 4th 1291, 1295-96 (1995) ("Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law . . . . [I]t provides for a minimum level of quality."). For a vehicle, the question is whether the vehicle is fit for driving. Keegan, 838 F. Supp. 2d at 945. California courts "reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." Isip v. Mercedes–Benz USA, LLC, 155 Cal. App. 4th 19, 27 (2007). "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." Id. at 26. "Such fitness is shown if the product is 'in safe condition and substantially free of defects . . . .'" Mexia v. Rinker Boat Co., Inc., 174 Cal. App. 4th 1297, 1303 (2009)

7

(quoting <u>Isip</u>, 155 Cal. App. 4th at 27).  It does not require that a vehicle be inoperable. <u>Avedisian v. Mercedes-Benz USA, LLC</u>, 43 F. Supp. 3d 1071, 1079 (C.D. Cal. 2014).

In California, a current manifestation of malfunction is not an element of a breach of implied warranty claim.  <u>Hicks v. Kaufman and Broad Home Corp.</u>, 89 Cal. App. 4th 908, 918, 923 (2011); <u>see</u> <u>Wolin v. Jaguar Land Rover N. America, LLC</u>, 617 F.3d 1168, 1173 (9th Cir. 2010) ("proof of the manifestation of a defect is not a prerequisite to class certification.").  If there is no current malfunction, the plaintiff need only demonstrate that the product "contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product."  <u>Hicks</u>, 89 Cal. App. 4th at 918.

The Magnuson-Moss Warranty Act ("MMWA") provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . ."  15 U.S.C. § 2310(d)(1).  Where a plaintiff alleges "a violation of the [Magnuson–Moss] Act only insofar as [the defendant] may have breached its warranties under state law," and where there is "no allegation that [the defendant] otherwise failed to comply with the Magnuson–Moss Act," the plaintiffs' "federal claims hinge on the state law warranty claims."  <u>Clemens v. DaimlerChrysler Corp.</u>, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008) (claims under the MMWA "stand or fall with . . . express and implied warranty claims under state law.").  In the Court's order on summary judgment, it noted that the allegations for breach of the implied warranty were similar under state and federal law and therefore concluded that the state and federal breach of implied warranty claims rise or fall together.  (Dkt. No. 206 at 23-24.)  Moreover, in their motion for class certification, Plaintiff asserts that his MMWA implied warranty claims derive from violations of the Song-Beverly Act.  (Dkt. No. 215-1 at 8.)  Therefore, the MMWA stands or falls with the Song-Beverly Act.  <u>See</u> <u>Clemens</u>, 534 F.3d at 1022 n. 3.

8

Here, Plaintiff seeks to certify the following:

**Nationwide Implied Warranty Class** to include,
All persons in the United States or its territories who purchased or leased, from an authorized dealership, a Dart Vehicle.
**California Implied Warranty Class** to include,
All persons who purchased or leased in California, from an authorized dealership, a Dart Vehicle.
**Injunctive Relief Class** to include,
All persons in California who purchased or leased, from an authorized dealership, a Dart Vehicle.

(Dkt. No. 215-1 at 8.)[4]   In reply, in response to Defendant's argument that the Song-Beverly Act does not apply to used consumer goods, it appeared that Plaintiff adjusted the class definition of the California Implied Warranty Class to include "those subsequent purchasers whose vehicles were sold by FCA-authorized dealers and are typically warranted by FCA, and who, according to FCA would also receive notice of and coverage under the written X62 warranty extension." (Dkt. No. 244 at 18.)  However, in his sur-sur-reply, he contends that the statement was merely to explain the logic behind the definition and did not alter the definition.  (Dkt. No. 254 at 8.)

**B.    Federal Rule of Civil Procedure 23(a)**

**1.    Numerosity and Commonality**

Plaintiff argues that the class is sufficiently numerous to satisfy Rule 23(a) and that the breach of implied warranty involves a common question.  Defendant does not

_____

[4] Plaintiff also sought to include an Omissions Class to include, "All persons in California who are 'consumers' within the meaning of California Civil Code § 1761(d) (the 'CLRA') and purchased or leased, after October 1, 2013, from an authorized dealership, a Dart Vehicle"; however, the Court granted summary judgment on the CLRA claim in the Court's prior orders. (See Dkt. Nos. 206, 240.) Therefore, Plaintiff's certification of the omissions class is moot.

challenge Plaintiff's argument that the putative class is sufficiently numerous or that issues of law or fact are common to the class under Rule 23(a).

To establish numerosity, a plaintiff must show that the represented class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); Bates v. United Parcel Serv., 204 F.R.D. 440, 444 (N.D. Cal. 2001). A court may reasonably infer based on the facts of each particular case to determine if numerosity is satisfied. Ikonen v. Hartz Mtn. Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988).

Plaintiff states that over 2000 class vehicles were sold in California. (Dkt. No. 239-3, Zohdy Decl., Ex. EE at 119 (UNDER SEAL).) Based on these numbers, the Court concludes that the numerosity element has been met. See Ikonen, 122 F.R.D. at 262 ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.").

As to commonality, Rule 23(a)(2) requires Plaintiff to show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Dukes, 131 S. Ct. at 2551. "That common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. "'What matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" Id. (emphasis in original) (citation omitted). "[C]ommonality only requires a single significant question of law or fact." Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 589 (9th Cir. 2012) (commonality not disputed as to whether Honda "had a duty to disclose or whether

the allegedly omitted facts were material and misleading to the public"); Rodriguez v. Hayes, 591 F.3d 1105, 1122 (9th Cir. 2010) (Commonality is satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.") (quoting Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)).

Plaintiff asserts that the common issue on the breach of implied warranty is whether the vehicles are "merchantable." He claims that there is a common design defect of the Clutch System inherent in every Class Vehicle rendering them unsafe. Defendants do not dispute Plaintiff's common issue of law and fact under Rule 23(a)(2). The Court concludes that this common question applies to the entire class and satisfies the less rigorous commonality requirement. See In re Hyundai and Kia Fuel Economy Litig., 881 F.3d 679, 691 (9th Cir. 2013) ("The Rule 23(b)(3) predominance inquiry is 'far more demanding' than Rule 23(a)'s commonality requirement."); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (recognizing that commonality under Rule 23(a)(2) to be "less rigorous" than the predominance companion requirement under Rule 23(b)(3)); Mazza, 666 F.3d at 589 (referring to Rule 23(a)(2) commonality requirement as a "limited burden").

## 2. Typicality[5]

Under typicality, the Court must determine whether the claims or defenses of the representative parties are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is

---

[5] Defendant confusingly conflates the arguments on typicality and adequacy. Typicality and adequacy require different analyses and the Court has attempted to separate out its arguments accordingly.

based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Id. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.

Plaintiff argues that his claims concern the purchase or lease of the Class Vehicle equipped with a defectively designed clutch system at the time of purchase. Plaintiff's common injury is the overpayment of his Class Vehicle when he purchased it. Defendant argues that Victorino was not injured by an incomplete X62 Extended Warranty repair because his vehicle never had or even needed the repair, and therefore, he has not suffered the same injury as or sustained the same type of damage as putative class members. Plaintiff does not address this issue in their reply.

In moving for class certification, and as discussed in detail below, Plaintiff does not need to demonstrate a manifestation of a current defect on a breach of an implied warranty claim. See Wolin, 617 F.3d at 1173. Therefore, the fact that Victorino's CMC and reservoir hose has not yet manifested a defect, as the Court concluded in its order on Defendant's motion for reconsideration on the CLRA claim, (Dkt. No. 240 at 7-8), is not a requirement in demonstrating whether a class should be certified for breach of implied warranty. Victorino as well as the proposed class members allege their Clutch Systems were defective when they purchased their vehicles and seek damages for breach of the implied warranty. See Wolin, 617 F.3d at 1175 (typicality met because the plaintiffs allege common defect and legal theories as the class members and can be met "despite different factual circumstances surrounding the manifestation of the defect."). Representative claims need only be "reasonably co-extensive with those of absent class

members; they need not be substantially identical", <u>Hanlon</u>, 150 F.3d at 1020, and in this case, Plaintiff has demonstrated that typicality has been met.[6]

### 3. Adequacy

As to adequacy, Rule 23(a)(4) provides that class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In analyzing whether Rule 23(a)(4) has been met, the Court must ask two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" <u>Evon v. Law Offices of Sidney Mickell</u>, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting <u>Hanlon</u>, 150 F.3d at 1020). "Several courts have held that 'class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'" <u>Hanon</u>, 976 F.2d at 508. A motion for class certification should not be granted if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." <u>Id.</u> (citation omitted). "Defendants need not show that these unique defenses will necessarily succeed, but rather that they will shape the focus of litigation in a way that may harm class members and ultimately risk the class' chance of recovery." <u>Schaefer v. Overland Express Family of Funds</u>, 169 F.R.D. 124, 129 (S.D. Cal. 1996).

