8          UNITED STATES DISTRICT COURT

9         SOUTHERN DISTRICT OF CALIFORNIA

10

11  CARLOS VICTORINO and ADAM          Case No.:  16cv1617-GPC(JLB)
    TAVITIAN, individually, and on behalf of
12  other members of the general public       **ORDER GRANTING PLAINTIFF'S**
    similarly situated,                       **RENEWED MOTION FOR CLASS**
13                                            **CERTIFICATION**
14                             Plaintiffs,
                                              **[Dkt. No. 311.]**
15  v.

16  FCA US LLC,  a Delaware limited
    liability company,
17
                               Defendant.
18

19
            Before the Court is Plaintiff Carlos Victorino's renewed motion for class

20  certification after the stay in the case was lifted when the Ninth Circuit issued its decision

21  in Nguyen v. Nissan North Am., Inc., 932 F.3d 811 (9th Cir. 2019).  (Dkt. Nos. 303,

22  311.)  Defendant filed an opposition on September 30, 2019.  (Dkt. No. 315.)  Plaintiff

23  filed a reply on October 7, 2019.  (Dkt. No. 316.)

24          After a careful review of the briefs, supporting documentation, and the applicable

25  law, the Court GRANTS Plaintiff's renewed motion for class certification.

26  / / /

27                                    1

28                                                          16cv1617-GPC(JLB)

## Background

Plaintiff Carlos Victorino[1] ("Victorino" or "Plaintiff") filed a putative first amended class action complaint ("FAC") based on defects in the 2013-2016 Dodge Dart vehicles equipped with a Fiat C635 manual transmission that cause his vehicle's clutch to fail and stick to the floor. Defendant FCA US LLC ("FCA" or "Defendant") is the manufacturer of his vehicle. (Dkt. No. 104, FAC ¶¶ 1, 2, 52.) The FAC alleges five causes of action for violations of California's Consumer Legal Remedies Act ("CLRA"), California's unfair competition law ("UCL"), a state law breach of implied warranty pursuant to the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), a federal law breach of implied warranty pursuant to the Magnuson-Moss Warranty Act ("MMWA"), and unjust enrichment. (Dkt. No. 104, FAC.) After the Court's ruling on Defendant's motion for summary judgment and subsequent motion for reconsideration, (Dkt. Nos. 206, 240), the remaining causes of action in the case are the breach of implied warranty of merchantability under the Song-Beverly Act and the MMWA, and a UCL claim premised on the breach of implied warranty claims.

On June 13, 2018, the Court denied class certification. (Dkt. No. 265.) On June 28, 2018, Plaintiff filed a petition for permission to appeal the Court's ruling pursuant to Federal Rule of Civil Procedure ("Rule") 23(f) with the Ninth Circuit.[2] (Dkt. No. 274.) On July 24, 2018, Plaintiff filed a Notice that on July 20, 2018, the Ninth Circuit granted a petition for permission to appeal denial of class certification under Rule 23(f) in Nguyen v. Nissan, No. 18-16344 (9th Cir.). (Dkt. No. 289.) Because this Court relied on the reasoning in Nguyen to deny class certification on the issue of whether Plaintiff's damages model satisfied predominance, on September 11, 2018, the court vacated the

---

[1] Plaintiff Adam Tavitian was also a named Plaintiff in the FAC but, due to a settlement, the Court granted the parties' joint motion to dismiss him on June 22, 2018. (Dkt. Nos. 259, 260, 266, 267.)
[2] The petition remains pending with the Ninth Circuit. Victorino v. FCA US LLC, No. 18-80076.

pretrial conference and stayed the case pending ruling on the order denying class certification in <u>Nguyen v. Nissan North Am.</u>, Case No. 16cv5591-LHK, 2018 WL 1831857 (N.D. Cal. Apr. 9, 2019).  (Dkt. No. 297.)  Subsequently, on October 24, 2018, the Ninth Circuit held Plaintiff's petition seeking permission to appeal in abeyance pending its decision in <u>Nguyen</u>.  (Dkt. No. 298.)  On July 26, 2019, the Ninth Circuit reversed the district court's denial of class certification in <u>Nguyen</u> and remanded the case for further proceedings.  <u>See</u> <u>Nguyen v. Nissan North Am., Inc.</u>, 932 F.3d 811 (9th Cir. 2019).  Accordingly, on July 31, 2019, the Court lifted the stay, held a status conference and set a briefing schedule on Plaintiff's renewed motion for class certification.  (Dkt. No. 303.)  The motion is now fully briefed.  (Dkt. Nos. 311, 315, 316.)

Plaintiff claims a design defect in the 2013-2015 Dodge Dart vehicles equipped with a Fiat C635 manual transmission built on or before November 12, 2014 ("Class Vehicles").  (Dkt. No. 311-1, Pl's Mot. at 5[3].)  In the renewed motion for class certification, Plaintiff has abandoned his prior class definition which included a nationwide implied warranty class and included used vehicles.[4]  Now, Plaintiff seeks to certify a class to include, "All persons who purchased or leased in California, from an authorized dealership, a new Class Vehicle."  (Dkt. No. 311-1, Pl's Mot. at 9.)

