Steven R. Weinmann (SBN 190956)
Steven.Weinmann@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:    (310) 943-0396

*Attorneys for Plaintiff and the Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.: 16-cv-1617-GPC-JLB<br><br>Hon. Gonzalo P. Curiel<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DECERTIFY OR TO MODIFY CLASS DEFINITION**<br><br>Complaint Filed: June 24, 2016<br>Courtroom:       2D<br>Trial Date:        None Set<br><br>Date:        May 15, 2020<br>Time:        1:30 p.m.<br>Dept:        2D |

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................1

II.    ARGUMENT .................................................................2

    A.    Defendant's Recycled and Meritless Arguments Provide No Basis to Revisit Certification ................................................2

        1.    Affirmative Defenses Do Not Destroy Predominance and Are a Merits Determination Not Appropriate Here .........................................................................2

        2.    There is No Administrative Feasibility Requirement for Class Certification and the Class Is Properly Certified ......................................................................6

        3.    Plaintiff's Damages Model Fits His Theory of Liability Based on a Benefit-Of-the Bargain Approach under *Nguyen*, Where Post-Sale Events are Irrelevant for Class Certification ................................8

    B.    The Class Definition Need Not Be Modified .....................10

III.    CONCLUSION .............................................................11

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bias v. Wells Fargo & Company*, 312 F.R.D. 528 (N.D. Cal. 2015)................... 3, 4

*Blackie v. Barrack*, 542 F.2d 891 (9th Cir. 1975)..................................................... 10

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017)..................... 1, 6, 7

*Daniel v. Ford Motor Company*, 2016 WL 8077932 (E.D. Cal. Sept. 23, 2016) ......................................................................................................................... 7

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014) ................................... 10

*Nguyen v. Nissan North America, Inc.*, 932 F.3d 811 (2019) .......................... 1, 8, 9

*Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270 (N.D. Cal. 2016) .................................................................................................................... 3, 4

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015) ......................................................................................................................... 8

*Rodman v. Safeway Inc.*, 2015 WL 2265972 (N.D. Cal. May 14, 2015)................. 3

*Selby v LVNV Funding, LLC*, 2016 WL 6677928 (S.D. Cal. June 22, 2016) ......................................................................................................................... 5

*Silver v. Pennsylvania Higher Education Assistance Agency*, 2020 WL 607054 (N.D. Cal. Feb. 7, 2020) ............................................................................ 5

*True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923 (9th Cir. 2018) ........................................................................................................................ 5

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016)....................................... 3

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (2010)........................... 10

**STATE CASES**

*Cummins, Inc. v. Super. Ct.*, 36 Cal.4th 478 (2005) ............................................... 10

**SECONDARY AUTHORITIES**

7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778 (3d ed. 2005) ............................................................................................... 3

## I.    INTRODUCTION

Defendant FCA US LLC provides no grounds to overturn this Court's well-reasoned decision to grant class certification. In its Motion to Decertify, FCA recycles arguments from its previous briefs that this Court already rejected or disregarded, including its contentions that: (1) affirmative defenses are controlling; (2) the class is unascertainable; and (3) damages are uncertain and individual. None of these arguments supports decertification.

First, it is well-settled that courts rarely deny class certification based on affirmative defenses that may be available against individual class members. This case is no exception. In arguing that its affirmative defenses destroy predominance, FCA is in effect asking this Court to affirm the substance of its defenses. But this remains a merits determination that is not appropriate at the certification stage. Indeed, if the Court must accept affirmative defenses as true for the purposes of evaluating certification, few, if any cases, would ever be certified.

Second, FCA repeats its baseless claim that the class is unascertainable. FCA brazenly asserts that its prior request to the Court to modify the class definition—that the vehicles are purchased primarily for personal, family, or household purposes—now makes Class Members impossible to identify. FCA cannot have it both ways. But in any event,  controlling Ninth Circuit holds that there is simply no administrative feasibility requirement for identification of class members as a prerequisite for class certification. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017). Case law concurs that this logically applies to the Song-Beverly Act claims.

