UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO and ADAM TAVITIAN, individually, and on behalf of other members of the general public similarly situated,<br><br>                        Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>                        Defendant. | Case No.: 16cv1617-GPC(JLB)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DECERTIFY CLASS AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR APPROVAL OF PROPOSED CLASS NOTICE AND NOTICE PLAN**<br><br>**[Dkt. Nos. 332, 337, 340.]** |

Before the Court is Defendant's motion to decertify class, or in the alternative, motion to modify class definition. (Dkt. No. 337.) Plaintiff filed an opposition on April 10, 2020. (Dkt. No. 342.) On April 17, 2020, Defendant filed a reply. (Dkt. No. 344.) On May 4, 2020, FCA filed a supplemental authority in support of its motion to decertify citing to *Sloan v. Gen. Motors LLC*, Case No. 16-cv-07244-EMC, 2020 WL 1955643, at *48 (N.D. Cal. Apr. 23, 2020), a recent case granting class certification alleging a vehicle defect. (Dkt. No. 345.) Plaintiff filed a response on May 5, 2020. (Dkt. No. 346.) On May 6, 2020, FCA filed a reply regarding its submission of supplemental authority. (Dkt.

1

No. 347.) Before the Court is also Plaintiff's motion for approval of class notice and notice plan which is also fully briefed. (Dkt. Nos. 332, 333, 334, 336, 339, 340, 343.) The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court DENIES Defendant's motion to decertify and DENIES without prejudice Plaintiff's motion for approval of proposed class notice and notice plan.

## Background

Plaintiff Carlos Victorino[1] ("Victorino" or "Plaintiff") filed a putative first amended class action complaint ("FAC") against Defendant FCA US LLC ("FCA" or "Defendant") based on defects in the 2013-2015 Dodge Dart vehicles equipped with a Fiat C635 manual transmission built on or before November 12, 2014 ("Class Vehicles") that cause his vehicle's clutch to fail and stick to the floor. (Dkt. No. 104, FAC; Dkt. No. 318 at 2.) The FAC alleged five causes of action for violations of California's Consumer Legal Remedies Act ("CLRA"), California's unfair competition law ("UCL"), a state law breach of implied warranty pursuant to the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), a federal law breach of implied warranty pursuant to the Magnuson-Moss Warranty Act ("MMWA"), and unjust enrichment. (Dkt. No. 104, FAC.) After the Court's ruling on Defendant's motion for summary judgment and subsequent motion for reconsideration, the remaining causes of action in the case are the breach of implied warranty of merchantability under the Song-Beverly Act and the MMWA, and a UCL claim premised on the breach of implied warranty claims. (Dkt. Nos. 206, 240.)

---

[1] Plaintiff Adam Tavitian was also a named Plaintiff in the FAC but, due to a settlement, the Court granted the parties' joint motion to dismiss him on June 22, 2018. (Dkt. Nos. 259, 260, 266, 267.)

2

On June 13, 2018, the Court denied class certification and relied on the reasoning in *Nguyen v. Nissan North Am.,* Case No. 16cv5591-LHK, 2018 WL 1831857 (N.D. Cal. Apr. 9, 2019), to deny class certification on the issue of whether Plaintiff's damages model satisfied predominance. (Dkt. No. 265.) On July 26, 2019, the Ninth Circuit reversed the district court's denial of class certification in *Nguyen* and remanded the case for further proceedings. *See Nguyen v. Nissan North Am., Inc.,* 932 F.3d 811 (9th Cir. 2019). Relying on the Ninth Circuit's reasoning in *Nguyen*, on October 17, 2019, the Court granted Plaintiff's renewed motion for class certification. (Dkt. No. 318.) The class is defined as,

> All persons who purchased or leased in California, from an authorized dealership, a new Class Vehicle primarily for personal, family or household purposes.

(*Id.* at 24.) During the hotly contested briefing on class notice, (Dkt. Nos. 332, 333, 336, 339, 340, 341, 343), Defendant filed the instant motion to decertify class contending that predominance and superiority cannot be met due to numerous individualized issues that will need to be tried before a jury. Alternatively, FCA contends that the class definition should be modified to the following:

> **California residents** who purchased a Class Vehicle from an FCA US LLC authorized dealership in the state of California primarily for personal, family, or household purposes, **and who still own the vehicle and have not settled any disputed claim with FCA US related to the vehicle**.

(Dkt. No. 337-1 at 11.[2])

/ / /
/ / /
/ / /

---

[2] Page numbers are based on the CM/ECF pagination.

