UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO and ADAM TAVITIAN, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.: 16cv1617-GPC(JLB)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION**<br><br>[Dkt. No. 355.] |

Before the Court is Defendant's motion for reconsideration of the Court's May 8, 2020 order denying its motion to modify the class definition and to limit the certified class to those purchasers who still own the Class Vehicles. (Dkt. Nos. 355.) Plaintiff filed a response and Defendant replied. (Dkt. Nos. 359, 362.) The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court DENIES Defendant's motion for reconsideration.

/ / /

1

16cv1617-GPC(JLB)

**Background**

Plaintiff Carlos Victorino ("Victorino" or "Plaintiff") filed the operative putative first amended class action complaint ("FAC"), on June 19, 2017,[1] against Defendant FCA US LLC ("FCA" or "Defendant") based on alleged defects in the 2013-2015 Dodge Dart vehicles equipped with a Fiat C635 manual transmission built on or before November 12, 2014 ("Class Vehicles"). (Dkt. No. 104, FAC.) Plaintiff alleges that the alleged defect causes his vehicle's clutch to fail and stick to the floor preventing him from accelerating causing a safety hazard as well as adversely affecting the vehicle's driveability. (*Id.*) After the Court's ruling on Defendant's motion for summary judgment and subsequent motion for reconsideration, the remaining causes of action in the case are the breach of implied warranty of merchantability under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), the Magnuson-Moss Warranty Act ("MMWA"), and a California unfair competition law ("UCL") claim premised on the breach of implied warranty claims. (Dkt. Nos. 206, 240.)

While class certification was initially denied on June 13, 2018, (Dkt. No. 265), a class was later certified on Plaintiff's renewed motion for class certification on October 17, 2019. (Dkt. No. 318.) The class is currently defined as,

> All persons who purchased or leased in California, from an authorized dealership, a new Class Vehicle primarily for personal, family or household purposes.

(*Id.* at 24.[2]) Defendant subsequently filed a motion to decertify class, or, alternatively, to modify the class definition as follows:

> California residents who purchased a Class Vehicle from an FCA US LLC authorized dealership in the state of California primarily for personal,

---

[1] The original complaint was filed on June 24, 2016. (Dkt. No. 1.)
[2] Page numbers are based on the CM/ECF pagination.

2

family, or household purposes, and who still own the vehicle and have not settled any disputed claim with FCA US related to the vehicle.

(Dkt. No. 337-1 at 11.) On May 8, 2020, the Court denied Defendant's motion to decertify class, and in the alternative, motion to modify class definition. (Dkt. No. 348.) After full briefing regarding disputes over the class notice and notice plan, on August 27, 2020, the Court granted in part Plaintiff's renewed motion for order for approval of class notice and notice plan. (Dkt. No. 353.)

On November 20, 2020, in light of two recent cases, *Niedermeier v. FCA US LLC*, 56 Cal. App. 5th 1052 (2020) and *In re Volkswagen "Clean Diesel' Mktg. Sales Pracs. and Products Liab. Litig.*, -- F. Supp. 3d --, 2020 WL 6688912 (N.D. Cal. Nov. 12, 2020) ("*Clean Diesel*"), Defendant filed the instant motion for reconsideration solely on the issue of modifying the class definition to "[a]ll persons who purchased **and still own,** or who leased, in California, from an authorized dealership, a new Class Vehicle primarily for personal, family or household purposes." (Dkt. No. 355-1 at 11.) Plaintiff responds that these two cases are not on point and the class definition is line with his theory of damages. (Dkt. No. 359.) FCA replied. (Dkt. No. 362.)

## Discussion

### A. Legal Standard on Motion for Reconsideration in Class Action

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (citing Fed. R. Civ. P. 23(c)(1)(C)). "[D]istrict courts have broad discretion to modify class definitions." *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 575 (N.D. Cal. 2018) (citations omitted). "In considering the appropriateness of [modification or] decertification, the standard of review is the same as a motion for class certification:

whether the Rule 23 requirements are met.'" *Roy v. Cnty. of Los Angeles*, No. CV 13-04416-AB (FFMx), 2018 WL 3435417, at *2 (C.D. Cal. July 11, 2018) (quoting *Marlo v. United Parcel Serv. Inc.,* 251 F.R.D. 476, 479 (C.D. Cal. 2008)); *see also Lyon v. United States Immigr. & Customs Enforcement*, 308 F.R.D. 203, 210-11 (N.D. Cal. 2015); *Astiana v. Kashi Co.*, 295 F.R.D. 490, 492 (S.D. Cal. 2013) (same).

