Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

*Attorneys for Plaintiff Carlos Victorino*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.: 3:16-CV-01617-GPC-JLB<br><br>**OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS**<br><br>District Judge: Hon. Gonzalo P. Curiel<br>Magistrate Judge: Hon. Jill L. Burkhardt<br><br>Hearing Date:<br>Hearing Time: 1:30p.m.<br>Location: 221 West Broadway<br>Courtroom 2D, 2nd Fl. |

## I. INTRODUCTION

After numerous failed attempts to dismantle the class, Defendant FCA US LLC ("FCA US") is trying yet again. This time, FCA US asserts that two recent opinions, *TransUnion LLC v. Ramirez*, __ U.S. __, 141 S.Ct. 2190 (2021) ("*TransUnion*") and *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 782 (9th Cir. 2021) ("*Olean*"), "compel" this Court to decertify the class.

On August 3, 2021, the Ninth Circuit en banc court ordered a rehearing en banc of the appeal in *Olean* and vacated the panel decision. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 5 F.4th 950 (9th Cir. 2021). Because the *Olean* panel decision is no longer good law, Plaintiff need not belabor the point by responding to FCA's discussion of that case.

As for *TransUnion*, FCA overreads the decision while distorting Plaintiff Carlos Victorino's theory of liability. In *TransUnion*, the United States Supreme Court addressed class members' standing following a bench verdict awarding over $60 million in statutory and punitive damages for violations of the Federal Credit Reporting Act ("FCRA"). Acknowledging that the defendant failed to comply with various procedural requirements, the Supreme Court majority observed that the parties stipulated that, for a portion of the class numbering 6332, the defendant did not disseminate potentially harmful reports to any third-party creditors. The *TransUnion* majority found that that group of class members did not experience a "concrete injury" that would confer Article III standing.

*TransUnion* is far afield from this case. At issue in *TransUnion* were procedural infractions under the FCRA, which confers injury and awards penalties to consumers who can demonstrate procedural errors. The technical nature of consumers' alleged "statutory injury" under the FCRA has triggered much of the Article III jurisprudence in recent years. *See, e.g., Spokeo, Inc. v. Robins*, 578 U.S. 856 (2016). More importantly, *TransUnion* addressed a merits

decision, finding that a portion of the class failed to maintain Article III standing *through trial* because they stipulated to facts that show no actual "concrete injury" could have occurred.

None of that is salient here. Plaintiff alleges that FCA breached its implied warranty of merchantability against all class members by equipping all class vehicles with a defective hydraulic clutch system. Plaintiff's claim, if established, goes well beyond the kind of procedural infraction at issue in *TransUnion*. Indeed, FCA seeks to deprive Plaintiff of the opportunity to prove up his and the class's claims, by asking this Court to decertify the class prior to the Court's resolution of the factual dispute in this case, which is whether the class vehicles' clutch system has a design defect. In *TransUnion*, the action reached a jury verdict, and the dispositive fact on appeal—that the potentially harmful credit information was never disseminated by the defendant to third parties—was stipulated by the parties.

Because nothing has changed since the Court's certification order and *TransUnion* does not apply to the facts or procedural posture of this action, FCA's motion to decertify the class must be denied.

## I. SHORT SUMMARY OF RELEVANT FACTS

In his first amended class action complaint ("FAC"), Plaintiff alleged that a design defect in Dodge Dart vehicles, built on or before November 12, 2014 and equipped with a Fiat C635 manual transmission ("Class Vehicles"), caused his vehicle's clutch to fail. (Dkt. No. 104, FAC ¶¶ 1, 2, 52.) Plaintiff specifically alleges that an inherent defect in the hydraulic clutch system ("Clutch System") that existed in all Class Vehicles at the time of sale that causes the clutch pedal to lose pressure, stick to the floor, and prevents his gears from engaging and/or disengaging. (Dkt. No. 104, FAC ¶ 7.) Plaintiff asserts that this problem is caused by the degradation of the clutch reservoir hose, which releases plasticizer and fibers, causing contamination of the hydraulic fluid that bathes the

1    components of the Clutch System. (*Id*.)

2         Defendant subsequently moved for summary judgment, and the Court
3    granted, in part, Defendant's motion (and subsequent motion for
4    reconsideration), regarding Plaintiff's claim under the Consumer Legal
5    Remedies Act. (Dkt. Nos. 206, 240.) Thereafter, Plaintiff moved for class
6    certification for breach of implied warranty of merchantability under the Song-
7    Beverly Act and the MMWA, and a UCL claim premised on the breach of
8    implied warranty claims.

