UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO and ADAM TAVITIAN, individually, and on behalf of other members of the general public similarly situated,<br><br>                                    Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>                                    Defendant. | Case No.:  16cv1617-GPC(JLB)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DECERTIFY CLASS**<br><br>**[Dkt. No. 370.]** |

Before the Court is Defendant's second motion to decertify class.  (Dkt. No. 370.) Plaintiff filed an opposition and Defendant replied.  (Dkt. Nos. 374, 376.)  The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1).  Based on the reasoning below, the Court DENIES Defendant's motion to decertify.

/ / /

/ / /

/ / /

1

**Background**

Plaintiff Carlos Victorino[1] ("Victorino" or "Plaintiff") filed the operative putative first amended class action complaint ("FAC") against Defendant FCA US LLC ("FCA" or "Defendant") based on defects in the 2013-2015 Dodge Dart vehicles equipped with a Fiat C635 manual transmission built on or before November 12, 2014 ("Class Vehicles"). (Dkt. No. 104, FAC.)  He claims that the alleged defect causes his vehicle's clutch to fail and stick to the floor.  (*Id.*)  The FAC alleged five causes of action for violations of California's Consumer Legal Remedies Act ("CLRA"), California's unfair competition law ("UCL"), a state law breach of implied warranty pursuant to the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), a federal law breach of implied warranty pursuant to the Magnuson-Moss Warranty Act ("MMWA"), and unjust enrichment.  (*Id.*) After the Court's ruling on Defendant's motion for summary judgment and subsequent motion for reconsideration, the remaining causes of action in the case are the breach of implied warranty of merchantability under the Song-Beverly Act and the MMWA, and a UCL claim premised on the breach of implied warranty claims.  (Dkt. Nos. 206, 240.)

On June 13, 2018, the Court denied class certification and relied on the reasoning in *Nguyen v. Nissan North Am.,* Case No. 16cv5591-LHK, 2018 WL 1831857 (N.D. Cal. Apr. 9, 2019), to deny class certification on the issue of whether Plaintiff's damages model satisfied predominance.  (Dkt. No. 265.)  On July 26, 2019, the Ninth Circuit reversed the district court's denial of class certification in *Nguyen* and remanded the case for further proceedings.  *See Nguyen v. Nissan North Am., Inc.,* 932 F.3d 811 (9th Cir. 2019).  Relying on the Ninth Circuit's reasoning in *Nguyen*, on October 17, 2019, the

---

[1] Plaintiff Adam Tavitian was also a named Plaintiff in the FAC but, due to a settlement, the Court granted the parties' joint motion to dismiss him on June 22, 2018.  (Dkt. Nos. 259, 260, 266, 267.)

16cv1617-GPC(JLB)

Court granted Plaintiff's renewed motion for class certification.  (Dkt. No. 318.)  The class is defined as,

> All persons who purchased or leased in California, from an authorized dealership, a new Class Vehicle primarily for personal, family or household purposes.

(*Id.* at 24.[2])  On May 8, 2020, the Court denied Defendant's motion to decertify class.  (Dkt. No. 348.)  The Court rejected FCA's argument that the class as currently defined raised significant individual issues in identifying the class members, that the class as defined would require numerous individual trials in determining affirmative defenses, and individual issues would predominate concerning damages.  (*Id.*)  On May 20, 2020, FCA filed a petition for permission to appeal the Court's order.  (Dkt. No. 349.)  On August 31, 2020, the Ninth Circuit denied FCA's petition for permission to appeal.  (Dkt. No. 354.)

On November 20, 2020, FCA filed a motion for reconsideration of the Court's order denying motion to decertify specifically seeking to modify the class definition.  (Dkt. No. 355.)  After full briefing, on February 19, 2021, the Court denied FCA's motion for reconsideration.  (Dkt. Nos. 359, 362, 366.)

On July 27, 2021, FCA filed the instant second motion to decertify based on recent United States Supreme Court and Ninth Circuit precedent which is fully briefed.  (Dkt. No. 371, 374, 376.)

**Discussion**

**A.     Legal Standard of Decertification**

"An order that grants or denies class certification may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C); *Rodriguez v. West Publ'g Corp.*, 563

---

[2] Page numbers are based on the CM/ECF pagination.

F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time").  The Court may consider "subsequent developments in the litigation."  *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982).