Plaintiff summarily asserts that his interests do not conflict with the interests of the Class and is seeking the same remedies as the class based on the same core of operative facts, and that his counsel is more than adequate to represent the class. Defendant opposes arguing that Plaintiff and Plaintiff's counsel are inadequate.

////

---

[6] In the typicality analysis, FCA contends that Plaintiff is not typical of those class members who purchased used vehicles. The Court addresses the "used vehicle" issue on the predominance factor.

### a. Adequacy of Counsel

Plaintiff generally claims that he has retained highly qualified and competent counsel with significant experience litigating class actions. (Dkt. No. 216-1, Zohdy Decl., 41, Ex. MM.) He notes that during this litigation he has defeated FCA's motion for leave to file a third party complaint, (Dkt. No. 133), reconsideration on a motion to compel, (Dkt. No. 136), and obtained a partial denial of summary judgment, (Dkt. No. 206).

In opposition, Defendant argues that proposed class counsel is not adequate to represent the class as actions during the litigation raise questions as to their integrity and trustworthiness. First, the Court, in a prior order, concluded that class counsel violated California Rule of Professional Conduct 3-510 for failing to communicate settlement offers to their clients. (Dkt. No. 115 at 8.) Moreover, during the litigation, Defendant contends that Plaintiff's counsel violated ethical rules by improperly soliciting and engaged in the unauthorized practice of law by representing David Tavitian, a third-party witness, who is also the father of Plaintiff Adam Tavitian, at his deposition in Indiana. Moreover, Plaintiff's counsel may have engaged in improper solicitation of third-party witness Emad Salama by contacting him in person and offering to represent him for purposes of his deposition and potentially any claims made against him concerning his work on Tavitian's vehicle. Plaintiff's counsel responds that they did not act improperly by representing David Tavitian solely for the purpose of the deposition and did so without charging him a fee. As to representing Salama at his deposition, they claim that Defendant presents no legal authority to support its argument.

In the Court's prior order on July 25, 2017, the Court denied Defendant's motion to deny class certification as premature. (Dkt. No. 115.) The Court conducted an in-depth analysis on the adequacy of counsel under Rule 23(a)(4) and related Rule 23(g). (Dkt. No. 115 at 3-5.) The Court concluded that Plaintiffs had satisfied Rule 23(g)(A) by

showing that counsel has been diligently prosecuting the case and expended substantial resources to represent the class, and counsel had extensive experience in class actions, particularly in automotive defect class actions. (Id. at 5-6.)  In considering other factors under Rule 23(g)(B), the Court concluded that "Plaintiffs' counsel's failure to communicate Defendant's settlement offer was contrary to California Rule of Professional Conduct 3-510 which raises a question as to counsels' integrity and trustworthiness to represent the interests of the class." (Id. at 12.)  The Court noted, there were reasons, albeit incorrect, why Plaintiffs' counsel did not believe they needed to communicate the settlement offer." (Id.)  Based on a review of the cases, the Court concluded that failure of counsel to communicate a settlement offer, itself, does not demonstrate inadequacy of counsel under Rule 23(a)(4) and Rule 23(g). (Id. at 9.)

Adequate representation depends upon "an absence of antagonism [and] a sharing of interests between representatives and absentees."  Molski v. Gleich, 318 F.3d 937, 955 (9th Cir. 2003), overruled on other grounds by Dukes v. Wal–Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010).  In Radcliffe v. Experian Info. Solutions, 715 F.3d 1157, 1167-68 (9th Cir. 2013), the Ninth Circuit held the class representatives were inadequate because they faced significantly different financial incentives than the rest of the class due to the conditional incentive awards that were built into the structure of the settlement, and accordingly held that class counsel was also inadequate "because as soon as the conditional-incentive-awards provision divorced the interests of the class representatives from those of the absent class members, class counsel was simultaneously representing clients with conflicting interests." Id. at 1167.

In support of its argument, Defendant cites to In the Matter of Coale, 775 N.E. 2d 1079, 1080-81 (Ind. 2002) for the proposition that Plaintiff's counsel violated Indiana law by soliciting David Tavitian.  In Coale, two out-of-state attorneys were disciplined for their acts of solicitation seeking to represent survivors and family members of those

killed in a cargo plane crash in Indiana.  Id. at 1080-81.  The attorneys send letters, tapes, and folders to the victims' families and survivors attempting to procure them as clients without using the words "advertising material."  Id. at 1081.  The Supreme Court of Indiana held that while mail solicitation of prospective clients is permitted, attorneys must comply with Indiana law concerning its content.  Id. at 1083.  In the case, the attorneys failed to label the materials as "advertising materials", failed to file the materials with the Commission prior to disseminating them, and contained "false, fraudulent, misleading, deceptive, self-laudatory or unfair statements or claims" in violation of the Rules of Professional Conduct.  Id. at 1084.  The facts in Coale are distinguishable from the facts in this case and are not supportive of Defendant's argument.

Here, Defendant does not cite to a specific provision of the Indiana Rules of Professional Conduct that was violated by Plaintiff's counsel.  In response, Plaintiff cites to the following relevant Indiana Rules of Professional Conduct, "[a] lawyer . . . shall not by in-person, live telephone, or real-time electronic contact solicit professional employment from a prospective client when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the person contacted: (1) is a lawyer; or (2) has a family, close personal, or prior professional relationship with the lawyer."  Ind. Prof. Cond. R. 7.3(a).  Also, a "lawyer who is not admitted to practice in this jurisdiction, but is admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that . . . and arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice."  Ind. Prof. Cond. R. 5.5(c)(4).

Plaintiff's counsel claims the representation of David Tavitian was a courtesy for Plaintiff Adam Tavitian solely for the purposes of the deposition and the representation was done without charge to David.  Therefore, there was no violation of the Indiana

Rules of Professional Conduct.  The Court agrees and concludes that Defendant has failed to demonstrate an ethical violation under the Indiana Rule of Professional Conduct. FCA also claims there is a conflict of interest because David testified that he does not believe Plaintiff's vehicle has a defect, but FCA does not explain how David's testimony will be used at trial and how it conflicts with Plaintiff's counsels' representation of the class.

As to Salama, Defendant claims that Plaintiff's counsel's representation of Salama "may" violate California Rules of Professional Conduct 1-400 but fails to specifically cite to the provision that applies.  Rule 1-400 is entitled "Advertising and Solicitation" with many provisions which Defendant fails to specifically reference.  Moreover, FCA provides no authority that Plaintiff's counsel cannot represent a third party witness. Lastly, FCA's argument that Salama potentially bears liability for one of the repairs at tissue is also unavailing.  The Court denied FCA's motion for leave to file a third party complaint against Salama and FCA has not indicated that it intends to file a separate lawsuit seeking relief against Salama.

Besides Plaintiff's counsel's failure to communicate a settlement offer, which by itself, does not demonstrate inadequacy of counsel, Defendant has not demonstrated that Plaintiff's counsel's representation is inadequate.  Thus, the Court concludes that Plaintiff's counsel is adequate pursuant to Rule 23(a).