Plaintiff alleges an inherent defect in the hydraulic clutch system ("Clutch System") that existed in all Class Vehicles at the time of sale that causes the clutch pedal to lose pressure, stick to the floor, and prevents his gears from engaging and/or disengaging.  The FAC explains that the clutch defect is caused by the degradation of the clutch reservoir hose, which releases plasticizer and fibers, causing contamination of the

---

[3] Page numbers are based on the CM/ECF pagination.
[4] Plaintiff amended the class definition based on the Court's prior ruling denying class certification of a nationwide implied warranty class and finding that the class definition was overbroad by including used vehicles.  (Dkt. No. 265 at 19-22, 27-30; Dkt. No. 316 at 2, 5.)

16cv1617-GPC(JLB)

hydraulic fluid that bathes the components of the Clutch System. (Dkt. No. 104, FAC ¶ 7.) As a result, the contamination causes the internal and external seals of the clutch master cylinder ("CMC") and clutch slave cylinder ("CSC") to swell and fail. (Id. ¶¶ 7, 8.) When fluid in the hydraulic system becomes contaminated, all of the components that have been exposed to the contaminated fluid must be replaced and any steel tubing must also be thoroughly cleaned with brake cleaner and blown out until dry to ensure that none of the contaminants remain. (Id. ¶ 8.) The clutch defect causes stalling, the failure to accelerate, and premature failure of the Clutch System's components, "including the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel." (Dkt. No. 104, FAC ¶ 2.)

On January 8, 2016, FCA implemented a voluntary customer service action, Service Bulletin 06-001-16 entitled "Clutch Pedal Operation X62 Extended Warranty" ("X62 Extended Warranty") to address the issue of the contaminated hydraulic fluid caused by the degradation of the clutch reservoir hose and involved the "replacement of the hydraulic clutch master cylinder and reservoir hose" for the 2013-2015 Dodge Dart vehicles. (Dkt. No. 311-3, Zohdy Decl., Ex. H at 62.)

In this litigation, Plaintiff claims that the X62 Extended Warranty program which only replaced the reservoir hose and clutch master cylinder failed to fully address and repair the defect and ignores the systemic effect of the contaminated hydraulic fluid. They contend that if the hydraulic fluid is contaminated, all clutch system components are susceptible to damage and the well-known industry standard requires that all component parts within the system must be replaced. (Dkt. No. 311-3, Zohdy Decl., Ex. B, Stapleton Decl. ¶ 9.) According to Plaintiff, any repair requires replacement of all component parts, including the CSC, thorough cleaning of any steel tubing with brake cleaner and drying before reassembly. (Dkt. No. 311-3, Zohdy Decl., Ex. N, Stapleford Expert Report ¶ 16.)

16cv1617-GPC(JLB)

Defendant denies that the alleged defect exists in all Class Vehicles and Plaintiff's vehicle, even with 107,135 miles as of August 2019, has yet to exhibit any signs of the defect caused by a defective reservoir hose. According to an investigation by FCA and its supplier of reservoir hoses, it was determined that the condition caused by the defect could affect only 16% of the Class Vehicles because each Class Vehicle has component parts that are manufactured differently. (Dkt. No. 315-3, Benson Decl. ¶¶ 18, 19.) Defendant explains that the existence of the defect depends on the amount of plasticizer in the reservoir hose, the size and position of the clutch systems seals and the level of the varying tolerances. (Id.)

**Discussion**

**A.    Legal Standard on Class Certification**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only. In order to justify a departure from that rule, a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks and citations omitted). A plaintiff seeking class certification must affirmatively show the class meets the requirements of Rule 23. Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013) (citing Dukes, 131 S. Ct. at 2551-52). To obtain certification, a plaintiff bears the burden of proving that the class meets all four requirements of Rule 23(a)--numerosity, commonality, typicality, and adequacy. Ellis v. Costco Wholesale Corp., 657 F.3d 970 979-80 (9th Cir. 2011). If these prerequisites are met, the court must then decide whether the class action is maintainable under Rule 23(b). United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union AFL–CIO, CLC v. ConocoPhillips Co., 593 F.3d 802, 806 (9th Cir. 2010). Rule 23(b)(3) authorizes certification when "questions of law or fact common to class members predominate over any questions affecting only

individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court exercises discretion in granting or denying a motion for class certification. Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003).

The Court is required to perform a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question." Dukes, 131 S. Ct. at 2551. "'[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. More importantly, it is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court must consider the merits if they overlap with Rule 23(a) requirements." Ellis, 657 F.3d at 981. Nonetheless, the district court does not conduct a mini-trial to determine if the class "could actually prevail on the merits of their claims." Id. at 983 n.8; United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC, 593 F.3d at 808 (citation omitted) (court may inquire into substance of case to apply the Rule 23 factors, however, "[t]he court may not go so far . . . as to judge the validity of these claims.").

Here, Plaintiff moves for class certification solely on the Song-Beverly claim and not the MMWA[5] or the UCL claims.[6] Accordingly the Court limits its ruling solely on the issue of whether a Song-Beverly class should be certified.