Third, FCA asks this Court to ignore both its own detailed analysis on damages, and the controlling decision on damages models, *Nguyen v. Nissan North America, Inc.*, 932 F.3d 811 (2019). Despite this Court having relied on *Nguyen* in finding predominance, FCA ignores the decision and cites only to the reversed district court opinion in that case. Plaintiff Carlos Victorino's damages model is

consistent with *Nguyen* and his own theory of liability. The model generates benefit-of-the-bargain damages calculated by measuring the difference in value at the point of sale between a class vehicle with a defective clutch system and one with a non-defective clutch system. Although *Nguyen* made clear that it is immaterial what events transpired post-sale when using a benefit-of-the-bargain model, FCA tries to divert the Court's attention by focusing on irrelevancies like re-sales or trade-ins of the Class Vehicle that could have been made, none of which would affect overpayment <u>at the time of sale</u>.

Because its underlying arguments fail, so too does FCA's absurd proposal for redefining the class definition tied to those arguments. FCA's attempt to seek to include requirements in the class definition (for which it provides absolutely no legal support and for which there is none), such as requiring that class members be California residents and continue to own the vehicle, must be rejected. The Song-Beverly Act requires only that the goods be purchased in California, and as discussed with damages, post-sale events should not be incorporated into the class definition.

Accordingly, the Court should deny FCA's frivolous attempts to either decertify or redefine the class, in their entirety.

## II.   ARGUMENT

### A.   Defendant's Recycled and Meritless Arguments Provide No Basis to Revisit Certification

#### 1.   Affirmative Defenses Do Not Destroy Predominance and Are a Merits Determination Not Appropriate Here

FCA argues that individual issues, specifically its affirmative defenses of res judicata, collateral estoppel, accord and satisfaction, and settlement and release, will predominate over common issues. (Def's Mot at 4.) This position must be rejected. It is black letter law that "'[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members.'" *Bias v. Wells Fargo & Company*, 312

F.R.D. 528, 542 (N.D. Cal. 2015); *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 313 (N.D. Cal. 2016) ("The potential for a small number of individualized inquiries concerning affirmative defenses with regard to some class members does not alter the Court's conclusion that classwide issues will predominate."). This is because the "predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016) (internal citation omitted). Therefore, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or ***some affirmative defenses peculiar to some individual class members***.'" *Id.* (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005) (footnotes omitted) (emphasis added).

   Here, in invoking its affirmative defenses, FCA irrelevantly points to Adam Tavitian, the former plaintiff in this case whose claims were settled and dismissed, to argue that there would be individual issues such as his right to recover.  But this Court was well aware of the individual settlement between Tavitian and FCA when ruling upon and granting the renewed motion for class certification, having signed the dismissal order. (*See* ECF No. 267 (dismissal order); *see also* ECF Nos. 259, 260 (notice of settlement).) These facts did not and could not impact this Court's decision to grant class certification, *where predominance was found regardless of such settlement*. There is nothing new that would warrant re-visiting certification. *See Rodman v. Safeway Inc.*, 2015 WL 2265972, *2 (N.D. Cal. May 14, 2015) (denying motion to decertify class and finding that "because the Court already found that [Rule 23] requirements were met when it approved class certification, 'decertification and modification should theoretically only take place after some

1    change, unforeseen at the time of the class certification, that makes alteration of the

2    initial certification decision necessary.").[1]

3         Additionally, it would be improper to question class certification based on a

4    merits determination as to whether any of FCA's affirmative defenses are valid *now*.

5    *Id.* at *3 ("Because the legal effect of [the defendant's] affirmative defenses has not

6    yet been established, 'questions of law or fact common to class members' continue

7    to 'predominate over any questions affecting only individual members.'"); *Bias*, 312

8    F.R.D. at 542 ("[Defendant] next asserts that its affirmative defenses raise

9    predominantly individualized issues that preclude class certification. . . . With

10   respect to waiver, the potential for the Court to later determine waiver bars

11   Plaintiffs' claims as to some class members does not defeat class certification at this

12   stage.").