**Discussion**

**A.     Legal Standard of Decertification**

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time"). The Court may consider "subsequent developments in the litigation." *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982).

A "party seeking *decertification* of a class should bear the burden of demonstrating that the elements of Rule 23 have not been established." *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 651 (C.D. Cal. 2000) (emphasis in original); *Gonzales v. Arrow Fin. Servs., Inc.*, 489 F. Supp. 2d 1140, 1153 (S.D. Cal. 2007). The standard for class decertification is the same as class certification: a district court must be satisfied that the requirements of Rules 23(a) and (b) are met to allow plaintiffs to maintain the action on a representative basis. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011); *see also O'Connor v. Boeing N. Am., Inc.,* 197 F.R.D. 404, 410 (C.D. Cal. 2000) (in evaluating whether to decertify the class, the court applies the same standard used in deciding whether to certify the class in the first place). The district court has discretion on whether to decertify a class. *See Knight v. Kenai Peninsula Borough Sch. Dist.*, 131 F.3d 807, 816 (9th Cir. 1997).

Under Rule 23(b)(3), the plaintiff must demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance is satisfied "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) (quoting *Mazza v. Am. Honda*

*Motor Co., Inc.,* 666 F.3d 581, 589 (9th Cir. 2012)). Under Rule 23(b)(3), the plaintiff must also demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Superiority requires a consideration of "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(a)-(d). The superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually a class action is not superior." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001).

**B.     Analysis**

Defendant presents three arguments why the class should be decertified as lacking predominance and superiority. First, it contends that the class as currently defined raises significant individual issues in identifying the class members; second, the class as defined will require numerous individual trials in determining affirmative defenses; and third, individual issues will predominate concerning damages.

    **1.     Identification of Class Members**

FCA argues that Plaintiff has not provided a notice method that would allow the Court to identify which Class Vehicles have been purchased primarily for personal, family, or household purposes. Specifically, FCA points out that VINs provided by FCA only identify when and whether the vehicle was purchased at a dealership in California but do not show whether the vehicle was purchased primarily for personal, family or

household purposes. (Dkt. No. 337-2, Royek Decl. ¶ 4.) Further, there will be individualized inquiries required into whether a dealership or a third-party was the lessor of a vehicle. (*Id.* ¶ 5.) Even though there may be dealership notes that record if a vehicle was sold as a "fleet" or to a "business", the reporting is sporadic and can be inaccurate. (*Id.* ¶ 4.) Instead, determining class membership will require examining each Class Vehicle's sales and state-registration records and possibly examining each and every owner and these individualized issues must be resolved prior to entry of a final judgment in this case. (Dkt. No. 337-1 at 8.) Plaintiff responds that FCA has already identified more than 1,900 persons encompassed by the class as currently defined. Moreover, there is no administrative feasibility requirement for class certification and any individual issues can be determined during the claims procedure stage. In reply, without providing legal authority, FCA argues because "primarily used for personal, family or household purposes" is a required element of a Song-Beverly claim, it has due process rights to present evidence to a jury and have it decide whether each class member purchased a vehicle primarily for personal, family or household purposes and deferring this determination until a claims procedure would deprive FCA of its due process rights. (Dkt. No. 344 at 8-9.)

"A defendant has a due process right to challenge the plaintiffs' evidence at any stage of the case, including the claims or damages stage." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669 (7th Cir. 2015). While a defendant "has a due process right not to pay in excess of its liability and to present individualized defenses if those defenses affect its liability". . . it does not have a "due process right to a *cost-effective* procedure for challenging every individual claim to class membership." *Id.* (emphasis in original). "The due process question is not whether the identity of class members can be ascertained with perfect accuracy at the certification stage but whether the defendant will receive a fair opportunity to present its defenses when putative class members actually

6

come forward." *Id.* at 670 (due process satisfied "so long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process."). In *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131-32 (9th Cir. 2017), the Ninth Circuit relied on the Seventh Circuit's decision in *Mullins* to support its holding that there is no administrative feasibility requirement for class certification. In *Briseno*, the court noted that defendants can "challenge the claims of absent class members if and when they file claims for damages" explaining that parties have "long relied on 'claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to validate claims." *Id*. at 1131 (citing *Mullins*, 795 F.3d at 667). "If the concern is that claimants in cases like this will eventually offer only a 'self-serving affidavit' as proof of class membership, it is again unclear why that issue must be resolved at the class certification stage to protect a defendant's due process rights." *Id.* at 1132.