**B.     Analysis**

This litigation has been ongoing for almost five years.  By its motion for reconsideration, FCA seeks once more to modify the class definition to effectively exclude former owners and narrow the class to original purchasers who still own the Class Vehicles.  Further, in that the purchases of the Class Vehicles, consisting of 2013-2015 Dodge Dart, occurred at least six or more years ago, there is a strong likelihood that a significant amount of the original purchasers have resold or disposed of their vehicles.  By limiting the Class Vehicles to the purchasers who still own the Class Vehicles would render FCA free of any significant damages if liability were found and would not compensate the former purchasers of the injuries they suffered when they purchased the Class Vehicles.

FCA argues that this action is required based on two recent cases that "unequivocally concluded that any alleged damages recouped by a vehicle owner upon resale/disposal are an element of the awardable damages and not a matter of an affirmative defense to be treated as a set-off."  (Dkt. No. 355-1 at 7.)  According to FCA, Plaintiff's damage methodology fails to account for this recoupment and does not fit his theory of liability for former owners.  In response, Plaintiff contends that the two cases are inapposite, that his damages model fits his theory of liability as approved by the Ninth Circuit in *Nguyen v. Nissan N. America, Inc.*, 932 F.3d 811 (9th Cir. 2019), and post-sale events are irrelevant for class certification and is an attempt to further delay the case. (Dkt. No. 359 at 2.)

As the parties already are familiar, at class certification, the Court's role is to determine whether Plaintiff has presented a damages model that is consistent with his liability case. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). Plaintiff "must be able to show that [his] damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). The Ninth Circuit has also continued to hold, post-*Comcast,* that damages calculations cannot defeat predominance. *Id.* at 513-14; *Nguyen,* 932 F.3d at 821; *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) ("[d]amages calculations alone . . . cannot defeat certification"); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014) ("So long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed did not defeat class certification."); *see also Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("[i]t would drive a stake through the heart of the class action device . . . to require that every member of the class have identical damages.") In *Butler,* Judge Posner noted that the existence of a "single, central, common issue of liability" was sufficient to support class certification and that "the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses . . . ." *Butler*, 727 F.3d at 801-02.

This Court has already concluded on more than one occasion, for purposes of class certification, that Plaintiff has presented a benefit of the bargain damages model that is consistent with his breach of implied warranty claims. (Dkt. Nos. 318, 348.) Relying on the Ninth Circuit opinion in *Nguyen v. Nissan North Am., Inc.*, 932 F.3d 811 (9th Cir. 2019), the Court ruled that Plaintiff's benefit of the bargain theory purports to measure the "economic harm . . . at the point of sale or before based on the difference in value between a defective and a defect-free Clutch System." (Dkt. No. 318 at 15.) The

1 damages would be "the average cost of replacing the allegedly defective clutch system."
2 *See Nguyen,* 932 F.3d at 821.

3      Similar to the theory of liability in *Nguyen*, Plaintiff's theory is that the clutch
4 system *itself* was the injury and occurred at the time of sale irrespective of whether the
5 clutch system caused any subsequent performance issues.  *See Nguyen,* 932 F.3d at 822.
6 Therefore, the purchasers of the Class Vehicles all suffered an injury at the time of sale
7 and damages are determined at that point in time.  In modifying the class definition, FCA
8 seeks to exclude former owners of the Class Vehicles and prevent them from being
9 compensated for the injuries they suffered.  Moreover, in effect, FCA would escape
10 liability for a significant number of Class Vehicles that were resold or disposed of by the
11 original purchasers.

12      On their earlier motion to decertify, FCA first raised the issue concerning the
13 recoupment of money upon the purchasers' resale or disposal raised in this motion for
14 reconsideration.  In that motion, FCA argued that the class definition should be modified
15 to include only current owners of the Class Vehicles because individual determinations
16 would predominate over common ones based on the possibility that the original
17 purchasers who resold the Class Vehicles would have recouped some or all of the
18 damages from the resale.  (Dkt. No. 337 at 8-11.)  The Court addressed this argument and
19 rejected this position and found *Sloan v. Gen. Motors LLC*, Case No. 16-cv-07244-EMC,
20 2020 WL 1955643, at *48 (N.D. Cal. Apr. 23, 2020), a case relied on by FCA,
21 distinguishable.  (Dkt. No. 348 at 12-13.)  The *Sloan* case involved both current and
22 former owners or lessees of the class vehicle; therefore, the court was confronted with a
23 potential damages calculation problem given that current and prior owners of the same
24 class vehicles would have to split the damages and splitting damages would not satisfy
25 the remedy of the cost of repair for the current owner.  *Id.*  Moreover, requiring "GM to
26 pay a current owner of a used vehicle the full cost of repair in addition to paying some

pro-rata benefit to prior owners would subject GM to multiple recovery." *Id.* Therefore, the *Sloan* court modified the class definition to include only the current owners or lessees. In its prior order, the Court noted that the dilemma presented in *Sloan* was not present in this case where the class includes only the original purchasers of new Class Vehicles from an authorized dealership and does not include subsequent owners. (Dkt. No. 348 at 13.)