9         Initially, the Court denied class certification. (Dkt. No. 265.) Following
10   the Ninth Circuit's granting of Plaintiff's petition for permission to appeal the
11   Court's ruling pursuant to Federal Rule of Civil Procedure ("Rule") 23(f) with
12   the Ninth Circuit and holding it in abeyance pending decision in another case.
13   (Dkt. Nos. 289, 298.) That case, *Nguyen v. Nissan North Am., Inc.*, 932 F.3d 811
14   (9th Cir. 2019), reversed a decision relied on by this Court. After the appeal was
15   withdrawn, the Court scheduled dates for a renewed motion for class
16   certification.

17        The Court granted Plaintiff's renewed motion for class certification on
18   October 17, 2019 ("Certification Order"), certifying a class consisting of: "All
19   persons who purchased or leased in California, from an authorized dealership, a
20   new Class Vehicle primarily for personal, family, or household purposes." (Dkt.
21   No. 311)

22   **II.   ARGUMENT**
23       **A.   FCA'S MOTION MUST BE DENIED BECAUSE NO NEW**
24           **FACTS WARRANT A RECONSIDERATION OF THE PRIOR**
25           **CERTIFICATION ORDER**

26        Nothing has materially changed since the Court certified the class in 2019.
27   *See Victorino v. FCA US LLC*, 2019 WL 5268670 (S.D. Cal. Oct. 17, 2019). In the
28   intervening twenty-two months, FCA has deployed every tactic in the book to

delay the prompt and orderly dissemination of the class notice. FCA has unsuccessfully sought Ninth Circuit review of this Court's order granting class certification (Dkt. No. 324), moved to decertify the class or in the alternative modify the class definition (Dkt. No. 337), sought Ninth Circuit review of this Court's order denying its motion to decertify or modify the class definition (Dkt. 349) (Dkt. No. 354), moved for reconsideration of the Court's order denying motion to modify class definition (Dkt. 355), and lodged myriad objections over the language of the class notice. (Dkt. No. 333.) None of this has worked, and now FCA is seizing upon inapposite case law to further delay proceedings.

While it is true that certification is "conditional" and can be revisited by this Court, no factual developments have occurred since the Certification Order that could alter this Court's considered findings. In finding predominance, the Court first addressed the factual dispute at the heart of this case: Plaintiff argues that the "sticky pedal" problem arises from a design defect with the reservoir hose while FCA contends that no defect exists, or, if any defects exist, they are non-uniform manufacturing defects. *Victorino*, 2019 WL 5268670, at \*\*5-6. But after summarizing the parties' respective positions, this Court correctly found that "the parties present a factual dispute on the merits of whether there was a defect on all Class Vehicles at the time of sale and is not proper on a motion for class certification." *Id.* at \*6.

FCA has not presented any new facts that would allow the Court to resolve this factual dispute on the merits, and so there is no basis to revisit the Certification Order.

### B.   *TRANSUNION* DOES NOT SUPPORT DECERTIFICATION OF THIS CLASS

Devoid of new facts, FCA moves to decertify a class based solely on a new case that adjudicate a class's standing after the merits have been resolved. FCA's motion primarily relied on an expansive reading of *Olean*. But *Olean* has now

been vacated by the en banc court, which not only indicates problems with the panel decision's reasoning , but suggests that a broad construction of *Olean* would certainly not hold up to Ninth Circuit scrutiny.

FCA also cited to *TransUnion*, which has little obvious application to this case. In *TransUnion*, the Court had the "helpful benefit of a jury verdict." *TransUnion*, 141 S. Ct. at 2222 (Thomas, J., dissenting). The Court was able to ascertain the Article III standing of class members with no injury because the factual dispute has already been resolved.

In *TranUnion*, the United States Supreme Court vacated a verdict of statutory and punitive damages to a class alleging FCRA violations, finding that a portion of the class did not have standing. Plaintiffs alleged that the defendant, a credit reporting agency, failed to use "reasonable measures to ensure the accuracy of the file." *TransUnion*, 141 S. Ct. at 2202. The defendant had placed an alert on certain consumers a "potential match" with a list maintained by Treasury Department's Office of Foreign Assets Control (OFAC) of terrorists, drug traffickers, and other serious criminals. *Id*. at 2201. These alerts were based on a match between the consumer's first and last name matched the first and last name of an individual on OFAC's list—resulting in numerous errors. *Id*.

Although the defendant appeared to have violated certain procedural requirements to "achieve maximum accuracy" as required by the FCRA, the defendant had disseminated credit reports only for about 1,853 of the 8,185 total class members. *Id.* at 2208-09. The *TransUnion* majority found that those class members suffered "concrete injury," giving rise to Article III standing. *Id*. at 2809. But for the remaining 6,332 class members who did not have their credit reports disseminated by the defendant to a third party, they did not experience actual injury—they were only subject to a statutory violation. While the class argued that they suffered injury because of potential future harm, the Supreme Court held that plaintiffs there failed to "factually establish a sufficient risk of

1    future harm to support Article III standing." *Id*. at 2212.