A "party seeking *decertification* of a class should bear the burden of demonstrating that the elements of Rule 23 have not been established."  *Slaven v. BP America, Inc*., 190 F.R.D. 649, 651 (C.D. Cal. 2000) (emphasis in original); *Gonzales v. Arrow Fin. Servs*., Inc., 489 F. Supp. 2d 1140, 1153 (S.D. Cal. 2007).  The standard for class decertification is the same as class certification: a district court must be satisfied that the requirements of Rules 23(a) and (b) are met to allow plaintiffs to maintain the action on a representative basis.  *Marlo v. United Parcel Serv., Inc*., 639 F.3d 942, 947 (9th Cir. 2011); *see also O'Connor v. Boeing N. Am., Inc.,* 197 F.R.D. 404, 410 (C.D. Cal. 2000) (in evaluating whether to decertify the class, the court applies the same standard used in deciding whether to certify the class in the first place). The district court has discretion on whether to decertify a class.  *See Knight v. Kenai Peninsula Borough Sch. Dist*., 131 F.3d 807, 816 (9th Cir. 1997).

Under Rule 23(b)(3), the plaintiff must demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Predominance is satisfied "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *True Health Chiropractic, Inc. v. McKesson Corp*., 896 F.3d 923, 931 (9th Cir. 2018) (quoting *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 589 (9th Cir. 2012)).

It is to be noted that the question on decertification is whether the Rule 23 elements continue to be satisfied, *see Marlo*, 639 F.3d at 947, and not conduct a mini-trial to determine if the class "could actually prevail on the merits of their claims."  *See Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 983 n.8 (9th Cir. 2011).  The district court must

delve into the merits of the underlying claim only to the extent necessary to determine whether common questions of law or fact predominate. *Id.* "The fact that certain elements of proof may favor the defendant on the merits does not negate class certification; the issue is whether the proof is amenable to class treatment." *Siqueiros v. General Motors LLC*, Case No. 16-cv-07244-EMC, 2021 WL 4061708, at *3 (N.D. Cal. Sept. 7, 2021). Moreover, "[n]either the possibility that a plaintiff will be unable to prove [her] allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for [decertifying] a class which apparently satisfies the Rule." *Id.* (quoting *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)).

**B.   Analysis**

Defendant argues that the class should be decertified based on the recent rulings in *TransUnion LLC v. Ramirez,* __U.S.__, 141 S. Ct. 2190 (2021), and *Olean Wholesale Grocery Coop., Inc. Bumble Bee Foods LLC*, 993 F.3d 774, 782 (9th Cir. 2021) contending Plaintiff must now "prove, by a preponderance of the evidence, that all members of the class suffered an injury-in fact to establish standing to pursue their claim." (Dkt. No. 370-1 at 4.) Because FCA's evidence shows that more than 80% of class members in this case suffered no injury at all, the class must be decertified. (*Id.* at 4.) In response, Plaintiff argues that *TransUnion* is distinguishable because the standing issue was decided after a trial. (Dkt. No. 374.) Moreover, *Olean Wholesale* has no precedential significance because that panel decision was vacated and the Ninth Circuit ordered a rehearing *en banc*. *Olean Wholesale Grocery Coop., Inc. Bumble Bee Foods LLC,* 5 F. 4th 950 (2021). In reply, FCA maintains that the ruling in *TransUnion* warrants decertification of the class in this case. (Dkt. No. 376.) Because the decision in *Olean Wholesale* has been vacated, the Court only considers Defendant's argument concerning *TransUnion.*

16cv1617-GPC(JLB)

Article III, Section 2 the United States Constitution requires that a plaintiff have standing to bring a claim.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "[T]he 'irreducible constitutional minimum of [Article III] standing'" requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court noted that concreteness is quite distinct from particularization.  *Id.*  An injury is "particularized" if it affects "the plaintiff in a personal and individual way."  *Id.*  In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract."  *Id.*  However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id.* at 1549.  "Economic injury is clearly a sufficient basis for standing."  *San Diego Cnty. Gun Rights Committee v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) ("Economic injuries are '[c]ertainly' concrete.").