### b.    Adequacy of Plaintiff Victorino

Defendant argues that Victorino lacks sufficient knowledge of the claims and events in this case and he has given total control of his case to his attorneys to make all decisions, including whether to accept or reject a settlement.  FCA asserts there is no evidence that Plaintiff is in charge of his own case.[7]  In response, Victorino cites to his

---

[7] FCA's argument concerning the purchase of used vehicles is addressed on the predominance factor.

16cv1617-GPC(JLB)

deposition testimony where he testified that he keeps up to date with his attorneys and looks into the case from time to time and has read all the documents his attorneys have sent him. (Dkt. No. 244-1, Lurie Decl., Ex. 2 at Victorino Depo. at 171:12-172:7.) He stated that the class is made up of anyone that is affected by the clutch defect. (Id. at 174:25-175:6.) Based on these statements, the Court concludes that Victorino is an adequate representative.

In sum, based on the reasoning above, the Court concludes the Rule 23(a) factors have been met.

## C. Federal Rule of Civil Procedure 23(b)(3)

Under Rule 23(b)(3), the plaintiff must demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" and that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance is satisfied "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." Hanlon, 150 F.3d at 1022 (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1777 (2d ed. 1986)). Superiority requires a consideration of "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(a)-(d). In addition, class damages must be sufficiently traceable to plaintiff's liability case. See Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013).

/ / / /

/ / / /

16cv1617-GPC(JLB)

### 1. Predominance

#### a. Nationwide Implied Warranty Class

In two sentences, Plaintiff supports a Nationwide Implied Warranty Class under the MMWA by the simple observation that FCA's violation of Song-Beverly Act creates a MMWA federal claim. (Dkt. No. 215-1 at 8-9.) He does not address any due process or choice of law issues raised by seeking a nationwide class. In response, Defendant argues that Plaintiff cannot maintain a nationwide class because he has failed to meet his initial burden of demonstrating that due process would not be violated by applying California law to a nationwide class, and in any event, predominance is lacking because the Court will have to apply the implied warranty laws of 50 different jurisdictions for a nationwide implied warranty class. (Dkt. No. 229 at 23-24.) Plaintiff replies claiming, without any legal authority, he does not have to conduct any choice of law or due process analysis because despite the fact that the MMWA claim is predicated on breach of the Song-Beverly Act, once a MMWA violation is created, the MMWA can apply to all persons nationwide who purchased or leased the Dodge Dart Vehicles.

Plaintiff's argument that he does not have to address any choice of law or due process issue is contradicted by settled law. Because Plaintiff's MMWA cause of action is premised on California's Song-Beverly Act, Plaintiff must demonstrate that the application of California law to a nationwide class comports with due process. See Kas v. Mercedes-Benz USA, LLC, Case No. CV 11-1032-VBF(PJWx), 2011 WL 13238744, at *3 (C.D. Cal. Aug. 23, 2011) (while the plaintiff only alleged one claim of a nationwide class under the MMWA, "[u]ltimately, Plaintiff must demonstrate that the differences in state laws implicated by the putative class action are nonmaterial" where the plaintiff claimed the MMWA incorporated the state law warranty standard) (citing Walsh v. Ford Motor Co., 807 F.2d 1000, 1016 (D.C. Cir. 1986) ("state warranty law lies at the base of all warranty claims under Magnuson-Moss")).

16cv1617-GPC(JLB)

Certifying a nationwide class under the MMWA which is based on California's Song-Beverly Act must comport with due process. See Phillips Petroleum, Co. v. Shutts, 472 U.S. 797, 818 (1985). A forum state, may apply its own substantive law to claims of a nationwide class without violating the federal due process clause if the forum state has a "'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [the forum state's] law is not arbitrary or unfair." Id. at 821-22. "When considering fairness in this context, an important element is the expectation of the parties." Shutts, 472 U.S. at 822 (finding that parties could not expect that Kansas law would control where 97% of plaintiffs did not reside in Kansas and 99% of gas leases at issue were located outside Kansas).

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." Mazza, 666 F.3d at 589 (quoting Zinser v. Accufix Research Inst., 253 F.3d 1180, 1187 (9th Cir. 2001)). Here, the Court has diversity jurisdiction under 28 U.S.C. § 1332(d), (Dkt. No. 104, FAC ¶ 57), the Class Action Fairness Act; therefore, it applies California's choice-of-law rules. See Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 538 n. 7 (C.D. Cal. 2011). "Under California's choice of law rules, the class action proponent bears the initial burden to show that California has 'significant contact or significant aggregation of contacts to the claims of each class member.'" Wash. Mut. Bank v. Superior Ct., 24 Cal. 4th 906, 921 (2001). Once the plaintiffs have demonstrated that due process is satisfied, the burden shifts to the defendants to demonstrate that the laws of another state should apply. Id.

In his motion, Plaintiff failed to conduct any due process analysis. However, in reply, he alternatively argues, for the first time, that he can demonstrate that California "has sufficient significant contacts to apply its own laws to citizens of foreign states" due to the "expectation of the parties" under Shutts. He argues this expectation interest exists

16cv1617-GPC(JLB)

because "all 50 states have a shared interest in the predictability and uniformity of results for claims based on the same course of conduct, as well as a related and shared interest in the ease of applying the relevant law." (Dkt. No. 244 at 17.) However, Plaintiff misapplies and misunderstands the "expectation of the parties" element. The proper focus is on the parties' contacts with the forum state demonstrating "significant contact or significant aggregation of contacts" by defendants in the forum state that would determine the expectation of the parties that California's implied warranty law would apply to a nationwide class. See AT&T Mobility LLC v. AU Optronics Corp., 707 F.3d 1106, 1113 (9th Cir. 2013) (after determining defendant's conduct within the state was a "significant aggregation of contacts", defendant could not complain that application of California law outside of state would be unfair when the alleged conspiracy took place, in part, in California). An analysis under Shutts focuses on the plaintiffs' and defendants' contacts with the forum state. In re Seagate Tech Sec Litig., 115 F.R.D. 264, 270, 272 (N.D. Cal. 1987). Here, Plaintiff wholly fails to address his and Defendant's contacts with California.

Plaintiff also summarily argues that because the MMWA is covered by the Uniform Commercial Code, ("UCC"), and that the "U.C.C. has been considered by every state and adopted in some form by nearly all, FCA could reasonably expect that the controlling law, pursuant to Mag-Moss, would conform to the U.C.C." (Dkt. No. 244 at 18.) He has not provided any legal authority that FCA could reasonably have expected California law to apply nationwide because of the UCC and has failed to sufficiently demonstrate that due process would not be violated by the application of California law to a nationwide class.

Because Plaintiff has not met the initial burden of demonstrating that due process is satisfied for purposes of a nationwide class, he cannot demonstrate that common issues

16cv1617-GPC(JLB)

predominate over the different questions posed by each state's law. Accordingly, the Court DENIES Plaintiff's motion to certify a Nationwide Implied Warranty Class.

### b. California Implied Warranty Class

### i. Whether Merchantability Satisfies Predominance

The remaining causes of action require Plaintiff to establish that the Class Vehicles are not merchantable. Plaintiff argues that common issues and common evidence exist on whether the Class Vehicles are "merchantable" and whether the defects constitute an unreasonable safety risk. He claims that all Class Vehicles inherently contain the same defectively designed Clutch System and involve a serious safety risk. (Dkt. No. 232-5, D'Aunoy Decl., Ex. C, Stapleford Expert Report at 18.) He also asserts that by implementing the X62 Extended Warranty repair for all Class Vehicles, FCA acknowledged that the defect was inherent in all vehicles at the time of sale which presents common proof as to whether the class vehicles were merchantable.

In opposition, Defendant argues that the alleged defect is not a common issue because each Class Vehicle has component parts that are manufactured differently where all reservoir hoses are not manufactured with the same amount of plasticizer, all CMCs are not manufactured the same size and all seals are not positioned the same way on every CMC. (Dkt. No. 229-1, Benson Decl. ¶ 18.) As a result, FCA determined that only 16% of the Class Vehicles could be affected by the clutch pedal sticking condition due to swelling of the seals caused by the leaching plasticizer. (Id. ¶¶ 18, 19.) According to FCA, the existence of a defect depends entirely on the amount of plasticizer in the reservoir hose, the size and position of the clutch system seals and the level of the varying tolerances. Therefore, the factors necessary for the defect to exist will vary for each vehicle and require individual inquiries that defeat predominance.