---

[5] Plaintiff does not reference or cite to the MMWA in his motion and only cites to the California Civil Code for the Song Beverly claim. In his prior motion for class certification, Plaintiff specifically sought class certification for his MMWA implied warranty claim. (Dkt. No. 215-1 at 8-9.) In the instant motion, Plaintiff fails to make that assertion.

[6] In the motion, Plaintiff does not address class certification on any of the three prongs of the UCL claim that is alleged in the FAC, (Dkt. No. 104, FAC ¶¶ 112-126). In the Court's prior order on class certification, it noted that Plaintiff provided no analysis on the UCL claim and therefore declined to address it. (Dkt. No. 265 at 43 n. 16.) This time, Plaintiff has not sought class certification or provided an analysis on the UCL claim.

## B.    Predominance under Rule 23(b)(3)

Defendant's focal argument is that Plaintiff has not proven, with evidence, that common questions of law or fact predominate on the question of whether there is a defect in ALL class vehicles at the time of purchase on the claim for breach of implied warranty of merchantability.  The fact that Plaintiff's vehicle has not yet exhibited the defect demonstrates that not all class vehicles have a defective reservoir hose.  Consequently, Plaintiff's failure to prove there is a defect in all Class Vehicles renders his motion for class certification deficient on predominance as well as whether the defect caused the claimed damages, whether the proposed damage methodology fits his theory of liability and whether typicality and adequacy have been satisfied.  In response, Plaintiff argues that common evidence shows that every Class Vehicle had a defective reservoir hose at the time of sale.

Under Rule 23(b)(3), the plaintiff must demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Predominance is satisfied "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  True Health Chiropractic, Inc. v. McKesson Corp., 896 F.3d 923, 931 (9th Cir. 2018) (quoting Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 589 (9th Cir. 2012)).  In addition, class damages must be sufficiently traceable to plaintiff's liability case.  See Comcast Corp., 133 S. Ct. at 1433.

As a threshold matter, the Court addresses both parties' argument that the Court made certain findings in prior orders that support their positions on whether predominance has been satisfied.  Plaintiff argues that the Court concluded that ALL Class Vehicles contain the clutch defect while Defendant argues that the Court found that Plaintiff cannot prove that ALL the Class Vehicles have the defective clutch reservoir hose.  The Court disagrees with both parties' construction of its prior orders.

7

On summary judgment, the Court, on June 14, 2017, stated that FCA recognized in its reply brief[7] that Plaintiff's vehicle may have a reservoir hose that could leach plasticizer. (Dkt. No. 91 at 12.) Contrary to Plaintiff's argument, the Court did not conclude that FCA admitted that all Class Vehicles were equipped with a defective reservoir hose, but only that the Class Vehicles may be equipped with one. On May 10, 2018, on FCA's motion for reconsideration, the Court granted summary judgment on the CLRA, related UCL and unjust enrichment claims, which require a showing of the existence of a defect, because Plaintiff had not presented evidence that his vehicle suffered from a defective reservoir hose that leaked plasticizer. (Dkt. No. 241 at 6-8.) Based on this, Defendant argues the Court concluded that not all Class Vehicles were defective at the time of sale. However, the Court only concluded that Plaintiff had not yet come forward with evidence that the clutch defect in his vehicle was caused by a defective reservoir hose that was leaking plasticizer for purposes of the CLRA and related claims and not on the breach of implied warranty claim. The fact that Plaintiff's vehicle has not yet manifested a defect is not a required showing on class certification and is a merits-based question. (See Dkt. No. 265 at 25-26.)

The Court declines to consider or rely on the parties' misconstruction of the Court's prior orders in ruling on the instant class certification motion and instead considers whether, on the existing record, Plaintiff has demonstrated that common issues of fact and law will predominate on the claim for breach of the implied warranty of merchantability.

---

[7] In its reply brief, FCA wrote "FCA US LLC has never disputed that Plaintiffs' Dart vehicles may have been manufactured with a reservoir hose that could leach plasticizer and cause damage to seals and the clutch master cylinder, one of the symptoms of which was abnormal clutch pedal movement." (Dkt. No. 65 at 2.)

The Song-Beverly Consumer Warranty Act ("Song-Beverly Act") provides that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. Unless specific disclaimer methods are followed, an implied warranty of merchantability accompanies every retail sale of consumer goods in the state. Id. An implied warranty of merchantability under the Song-Beverly Act requires that consumer goods "[a]re fit for the ordinary purposes for which such goods are used." Cal. Civ. Code § 1791.1(a); Isip v. Mercedes–Benz USA, LLC, 155 Cal. App. 4th 19, 26 (2007) ("The core test of merchantability is fitness for the ordinary purpose for which such goods are used.").

Here, the FAC alleges that the "implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Clutch Systems were manufactured, supplied, distributed, and/or sold by FCA were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their Clutch Systems would be fit for their intended use while the Class Vehicles were being operated." (Dkt. No. 104, FAC ¶¶ 131, 141.)