13        Instead, such issues can be easily managed and do not destroy predominance.

14   *See Nitsch*, 315 F.R.D. at 313 ("Plaintiffs propose that such issues, which will likely

15   be small in number, would be manageably addressed in individualized proceedings

16   at a later phase of the case. . . . The Court agrees that any such issues unique to

17   particular class members may be handled in a manner similar to that used when

18   individualized damages inquiries arise in class action proceedings."). In *Nitsch*, the

19   court addressed the affirmative defense of the statute of limitations and found that

20   the "Defendants' concern regarding Defendants' ability to litigate defenses is

21   misplaced." *Id.* Rather, the court found that certification of the proposed class would

22   not deny the defendants the ability to raise individualized defenses, "should the

23   evidence indicate that the questions must be resolved separately as to particular class

24   members." *Id.*

25        Considerations of the validity of the defendant's affirmative defenses are

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [1] It is of course also absurd to suggest, without evidence, that Mr. Tavitian
28   would submit a claim after having settled out his claims. And his situation is
     obviously not indicative of a larger problem with the class definition. FCA is truly
     grasping at straws here.

premature at the certification stage.  For example, FCA's invocation of its affirmative defenses as to purported resolutions of claims or changes of ownership that are reflected on CarFax reports on individual Class Vehicles, should not be considered. Indeed, to the extent FCA has a settlement with any particular owner, presumably FCA knows who that owner is and they can easily be identified.

In a last-ditch attempt to question predominance, FCA cites to a string of distinguishable cases that all deal with the Telephone Consumer Protection Act ("TCPA") and a specific consent defense issue particular to that statute, none of which are relevant here. *See, e.g., Silver v. Pennsylvania Higher Education Assistance Agency*, 2020 WL 607054, *9 (N.D. Cal. Feb. 7, 2020) ("This court's predominance analysis is limited to the pre-2015 elements of Title 47 U.S.C. § 227(b) [the TCPA]."); *Selby v LVNV Funding, LLC*, 2016 WL 6677928, *4 (S.D. Cal. June 22, 2016) ("Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action. [citations omitted]. Here, this action involves only claims brought under the TCPA.") (some internal quotation marks deleted); *see also True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923 (9th Cir. 2018) (reversing in part, affirming in part, and remanding a district court's denial of class certification in a TCPA fax case, holding that prior express invitation or permission is an affirmative defense to a claim brought under the TCPA with respect to unsolicited faxes). If anything, these cases still remind us that, aside from any irrelevant TCPA issues, the prevailing view for class certification is that "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as ... some affirmative defenses peculiar to some individual class members.'" *True Health Chiropractic*, 896 F.3d at 931 (quoting *Tyson Food*, 136 S.Ct. at 1045) (some internal quotation marks omitted).

1

### 2. There is No Administrative Feasibility Requirement for Class Certification and the Class Is Properly Certified

"FCA US has identified the VINs for the Class Vehicles that, according to its records, were reported as being sold as new vehicles by an FCA US authorized dealership in California." (Def's Mot at 2:20-22.) FCA is also able to identify that "there are potentially more than 1,900 persons encompassed by the class as currently defined." (*Id.* at 4:7-8.) Yet FCA still questions the makeup and identification of the class for certification purposes by arguing once again that "it is not administratively feasible to identify the members of the certified class for purposes of providing them the requisite notice." (*Id.* at 1:5-7.) Simply put, FCA is talking out of both sides of its mouth. First, FCA argued that a class could not be certified unless it was defined by those who used the class vehicles primarily for personal, family, or household purposes. (ECF No. 318 at 23:5-8.) In an about-face, it now says that the class must be decertified because it is based on the very same criteria by which FCA sought to have the class so defined. If FCA's contradictory arguments are allowed to stand, then no Song-Beverly class could ever be certified with respect to cars.

Of course, FCA's arguments are not in accordance with the law. "[T]he language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification." *Briseno*, 844 F.3d at 1133 (9th Cir. 2017). Instead, it can be addressed in a claims procedure at a later stage or following trial if at all even necessary, as *Briseno* directs. *See id.* at 1131 ("Defendants will have similar opportunities to individually challenge the claims of absent class members if and when they file claims for damages. At the claims administration stage, parties have long relied on 'claims administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to validate claims. [Citation omitted]. Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability.").