Other district courts are in agreement that the determination of class membership and protecting the defendant's due process rights can be done during the claims administration process. *See Lyngaas v. Curaden A.G.*, -- F. Supp. 3d --, 2020 WL 917004, *2-3 (E.D. Mich. Jan. 30, 2020) (claims administration process where the defendant is given an opportunity to challenge claims to class membership satisfied due process); *Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2017 WL 3206324, at *5 (M.D.N.C. July 27, 2017) ("[T]he trial already established all of the elements necessary to prove a violation . . . .Whether a claimant is a class member is a question that can be more appropriately, fairly, and efficiently resolved through a claims administration process as authorized by Rule 23."); *Six Mexican Workers v. Arizona Citrus Growers*, 641 F. Supp. 259, 260-261 (D. Ariz. 1986) (finding the defendants liable following a

7

16cv1617-GPC(JLB)

bench trial and subsequently authorizing a claims administration process to identify class members).

Here, the Court certified a class consisting of "[a]ll persons who purchased or leased in California, from an authorized dealership, a new Class Vehicle primarily for personal, family or household purposes." (Dkt. No. 318 at 24.)  Therefore, the class definition complies with the elements of a breach of implied warranty claim under state law.[3]  It is clear that those class members who did not purchase the Class Vehicle primarily for personal, family or household use may not be a class member.  Logically, those class members will not file a claim.  However, Defendant may be given the opportunity during the claims administration process to challenge any claims and the claims administrator can devise a procedure to ensure that those claimants purchased the Class Vehicles for personal, family, or household purposes.  Contrary to Defendant's argument, identifying class members will not result in a series of separate trials to determine whether a class member purchased the Class Vehicles primarily for personal, family or household purposes.

Accordingly, the Court DENIES FCA's motion to decertify based on the identification of class members.

### 2. Affirmative Defenses

FCA next contends that the affirmative defenses of res judicata, collateral estoppel, accord and satisfaction, and settlement and release must be litigated on an individual basis and defeats certification.  Plaintiff responds that affirmative defenses do not destroy predominance and are merits determination not appropriate at this stage.  In any event,

---

[3] For the purposes of implied warranties, the Song–Beverly Act applies only to "consumer goods," which are defined as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." Cal. Civ. Code § 1791(a).

FCA already knows the owners of Class Vehicles that have settled with FCA; therefore, it would not be complicated to manage the issue and Defendant can raise the affirmative defenses at a later stage.  In reply, FCA argues that Plaintiff has not disputed that certain Class Members will be subject to affirmative defenses that must be resolved individually and it has a due process right to present evidence of these defenses at trial for each Class Member which may take months.

"Defenses that must be litigated on an individual basis can defeat class certification." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018).  However, when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)).

In the Court's order granting certification, it concluded that predominance had been met on breach of the implied warranty of merchantability.  (Dkt. No. 318 at 13.)  The Court found that Plaintiff has set forth a theory that all Class Vehicles were equipped with the same defectively designed Clutch System at the time of sale and  presented common proof to demonstrate whether all Class Vehicles have a defect.  (*Id.*)  The Court also concluded that superiority had been satisfied because a "determination whether a defect exists in all vehicles will not require individual determinations, and therefore, a class action is the superior method of efficiently and fairly adjudicating Plaintiff and the class members' claims in this case."  (*Id.* at 17.)

Reviewing FCA's documents in support of its motion, its argument on affirmative defenses relate to a claims administration issue and not a class certification concern.  Its

affirmative defenses concern Class Members who have already executed settlement agreements with FCA that include a full release of all claims concerning the Class Vehicles and the return of these vehicles to FCA.  (Dkt. No. 337-3, Royek Decl., Ex. A; Dkt. No. 337-4, Royek Decl., Ex. B; Dkt. No. 337-5, Royek Decl., Ex. C.)  Based on a random sampling of the 1,980 identified Class Vehicles, 20 CARFAX reports were obtained which identified 3 or 4 owners that had settled with FCA.  (Dkt. No. 337-2, Royek Decl. ¶ 6; Dkt. No. 337-6, Wisniewski Decl. ¶¶ 2, 3.)  Based on this, FCA estimates that 20% of the 1,980 identified class members, or 396 class members, will require hundreds of mini-trials to resolve these defenses because each settlement agreement is individualistic in nature and the legal effect cannot be determined en masse. (Dkt. No. 337-1 at 7.)