Now, in its reconsideration motion, FCA argues that two recent cases, demonstrate that any money recouped by a purchaser through the resale or disposal of the Class Vehicles must be considered as part of damages to be determined at class certification and not as an offset to be determined later during the damages phase at trial. (Dkt. No. 355-1) ("Ultimately, these courts held that owners of an allegedly defective vehicle cannot pursue a damage theory premised on an entitlement to the full amount of a purported benefit-of-the-bargain loss if it is possible those owners recouped some or all of that loss upon a resale of the allegedly defective product.").) FCA explains that because Plaintiff's damages model fails to account for any recoupment upon resale, it does not "fit" for former owners of the Class Vehicles.

In *Niedermeier v. FCA US LLC*, 56 Cal. App. 5th 1052 (2020), the court of appeal held that the Song-Beverly Act's restitution remedy for breach of express warranty under section 1793.2(d)(2)(B) requiring a manufacturer to "make restitution in an amount equal to the actual price paid or payable by the buyer" excludes amounts recovered from the trade-in of the defective vehicle. *Id.* at 1072. In January 2011, the plaintiff purchased a new Jeep Wrangler for about $40,000 and over several years she experienced problems and brought it in for repairs multiple times. *Id.* at 1061. In April 2015, the plaintiff asked the defendant to buy back the vehicle but it refused. *Id.* at 1062. Later, the plaintiff traded the Jeep Wrangler in exchange for $19,000 off the purchase price of a new GMC vehicle that cost about $80,000. *Id.* In October 2016, the plaintiff filed the complaint

against the defendant and after trial, the jury found in her favor on the breach of express warranty and awarded her damages of $39,584.43 which included the purchase price of the vehicle plus certain charges and taxes, $5,000 in incidental and consequential damages and a civil penalty of $59,376.65, one and a half times the damages award for a total of $98,961.08.[3] *Id.* at 1062.  After trial, Defendant sought an offset and reduction of the civil penalty based on the $19,000 received in Plaintiff's trade-in of the Jeep and the trial court refused.  *Id.* at 1063.

On appeal, the *Niedermeier* court ruled that the amount of damages should be reduced by the $19,000 trade-in amount but not the civil penalty as the jury had already factored in the trade-in proceeds.  *Id.* at 1077-78.  The court reasoned that the equitable remedy of restitution attempts "to restore a plaintiff to the financial position in which she would have been had she not purchased the vehicle."  *Id.* at 1061.  The court of appeal held that a full refund from the defendant plus the proceeds of the trade-in would place the plaintiff in a better position "than had she never purchased the vehicle, a result inconsistent with 'restitution.'"  *Id.*  Therefore, by allowing the plaintiff to recover a full refund and also the $19,000 benefit she received by trading in her vehicle would provide her with an unjustified windfall.  *Id.*  Second, it would affect the labeling and notification requirements under the lemon law provision of the Song-Beverly Act and render them meaningless.  *Id.* at 1072.  In conclusion, the court held that the requirement in section 1793.2(d)(2)(B) that "a manufacturer 'make restitution in an amount equal to the actual price paid or payable by the buyer' does not include amounts already recovered by the buyer through trade-in."  *Id.* (citation omitted).

---

[3] In a footnote, the court of appeal noted the jury also awarded damages for breach of implied warranty in the amount of $20,799 but those damages were not added to the final award "presumably because they were duplicative." *Niedermeier*, 56 Cal. App. 5th at 1062 n. 4.

*Niedermeier* dealt with a "restitution interest" under a breach of express warranty claim, Civil Code section 1793.2(d)(2)(B), which the Court has previously explained, (Dkt. No. 265 at 31-33), is distinct from an "expectation interest" in receiving the benefit of the bargain under an implied warranty claim under Commercial Code section 2714.[4] *See generally* Restatement (Second) of Contracts § 344 (1981) (noting that a promisee's "'expectation interest' . . . is his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed"). *Niedermeier* did not decide whether the recoupment upon resale or trade-in operated as a set-off under a benefit-of-the-bargain damages model.  Further, *Niedermeier* was not a class action case requiring analysis of the damages model under *Comcast*.  Finally, *Niedermeier* dealt with the lemon law provisions of the Song-Beverly Act requiring the defendant to buyback the vehicle at the original purchase price; in contrast, this case concerns damages in the form of the average replacement cost of the clutch system. *Niedermeier* does not compel this Court to modify the class definition.