2    Contrary to the FCA's overreading *TransUnion*, the decision has no
3    application here. First, as discussed, *TransUnion*'s finding came after a jury
4    verdict. Indeed, in seeking to resolve the fate of the 6,332 class members that,
5    according to the *TransUnion* majority, ultimately did not meet the requirements
6    for Article III standing, "the parties stipulated that TransUnion did not provide
7    those plaintiffs' credit information to any potential creditors during the designated
8    class period." *TransUnion*, 141 S. Ct. at 2197. In other words, there was no factual
9    dispute in TransUnion—the question was a legal one: can class members who did
10   not have their credit reports disseminated experience a "concrete injury"? The
11   Court's answer was no.

12   Here, of course, the parties have "a factual dispute on the merits of whether
13   there was a defect on all Class Vehicles at the time of sale." *Victorino*, 2019 WL
14   5268670, at *6. The Court must resolve the factual issue *first*. To get around the
15   problem that Plaintiff's sufficiently alleged Article III standing, FCA simply
16   regurgitates its unsupported assertion that many members of the Class are
17   uninjured and therefore could not achieve Article III standing. (Motion to
18   Decertify, at 9:3-19.) It preposterously claims that Plaintiff failed to "did not even
19   allege that an injury could exist without a defect." (*Id*. at 9:8.) FCA goes so far as
20   to claim that the "only injury Plaintiff claimed – a loss of benefit of the bargain for
21   having received a defective vehicle instead of a non-defective one – could not
22   possibly have been sustained unless a class member received a vehicle with the
23   allegedly defective clutch system." (*Id*. at 9:9-12.)

24   This is flatly false. As this Court has stated, "[s]ince the beginning of the
25   litigation, Plaintiff has alleged that the Class Vehicles contain a design defect that
26   was inherent in all Class Vehicles at the time of sale." *Victorino*, 2019 WL
27   5268670, at *6 (citing Dkt. No. 104, FAC ¶¶ 17, 24, 62, 101, 116, 130, 133.) The
28   Court also observed that "Plaintiff's expert has also opined that the defect was

present at the time of sale in all Class Vehicles." *Id*. (citing Dkt. No. 311-3, Zohdy Decl., Ex. N, Stapleford Expert Report at 133). Quite simply, Plaintiff has sufficiently alleged Article III standing. Whether Class Members can maintain standing through trial is something the Court will need to resolve during the merits stage.

Moreover, *TransUnion* is factually distinguishable from this case because it involved a fundamentally different type of injury than alleged here. In *TransUnion*, the plaintiffs asserted claims for violations of the FCRA, alleging that the defendant disseminated false credit reports. *Id.* at 2201-02. The Supreme Court found, even where Congress created a statutory right for a consumer to seek redress for injuries to them personally, Article III standing is not satisfied unless the plaintiff's injury has a "close historical or common-law analogue." *Id.* at 2204. Accordingly, the false credit reports only caused an injury where they were disseminated because such dissemination was analogous to the "reputational harm associated with the tort of defamation." *Id.* at 2208. In holding that that not all members of the class had standing, the Supreme Court found that class members who false credit reports were *not* disseminated could not show injury-in-fact because dissemination was analogous to publication, and "publication is 'essential to liability' in a suit for defamation." *Id.* at 2209 (quoting Restatement of Torts § 577, Comment a, at 192). Accordingly, only those consumers whose false credit reports were disseminated had standing to sue.

Class members suffered a constitutional injury despite the fact that Plaintiff has clearly alleged damages as the result of purchasing a vehicle with an inherent defect. Plaintiff alleges that the design defect is inherent in each Class Vehicle and thus, present at the time of sale. Indeed, in the Certification Order, this Court recognized that "Plaintiff has alleged that the Class Vehicles contain a design defect that was inherent in all Class Vehicles at the time of sale." *Victorino*, 2019 WL 5268670, at *5. For breach of implied warranty, a plaintiff need only

demonstrate that the product "contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product." *Id.* (citation omitted). As the Court recognized, Plaintiff's theory is that "Class Vehicles are 'merchantable' and whether the defect constitutes an unreasonable safety risk because all Class Vehicles were equipped with the same defectively designed Clutch System at the time of sale." *Id.* Accordingly, because Plaintiff alleges that he and all class members are injured, this Court cannot find that Class Members lack standing.

*TransUnion* does not apply to this case—and certainly not at this stage in the proceedings. Nothing presented in FCA's motion to decertify merits a reconsideration of this Court prior, well-reasoned Certification Order.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny FCA's motion to decertify the Class.

Dated: August 20, 2021　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　Capstone Law APC


　　　　　　　　　　　　　　　　By: /s/ Cody R. Padgett
　　　　　　　　　　　　　　　　　　Tarek H. Zohdy
　　　　　　　　　　　　　　　　　　Cody R. Padgett

　　　　　　　　　　　　　　　　*Attorneys for Plaintiff and the Class*