The plaintiff bears the burden of demonstrating the elements of Article III standing.  *Spokeo, Inc*., 136 S. Ct. at 1547.  A plaintiff must prove standing "with the manner and degree of evidence required at the successive stages of the litigation." *TransUnion*, 141 S. Ct. at 2208 (quoting *Lujan,* 504 U.S. at 561).  For example, on a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice" and on a summary judgment, a plaintiff "can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' [ ] which for purposes of the summary judgment motion will be taken to be true.  And at the

1    final stage, those facts (if controverted) must be "supported adequately by the evidence

2    adduced at trial." *Lujan*, 504 U.S. at 561 (citations omitted).  At summary judgment, that

3    means producing "evidence and specific facts" of concrete harm, traceability, and

4    redressability.  *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the U.S.*, 894 F.3d 1005,

5    1012 (9th Cir. 2018).  In a class action, Article III standing is met if at least one named

6    plaintiff satisfies the requirements.  *Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th

7    Cir. 2007).

8            On summary judgment, the Court concluded Plaintiff raised a genuine issue of

9    material fact whether the alleged defects in the Class Vehicles breached the implied

10   warranty of merchantability under state and federal law.[3]  (Dkt. No. 206.)  At class

11   certification, FCA argued that predominance could not be satisfied because Plaintiff

12   provided no evidence that there was a defect in all Class Vehicles at the time of purchase.

13   (Dkt. No. 318 at 7.)  After a review of the record, the Court concluded there was a factual

14   dispute on the merits of whether there was a defect on all Class Vehicles at the time of

15   sale and that this factual dispute was not proper on a motion for class certification.  (*Id.* at

16   12.)  It concluded that at trial, Plaintiff will have to prove that all Class Vehicles had a

17   defect at the time of sale and if Plaintiff fails to demonstrate a defect in all vehicles at the

18   time of sale, all class claims will fail in one fell swoop.  (*Id.* (citing *Amgen Inc. v. Conn.*

19   *Retirement Plans and Trust Funds*, 568 U.S. 455, 460 (2013) (Rule 23(b)(3) requires a

20   showing that there are questions common to the class predominate, not that the answer to

21   the questions will be in favor of the class, a merits question . . . a class claim "will prevail

22   or fail in unison.").)  Thus, the Court concluded that predominance had been met.

23

24

25

26   [3] Defendant did not raise the issue of standing at any time prior to the instant motion.  However, the
     argument Defendant raises to support its motion to decertify on standing concerns the merits of whether
27   the Class Vehicles had an inherent defect at the time of sale.

28                                                                                          16cv1617-GPC(JLB)

FCA now raises the same argument in the guise of standing arguing that its expert opined that 80% of class members did not suffer an injury.  However, this evidence and the issue whether all Class Vehicles had an inherent defect were already presented at class certification, and addressed in the Court's order granting class certification where it concluded there was a disputed issue of material fact on whether all Class Vehicles had a defect at the time of sale.  (*See* Dkt. No. 318 at 10-13.)  The Court found that for purposes of class certification, common issues predominate because, at trial, Plaintiff will have to prove that all Class Vehicles had a defect at the time of sale.  (*Id.*)

By raising a genuine issue of material fact at summary judgment, Plaintiff has provided the degree of evidence necessary at this stage of the litigation to support standing.  *See TransUnion*, 141 S. Ct. at 2208; *Central Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002) ("Thus, at the summary judgment stage the plaintiffs need not establish that they in fact have standing, but only that there is a genuine question of material fact as to the standing elements.").  Moreover, at class certification, Plaintiff demonstrated that common issues of fact and law predominate over individual ones.  Defendant has not provided any new facts or authority to alter the Court's prior decision on class certification.

*TransUnion* does not support Defendant's argument.  First, the Court addressed standing after a jury trial and not at summary judgment or class certification stage.  At trial, a plaintiff must support standing by a preponderance of the evidence.  *See TransUnion*, 141 S. Ct at 2208; *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999) ("'[W]here standing is challenged as a factual matter, the plaintiff bears the burden of supporting the allegations necessary for standing with "competent proof." . . . "Competent proof" requires a showing by a preponderance of the evidence that standing exists.'"); *see United States v. $57,790.00*, 263 F. Supp. 2d 1239, 1242 (S.D. Cal. 2003) ("at trial standing must be proved by a preponderance of the evidence").