Plaintiff argues that the proper focus for merchantability is the condition of the product at the time of sale, and therefore, any individual issues raised by Defendant on

whether the defect manifested in all Class Vehicles, whether the reservoir hose was actually defective, whether the defect resulted in contamination of the clutch system, and issues concerning failure rates, the efficacy of the X62 Extended Warranty repair and the nature of the rubber seals and reservoir hoses are merit inquiries, and not ones conducted at class certification.

On a breach of implied warranty claim, while a current manifestation of a current defect is not an element of a claim, a plaintiff must instead provide "substantial evidence of a defect that is substantially certain to result in malfunction during the useful life of the product." Hicks, 89 Cal. App. 4th at 918. On class certification, it is established that proof of a current manifestation of a defect for a warranty claim is not required. See American Honda Motor Co. v. Superior Ct., 199 Cal. App. 4th 1367, 1375 (2011) ("Hicks and Wolin are in agreement that proof of current manifestation of the defect is not necessary in a breach of warranty class action"); Wolin, 617 F.3d at 1173 ("proof of the manifestation of a defect is not a prerequisite to class certification.") (citing Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975) ("[N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule.")).

In Wolin, the Ninth Circuit concluded that the district court erred by denying certification because the plaintiffs, alleging violations of Michigan and Florida's consumer protection and breach of warranty claims, did not prove that the defect, an alignment geometry defect that causes tires to prematurely wear, manifested in a majority of the class's vehicles. 617 F.3d at 1173. Moreover, the Ninth Circuit rejected the defendant's argument and evidence that the class members' vehicles do not have the same common defect because tire wear can be due to individual factors such as driving

habits and weather.  Id.  It held that manifestation of a current defect is not required at class certification.  Id.

In American Honda, the California court of appeal rejected the Ninth Circuit's ruling in Wolin and held that while plaintiffs moving for class certification do not have to demonstrate a current manifestation of a defect, they "must provide substantial evidence of a defect that is substantially certain to result in malfunction during the useful life of the product." 199 Cal. App. 4th at 1375.  It noted that the inquiry must be made when determining the merits of the plaintiffs' claim but also when determining class certification.  Id.  The court of appeal reversed the trial court's ruling because it relied on Wolin and distinguished Wolin as not addressing California law but dealt with federal procedural law, and Florida and Michigan substantive state law.  Id. at 1375-76.  The Court notes that Wolin did not have occasion to address the issue of whether additional evidence by plaintiff was needed to show a defect that will substantially result in malfunction during the useful life of the product at the class certification stage.

Since American Honda, district courts are divided as to whether determining class certification of a breach of the implied warranty under California law requires a class representative plaintiff to demonstrate, with evidence, an inherent defect which is "substantially certain to result in malfunction during the useful life of the product."  See Torres v. Nissan N. America Inc., Case No. CV 15-3251 RGK(FFMx), 2015 WL 5170539, at *5  (C.D. Cal. Sept. 1, 2015) (denying class certification on warranty claims because plaintiffs failed to provide evidence that "all class members are substantially certain to experience a malfunction from the alleged defect."); but see Keegan, 284 F.R.D. at 535 (granting class certification on implied warranty claim without requiring evidence that "all class members are substantially certain to experience a malfunction from the alleged defect."); Miller v. Fuhu, Inc., 14cv6119-CAS-AS, 2015 WL 7776794,

at *14 (C.D. Cal. Dec. 1, 2015) (following <u>Keegan</u> and related cases and finding common questions predominated on warranty claim).

In <u>Keegan</u>, after carefully reviewing the courts' analysis in <u>Wolin</u>, <u>American Honda Motor Co.</u>, and <u>Hicks</u>, the district court explained that the <u>American Honda</u> court appears to have conflated California's substantive law on breach of warranty and California's procedural law governing class certification. <u>Keegan</u>, 284 F.R.D. at 535. The <u>Keegan</u> court concluded that while the court of appeal in <u>American Honda</u> applied California procedural law, it must follow federal procedural law. <u>Id.</u> at 535-36 ("the court cannot discern why, at the class certification stage, plaintiffs must adduce evidence that a defect is substantially certain to arise in all class vehicles during the vehicles' useful life. A merits inquiry will resolve that question in one stroke . . . ."). Applying federal procedural law on class certification as applied by the Ninth Circuit in <u>Wolin</u>, the district court in <u>Keegan</u> granted class certification on the breach of implied warranty claim concluding that the claim is susceptible to common proof. <u>Id.</u> at 536. It concluded that the question of whether the design defect is "substantially certain" to manifest can be answered in "one stroke." <u>Id.</u> at 537.

The Court finds <u>Keegan</u>'s reasoning persuasive as it applies federal procedural law on class certification. On class certification, the Ninth Circuit has cautioned that the district court should not determine the merits of any claims. <u>Ellis</u>, 657 F.3d at 981; <u>ConocoPhillips Co.</u>, 593 F.3d at 808 ("court may not go so far . . . as to judge the validity of these claims."). The requirement of <u>American Honda</u> that a plaintiff must demonstrate that all class members' vehicles' defect will substantially be certain to experience a malfunction from the alleged defect during its useful life is a determination on the merits which this Court does not find proper on class certification. <u>See id.</u> Therefore, the Court concludes that Plaintiff does not have to demonstrate a manifestation of a current defect

or that there is a substantial certainty of manifestation in the future but only to show that his claim of breach of implied warranty is susceptible to common proof.

In this case, Mr. Stapleford opined that all Class Vehicle inherently contain the same defectively designed Clutch System at the time of sale. (Dkt. No. 232-5, D'Aunoy Decl., Ex. C, Stapleford Expert Report at 18 (UNDER SEAL).) Because the leaching plasticizer causes the swelling of rubber components throughout the Clutch System, and causes premature wearing on these components, the X62 Extended Warranty repair was inadequate. (Id.) The plasticizer that leached into the hydraulic fluid causing contamination will eventually cause damage to the CSC seal and the clutch system malfunction "[will] likely to occur at some point in time in all of the Class Vehicles." (Id.) Plaintiff's allegation of a common defect present in all Class Vehicles at the time of purchase and that the defect will likely occur at some point during the lifetime of the class vehicles demonstrate predominance of common issues on the claim for breach of implied warranty. Defendant raises numerous issues that would require individual inquiries such as the different reasons why the clutch system can fail and that only 16% of the Class Vehicles could be affected by the condition; however, these are not relevant when ruling on a motion for class certification. Thus, Defendant's argument that predominance is not met due to the individual questions arising to determine whether the Class Vehicles are merchantability is without merit.

/ / / /

/ / / /

/ / / /

/ / / /

16cv1617-GPC(JLB)

## ii. Whether Class Definition Satisfies Predominance[8]

Next, Defendant argues that the Song-Beverly Act only applies to "new" goods sold or leased at retail in California for personal, family or household use, and the class is overbroad because it includes owners of the Class Vehicles that are used. See Cal. Civ. Code §§ 1791(a), 1792. Plaintiff responds that the implied warranty applies to leases of new or used consumer goods, Cal. Civ. Code § 1795.4, and to the sale of used consumer goods that are accompanied by an express warranty. Cal. Civ. Code § 1795.5. In their sur-sur-reply, and at oral argument, Plaintiff agrees with Defendant that the Song-Beverly Act does not apply to vehicles purchased used from private parties but it applies to used vehicles purchased from authorized dealerships as they are "distributors" or "retail sellers" of FCA under section 1795.5.

The Song-Beverly Act's breach of implied warranty applies to sales of "consumer goods" which are defined as "new product[s]." Cal. Civil Code §§ 1791, 1792; however, it also applies to "used consumer goods" that are covered by an express warranty where the obligation is on behalf of the distributor or retail seller and "not the original manufacturer, distributor, or retail seller." See Cal. Civil Code § 1795.5[9]; see Johnson v.