For a vehicle, the question is whether the vehicle is fit for driving. Keegan v. Am. Honda Motor Co., Inc., 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012). "Such fitness is shown if the product is 'in safe condition and substantially free of defects . . . .'" Brand v. Hyundai Motor Am., 226 Cal. App. 4th 1538, 1546 (2014) (quoting Mexia v. Rinker Boat Co., Inc., 174 Cal. App. 4th 1297, 1303 (2009)). It does not require that a vehicle be inoperable. Avedisian v. Mercedes-Benz USA, LLC, 43 F. Supp. 3d 1071, 1079 (C.D. Cal. 2014). "A new car need not 'be perfect in every detail'; rather, its implied merchantability 'requires only that a vehicle be reasonably suited for ordinary use.'" Brand, 226 Cal. App. 4th at 1546.

In California, a current manifestation of malfunction is not an element of a breach of implied warranty claim. <u>Hicks v. Kaufman and Broad Home Corp.</u>, 89 Cal. App. 4th 908, 918, 923 (2011); <u>see</u> <u>Wolin v. Jaguar Land Rover N. Am., LLC</u>, 617 F.3d 1168, 1173 (9th Cir. 2010). If there is no current malfunction, the plaintiff need only demonstrate that the product "contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product." <u>Hicks</u>, 89 Cal. App. 4th at 918. Moreover, on class certification, Plaintiff does not have to demonstrate a manifestation of a current defect or that there is a substantial certainty of manifestation in the future on a claim for breach of warranty claim. <u>See</u> <u>Wolin</u>, 617 F.3d at 1173 ("proof of the manifestation of a defect is not a prerequisite to class certification.") (citing <u>Blackie v. Barrack</u>, 524 F.2d 891, 901 (9th Cir. 1975) ("[N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule.")).

In his motion, Plaintiff argues that common issues predominate regarding whether the Class Vehicles are "merchantable" and whether the defect constitutes an unreasonable safety risk because all Class Vehicles were equipped with the same defectively designed Clutch System at the time of sale. (Dkt. No. 311-3, Zohdy Decl., Ex. N, Stapleford Expert Report at 133.) He also asserts that by implementing the X62 Extended Warranty repair for all Class Vehicles, FCA acknowledged that the defect was inherent in all vehicles at the time of sale which presents common proof as to whether the class vehicles were merchantable. (<u>Id.</u>, Stapleford Expert Report ¶¶ 4, 5.) Because the X62 Extended Warranty did not distinguish between models or model years, this indicates that all Class Vehicles have the same Clutch System; therefore, the clutch defect was inherent and present in all Class Vehicles at the point of sale. According to Plaintiff, around 2013, FCA confirmed that the root cause was fluid contamination and re-designed the reservoir

16cv1617-GPC(JLB)

hose in all vehicles to reduce the amount of plasticizer its manufacturer required. (Dkt. No. 314-4, Zohdy Decl., Exs. FF, GG, II (UNDER SEAL).) In 2014, FCA released STAR Case S1406000001, that recommended replacing the CMC without restricting the repair procedure to any specific make or model. (Dkt. No. 314-3, Zohdy Decl., Ex. R (UNDER SEAL).) The STAR Case repair procedure was updated in 2015 to replace the defective reservoir hose. (Dkt. No. 311-3, Zohdy Decl., Ex. S.) Finally, on January 8, 2016, FCA issued the X62 Extended Warranty. (Id., Ex. H.) Plaintiff proposes that these documents are common proof of an alleged defect on all Class Vehicles at the time of sale.

In opposition, Defendant argues that Plaintiff has failed to prove with evidentiary support that common questions predominate on the issue of whether there was a defect in all Class Vehicles at the time of sale; therefore, individual questions will predominate over common ones. Defendant explains that this is not an issue concerning manifestation of a defect but whether each Class Vehicle had a defect at all. FCA asserts that this is also not an issue concerning a design defect that applies to all vehicles but a non-uniform manufacturing defect that affected only a limited number of Class Vehicles. FCA maintains that it has admitted that a limited number of the Class Vehicles were sold with a reservoir hose that were found to leach excessive plasticizer that could contaminate the clutch system and cause the "pedal down" issue. (Dkt. No. 315-5, Benson Decl. ¶¶ 18-22.) According to the defense expert, evidence shows that no more than 16% of the Class Vehicles were sold with a defective reservoir hose and any clutch performance issue would occur by the latest, 30,000 miles. (Id. ¶¶ 19, 20.) Only some Class Vehicles were affected because component parts are manufactured differently where all reservoir hoses are not manufactured with the same amount of plasticizer, all CMCs are not manufactured the same size and all seals are not positioned the same way on every CMC. (Id. ¶ 18.)

16cv1617-GPC(JLB)

Moreover, FCA contends there is no evidence that suggests that all of the Class Vehicles had clutch performance issues even though the vehicles are now 5-7 years old and most likely have been driven more than 30,000 miles.  FCA challenges Plaintiff's use of the X62 Extended Warranty to support his position that all Class Vehicles were equipped with a defective reservoir hose, and notes that the X62 Extended Warranty letter states that "some of the affected vehicle population may experience a loss of clutch pedal operation . . . . **Conversely, if you do not experience this condition, then your Hydraulic Clutch Master Cylinder/Reservoir Hose is operating correctly and no repair is necessary**."  (Dkt. No. 315-3, Benson Decl., Ex. A (emphasis in original).)  The letter states only "some" of the Class Vehicles were affected and the X62 Extended Warranty was not an admission by FCA that all Class Vehicles were affected.