1    This logically applies to Song-Beverly claims in car cases. *See Daniel v. Ford*
2    *Motor Company*, 2016 WL 8077932, *6 (E.D. Cal. Sept. 23, 2016) ("Defendant also
3    argues, specifically with respect to plaintiff's implied warranty claim, that whether
4    class vehicles constitute 'consumer goods' within the meaning of the Song-Beverly
5    Act differs as to each class member. [Citations omitted]. 'Consumer goods' under
6    the Act requires that a given product is 'used, bought, or leased for use primarily for
7    personal, family, or household purposes,' Cal. Civ. Code § 1791. This is another
8    question the parties can efficiently resolve via a claim form or similar process. It will
9    not dominate litigation."). Here, the compact, manual transmission cars that are the
10   class vehicles are not suited for business purposes nor is there any indication that a
11   significant portion of the class would use the Dart as such.[2] This is not something
12   that supports decertification and "will not dominate the litigation." *See id.* As such,
13   "it is not clear why requiring an administratively feasible way to identify all class
14   members at the certification stage is necessary to protect [the defendant's] due
15   process rights." *Briseno*, 844 F.3d at 1132. Rather, *Briseno* holds that such a
16   requirement is definitively *not* necessary for class certification. *Id.* at 1133 (holding
17   that "the district court did not err in declining to condition class certification on
18   Plaintiffs' proffer of an administratively feasible way to identify putative class
19   members").

---

22   [2] Moreover, such use would be reflected on the purchase or lease contract. For
23   example, Mr. Victorino purchased his vehicle primarily for personal, family or
     household use, as so indicated on his purchase contract. (*See* Declaration of Tarek H.
     Zohdy ["Zohdy Decl."] at ¶ , Ex. A.) In fact, there is a pre-printed assumption on
24   every such California vehicle contract that the "Primary Use For Which Purchased"
     is "[p]ersonal, family or household unless otherwise indicated below," where there is
25   an option to check a box for "business and commercial." (*See id.*) While a party may
     question whether the class representative is a class member, challenges to other class
26   members' status can take place through a subsequent claims administration process,
     where they can state whether they purchased or leased for personal or business use.
27   "If the concern is that claimants in cases like this will eventually offer only a 'self-
     serving affidavit' as proof of class membership, it is again unclear why that issue
28   must be resolved at the class certification stage to protect a defendant's due process
     rights." *Briseno*, 844 F.3d at 1132.

1

> **3.**   **Plaintiff's Damages Model Fits His Theory of Liability Based on a Benefit-Of-the Bargain Approach under *Nguyen*, Where Post-Sale Events are Irrelevant for Class Certification**

2

3   Attempting to relitigate the damages issue, FCA would like this Court to focus

4   on anything and everything that could happen after the class vehicles were originally

5   purchased or leased. According to FCA, the potential of eventual vehicle resales

6   creates an individual inquiry related to each resale/trade transaction. But this is a red

7   herring.  "[A] restitution calculation under California law 'need not account for

8   benefits received after purchase [where] the focus is on the value of the service at

9   the time of purchase. Instead ... the focus is on the difference between what was paid

10   and what a reasonable consumer would have paid at the time of purchase without the

11   fraudulent or omitted information.'" *Nguyen,* 932 F.3d at 820, *citing Pulaski &*

12   *Middleman, LLC v. Google, Inc*., 802 F.3d 979, 989 (9th Cir. 2015). This Court

13   should not depart from its damages analysis for certification, which follows the

14   controlling *Nguyen* decision. Indeed, in its decertification motion FCA only cites to

15   the *reversed* district court opinion in *Nguyen*. However, the Ninth Circuit in *Nguyen*

16   found the district court incorrectly "focused on potential post purchase value"

17   despite the plaintiff's benefit-of-the-bargain theory of recovery. *Nguyen*, 932 F.3d at

18   820-821. What mattered was whether the plaintiff's theory of liability was consistent

19   with his proposed recovery based on the benefit-of-the-bargain theory. The *Nguyen*

20   court found that the plaintiff's damages model—based on the cost of repair—

21   connects to his theory, satisfying predominance. The *Nguyen* panel made clear that

22   post-sale events were not relevant. Since Plaintiff Victorino has submitted the same

23   damages model, using the same expert, as the plaintiff in *Nguyen*, the defendant's

24   emphasis on post-sale events should be rejected outright.

25   Plaintiff's damages model here fits his theory of liability. Plaintiff alleges that

26   the class vehicles, *at the time of sale*, all had an inherent defect in the clutch system.

27   (*See* Order Granting Plaintiff's Renewed Motion for Class Certification, ECF No.

28   318 at 3) ("Plaintiff alleges an inherent defect in the hydraulic clutch system

('Clutch System') that existed in all Class Vehicles at the time of sale that causes the clutch pedal to lose pressure, stick to the floor, and prevents his gears from engaging and/or disengaging.") Damages are calculable based on a benefit-of-the-bargain approach that limits recovery to the difference in value at the point of sale between a class vehicle with a defective clutch system and one with a non-defective clutch system. (*Id.* at 15:6-9) ("Plaintiff's theory is that all the Class Vehicles inherently had a defective Clutch System at the time of sale and the benefit of the bargain theory purports to measure the 'economic harm . . . at the point of sale or before based on the difference in value between a defective and a defective-free Clutch System.'")