The Court disagrees.  The three examples of settlement and release agreements for three Class Members include full releases and return of the Class Vehicles back to FCA.  The three settlement agreements show that the legal effect of all three are the same.  They bar any future claims related to the Class Vehicles.  Yet, even if the legal effect is not the same, Defendant's may challenge these claims at the claims administration stage. Determining whether a class member has been subject to a settlement agreement can be easily determined through FCA's records and can be conducted by the claims administrator.  As noted above, there is no administrative feasibility requirement in the Ninth Circuit.  *See Briseno*, 844 F.3d at 1131-32; *see also Mullins*, 795 F.3d at 671 ("As long as the defendant is given the opportunity to challenge each class member's claim to recovery during the damages phase, the defendant's due process rights are protected."); *see also Roy v. Cnty. of Los Angeles*, Case No. CV 12-09012-AB (FFMx), 2018 WL 3436887, at *4 (C.D. Cal. July 11, 2018) (denying decertification based on the defendant's argument that individualized inquiries will be required to adjudicate affirmative defenses).

FCA is in possession of the settlement agreements it has executed with owners of the Class Vehicles. Those owners who settled with FCA with a full release and return of the Class Vehicle would likely not file a claim. However, any such challenges can be made at the claims administration stage. Contrary to FCA's claim, determining which owners have settled with FCA will not entail months of mini-trials. Accordingly, the Court declines to decertify the class based on the affirmative defenses asserted by FCA.

### 3. Damages

Lastly, FCA argues that the Court did not previously consider the need to individually determine the effect of a vehicle resale on the amount of the benefit of the bargain damages that class members may be entitled to receive. This fact makes individual issues concerning damages significant. In response, Plaintiff contends that his damages model fits his theory of liability under *Nguyen*[4] and post-sale events are irrelevant for class certification. In reply, Defendant concedes that while Plaintiff's proffered damages theory "'fits' his liability theory", (Dkt. No. 344 at 11), it argues that *Nguyen* did not address the "difference in value" for post-sale events.

At class certification, the Court's role is to determine whether Plaintiff has presented a damages model that is consistent with his liability case. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). Plaintiff "must be able to show that [his] damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Post-*Comcast*, the Ninth Circuit has continued to hold that damages calculations cannot defeat predominance. *Id.* at 513-14; *Nguyen,* 932 F.3d at 821 ("Whether his proposed calculation of the replacement is accurate, whether the clutch was actually defective, and whether Nissan knew of the alleged defect are merits inquires unrelated to class certification."); *Pulaski &*

---

[4] 932 F.3d 811 (9th Cir. 2019).

*Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) ("[d]amages calculations alone . . . cannot defeat certification"); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014) ("So long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed did not defeat class certification."); *see also Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("[i]t would drive a stake through the heart of the class action device . . . to require that every member of the class have identical damages.")  In *Butler,* Judge Posner noted that the existence of a "single, central, common issue of liability" was sufficient to support class certification, and the defendant was free to address complications with the district court during the damages phase.  *Id.* at 801-02.

Here, FCA does not dispute that *Comcast* has been satisfied but argues that the amount of damages will vary due to post-sale events, and therefore, individual issues will predominate over common ones.  In a supplemental submission, FCA argues that *Sloan v. Gen. Motors LLC*, Case No. 16-cv-07244-EMC, 2020 WL 1955643, at *48 (N.D. Cal. Apr. 23, 2020), a recent case where the court granted class certification in a case involving a vehicle defect, supports its argument that the class should be decertified or the class definition should be modified to include only current owners.  (Dkt. No. 345 at 2.)  According to FCA, *Sloan* limited the class to "all current owners or lessees of a Class Vehicle" and excluded "former owners or lessees" because only those who are current owners will be made whole by the cost of repair under the benefit of the bargain theory.

Plaintiff responds that *Sloan* is distinguishable as the class definition in the case originally included "[a]ll current and former owners or lessees of a Class Vehicle that was purchased or leased." *Sloan*, 2020 WL 1955643, at *2-3.  The district court concluded that including both current and former owners in the class is not compatible with the benefit of the bargain damages theory.  However, in this case, the class only includes purchasers of new Class Vehicles.