The second case, *In re Volkswagen "Clean Diesel' Mktg. Sales Pracs. and Products Liab. Litig.*, -- F. Supp. 3d --, 2020 WL 6688912 (N.D. Cal. Nov. 12, 2020), involved a putative class action where the district court excluded the plaintiffs' expert on damages, concluded that the plaintiffs lacked standing and dismissed the case for lack of jurisdiction.  *Id.* at *10.  In order to streamline the standing issue and consider whether the approved methodology to prove damages could be used to calculate damages on a class-wide basis, the court directed the plaintiffs to provide their proof of damages with

---

[4] Section 2714 of the California Commercial Code provides that, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Cal. Com. Code § 2714.

1  admissible evidence. *Id.* at *2. In response, the defendants moved to exclude the
2  plaintiffs' expert evidence as unreliable. *Id*. at *4.

3      The *Clean Diesel* case was unique with its own set of complex facts not applicable to this case. In *Clean Diesel*, VW sold plaintiffs "clean diesel" vehicles which were marketed as environmentally friendly, fuel efficient, and high performing. Consumers were unaware that VW had installed defeat devices that permitted the vehicles to evade the emissions test procedures such that, on the road, the "clean diesel" vehicles produced nitrogen oxides at 40 times over the permitted level. *Id.* at *1. These plaintiffs later sold their vehicles or exited their leases with their vehicles before VW's fraud was publicly known. *Id.* The court described the unique allegations as follows: "where consumers each purchased a car, a well-known depreciating asset, where they each paid a premium for a feature they did not receive, and where they resold the cars before learning that the feature was missing." *In re Volkswagen "Clean Diesel" Mktg. Sales Pracs., and Products Liab. Litig.,* 349 F. Supp. 3d 881, 889-90 (N.D. Cal. Oct. 3, 2018).

      The court observed that it was possible that the consumers were injured "if the amount they paid for low emissions they did not get was greater than the amount they later received for low emissions they did not give." 2020 WL 6688912, at *1. At the same time, the court noted that it would be difficult to isolate and measure the low emissions premium and its depreciation in light of the fact that the "diesel" premium included other features such as better fuel economy and driving performance. *Id.* at *2. Ultimately, the district court rejected the plaintiffs' argument that the measure of damages would be the amount the plaintiffs paid for their cars less the fair market value of those cars at the time of sale. *Id.* at *2, 6-7.

      The plaintiffs acknowledged "that the price of the cars was likely inflated not only when they purchased them, but also when they resold them." 349 F. Supp. 3d at 889. Instead, the plaintiffs claimed that "they did not recover all of their overpayment through

resale because a portion of the premium they paid for a low-emission vehicle depreciated." *Id.* "The former owners do not assert that their injury is equal to the entire amount by which the cars depreciated, only that a portion of the low-emission premium depreciated and that, because the premium was for a feature the cars never had, this extra depreciation is a loss that is attributable to VW's deceit." *Id.* The plaintiffs' injury or damages was the difference in depreciation of the low emissions premium from purchase to resale. In the end, the plaintiffs failed to quantify the premium associated with the low emissions feature. 2020 WL 6688912, at *7-8.

*Clean Diesel* does not inform the Court that the class definition in this case should be altered for purposes of class certification.[5] In contrast to *Clean Diesel*, Plaintiff has standing and suffered injury based upon a defective clutch system at the time of sale. The Court reiterates that the purchasers of the new Class Vehicles were all damaged at the time of sale and damages of the average cost of replacement is in line with breach of implied warranty claims and complies with *Comcast*.

Remaining for the Court to address at the motions in limine hearing are the following issues: (1) whether an owner's resale of a Subject Vehicle are factors that reduce the amount of benefit-of-the-bargain damages that the class members are entitled to receive; (2) if so, do these amounts constitute an offset to damages; and (3) which party has the burden of proving an offset. In the event that the Court determines that the resale or disposal of the Class Vehicles is relevant to the calculation of the benefit of the bargain damages, it "can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses . . . ." *See Butler*, 727 F.3d at 801-02.

---

[5] In addition, *Clean Diesel* did not concern a breach of implied warranty claim but claims under RICO as well as numerous states' consumer protection laws. (*In re Volkswagen*, Case No. 17cv4372-CRB, Dkt. No. 42, FAC (N.D. Cal. Nov. 2, 2018).)

At this time, the Court concludes that the case involves a "single, central, common issue of liability" that supports class certification for the proposed class as defined. Further, all class members have sufficiently alleged injury because they were denied the benefit-of-the-bargain at the time of purchase. The Court will defer the remaining questions regarding possible set offs or recoupment until trial. Therefore, the Court DENIES FCA's motion for reconsideration.

## Conclusion

Based on the reasoning above, the Court DENIES Defendant's motion for reconsideration.

IT IS SO ORDERED.

Dated: February 18, 2021

*(signature)*
Hon. Gonzalo P. Curiel
United States District Judge