16cv1617-GPC(JLB)

1    Therefore, Defendant's argument that Plaintiff, at this stage of the proceedings prior to

2    trial, must demonstrate by a preponderance of the evidence that common questions

3    predominate on the issue of standing is not supported by the ruling in *TransUnion.*

4         Next, *TransUnion* concerned a statutory violation of the Fair Credit Reporting Act

5    ("FCRA") addressing intangible injuries.  In *TranUnion,* the plaintiffs alleged that the

6    defendant "failed to comply with statutory obligations (i) to follow reasonable procedures

7    to ensure the accuracy of credit files so that the files would not include OFAC[4] alerts

8    labeling the plaintiffs as potential terrorists; and (ii) to provide a consumer, upon request,

9    with his or her complete credit file, including a summary of rights."  *TransUnion LLC*,

10   141 S. Ct. at 2207.  The Court held that inaccuracies or misleading information, by

11   themselves, in a consumer's internal credit file do not constitute concrete harm unless the

12   file had been transmitted to third parties and thereby caused reputational harm associated

13   with defamation.  *Id.* at 2208-10.  The Court rejected the plaintiffs' additional argument

14   that the inaccuracies themselves injured class members by raising the risk of future harm

15   because such claimed injury was "too speculative to support Article III standing" and

16   because "the plaintiffs did not demonstrate a sufficient likelihood" that the inaccurate

17   reports would be requested by and provided to third parties.  *Id.* at 2212.  Therefore, only

18   the named plaintiff and the 1,853 class members whose reports were disseminated had

19   standing because only these plaintiffs had proven a concrete harm.  *Id.* at 2214.

20        Here, in contrast to the intangible injuries suffered by the plaintiffs in *TransUnion,*

21   Plaintiff alleges that because all Class Vehicles inherently had a defective Clutch System

22   at the time of sale, he suffered economic loss under a benefit of the bargain theory which

23   purports to measure the difference in value between a defective and a defect-free Clutch

24   System.

25

26   _____

27   [4] United States Treasury Department's Office of Foreign Assets Control.

28                                                                    16cv1617-GPC(JLB)

"[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing."  *Sierra Club v. Morton*, 405 U.S. 727, 733–34 (1972); *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (plaintiffs have standing when they spend money "that, absent defendants' actions, they would not have spent"); *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing."); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) ("[A]n economic injury qualifies as a concrete injury," and "[a] person experiences an economic injury when, as a result of a deceptive act or an unfair practice, he is deprived of the benefit of his bargain.").  "Economic injury under the 'benefit of the bargain' theory is widely recognized to confer standing when adequately alleged."  *Short v. Hyundai Motor Co.,* 444 F. Supp. 3d 1267, 1277 (W.D. Wash. Mar. 16, 2020) (citations omitted).  In other words, allegations of "overpayment, loss in value, or loss of usefulness" confer standing.  *Id.*; *Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576, 578 (9th Cir. 2016) (plaintiff had standing because he alleged that he "suffered economic loss when he purchased a replacement regulator with an undisclosed safety defect"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1162 (C.D. Cal. 2010) ("While a statistically significant propensity for [an alleged vehicle defect] may not be considered 'actual' or 'imminent,' the market effect of the [alleged defect] undoubtedly is actual or imminent (as well as concrete and particularized).  Therefore, Plaintiff has properly asserted standing based on an economic loss.  *See TransUnion, LLC*, 141 S. Ct. at 2204 ("[t]he most obvious [concrete injuries] are traditional tangible harms, such as physical harms and monetary harms").

Accordingly, Defendant's reliance on *TransUnion* is misplaced and the Court DENIES Defendant's motion to decertify.  *See Siqueiros*, 2021 WL 4061708, at *3-4 ("Plaintiffs who purchased defective vehicles suffered a past concrete injury under

16cv1617-GPC(JLB)

1   Article III when they overpaid for those vehicles, regardless of whether they feel the

2   effects of the oil-consumption defect in the future.").

3                                               **Conclusion**

4           Based on the above, the Court DENIES Defendant's second motion for

5   decertification.  The hearing set on September 17, 2021 shall be **<u>vacated</u>**.

6           IT IS SO ORDERED.

7   Dated:  September 9, 2021

8                                                       Hon. Gonzalo P. Curiel
9                                                       United States District Judge

11

16cv1617-GPC(JLB)