---

[8] In the motion for class certification, Plaintiff asserts that the class is identifiable and ascertainable. However, the Ninth Circuit has declined to adopt an ascertainability and/or administrative feasibility requirement for class plaintiffs to demonstrate for purposes of class certification explaining that "Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification." Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1126, 1133 (9th Cir. 2017) (joining Sixth, Seventh, and Eighth Circuits and declining to impose an additional hurdle beyond those delineated in Rule 23). The court explained that policy concerns concerning administratively feasibility are already addressed by Rule 23. Id. at 1133; see Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1136-39 (9th Cir. 2016) (addressing an overbroad class definition as part of predominance issue).

[9] "[T]he obligation of a distributor or retail seller of used consumer goods in a sale in which an express warranty is given shall be the same as that imposed on manufacturer . . . except: (a) it shall be the obligation of the distributor or retail seller making express warranties with respect to used consumer goods (and not the original manufacturer, distributor, or retail seller making express warranties with respect to such goods when new) to maintain sufficient service and repair facilities within this state to carry out the terms of such express warranties." Cal. Civ. Code § 1795.5.

27

1  Nissan N. America, Inc., 272 F. Supp. 3d 1168, 1178-79 (N.D. Cal. 2017) (section
2  1795.5 imposes obligation of warranties on the distributor or retail seller, not the original
3  manufacturer; therefore no cause of action against original manufacturer under Song-
4  Beverly Act where used vehicle was purchased from third party retail seller, CarMax).

5      While Plaintiff argues that authorized dealerships are FCA's "distributors" or
6  "retail sellers", they have provided no evidence of the relationship between FCA and its
7  authorized dealerships.  See In re MyFord Touch Consumer Litig., 291 F. Supp. 3d 936,
8  950 (N.D. Cal. 2018) (section 1795.5 "does not create additional obligations on a
9  manufacturer vis-à-vis used car purchasers; rather, it simply states that the retailer or
10  distributor is also subject to whatever obligations already apply to the manufacturer.").
11  In In re MyFord Touch, the plaintiffs similarly argued that Ford was a "distributor" or
12  "retailer" of used vehicles under section 1795.5, but the court noted that the plaintiffs "do
13  not cite evidence to support that representation (nor is evidence cited of an agency
14  relationship between the dealers and Ford)."  Id.  Because there was no evidence to create
15  a triable issue of fact whether Ford was a retailer or distributor of used vehicles, the court
16  granted summary judgment in favor of the car manufacturer on the Song-Beverly Act's
17  implied warranty claim with respect to class members who purchased used vehicles.  Id.

18      Similarly, here, Plaintiff has not provided any caselaw that has found an auto
19  manufacturer liable for used vehicles sales made by its authorized dealerships under
20  section 1795.5's used vehicle provision and has not presented any evidence that FCA is a
21  "retailer" or "distributor" of used vehicles through its authorized dealerships.  See id.; see
22  Herrera v. Volkswagen Grp. of Am., Inc., Case No. SACV 16-364-CJC(JCGx), 2016 WL
23  10000085, at *5 (C.D. Cal. Sept. 9, 2016) (informing the plaintiff that he must plead
24  sufficient facts to create an inference that Defendant manufacturer is either a distributor
25  or retailer of used cars.)  Therefore, section 1795.5 does not support Plaintiff's argument

16cv1617-GPC(JLB)

that the Song-Beverly Act applies to used vehicles purchased by class members from FCA's authorized dealerships.

Plaintiff also argues the Song Beverly Act applies to vehicles purchased from an authorized dealership either used or new as long as the used vehicle is sold with the manufacturer's new car warranty and cites to Cal. Civil Code § 1793.22 and <u>Jensen v. BMW of N. America, Inc.</u>, 35 Cal. App. 4th 112, 123 (1995). Plaintiff relies on the definition of "new motor vehicle" which includes a "motor vehicle sold with a manufacturer's new car warranty." <u>Jensen</u>, 35 Cal. App. 4th at 123 (under section 1793.22, cars sold with a balance remaining on the manufacturer's new motor vehicle warranty fall within definition of "new motor vehicle").

However, the definition of "new motor vehicle" under section 1793.22(e)[10] specifically states it only applies to section 1793.2(d), which the Court concluded above only applies to express warranties, and section 1793.22, the Tanner Consumer Protection Act,[11] Cal. Civ. Code § 1793.22(e), which does not reference implied warranties. <u>Dagher v. Ford Motor Co.</u>, 238 Cal. App. 4th 905, 920 (2015) (noting "new motor vehicle" as defined in section 1793.22(e)(2) applies to sections 1793.2(d) and 1793.22); <u>Leber v. DKD of Davis, Inc.</u>, 237 Cal. App. 4th 402, 409 (2015) ("If the Legislature had intended the definition of 'new' vehicle in section 1793.22, subdivision (e) to apply throughout the Act, it would not have explicitly limited its applicability. . . ."). In <u>Jensen</u>, the court dealt with whether the plaintiff could seek relief against the manufacturer for breach of an express warranty of her "new" car purchase by a dealership sold with the

---

[10] "For the purposes of subdivision (d) of Section 1793.2 and this section [section 1793.22] . . . 'new motor vehicle' means . . . ." Cal. Civil Code § 1793.22(e).

[11] Section 1793.22, also known as the Tanner Consumer Protection Act, provides the reasonable number of attempts to repair a vehicle before relief may be sought.

manufacturer's new car warranty and not a breach of the implied warranty.  <u>Jensen,</u> 35 Cal. App. 4th at 112.  <u>Jensen</u> is not supportive of Plaintiff's position.

Plaintiff has failed to demonstrate that the Song-Beverly Act imposes liability on the car manufacturer for class members' purchase of used vehicles from authorized dealerships.  Thus, the class definition, to include "[a]ll persons who purchased or leased in California, from an authorized dealership, a Dart Vehicle" is overbroad because the class definition includes purchasers of used vehicles.

It is to be noted that district courts have the inherent power to modify overbroad class definitions.  <u>Mazur v. eBay Inc.</u>, 257 F.R.D. 563, 568 (N.D. Cal. 2009) (citing <u>Hagen v. City of Winnemucca</u>, 108 F.R.D. 61, 64 (D. Nev. 1985)); <u>see also</u> <u>Powers v. Hamilton Cnty. Public Defender Comm'n</u>, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions"); <u>Schorsch v. Hewlett–Packard Co.</u>, 417 F.3d 748, 750 (7th Cir. 2005) (noting that "[l]itigants and judges regularly modify class definitions"); <u>In re Monumental Life Ins. Co.</u>, 365 F.3d 408, 414 (5th Cir. 2004) ("District courts are permitted to limit or modify class definitions to provide the necessary precision.").  Despite the Court's inherent power to modify Plaintiff's class definition, as discussed below, Plaintiff fails to demonstrate that his damages models satisfy predominance.  Thus, the Court declines to exercise its discretion to modify the proposed class definition.[12]  <u>See</u> <u>Mazur,</u> 257 F.R.D. at 568 (recognizing court's inherent power to modify a class definition but declined to do so because class certification motion failed on other grounds).

/ / / /

/ / / /

---

[12] Moreover, it is not clear whether Plaintiff is amenable to a modification of the class definition.  In his sur-sur-reply, he is firm that he seeks a class that includes both new and used purchasers of the Class Vehicles.  (Dkt. No. 254 at 8.)

### iii. Whether Damages Models Satisfy Predominance

Plaintiff presents two damages models. First, Plaintiff argues in one sentence that damages as to the California Implied Warranty Class can be calculated on a class wide basis because the Song-Beverly Act provides a measure of damages but fails to identify, apply or analyze any specific provision. (Dkt. No. 215-1 at 9.) Second, he relies on a benefit of the bargain damages model as offered by his expert Steven Boyles. Defendant does not address whether the statutory damages provided under the Song-Beverly Act complies with <u>Comcast</u> but opposes the benefit of the bargain damages model.