The parties present a factual dispute on the merits of whether there was a defect on all Class Vehicles at the time of sale and is not proper on a motion for class certification.  See Ellis, 657 F.3d at 983 (citing Dukes, 564 U.S. at 353-54).  The Court's role on class certification is to determine whether common issues of fact or law predominate over individual questions.  Fed. R. Civ, P. 23(a)(3).  On this question, Plaintiff does not need to prove the existence of a defect.  Edwards v. Ford Motor Co., 603 Fed. App'x 538, 540 (9th Cir. 2015) (citing Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 568 U.S. 455 (2013) (stating that "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class")).  "In order to determine whether Rule 23(b)(3)'s predominance requirement is met, the Court need only consider Plaintiffs' theory of the case and the type of evidence that Plaintiffs will use to prove this theory."  In re Arris Cable Modem Consumer Litig., 327 F.R.D. 334, 362 (N.D. Cal. 2018) ("The Court need not decide at this stage [class certification] which party is correct."); Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 485 (C.D. Cal. 2012) (predominance met on implied warranty claims because

plaintiffs' theory was grounded on a defective design common to all washers noting that defendant did not dispute the issue and courts routinely certify implied warranty classes for this reason).

Since the beginning of the litigation, Plaintiff has alleged that the Class Vehicles contain a design defect that was inherent in all Class Vehicles at the time of sale. (Dkt. No. 104, FAC ¶¶ 17, 24, 62, 101, 116, 130, 133.) Plaintiff's expert has also opined that the defect was present at the time of sale in all Class Vehicles. (Dkt. No. 311-3, Zohdy Decl., Ex. N, Stapleford Expert Report at 133.) Plaintiff's theory of the case is that the Class Vehicles had a defective Clutch System at the time of sale and was not remedied by the X62 Extended Warranty. Moreover, Victorino has presented evidence common to the proposed class that he intends to use to prove his claim. At trial, Plaintiff will have to prove that all Class Vehicles had a defect at the time of sale. If Plaintiff fails to demonstrate a defect in all vehicles at the time of sale, all class claims will fail in one fell swoop. See Amgen, 568 U.S. at 1191 (Rule 23(b)(3) requires a showing that there are questions common to the class predominate, not that the answer to the questions will be in favor of the class, a merits question . . . a class claim "will prevail or fail in unison.")

Further, Defendant's other argument that the other element, proof of causation, to support a Song-Beverly implied warranty claim, will be subject to individual inquiries because not all Class Vehicles have a defect, necessarily fails because the Court concludes Plaintiff has set forth a theory and common proof to demonstrate whether all Class Vehicles have a defect. Thus, predominance has been met on breach of the implied warranty of merchantability under Rule 23(a)(3).

### 2. Damages

Plaintiff contends that his damages model comports with his theory of liability following the Ninth Circuit's ruling in Nguyen where the court found that the plaintiff's benefit-of-the-bargain damages model, similar to the one proposed by Victorino, is

cognizable under the Song-Beverly Act and comported with his theory of liability. Because Defendant's argument is premised on Plaintiff's failure to prove that all Class Vehicles contained a defect at the point of sale, it contends that <u>Nguyen</u> is distinguishable. FCA explains that in <u>Nguyen</u>, every vehicle within the class had the alleged clutch defect and needed a repair. In its prior order, the Court relied on <u>Nguyen</u> to deny class certification on whether predominance had been met on damages. (Dkt. No. 265 at 31-39.)

Plaintiff must present a damages model that is consistent with his liability case, and the court "must conduct a rigorous analysis to determine whether that is so." <u>Comcast Corp.</u>, 133 S. Ct. at 1433 (internal quotation marks omitted). Plaintiff "must be able to show that [his] damages stemmed from the defendant's actions that created the legal liability." <u>Leyva v. Medline Indus., Inc.</u>, 716 F.3d 510, 514 (9th Cir. 2013). While a plaintiff must present the likely method for determining class damages, "it is not necessary to show that [this] method will work with certainty at this time." <u>Chavez v. Blue Sky Natural Beverage Co.</u>, 268 F.R.D. 365, 379 (N.D. Cal. 2010). <u>Comcast</u> demands that Plaintiff demonstrates, with evidence, that there is a class-wide method of determining damages that is consistent with his theory of liability. <u>See</u> <u>Comcast Corp.</u>, 133 S. Ct. at 1433.

In <u>Nguyen</u>, the plaintiff alleged a defect in the manual transmission of his vehicle arguing that the CSC had a design flaw because of its material make-up, including aluminum/plastic, that did not effectively transfer heat. <u>Nguyen</u>, 932 F.3d at 814. The plaintiff's theory of liability was that the "defect was inherent in each of the Class Vehicles at the time of purchase, regardless of when and if the defect manifested" and was not based on the performance of the clutch system. <u>Id.</u> at 819. According to the plaintiff, "the *defect* exists—and must be remedied—whether or not the *symptoms* have manifested yet." <u>Id.</u> (emphasis in original). The Ninth Circuit explained that the plaintiff

seeks to recover damages which equals the amount he allegedly overpaid when he purchased a vehicle with a defective clutch which is not a full refund of the cost of the vehicle but the cost of replacing a defective component part.  <u>Id.</u> at 821.  In conclusion, the court held the plaintiff's theory of liability was consistent with his proposed recovery based on the benefit-of-the-bargain theory.  <u>Id.</u> at 822.