As this Court noted, Plaintiff's damages expert Steve Boyles, also the expert in *Nguyen*, found that "the clutch defect can be remedied and class members can be made whole and receive the value they bargained for at the point of sale." (*Id.* at 15:10-12.) Such a damages model is not dependent on, or altered by, after-the-fact events such as re-sales or trades. Nor do such events destroy predominance or create any "windfall." This is because Plaintiff, as in *Nguyen*, "is not seeking a full refund for the vehicle purchase, but for the cost of replacing [] a defective component, which is a proxy for [his] overpayment of the vehicle at the point of sale." *Nguyen*, 932 F.3d at 821. As *Nguyen* made clear, "[w]hether his proposed calculation of the replacement cost is accurate, whether the clutch was actually defective, and whether [the defendant] knew of the alleged defect are merits inquiries unrelated to class certification." *Id.* This Court cannot and need not deviate from the Ninth Circuit's holding in *Nguyen*.

The decision to grant certification is also in line with black-letter law that individualized damages issues do not alone defeat certification. *See, e.g., Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014) ("So long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed did not defeat certification."); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594

1   F.3d 1087, 1094 (2010) ("In this Circuit, however, damage calculations alone cannot

2   defeat certification. We have said that '[t]he amount of damages is invariably an

3   individual question and does not defeat class action treatment.'") (quoting *Blackie v.*

4   *Barrack*, 542 F.2d 891, 905 (9th Cir. 1975)).

5       Accordingly, there is no reason to depart from this Court's Order granting

6   class certification.

7       **B.    The Class Definition Need Not Be Modified**

8       FCA would like the class definition to be altered in two respects. It wants to

9   add the requirements that the class is made up of "California residents" and that they

10  "still own the vehicle and have not settled any disputed claim with FCA US related

11  to the vehicle." (Def's Mot at 8-9.) FCA cites no authority for this proposition, nor

12  could it. Case law is to the contrary. The Song-Beverly Act provisions only apply to

13  vehicles sold in California. *See Cummins, Inc. v. Super. Ct.*, 36 Cal.4th 478, 483

14  (2005) ("We conclude that the Act does not apply unless the vehicle was purchased

15  in California."). There is no separate requirement that a <u>purchaser</u> be a California

16  resident. The plaintiffs in *Cummins* were California residents, who had purchased a

17  motor home while visiting Idaho, and brought the vehicle for repair to the

18  manufacturer's authorized repair facility in California. The court found the Song-

19  Beverly Act did not apply unless the vehicle was purchased in California. *Id.* The

20  California residency of the plaintiffs did not matter.

21      Furthermore, there is simply no requirement that a class member still own the

22  vehicle, and FCA offers no support for this proposition. FCA's suggestions for its

23  faulty class definition are based on its faulty arguments regarding damages and

24  affirmative defenses, which are addressed above. Plaintiff's damages model is

25  consistent with his theory of liability, which is based on point of sale, where the

26  benefit-of-the-bargain model limits recovery to the difference in value at the point of

27  sale between a class vehicle with a defective clutch system and one with a defect-

28  free clutch system. Whether a car is still owned is immaterial for certification. As

discussed above, post-sale events are irrelevant. Further, any affirmative defenses FCA raises, such as settlement and release, must be dealt with at the merits stage, not now. FCA's proposal to redefine the class must be rejected.

Accordingly, there is no valid basis to redefine the class definition or in any manner revisit class certification.

## III.   CONCLUSION

For the foregoing reasons, the Court should deny the Motion to Decertify or to Modify Class Definition in its entirety.

Dated:  April 10, 2020                          Respectfully submitted,


                                                         **CAPSTONE LAW APC**


                                   By:   */s/* Tarek H. Zohdy
                                          Steven R. Weinmann
                                          Tarek H. Zohdy
                                          Cody R. Padgett
                                          Trisha K. Monesi

                                          *Attorneys for Plaintiff and the Class*

PLAINTIFF'S OPPOSITION TO MOTION TO DECERTIFY OR TO MODIFY CLASS DEFINITION