The Court agrees with Plaintiff that *Sloan* does not support FCA's argument to decertify the class or modify the class definition. In *Sloan,* the plaintiffs alleged an oil consumption defect, claimed they were damaged because they paid more for their Class Vehicles than they would have paid had they known about the defect and sought the "cost of repair" damages under a benefit of the bargain theory. *Id.* at *2, 47. The plaintiffs sought to certify several state classes to include "[a]ll current and former owners or lessees of a Class Vehicle that was purchased or leased in the State of [ ]." *Id.* at *2-3. Relying on *Nguyen*, the district court concluded that Plaintiff's theory of liability satisfied class certification but limited the class to "current owners or lessees." *Id.* at *48. However, the court noted that "Plaintiffs' damages theory is inconsistent with Plaintiffs' overbroad assertion of the proposed class, which currently includes former owners or lessees." *Id.* It explained that the inclusion of both prior owners and purchasers of used class vehicles created potential damages calculation problems because the prior owner of a class vehicle would have to split the damages with the subsequent purchaser or current owner, and split damages would not be sufficient to satisfy the remedy of the cost of repair for the current owner. *Id.* Also, requiring "GM to pay a current owner of a used vehicle the full cost of repair in addition to paying some pro-rata benefit to prior owners would subject GM to multiple recovery." *Id.*

However, the dilemma presented in *Sloan* is not present in this case. Here, the class includes only those "persons who purchased or leased in California, from an authorized dealership, a new Class Vehicle. . . ." (Dkt. No. 318 at 24.) The class only includes the original purchasers of new Class Vehicles from an authorized dealership and does not include subsequent owners. Therefore, FCA's reliance on *Sloan* is misplaced and does not support decertifying or modifying the class. Accordingly, the Court DENIES Defendant's motion to decertify based allegations that damage calculations will involve individualized inquiries.

In sum, the Court DENIES Defendant's motion to decertify class. The Court also DENIES Defendant's alternative request to modify the class definition.

### C. Plaintiff's Motion for Approval of Proposed Class Notice and Notice Plan

On February 12, 2020, Plaintiff filed a motion for approval of proposed class notice and notice plan. (Dkt. No. 332.) On March 4, 2020, Defendant filed a response and numerous objections to the proposed class notice and notice plan. (Dkt. No. 333.) In its response and objections, FCA also asked the Court to decertify the class. (*Id.* at 8.) Due to the numerous objections, the Court directed that Plaintiff file a reply. (Dkt. No. 334.) In response to the Court's order, on March 23, 2020, Plaintiff filed a reply. (Dkt. No. 336.) In its reply, Plaintiff disputed certain of Defendant's argument but also made a number of proposed redline edits in response to FCA's objections. (*Id.*)

On April 1, 2020, FCA, without leave of Court, filed Reply Objections arguing that it was responding Plaintiff's significantly modified proposed notice plan and notice procedures. (Dkt. No. 339.) Again, FCA argued that decertification is warranted. (*Id.* at 11.) In response, on April 9, 2020, Plaintiff filed an ex parte motion to strike FCA's unauthorized reply, or in the alternative, grant leave for Plaintiff to file a sur-reply. (Dkt. No. 340.) On April 13, 2020, FCA filed an opposition to Plaintiff's ex parte motion to strike its reply. (Dkt. No. 343.)

Prior to the filing of the motion, the parties held a "meet and confer" on the proposed drafts of the short and long form notices on February 11, 2020. (Dkt. No. 339-2, D'Aunoy Decl. ¶ 4; Dkt. No. 340-1, Zohdy Decl. ¶ 6.) As indicated by both counsel, the "meet and confer" was not meaningful or productive. (*Id.*) The numerous filings on the proposed class notice and notice re clearly demonstrate the lack of a meaningful meet and confer between the parties.

In light of the Court's order on Defendant's motion to decertify the class, the Court DIRECTS both parties to engage in a meaningful meet and confer on the remaining

disputed issues in Plaintiff's proposed class notice and notice plan.  If the parties are able to agree on a joint proposed class notice and notice plan, they shall file it with the Court on or before **May 29, 2020**.  In the event the parties are still unable to agree, Plaintiff shall file a renewed motion for approval of a proposed class notice and notice plan on or before **May 29, 2020**.  Defendant shall file an opposition on or before **June 5, 2020.** Plaintiff may file a reply on or before **June 12, 2020**.  No other filings will be permitted without leave of court.

## Conclusion

Based on the reasoning above, the Court DENIES Defendant's motion to decertify class action.  The Court also DENIES Plaintiff's motion for approval of proposed class notice and notice plan without prejudice, (Dkt. No. 332), and DENIES Plaintiff's ex parte motion to strike Defendant's unauthorized reply as moot, (Dkt. No. 340).  The hearing set on May 15, 2020 shall be **vacated.**

IT IS SO ORDERED.

Dated:  May 8, 2020

Hon. Gonzalo P. Curiel
United States District Judge