Plaintiff must present a damages model that is consistent with his liability case, and the court "must conduct a rigorous analysis to determine whether that is so." <u>Comcast Corp.</u>, 133 S. Ct. at 1433 (internal quotation marks omitted). Plaintiff "must be able to show that [his] damages stemmed from the defendant's actions that created the legal liability." <u>Leyva v. Medline Indus., Inc.</u>, 716 F.3d 510, 514 (9th Cir. 2013). While a plaintiff must present the likely method for determining class damages, "it is not necessary to show that [this] method will work with certainty at this time." <u>Chavez v. Blue Sky Natural Beverage Co.</u>, 268 F.R.D. 365, 379 (N.D. Cal. 2010). <u>Comcast</u> demands that Plaintiff demonstrates, with evidence, that there is a class-wide method of determining damages that is consistent with his theory of liability. <u>See</u> <u>Comcast Corp.</u>, 133 S. Ct. at 1433.

Plaintiff summarily asserts that the statutory damages provision of the Song-Beverly Act, his theory of liability, applies but fails to conduct an analysis on which specific provision is applicable as the damages differ depending on type of warranty and type of acceptance

Damages under the Song-Beverly Act provide the following:

(b) The measure of the buyer's damages in an action under this section shall include the rights of replacement or reimbursement as set forth in subdivision (d) of Section 1793.2, and the following:

> (1) Where the buyer has rightfully rejected or justifiably revoked acceptance of the goods or has exercised any right to cancel the sale, Sections 2711, 2712, and 2713 of the Commercial Code shall apply.
>
> (2) Where the buyer has accepted the goods, Sections 2714 and 2715 of the Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform.

Cal. Civ. Code § 1794(b). The reference to section 1793.2(d) in section 1794(b) allows a buyer the right of replacement or restitution for breach of an express warranty and does not apply in this breach of implied warranty case. See Gavaldon v. DaimlerChrysler Corp., 32 Cal. 4th 1246, 1263 (2004); Philips v. Ford Motor Co., Case No. 14cv2989-LHK, 2016 WL 7428810, at *24 (N.D. Cal. Dec. 22, 2016) (noting buyer's right to replacement or restitution is available only for breach of an express warranty). In their sur-sur-reply and at oral argument, Plaintiff asserts that the court in Gavaldon, 23 Cal. 4th at 1259, provides a strong argument that the replacement and restitution remedies apply to implied warranty. However, Gavaldon did not hold that section 1793.2(d) applies to implied warranty claims and courts have held the contrary. See Keegan, 838 F. Supp. 2d at 948 n. 55 (section 1793.2(d) does not apply to claims for breach of implied warranty) (citing Mocek v. Alfa Leisure, Inc., 114 Cal. App. 4th 402, 406-08 (2003) ("The Act's provisions requiring repairs after breach of an express warranty are lengthy and detailed. There is no reason to believe failure to set out the same process in case of a breach of the implied warranty of merchantability was an oversight")); Music Acceptance Corp. v. Lofing, 32 Cal. App. 4th 610, 620 (1995) (section 1793.2 applies only to express warranties and has no relevance to the implied warranty of merchantability). One court of appeal stated the proposition that section 1793.2(d) does not apply to implied warranty claims is "clearly established law." Brand v. Hyundai Motor America, 226 Cal. App. 4th 1538, 1548 (2014) ("clearly established law 'reject[s] the . . . argument' that express

warranty provisions 'concerning replacement or repair of defective goods should be applied' to implied warranty breaches."). In fact, section 1793.2(d) expressly states that "if the manufacturer . . . does not service or repair the goods to conform to the applicable *express* warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer. . . ." Cal. Civ. Code § 1793.2(d) (emphasis added). Plaintiff's attempt to extend Gavaldon's holding to implied warranty claims is not legally supported.

Based on the facts of this case, it appears that section 1794(b)(2) applies because Plaintiff accepted the Dodge Dart vehicles. Under the damages provision, "[w]here the buyer has accepted the goods, Sections 2714 and 2715 of the Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform." Cal. Civ. Code § 1794(b). Section 2714 of the California Commercial Code provides that, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Cal. Com. Code § 2714.

In Guido v. L'Oreal, USA, Inc., Nos. CV 11-1067 CAS(JCx), 11-5465 CAS (JCx), 2013 WL 3353857, at *13 (C.D. Cal. July 1, 2013), the district court analyzed a statutory damages claim under section 1794 for a claim of breach of an implied warranty and held that the plaintiffs had not provided evidence to support statutory damages on a class wide basis. Id. at *13. In Guido, the court described Commercial Code section 2714 as "the monetary equivalent of the benefit of his bargain." Id. at *14; Ironshore Specialty Ins. Co. v. 23andMe, Inc., Case No. 14cv3286-BLF, 2015 WL 2265900, at *4 (N.D. Cal. May 14, 2015) ("Under California law the remedies for breach of the implied warranty include "benefit of the bargain" damages" citing to Commercial Code section 2714.). The measure of damages was the difference between the "true market value" or what the

class actually received and "the historical market value" or the value of the product in merchantable condition and this provides a measure of class wide relief. <u>Guido</u>, 2013 WL 3353857, at *14. Because the plaintiff did not submit expert testimony demonstrating a gap between the true market price and its historical market price, they did not meet their burden of demonstrating common questions predominate over individual ones. <u>Id.</u> at 16.

As noted above, Plaintiff did not conduct a damages analysis under section 2714 demonstrating the "difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." <u>See</u> Cal. Comm. Code § 2714. Instead, Plaintiff's alternate damages theory, discussed below, is described as a benefit of the bargain theory but upon closer inspection appears to operate as a full refund model.

Plaintiff's benefit of the bargain theory purports to measure the "economic harm caused by FCA's failure to disclose the alleged design defect at the point of sale or before based on the difference in value between a defective and a defect-free Clutch System." (Dkt. No. 215-1 at 28.) According to Plaintiff's damages expert, Steven Boyles, the Clutch Defect can be cured and class members can be made whole and receive the value they bargained for at the point of sale. (Dkt. No. 216-1, Zohdy Decl., Ex. K, Boyles Decl. ¶ 9.) Boyles' benefit-of-the-bargain model limits recovery to the difference in value at the point of sale between a Class Vehicle with a defective clutch system and one with a defect-free clutch system. (<u>Id.</u> ¶ 10.) This benefit of the bargain theory claims to measure the "difference in the value represented and the value actually received (what the vehicle is worth with and without the defect) and are susceptible of measurement across the entire class." (<u>Id.</u>) In arriving at this measurement, Boyles proposes that "[p]ayment in the amount of the cost necessary to cure the Clutch Defect would make Class Members whole and provide them with the benefit of their bargain." (<u>Id.</u> ¶ 11.) According to

Boyles, his formula, "(hours x labor rate + part cost)" "provides a measure of the difference in value of a Class Vehicle without the defect as compared to a Class Vehicle with the defect." (Dkt. No. 239-2, Zohdy Decl., Ex. L, Boyles Decl. ¶ 26 (UNDER SEAL).)

Defendant responds that Plaintiff's damages model is essentially a full refund of an allegedly defective component where it is clear that the reservoir hose, master cylinder and slave cylinder components are not valueless. Defendant cites to a recent district court decision in <u>Nguyen v. Nissan North America</u>, Case No. 16cv5591-LHK, 2018 WL 1831857, at *7 (N.D. Cal. April 9, 2018), where the plaintiffs' counsel, the same counsel in this case, argued the same damages theory, also by Plaintiff's expert, Steven Boyles, and the court held it did not satisfy predominance. In reply, Plaintiff disagrees with Defendant arguing that his benefit of the bargain model is distinct from a full refund model.

Boyles correctly states the theory behind the benefit of the bargain damages which is to place the consumer in the position he or she would have been had he or she received a merchantable product, which is the difference between the value of the item as represented and the actual value of the item. (Dkt. No. 239-2, Zohdy Decl., Ex. L, Boyles Decl. ¶ 16 (UNDER SEAL).) However, the formula he presents does not correlate to his theory. Instead, Boyles' benefit of the bargain damages formula provides a full refund of the purchase price of the component parts and does not place the plaintiff where he would have been when he purchased the car but, instead, overcompensates him. Determining the difference between the value of the goods accepted and the value they would have had if they had been as warranted necessarily assumes there is some value to the products at the time of acceptance. Boyles' formula impliedly determines that the value of the accepted component part was $0. It does not assess the difference between the value of the component parts accepted and the value as merchantable.