Here, similarly, Plaintiff's theory is that all the Class Vehicles inherently had a defective Clutch System at the time of sale and the benefit of the bargain theory purports to measure the "economic harm . . . at the point of sale or before based on the difference in value between a defective and a defect-free Clutch System."  (Dkt. No. 311-1, Pl's Mot. at 24.)  According to Plaintiff's damages expert, Steven Boyles, the same expert in <u>Nguyen</u>, the clutch defect can be remedied and class members can be made whole and receive the value they bargained for at the point of sale.  (Dkt. No. 311-3, Zohdy Decl., Ex. K, Boyles Decl. ¶ 9.)  Boyles' benefit-of-the-bargain model limits recovery to the difference in value at the point of sale between a Class Vehicle with a defective clutch system and one with a defect-free clutch system.  (<u>Id.</u> ¶ 10.)  This benefit of the bargain theory claims to measure the "difference in the value represented and the value actually received (what the vehicle is worth with and without the defect) and are susceptible of measurement across the entire class."  (<u>Id.</u>)  In arriving at this measurement, Boyles proposes that "[p]ayment in the amount of the cost necessary to cure the Clutch Defect would make Class Members whole and provide them with the benefit of their bargain."  (<u>Id.</u> ¶ 11.)  Therefore, under the ruling in <u>Nguyen</u>, the Court concludes that Plaintiff has presented a benefit of the bargain damages model that is consistent with his theory that all Class Vehicles were equipped with a defective reservoir hose at the time of sale.  In fact, Defendant does not disagree that "<u>Nguyen</u> can be read to stand for the proposition that damagers for cost of repair/replacement of defective vehicle components fits generally with an implied warranty liability theory that is based on a vehicle being

equipped with a defective component at the point of sale." (Dkt. No. 315 at 25.) Plaintiff's theory is exactly that.

Finally, Defendant argues that the proffered damages model assumes that the costs of repairs will be the same for each proposed class member but individualized fact finding will be required to determine the actual component repair/replacement costs for each class member. However, calculation of damages does not defeat predominance. See Leyva v. Medline Indus. Inc., 716 F.3d 510, 513 (9 Cir. 2013) ("In this circuit, however, damage calculations alone cannot defeat certification."); Nguyen, 932 F.3d at 821 ("Whether his proposed calculation of the replacement is accurate, whether the clutch was actually defective, and whether Nissan knew of the alleged defect are merits inquires unrelated to class certification."). Thus, the Court concludes that Plaintiff's theory of liability comports with his damages model.

In sum, predominance has been satisfied under Rule 23(a)(3).

**C.    Superiority under Rule 23(b)(3)**

Under Rule 23(b)(3), the plaintiff must also demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Superiority requires a consideration of "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(a)-(d).

The superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually a class

16cv1617-GPC(JLB)

action is not superior." <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1192 (9th Cir. 2001). Superiority is met where the case involves multiple claims for relatively small individual sums and where some or all of the plaintiffs may not be able to proceed as individuals because of the disparity between their litigation costs and what they hope to recover. <u>Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.</u>, 244 F.3d 1152, 1163 (9th Cir. 2001). "Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually." <u>Id.</u> (citing <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985)).

Plaintiff asserts that the four factors to support superiority are met given the size of the class and the costs of litigating on an individual basis relative to the potentially small recovery. Defendant responds that numerous individual issues would require separate mini-trials and make the case unmanageable. However, as analyzed above, the Court concludes that common issues predominate and having class members file separate lawsuits will increase litigations costs and not be efficient. A determination whether a defect exists in all vehicles will not require individual determinations, and therefore, a class action is the superior method of efficiently and fairly adjudicating Plaintiff and the class members' claims in this case. The Court also rejects Defendant's argument that because it has provided voluntary relief to replace the reservoir hose by way of the X62 Extended Warranty, there can be no finding of superiority. In support, FCA cites to <u>Webb v. Carter's Inc.</u>, 272 F.R.D. 489, 504 (C.D. Cal. 2011) and <u>Pagan v. Abbott Labs, Inc.</u>, 287 F.R.D. 139, 150 (E.D.N.Y. 2012). In <u>Webb</u>, the district court found superiority was not met because the defendant "is already offering the very relief that Plaintiffs seek", <u>Webb</u>, 272 F.R.D. at 504, and in <u>Pagan</u>, superiority was not satisfied where a voluntary recall and/or refund program provided comparable or even better remedy than what the plaintiffs could achieve in a class action lawsuit. <u>Pagan</u>, 287 F.R.D. at 151. <u>Webb</u> and <u>Pagan</u> are distinguishable. In this case, Plaintiff claims that the voluntary

16cv1617-GPC(JLB)

action by FCA, the X62 Extended Warranty, did not go far enough by failing to fully address and repair the defect and ignores the systemic effect of the contaminated hydraulic fluid. He contends that if the hydraulic fluid is contaminated, all clutch system components are susceptible to damage and the well-known industry standard requires that all component parts within the system must be replaced. (Dkt. No. 311-3, Zohdy Decl., Ex. B, Stapleton Decl. ¶ 9.) According to Plaintiff, any repair requires replacement of all component parts, including the CSC, thorough cleaning of any steel tubing with brake cleaner and drying before reassembly. (Dkt. No. 311-3, Zohdy Decl., Ex. N, Stapleford Expert Report ¶ 16.) Therefore, because FCA's voluntary action did not provide a superior method of compensation for the putative class members, Defendant's argument is without merit. Consequently, the Court finds the superiority requirement of Rule 23(b)(3) met.