16cv1617-GPC(JLB)

In <u>Nguyen</u>, the plaintiff alleged a defect in the manual transmission of her vehicle arguing that the CSC has a design flaw because of its material make-up, including plastic, and does not effectively transfer heat. <u>Nguyen v. Nissan N. America, Inc.</u>, Case No. 16cv5591-LHK, 2018 WL 1831857, at *1 (N.D. Cal. Apr. 9, 2018).[13]   As a result, the hydraulic fluid boils as it circulates through the CSC causing air bubbles to form and collapse which causes the fluid pressure to stop suddenly and prevents the CSC from working properly and causing the vehicle's clutch to lose pressure and prevents the gears from engaging/disengaging. <u>Id.</u> On motion for class certification, the plaintiff relied on a purported benefit-of the bargain damages model offered by Steven Boyles, the same expert in this case, for claims under the CLRA, Song-Beverly Act and the MMWA. (<u>Id.</u> at 3.) As in this case, the benefit of the bargain damages model was represented as the difference between the value represented by the defendant and the value actually received or "what the vehicle is worth with and without the defect. <u>Id.</u> at *5. Boyles determined damages to be the cost of an aluminum CSC, new hydraulic fluid, other necessary parts and 3.9 hours of labor totaling $723.95 to cure the defect. <u>Id.</u> The district court explained that the damages proposed was in essence a full refund model. <u>Id.</u> Because the difference between the value represented and the value received equals the cost to replace the defective CSC then consumers would have deemed the defective part valueless. <u>Id.</u> Boyles' damages model assumed the consumer received no value from the defective CSC; however, the evidence in the case demonstrated that the plaintiff's extended use of the CSC indicated some value to the plaintiff. <u>Id.</u> at *6. The court denied certification based on Plaintiffs' failure to demonstrate predominance due to the damages model. <u>Id.</u> at 8.

---

[13] On April 23, 2018, the plaintiffs filed a petition for permission to appeal the district court's decision with the Ninth Circuit.

16cv1617-GPC(JLB)

Plaintiff, on the other hand, cites to Falco arguing the district court endorsed a damages formula based on the benefit of the bargain which was similar to that offered by Boyles.  In Falco, the plaintiffs complained that their vehicles had a defective timing chain system.  Falco v Nissan N. America, Case No. CV 13-686 DDP, (MANx), 2016 WL 1327474, at *1 (C.D. Cal. Apr. 5, 2016).  As to the statutory class that already had repairs done, the plaintiffs sought restitution for amounts already spent to diagnose and repair the defective timing chain systems.  Id. at *2, *11.  As to the fraud and breach of warranty class, those who had not yet had the defective system fully repaired, the plaintiffs sought the "benefit of the bargain damages" based on Nissan's fraudulent behavior inducing them to purchase the vehicles and had the defect been disclosed they would have paid less.  Id. at *2, *12.  The benefit of the bargain was the "average amount each member can expect to pay to have the defecting timing chain system repaired at an authorized Nissan dealership."  Id. at *12.  The Court concluded that the class wide damage formula for the classes exist and as to the fraud based claims, "[b]y receiving restitution in the amount of average repairs, the class would be getting the benefit of their bargain they would be put in the same position they would have been had the car not been sold with the defective timing chain system – it is the cost necessary to make the vehicles conform to the value Plaintiffs thought they were getting in the price tendered."  Id.

The court in Nguyen distinguished the ruling in Falco explaining it awarded damages for the cost to repair the allegedly defective part rather than the cost to replace it.  Nguyen, 2018 WL 1831857, at *7.  In addition, Judge Koh observed that the Falco court failed to consider the possibility that awarding repair costs might overcompensate the class members.  Id.

The Court agrees with the reasoning in Nguyen, in part, as it relates to the issue of overcompensation.  A full refund of the purchase price of the component parts fails to

correspond to Plaintiff's theory of liability because a full refund is not available for this cause of action. If Plaintiff seeks damages based on the benefit of the bargain as asserted by his expert, he needs to assess the "difference in the value represented and the value actually received", (Dkt. No. 216-1, Zohdy Decl., Ex. K, Boyles Decl. ¶ 9), which a full recovery fails to do.

The Court's ruling is confirmed by the recent Ninth Circuit decision in <u>Philips v. Ford Motor Co.,</u> 2018 WL 2752585 (9th Cir. June 8, 2018) affirming the district court's exclusion of the plaintiffs' damages expert for failing to apply the "expected utility" theory and resulting denial of class certification.[14] In <u>Phillips</u>, the plaintiffs' expert proposed an "expected utility" theory of damages on, *inter alia*, the implied warranty claims. <u>Philips</u>, 2016 WL 7428810, at *19. The plaintiffs' theory of harm was that Ford forced class members to accept a risk they did not bargain for when Ford failed to disclose known defects in the vehicles' Electronic Power Assisted Steering ("EPAS") system. <u>Id.</u> at *20. Therefore, the "expected utility" measured "consumers' perceptions of the risk of failure and calculates consumers' willingness to pay based on these measurements." <u>Id.</u> Despite the theory, the expert report determined that damages was the total price of a new EPAS system. <u>Id.</u> However, the plaintiffs provided no evidence that the expected utility of the EPAS was $0; in fact, Ford produced evidence that the expected failure rate for class vehicles was at most "approximately 1 percent." <u>Id.</u> at *21.

_____

[14] On June 11, 2018, Defendant filed a notice of supplemental authority in opposition to Plaintiff's amended motion for class certification informing the Court of a recent Ninth Circuit decision in <u>Philips v. Ford Motor Co.</u>, 2018 WL 2752585 (9th Cir. June 8, 2019). (Dkt. No. 263.) Plaintiff objects to the notice and asks the Court to strike it arguing that <u>Philip</u> has no relevance because this case is based on the "benefit of the bargain" theory, not "expected utility." (Dkt. No. 264.) The Court disagrees. While Plaintiff labels his damages model as the "benefit of the bargain" theory, the Court explains above that the "benefit of the bargain" appears to operate as a full refund model. Similarly, in <u>Philips</u>, while the plaintiffs labeled their damages model, "expected utility", in essence, they were seeking a full refund price of the EPAS system for breach of implied warranty claims. <u>Philips</u> is relevant to the analysis in this case. The Court declines to strike the notice of supplemental authority.

38

Because the plaintiffs were essentially seeking a full refund without demonstrating there was $0 value to the EPAS system, the district court concluded that the plaintiffs failed to produce a damages model consistent with their liability. Id. at *21-22.

Similarly, in this case, while Plaintiff has set forth a damages model, benefit of the bargain, that is consistent with his theory of liability, in application, he applies a full refund model which does not comport to damages under a breach of the implied warranty requiring an assessment of the "difference in the value represented and the value actually received." Thus, the formula's application proposed by Boyles does not establish that damages can be measured on a classwide basis as individual inquiries will predominate in assessing the value of the Clutch System components actually received. In conclusion, Court finds that predominance has not been met on the issue of damages. [15]

Because the Court concludes that predominance has not been met on the issue of damages, a class action is not maintainable under Rule 23(b)(3).

**D.    Rule 23(b)(2)**

In his moving brief, Plaintiff asserts, in one sentence, that he seeks a declaration pursuant to Rule 23(b)(2) that the Clutch Defect is safety related and an order "compelling Defendant to remove, repair, and/or replace the Class Vehicles' defective Clutch System components with suitable alternative components that do not contain the defect(s) alleged herein." (Dkt. No. 215 at 10.) Defendant opposes arguing the case is about the recovery of money damages, and therefore, Rule 23(b)(2) certification should be denied. In reply, Plaintiff provides additional analysis on this issue.