**D.     Federal Rule of Civil Procedure 23(a)**

**1.     Numerosity and Commonality**

Plaintiff argues that the class is sufficiently numerous to satisfy Rule 23(a) and commonality has been met. Defendant does not challenge Plaintiff's argument that the putative class is sufficiently numerous nor that commonality has been satisfied.

To establish numerosity, a plaintiff must show that the represented class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); Bates v. United Parcel Serv., 204 F.R.D. 440, 444 (N.D. Cal. 2001). A court may reasonably infer based on the facts of each particular case to determine if numerosity is satisfied. Ikonen v. Hartz Mtn. Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988).

Plaintiff states that over 2000 class vehicles were sold in California. (Dkt. No. 314-3, Zohdy Decl., Ex. EE at 120 (UNDER SEAL).) Based on these numbers, the Court concludes that the numerosity element has been met. See Ikonen, 122 F.R.D. at 262 ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be

big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.").

As to commonality, Rule 23(a)(2) requires Plaintiff to show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Dukes, 131 S. Ct. at 2551. "That common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. "'What matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" Id. (emphasis in original) (citation omitted). "[C]ommonality only requires a single significant question of law or fact." Mazza, 666 F.3d at 589 (commonality not disputed as to whether Honda "had a duty to disclose or whether the allegedly omitted facts were material and misleading to the public"); Rodriguez v. Hayes, 591 F.3d 1105, 1122 (9th Cir. 2010) (Commonality is satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.") (quoting Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)).

Plaintiff asserts that the common question on the breach of implied warranty is whether the "defectively designed Clutch System renders the Class Vehicles unmerchantable." (Dkt. No. 311 at 16.) He argues that common evidence will show that the Class Vehicles were not fit for their ordinary purposes and that all Class Vehicles were unmerchantable when they were sold. He further contends that the existence of the Clutch Defect is also a common question as Defendant implemented the X62 Extended Warranty to apply to all Class Vehicles to address the alleged defect without

19

distinguishing between models or model years. Defendants do not dispute Plaintiff's commonality argument under Rule 23(a)(2). Again, as it found in the prior order denying class certification, the Court agrees with Plaintiff and concludes that common questions apply to the entire class and commonality has been met.

### 2. Typicality

Under typicality, the Court must determine whether the claims or defenses of the representative parties are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Id. Typicality is a "permissive" standard and is met if the class claims are "reasonably co-extensive with those of absent class members." Rodriguez v. Hayes, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir.1998)).

Plaintiff argues that his claims concern the purchase or lease of the Class Vehicle equipped with a defectively designed clutch system at the time of purchase and his and the proposed class' common injury is the overpayment of his Class Vehicle when he purchased it which is typical of the class. In response, Defendant argues that Victorino's self-serving statement that his claims are based on the purchase or lease of a new Class Vehicle equipped with a defectively designed Clutch System is not proof that his vehicle is equipped with a defective reservoir hose.

FCA challenges to typicality is premised on its argument that Plaintiff has not provided any proof that his vehicle has a defective reservoir hose that leaches plasticizer, and therefore, his claim is not typical of the class. Because the Court rejected FCA's

16cv1617-GPC(JLB)

argument that Plaintiff did not have to prove that his vehicle has a defective reservoir hose on class certification, FCA's argument is without merit. Victorino as well as the proposed class members allege their Clutch Systems were defective when they purchased their vehicles and seek damages for breach of the implied warranty. See Wolin, 617 F.3d at 1175 (typicality met because the plaintiffs allege common defect and legal theories as the class members and can be met "despite different factual circumstances surrounding the manifestation of the defect."). Accordingly, Plaintiff's injuries and those of the class align as they all suffered the same injury, the overpayment of their vehicles, and typicality has been demonstrated.

### 3. Adequacy

As to adequacy, Rule 23(a)(4) provides that class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In analyzing whether Rule 23(a)(4) has been met, the Court must ask two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting Hanlon, 150 F.3d at 1020). "Several courts have held that 'class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'" Hanon, 976 F.2d at 508. A motion for class certification should not be granted if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Id. (citation omitted). "Defendants need not show that these unique defenses will necessarily succeed, but rather that they will shape the focus of litigation in a way that may harm class members and ultimately risk the class' chance of recovery." Schaefer v. Overland Express Family of Funds, 169 F.R.D. 124, 129 (S.D. Cal. 1996).

16cv1617-GPC(JLB)

1

Plaintiff asks the Court to rely on its prior ruling finding adequacy. Defendant argues that adequacy is lacking because Plaintiff will be subject to unique defenses that will become the focus of the litigation. FCA admits that 164 of the proposed class members have a defective reservoir hose but Plaintiff is not one of them; therefore, he is not adequate because the defense against his claim will be focused on whether his vehicle was not merchantable due to a defective reservoir hose.