Plaintiff seeks to certify a damages class for his breach of implied warranty claims under Rule 23(b)(3) and a class for injunctive relief under Rule 23(b)(2) arguing that the

---

[15] Because Plaintiff has not met the predominance factor, the Court need not address superiority. See Soares v. Flowers Food, Inc., 320 F.R.D. 464 484 (2017).

Song-Beverly Act provides for both legal and equitable remedies and the UCL provides broad remedial relief. Despite this general proposition, he provides no legal authority for his attempt to obtain both damages and injunctive relief. See Phillips, 2016 WL 7428810, at *24 ("Plaintiffs point to no caselaw, and the Court is aware of none, granting an injunction" "for repair or replacement despite having an adequate remedy at law.").

Rule 23(b)(2) permits class treatment when "the party opposing the class has acted or refuses to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2009). For Rule 23(b)(2) certification, Plaintiff must show that "(1) the opposing party's conduct or refusal to act must be 'generally applicable' to the class and (2) final injunctive or corresponding declaratory relief must be requested for the class.'" Cholakyan v. Mercedes-Benz, USA, LLC, 281 F.R.D. 534, 558 (C.D. Cal. 2012) (quoting 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 1775, at 41 (2005)). The Advisory Committee Note states that certification under Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23 advisory committee's note (1966).

In Dukes, the Supreme Court held that the claims for backpay were not properly certified under Rule 23(b)(2) and held that a Rule 23(b)(2) class may not be certified where the "monetary relief is not incidental to the injunctive or declaratory relief." 564 U.S. at 360. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted-the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Id.

16cv1617-GPC(JLB)

(quotation and citation omitted). "When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident." Id. at 362-63. In Dukes, the backpay class involved individualized awards of monetary damages because the defendant was entitled to individualized determinations of each employee's eligibility for backpay and injunctive relief could not be applied to the entire class. Id. at 360-61. The backpay issue would require additional court proceedings to determine the scope of individual's relief. Id.

Courts have stated that a Rule 23(b)(2) and a separate Rule(b)(3) class may be certified in the appropriate case. Kartman v. State Farm Mut. Auto. Ins. Co., 634 F.3d 883, 895 (7th Cir. 2011), cert. denied 132 S. Ct. 242 (2011) ("[I]n an appropriate case, a Rule 23(b)(2) class and a Rule 23(b)(3) class may be certified where there is a real basis for both damages and an equitable remedy.") (citations omitted); In re ConAgra Foods, Inc., 90 F. Supp. 3d 919, 977 (C.D. Cal. 2015) ("[T]he court can separately certify an injunctive relief class and, if appropriate, also certify a Rule 23(b)(3) damages class" and citing Ninth Circuit cases suggesting certification of separate Rule 23(b)(2) and 23(b)(3) classes). However, in Kartman and In re ConAgra Foods, certification was denied under Rule 23(b)(2).

In Kartman, the Seventh Circuit held that an injunctive relief class was not justified because an injunction was not a proper remedy for an alleged "underpayment of their insurance claims for hail damage to their roofs." 634 F.3d at 888-89. Injunctive relief must be "appropriate" and must seek "final injunctive relief." Id. at 886. In Kartman, injunctive relief would not provide "final" relief under Rule 23(b)(2) because the injunction requiring State Farm to reinspect all class members' roofs pursuant to a uniform and objective standard for evaluating hail damage provides an "evidentiary

foundation for subsequent determinations of liability." Id. at 893. The injunction proposed would not result in "final relief." In fact, the injunction would result in thousands of individual proceedings to determine breach and damages. Id. The court further explained that the underpayment of insurance claims for hail damage is an action for damages and not a dual remedy sought of an injunction plus damages. Id. at 888-89.

Similarly, Plaintiff's claim the common injury is the overpayment of the purchase price of their Class Vehicles and therefore, monetary damages is the appropriate form of damages. See id.; see Philips, 2016 WL 7428810, at *25; McManus v. Fleetwood Enters., Inc., 320 F.3d 545, 553 (5th Cir. 2003) (reversing the district court's class certification of Rule 23(b)(2) class because the ordinary relief for breach of warranty was money damages, not injunctive relief). In Philips, a car defect case, the district court denied the plaintiff Rule 23(b)(2) certification seeking an injunction requiring the manufacturer to "uniformly repair and/or replace the defective EPAS systems in each of the Class Vehicles" because the ordinary relief under the Song-Beverly Act is money damages. Id. at *25 (the court also denied certification under Rule 23(b)(3) based on the plaintiffs' damages model).

Both parties cite to Cholakyan v. Mercedes-Benz, USA, LLC, 281 F.R.D. 534 (C.D. Cal. 2012) in support. The district court in Cholakyan denied Rule 23(b)(2) certification for numerous reasons, one of which was the declaration and injunction would not benefit the class as a whole because former owners of the class vehicles would not benefit from the injunction and Rule 23(b)(2) requires that the plaintiff seek "an indivisible injunction benefitting all its members at once." Id. at 559. In this case, the class definition includes those who purchased and sold their vehicles; therefore, Plaintiff has not demonstrated that the injunction he seeks is applicable to the entire class. Those who purchased and then sold their vehicles would not get the benefit of the injunction.

Moreover, those class members who have already gotten the repairs done on their vehicles would not obtain the benefit of the injunction.

Accordingly, Plaintiff has failed to demonstrate that a Rule 23(b)(2) class may be certified.[16] In sum, the Court DENIES Plaintiff's motion for class certification for failing to satisfy Rule 23(b).

**F.  Defendant's Evidentiary Objections**

Defendant filed evidentiary objections to Plaintiffs' amended motion for class certification to Victorino's and Tavitian's recent declarations dated April 5, 2018 that contradict their deposition testimony taken in April 2017.  (Dkt. No. 229-24.)  FCA also objects to Exhibit Z to D'Aunoy's declaration.  (Id.)  Plaintiffs oppose.  (Dkt. No. 244-2.)

In considering a motion for class certification, strict adherence to the Federal Rules of Evidence is not required and inadmissible evidence may be considered.  Gonzalez v. Millard Mall Servs., Inc., 281 F.R.D. 455, 459 (S.D. Cal. 2012) (citing Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 178 (1974)); Dominguez v. Schwarzenegger, 270 F.R.D. 477, 483 n. 5 (N.D. Cal. 2010) (citations omitted); Smith v. Microsoft Corp., 297 F.R.D. 464, 473-74 (S.D. Cal. 2014) (courts may consider inadmissible evidence in determining whether a class should be certified).  Therefore, the Court may consider the alleged sham affidavits of Victorino and Tavitian as well as Exhibit Z to D'Aunoy's declaration.

Moreover, the Court notes that the sham affidavit rule that FCA relies on for exclusion addresses evidentiary objections in summary judgment motions, not motions for class certification.  "[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn

---

[16] The Court notes that Plaintiff provides no discussion of the UCL claim as it relates to the breach of implied warranty in his motion for class certification.  He only addresses the UCL summarily when addressing that he seeks to certify a class under Rule 23(b)(2).  Because the Court denies class certification on the breach of implied warranty claims, and Plaintiff's failure to adequately address the UCL claim, the Court declines to address the UCL claim predicated on the same claims.

statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) . . . ." <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 806 (1999); <u>Van Asdale v. Int'l Game Tech.</u>, 577 F.3d 989, 998 (9th Cir. 2009) ("[A]s we have explained, if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). Therefore, in order for the sham affidavit rule to apply, the court must make a factual determination that the contradiction was actually a "sham" and the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." <u>Yeager v. Bowlin</u>, 693 F.3d 1076, 1080 (9th Cir. 2012) (citation omitted).

Since the Court is ruling on a motion for class certification, the sham affidavit rule is not applicable. Nonetheless, the Court may consider inadmissible evidence on class certification. Accordingly, the Court overrules Defendant's evidentiary objections.

## Conclusion

Based on the reasoning above, the Court DENIES Plaintiff Victorino's amended motion for class certification. The Court also DENIES Plaintiff Tavitian's amended motion for class certification as moot.

IT IS SO ORDERED.

Dated: June 13, 2018

Hon. Gonzalo P. Curiel
United States District Judge

16cv1617-GPC(JLB)