Plaintiff's theory of liability is that he and all putative class members were harmed at the time of purchase irregardless if the defect manifested at that time. Whether Plaintiff's vehicle had manifested a defect is not relevant at this stage and his case rises or falls based on the common proof he claims he will introduce at trial. Therefore, the fact that Plaintiff's vehicle had not yet manifested a defect does not make the defense the focus of the litigation. See e.g., Philips v. Ford Motor Company, Case No. 14cv2989-LHK, 2016 WL 7428810, at *11 (N.D. Cal. Dec. 22, 2016) (rejecting argument that unique defenses undermine typicality concluding that distinctions as to manifestation of defect is not enough to defeat typicality).

Further, FCA repeats its argument that Plaintiff is an inadequate representative because he is not in charge of his case and failed to show he has no conflict of interest with the class. (Dkt. No. 229 at 32-33.) FCA also repeats the argument that the proposed class counsel is not adequate because the Court already found that class counsel's failure to communicate a settlement offer by Defendant to Plaintiff was contrary to California Rule of Professional Conduct 3-510, class counsel engaged in questionable solicitation and representation of third-party witnesses with potential conflicts and class counsel was engaged in spoliation of evidence that occurred during the case by former Plaintiff Adam Tavitian. (Id. at 30-32.) The Court already considered these exact issues raised by Defendant on class plaintiff and class counsel's adequacy in the prior order on class certification and concluded that Plaintiff is an adequate class representative and his

16cv1617-GPC(JLB)

counsel is adequate.  (Dkt. No. 265 at 14-17.)  FCA has not raised any additional reasons why the Court should reconsider its prior ruling.  Accordingly, based on the reasons in the Court's prior order, (Dkt. No. 265), the Court concludes that adequacy has been met.

**E.  Class Definition**

Defendant argues that the class definition is overly broad because an implied warranty claim only applies to a vehicle "primarily for personal, family, or household purposes" but the class includes "[a]ll persons who purchased or leased in California, from an authorized dealership, a new Class Vehicle."  (Dkt. No. 311-1, Pl's Mot. at 9.) In reply, Plaintiff does not oppose Defendant's argument.

For the purposes of implied warranties, the Song–Beverly Act applies only to "consumer goods," which are defined as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." Cal. Civ. Code § 1791(a).

District courts have the inherent power to modify overbroad class definitions. Mazur v. eBay Inc., 257 F.R.D. 563, 568 (N.D. Cal. 2009) (citing Hagen v. City of Winnemucca, 108 F.R.D. 61, 64 (D. Nev. 1985)); see also Powers v. Hamilton Cnty. Public Defender Comm'n, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions"); Schorsch v. Hewlett–Packard Co., 417 F.3d 748, 750 (7th Cir. 2005) (noting that "[l]itigants and judges regularly modify class definitions"); In re Monumental Life Ins. Co., 365 F.3d 408, 414 (5th Cir. 2004) ("District courts are permitted to limit or modify class definitions to provide the necessary precision.").

Because Plaintiff does not oppose Defendant's argument and the class is being certified only as to the Song-Beverly claim, the Court modifies the class definition to vehicles used "primarily for personal, family, or household purposes."

23

Based on the foregoing, the Court GRANTS Plaintiff's motion for class certification pursuant to Rule 23(b)(3) on the breach of implied warranty under state law.

## Conclusion

Based on the reasoning above, the Court GRANTS Plaintiff Victorino's renewed motion for class certification. The Court certifies a Class consisting of:

> All persons who purchased or leased in California, from an authorized dealership, a new Class Vehicle primarily for personal, family, or household purposes.

Because the Court GRANTS class certification, the Court appoints Plaintiff Carlos Victorino as the Class Representative.

Plaintiff also seeks to have the Capstone Law APC appointed as Class Counsel. When appointing class counsel the Court considers "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). "A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court previously found that class counsel was adequate under Rule 23(a). (Dkt. No. 265 at 14-17.) Plaintiff submits his firm's resume indicating Capstone Law APC is a plaintiff-only labor and consumer law firm and has engaged in prosecuting consumer actions, including automotive defect class actions.[8] (Dkt. No. 216-1, Zohdy Decl., Ex. MM.) Based on Plaintiff's counsel

---

[8] The Court notes that the senior counsel, Mark Ozzello, listed on the renewed motion for class certification is not named on the firm's resume submitted as Exhibit MM, (Dkt. No. 216-1, Zohdy Decl., Ex. MM at 239-50), but recognizes that he is currently listed on the firm's website as head of the firm's consumer team. (https://capstonelawyers.com/our-attorneys/mark-ozzello).

16cv1617-GPC(JLB)

extensive experience in class action litigation involving consumer class actions including automotive defect cases, the Court appoints Capstone Law APC as Class Counsel.

The hearing set on October 18, 2019 shall be **vacated**.

IT IS SO ORDERED.

Dated: October 17, 2019

Hon. Gonzalo P. Curiel
United States District Judge

16cv1617-GPC(JLB)