1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VICTORINO and ADAM TAVITIAN, individually, and on behalf of other members of the general public similarly situated,<br><br>                                     Plaintiffs,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>                                     Defendant. | Case No.:  16cv1617-GPC(JLB)<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[Dkt. No. 431.]** |

Before the Court is Plaintiff Carlos Victorino's ("Plaintiff") motion for preliminary approval of class action settlement.  (Dkt. No. 431.)  A hearing was held on April 21, 2023.  (Dkt. No. 435.)  At the hearing, the Court raised some deficiencies it noted in the Long Form Notice and a discrepancy in the Settlement Agreement.  On May 5, 2023, the parties filed a revised Long Form Notice.  (Dkt. No. 436.)  Based on the reasoning below, the Court GRANTS Plaintiff's motion for preliminary approval of class action settlement.

## Background

Plaintiff Carlos Victorino ("Plaintiff") brought a class action against Defendant FCA US LLC ("Defendant" or "FCA"), the designer, manufacturer and distributor of the

1

2013-2015 Dodge Dart vehicles equipped with a Fiat C635 manual transmission built on or before November 12, 2014, ("Class Vehicles"), alleging they have a defective clutch system that can cause the clutch to fail and stick to the floor, preventing drivers from shifting gears and controlling the vehicle's speed.  Plaintiff filed the operative FAC on June 19, 2017[1] alleging five causes of action against Defendant for violating California's Consumer Legal Remedies Act ("CLRA"), violating California's unfair competition law ("UCL"), breaching California's implied warranty law under the Song Beverly Consumer Warranty Act ("Song Beverly Act"), breaching federal implied warranty law under the Magnuson-Moss Warranty Act ("MMWA"), and unjust enrichment.  (Dkt. No. 104, FAC; Dkt. No. 431-2, Zohdy Decl. ¶ 3.)  After the Court's ruling on Defendant's motion for summary judgment and motion for reconsideration, the remaining causes of action are the breach of implied warranty of merchantability under the Song Beverly Act and the MMWA, and the UCL claim premised on the breach of implied warranty claims.  (*See* Dkt. Nos. 206, 240.)

On October 17, 2019, the Court certified a Song Beverly Act class consisting of "[a]ll persons who purchased or leased in California, from an authorized dealership, a new Class Vehicle primarily for personal, family, or household purposes."[2]  (Dkt. No. 318 at 24.[3])  Plaintiff was appointed as the Class Representative and his counsel, Capstone Law APC, was appointed Class Counsel."  (*Id.* at 25.)  Co-counsel Kiesel Law LLP was appointed co-Class counsel on April 14, 2022.  (Dkt. No. 399.)

---

[1] The original complaint was filed on June 24, 2016 by Plaintiff and Adam Tavitian.  (Dkt. No. 1.)  Mr. Tavitian was dismissed after the Court granted the parties' joint motion to dismiss on June 22, 2018. (Dkt. No. 267.)

[2] The Court noted that Plaintiff only moved to certify a class based on the Song-Beverly claim and not the MMWA or the UCL claims.  (Dkt. No. 318 at 6.)

[3] Page numbers are based on the CM/ECF pagination.

16cv1617-GPC(JLB)

The case involved hard-fought litigation with written discovery, depositions, countless numbers of contested motion practice, expert discovery, rulings on motions in limine with trial date set on October 11, 2022.  After extensive settlement negotiations with the Magistrate Judge, (Dkt. Nos. 425, 426), Plaintiff and Defendant reached a proposed settlement on September 27, 2022, on the eve of trial.  (Dkt. No. 427.)

The Settlement Agreement will bring immediate and valuable relief for the clutch defect.  Therefore, the motion seeks the entry of an order (1) granting preliminary approval of the Settlement; (2) confirming certification of the Class for settlement purposes: (3) confirming Plaintiff as Class Representative; (4) confirming Plaintiff's counsel, Capstone Law APC and Kiesel Law LLP, as Class Counsel; (5) approving the parties' proposed form and method of giving Class Members notice of the action and proposed Settlement; (6) directing that notice be given to Class Members in the proposed form and manner; and (7) setting a hearing on whether the Court should grant Final Approval of the Settlement, enter judgment, award attorneys' fees and expenses to Plaintiff's counsel, and grant an incentive award to Plaintiff.

## Discussion

**A.    Settlement Terms**

**1.    Warranty Coverage Extension**

FCA has agreed to a 12-month extended warranty, to begin the first day after the Effective Date, expanding coverage for the repair or replacement of the clutch slave cylinder under FCA's Powertrain Limited Warranty. (Dkt. No. 431-3, Zohdy Decl., Ex. 1, Settlement Agreement ¶ II.B at 10.)  This warranty extension shall be automatically provided to every class member without a claim submission process and without regard to the age or mileage of the class member's vehicle.

**2.    Reimbursement for Prior Repairs**

16cv1617-GPC(JLB)

In connection with the warranty coverage extension, FCA has also agreed to reimburse Class Members, who previously paid out-of-pocket to have a failed slave cylinder replaced and who has not otherwise already received full reimbursement.  Class Members must submit Proof of Ownership to FCA and request reimbursement at www.fcarecallreimbursement.com within 180 days of the Effective Date of Settlement for repairs or replacements.  (*Id.*, Settlement Agreement ¶ II.C at 11.)

**B.    Class Notice Procedures**

Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

Here, the parties agreed to provide individual notice of the Short Form Class Notice by U.S. mail.  (Dkt. No. 431-3, Zohdy Decl., Ex. 1, Settlement Agreement ¶ III.C at 17; Dkt. No. 431-4, Zohdy Decl., Ex. 1, Settlement Agreement, Ex. A.)  In addition, the parties have agreed to publish a settlement website, on which will be posted a Long-Form Class Notice.  (Dkt. No. 431-5 Zohdy Decl., Ex. 1, Settlement Agreement, Ex. B.)  The parties have agreed on Kroll Administration ("Kroll") to be the Notice Administrator.  (Dkt. No. 431-3, Zohdy Decl., Ex. 1, Settlement Agreement ¶ I.D at 5; Dkt. No. 431-2, Zohdy Decl. ¶ 38.)  After soliciting bids from CPT Group and Kroll for settlement administration services, Defendant selected Kroll and its proposal of $24,476 as the lesser of the two.  (Dkt. No. 431-2, Zohdy Decl. ¶ 39.)  With offices around the world, Kroll has decades of experience administering class actions of all types and sizes.  (*Id.*)  Counsel for FCA has worked with Kroll on one prior occasion, at which time Kroll proved itself competent, efficient, and reliable.  (*Id.* ¶ 40.)  Class Counsel Capstone Law

APC has not worked with Kroll previously and Class Counsel Kiesel Law LLP has worked with Kroll one time in the past two (2) years, as settlement administrator in *Ryan-Blaufuss v. Toyota Motor Corp.*, Case No. 8:18-cv-00201-JLS-KES (C.D. Cal.), which was finally approved on February 3, 2023.  (*Id.*)  Defendant has agreed to pay the costs of the settlement administration.  (*Id.* ¶ 41.)

The Notice Administrator will mail by first-class the Short Form Class Notice. (Dkt. No. 431-3, Zohdy Decl., Ex. 1, Settlement Agreement ¶ III.C at 17.)  As soon as is practicable after the preliminary approval of the Settlement, the Notice Administrator will obtain the name and last known address of each potential member of the Class from Defendant.  (*Id.*)  Prior to mailing the Short Form Class Notice, the last known address of potential Class Members will be checked and updated going back four years through the use of the National Change of Address Database.  (*Id.*)  The Notice Administrator shall use its best efforts to complete the initial mailing of the Short Form Class Notice to potential Class Members within 75 days after the Preliminary Approval Date.  (*Id.*)

If any Short Form Class Notice mailed to any potential Class Member is returned to the Notice Administrator as undeliverable, then the Notice Administrator shall perform a reasonable search, (e.g., the National Change of Address Database), for a more current name and/or address for the potential Class Member and (provided that a more current name and/or address can be found through such a search) re-send the returned Short Form Class Notice to the potential Class Member by first-class mail.  (*Id.*)  In the event that any Short Form Class Notice mailed to a potential Class Member is returned as undeliverable a second time, then no further mailing shall be required.  (*Id.*)  The Notice Administrator will promptly log each Short Form Class Notice that is returned as undeliverable and provide copies of the log to Class Counsel.  (*Id.*)

The Short Form and revised Long Form Notices comply with Rule 23(c)(2)(B) where they "clearly and concisely state in plain, easily understood language" the nature

16cv1617-GPC(JLB)

of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. *See Friedman v. Guthy-Renker, LLC,* Case No. 2:14-cv-06009-ODW(AGRx), 2016 WL 6407362, at * 10 (C.D. Cal. Oct. 28, 2016) (acknowledging that Ninth Circuit has "approved notice via a combination of short-form and long-form settlement notices.") (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015); *Spann v. J.C. Penney Corp*, 314 F.R.D. 312, 331 (C.D. Cal. 2016) (approving e-mail and postcard notice, each of which directed the class member to a long-form notice); and *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1204 (C.D. Cal. 2014) (approving "class notice comprised a 'Short–Form Notice' that briefly described the litigation and explained the terms of the Settlement Agreement, including class members' options to submit a claims form, opt-out of the settlement, and/or object to the settlement," and which "directed class members to a website containing a more detailed 'Long-Form Notice' ")).

Notice of the proposed settlement will also be provided to the U.S. Attorney General and the attorneys general of each state or territory in which a Class Member resides, in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715.  (Dkt. No. 431-3, Zohdy Decl., Ex. 1, Settlement Agreement ¶ III.B at 16-17.)

## ANALYSIS

The Ninth Circuit has a strong judicial policy that favors settlements in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Approval under Federal Rule of Civil Procedure ("Rule") 23(e) "involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomm'ns. Coop. v. DIRECTV, Inc.*, 221

F.R.D. 523, 525 (C.D. Cal 2004) (citation omitted).  At the preliminary approval stage, the court should grant approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)."  Fed. R. Civ P. 23(e)(B).

## A.     Preliminary Certification of the Settlement Class

A court may preliminarily certify a settlement class if all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and at least one of the requirements for Rule 23(b) have also been met.  *See* Fed. R. Civ. P. 23.  Because the Court certified a class under Rule 12(b)(3), "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted."  Fed. R. Civ. P. 23 advisory committee note to 2018 amendment.

For purposes of settlement, Plaintiff seeks to certify a class of

> All persons who, prior to the Preliminary Approval Date, purchased or leased in California, from an authorized dealership, a new 2013-2015 Dodge Dart vehicle equipped with a Fiat C635 manual transmission built on or before November 12, 2014, primarily for personal, family, or household purposes.

> Excluded from this definition are (1) all owners or lessees of Class Vehicles who have filed and served litigation against FCA US asserting problems with the clutch in Class Vehicles that was pending as of the Notice Date and who do not dismiss their actions before final judgment and affirmatively elect to opt-out of the Settlement. However, owners or lessees of Class Vehicles who dismiss such litigation and affirmatively opt-in to the Settlement shall be members of the Class for all purposes; (2) FCA US's officers, directors, employees, affiliates and affiliates' officers, directors and employees; their distributors and distributors' officers, directors, and employees; and FCA US Dealers and FCA US Dealers' officers and directors; (3) judicial officers assigned to the Action and their immediate family members, and any judicial officers who may hear an

7

16cv1617-GPC(JLB)

appeal on this matter; (4) all entities and natural persons who have previously executed and delivered to FCA US releases of their claims based on clutch failure in the Class Vehicles; (5) all parties to litigation against FCA US alleging clutch failure in Class Vehicles in which final judgment has been entered; and (6) all those otherwise in the Class who timely and properly exclude themselves from the Class as provided in the Settlement.

Plaintiff claims that the Settlement Class is the same as the class certified. (Dkt. No. 431-1 at 12.) Previously, the Court approved class certification under Rule 23(b)(3) of "[a]ll persons who purchased or leased in California, from an authorized dealership, a new Class Vehicle primarily for personal, family, or household purposes." (Dkt. No. 318 at 24.)

The Settlement Class differs from the previously certified class by providing exclusion of persons subject to the Class who would either receive double recovery or potentially receive double recover, or have a conflict of interest, and temporally limiting the Class to those who purchased or leased a Class Vehicle prior to the Preliminary Approval Date.

The temporal change and exclusions based on potential conflicts or double recovery do not affect the substantive reasoning of the Court's prior certification order. *See Youth Justice Coalitions v. City of Los Angeles*, 2:16-cv-07932-VAP-RAOx, 2020 WL 9312377, at *2 (C.D. Cal. Nov. 17, 2020) (change in class definition does not alter the reasoning underlying its earlier decision to grant class certification pursuant to Rule 23(b)(2); *Allen v. Similasan Corp.*, No. 12-CV-00376-BAS-JLBx, 2017 WL 1346404, at *3 (S.D. Cal. Apr. 12, 2017) (approving expansion of settlement class where the expansion did not change the court's previous class certification analysis); *Song v. THC-Orange Cnty., Inc.*, Case No. 8:17−cv−00965−JLS−DFM, 2019 WL 13030225, at *2 (C.D. Cal. Feb. 28, 2019) (temporal change to class definition where the Class runs

16cv1617-GPC(JLB)

through the date of the Order whereas the previously-certified class covered through August 6, 2018 not substantive).  Therefore, the Court reconfirms its prior certification of the class and grants preliminary certification of the Settlement Class.

**B.      Preliminary Approval of Class Action Settlement**

Next, Rule 23(e) requires the Court to examine the settlement and ensure it is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented
>      the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>         (i) the costs, risks, and delay of trial and appeal;
>         (ii) the effectiveness of any proposed method of distributing relief to
>         the class, including the method of processing class-member claims;
>         (iii) the terms of any proposed award of attorney's fees, including
>         timing of payment; and
>         (iv) any agreement required to be identified under Rule 23(e)(3); and,
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The first two factors are viewed as "procedural" while the latter two factors are viewed as "substantive" in nature.  Fed. R. Civ. P. 23(e)(2) advisory committees note to 2018 amendment.  Because the Court cannot fully assess all factors until after the final approval hearing, at the preliminary approval stage, "a full fairness analysis is unnecessary."  *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotation marks and citation omitted); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.").  At the preliminary approval stage, the Court only determines whether it will "likely be able to" grant final approval to the settlement.  *See* Newberg & Rubenstein on Class Actions § 13:13 (citing Rule 23(e)(2)).

### 1.   Adequacy of Representation

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  In the Court's previous order on class certification, it found that the adequacy of representation had been satisfied under Rule 23(a)(4).  (Dkt. No. 265 at 17-18).  Because the inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A) are similar, adequacy of representation is likely met.  *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

### 2.   Arm's Length Negotiation

"Where the proposed settlement is preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that settlement negotiations occurred at arms-length."  *See* Newberg & Rubenstein on Class Actions § 13:14 (2022).  Moreover, "[c]ourts have also found collusion less likely when settlement negotiations are conducted by a third-party mediator.  *Id.*  Both these considerations likely support that the settlement was negotiated at arm's length and not a product of collusion.

In this case, not only did the case settle at the eve of trial, but this was a highly contentious case where motions, and objections were filed at nearly every step of the case.  Further, prior to settlement, Plaintiff thoroughly investigated and researched the claims in litigating this action and preparing trial, which allowed his counsel to better evaluate Defendant's claimed representations and omissions concerning the alleged clutch defect.  (Dkt. No. 431-2, Zohdy Decl. ¶ 27.)  For example, Plaintiff fielded inquiries from putative Class Members and investigated many of their reported claims.  (*Id.*)  Counsel also consulted and retained both liability and damages experts to assist in

identifying the exact defect, devise a fix, and quantify the damages suffered by the Class for the purpose of filing a motion for class certification.  (*Id.*)

Plaintiff also researched publicly available materials and information provided by the National Highway Traffic Safety Administration ("NHTSA") about consumer complaints about the Class Vehicles.  (*Id.* ¶ 28.)  Counsel reviewed and researched consumer complaints and discussions of related problems in articles and forums online, in addition to various manuals and technical service bulletins ("TSBs") discussing the alleged defect.  (*Id.*) Finally, counsel conducted research into the various causes of actions and other similar automotive actions.  (*Id.*)

During discovery, Plaintiff reviewed voluminous documents and related databases produced by FCA, including spreadsheets with thousands of rows of data, owners' manuals, maintenance and warranty manuals, internal FCA investigation reports, TSBs, field reports, warranty data, etc.  (*Id.* ¶ 29.)

In addition to written discovery, Plaintiff's counsel took the depositions of five FCA corporate representatives and employees, including Robert A. Benson, Senior Manager – Manual Transmission Engineering; Michael W. Gapski, Technical Manager – Manual Transmission Engineering; Jeffrey J. Sawruk, Supervisor – Manual Transmission Engineering; Lawrence K. Laba, Investigator –Vehicle Safety and Regulatory Compliance; and Charles R. Pajtas, Product Engineer –Manual Transmission Engineering.  (*Id.* ¶ 30.)  FCA took the depositions of Plaintiff and Mr. Tavitian, the former plaintiff.  (*Id.* ¶ 31.)  In addition, all of Plaintiff's expert witnesses were deposed.  (*Id.*)  In reviewing the above discovery, evidence, and testimony, Plaintiff identified information that was instrumental to the case and to Plaintiff's efforts during mediation. Furthermore, over the course of litigation, Plaintiff responded to Class Members who contacted Plaintiff's counsel to report problems with their Class Vehicles and seek relief. (*Id.* ¶ 32.)  Plaintiff's counsel also conducted detailed interviews with Class Members

regarding their pre-purchase research, their purchasing decisions, and their repair histories, and developed a plan for litigation and settlement based in part on Class Members' reported experiences with their Class Vehicles and with FCA dealers. (*Id.*) Finally, the parties engaged in three mediations sessions with the Magistrate Judge and they finally reached a settlement on September 27, 2022 at the third session. (Dkt. No. 431-2, Zohdy Decl. ¶ 22.)

Due to the lengthy period of adversarial litigation, substantial discovery, and settlement before the Magistrate Judge, the Court is likely to conclude that settlement negotiations occurred at arms-length. *See* Newberg & Rubenstein on Class Actions § 13:14.

### 3.    Adequacy of Relief Provided to the Class

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

### i.    Costs, Risks, and Delay of Trial and Appeal

Consistent with Rule 23's instruction to consider "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in this circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes,* 564 U.S 338 (2011). The Ninth Circuit expressly rejected any requirement that the settling parties value maximum damages that can be obtained at trial, as that figure would be inherently speculative. *Lane v. Facebook, Inc*., 696 F.3d 811, 818

16cv1617-GPC(JLB)

(9th Cir. 2012) ("[N]ot only would such a requirement be onerous, it would often be impossible . . . [since] the amount of damages of a given plaintiff (or class of plaintiffs) has suffered in a question of fact that must be proved at trial."). There is no particular formula to assess whether a settlement is fair, reasonable and adequate; the court's determination "is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Here, the proposed Settlement is within the range of reasonableness particularly when compared to the likely outcome of prosecuting the action. The extended warranty is a valuable benefit as there is a market for third-party extended warranties sold to consumers to cover vehicle components. (Dkt. No. 431-2, Zohdy Decl. ¶ 36.) Even if Plaintiff had prevailed at trial, the recovery would have been limited to the cost of repair which expert Steven Boyles estimated to be $1,022.64 on average. (*Id.*) Thus, the settlement achieves a similar outcome where class members who have paid for repairs will be reimbursed, and class members who have not paid will automatically receive an extended warranty and have the opportunity to have those repairs performed free of charge and without a claims process. (*Id.*) Thus, when weighed against the risk of further litigation, the Settlement clearly falls within the range of reasonableness. While Plaintiff believes that his case is strong on the merits, FCA has raised a number of substantive defenses that present serious risks to Plaintiff's case. These defenses include, among others, that no clutch defect exists, or that, even if a defect existed, Plaintiff would not be able to show that it constitutes a safety concern. *See, e.g., Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 991-92 (N.D. Cal. 2010) (granting defendant's motion for summary judgment and finding alleged ignition-lock defect not a safety risk), *aff'd*, 462

16cv1617-GPC(JLB)

1  F. App'x 660 (9th Cir. 2011). Accordingly, Plaintiff would have to meet a high burden to

2  establish violations of state and federal consumer protection and warranty statutes.

3   Moreover, had litigation continued, the Class would run the risk of decertification,

4  which can be made at any time.  While Plaintiff would vigorously challenge

5  decertification, consumers bringing automotive defect actions are frequently denied class

6  certification due to lack of common proof.  FCA has already questioned predominance

7  and attempted to raise purportedly new individual issues following certification, which it

8  could question again.

9   The parties took the case to the eve of trial.  Had the case continued, "plaintiff[]

10  [would] face[] a substantial risk of incurring the expense of a trial without any recovery."

11  *In re Toys "R" Us-Del FACTA Litig.,* 295 F.R.D. 438, 451 (C.D. Cal. 2014).  Indeed, the

12  risk of continuing litigation, including an appeal, the risk of new adverse statutory or case

13  law, increased costs, and expiration of a substantial amount of time, weigh heavily in

14  favor of settlement.  *See Rodriguez*, 463 F.3d at 966.

15   Aside from a risk of decertification, Plaintiff could face the termination of his

16  action at trial.  Prolonging litigation further, even if Plaintiff were to prevail on

17  dispositive motions and at trial, would almost certainly diminish the value of the relief to

18  Class Members, as their Class Vehicles' value will depreciate over time.  Any restitution

19  remedies they could obtain would also be subject to offsets for car owners' use of the

20  vehicles.  For example, even under Song-Beverly Act, a repurchase would require an

21  offset for the mileage driven.  *See* Cal. Civ. Code § 1793.2(d)(2)(C); *see also Robbins v.*

22  *Hyundai Motor America, Inc*., No. SACV 14–00005–JLS (ANx), 2015 WL 304142, at *6

23  (C.D. Cal. Jan. 14, 2015).

24   In light of the substantial costs and risks of continued litigation at trial and on an

25  appeal and the significant relief secured for the Class by the proposed Settlement, this

26  factor likely supports the adequacy of relief provided to the Class.  *See In re Anthem, Inc.*

27

28

*Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (granting final approval where "further litigation would have been costly and uncertain and would have detrimentally delayed any potential relief for the Class," whereas the relief provided by settlement was "timely, certain, and meaningful").

### ii.     Effectiveness of Proposed Method of Distributing Relief

This Settlement will automatically provide each class member with a 12-month extension to FCA's Powertrain Limited Warranty with respect to the slave cylinder. Each Class Member will automatically receive the warranty extension without a claims submission process and will be able to bring their vehicle into their local dealership for qualifying repairs.  The warranty extension applies to every vehicle regardless of the vehicle's age or mileage.  Additionally, class members can also submit claims for reimbursement for past repairs.  This procedure weighs in favor of preliminary approval.

### iii.     Terms of Proposed Award of Service and Attorney's Fees

The Parties have negotiated sums for attorneys' fees, expenses, and service awards separately, with the amount finally awarded by the Court not affecting the Class benefits in any way.  (Dkt. No. 431-3, Zohdy Decl., Ex. 1, Sett. Ag. ¶ II.E at 12-13.)  The Settlement Agreement provides that Class Counsel's attorneys' fees, costs, and expenses will not exceed $1,690,000.00 which is separate and apart from the settlement to the Class.  (Dkt. No. 431-3, Zohdy Decl., Ex. 1, Sett. Ag. ¶ II.E.)  The Settlement Agreement provides that, subject to the Court's approval, Defendant will not oppose Class Counsel's motion for attorney's fee.  (*Id.*)

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount.*"  In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  The Court must assess whether the

16cv1617-GPC(JLB)

settlement was the product of "collusion" by checking for "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). The Ninth Circuit has identified three such "subtle signs," or the *Bluetooth* factors: (1) "when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting *In re Bluetooth*, 654 F.3d at 947) (internal quotation marks omitted). This heightened review applies to pre- and post-certification settlements. *Id.* at 1025. However, for "all these factors, considerations, subtle signs, and red flags . . . the underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales, Practices & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) (internal quotation marks omitted).

Plaintiff maintains that, except for the "clear sailing" provision, none of the *Bluetooth* Factors are present here. "[T]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *In re Bluetooth*, 654 F.3d at 948 (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)). As in this case, it is irrelevant if the clear sailing provision is severable. *Id.* "Therefore, when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Id.* (citation omitted). Class Counsel indicates it will fully address the reasonableness of their requested fee award in their forthcoming motion for attorneys' fees. (Dkt. No. 431-1 at 15.)

16cv1617-GPC(JLB)

1    As to the other two *Bluetooth f*actors, Plaintiff claims his counsel do not seek a

2    disproportionate share of fees.   In this circuit, fees can be calculated by either the

3    lodestar or percentage-of-recovery method in class actions that result in benefits to the

4    entire class.  *In re Bluetooth*, 654 F.3d at 942.  Here, because there is no common fund,

5    the Court looks to the lodestar method.  At this time, Class Counsel's lodestar is

6    $2,953,973.75, which includes 4,309.85 hours billed, and does not include the anticipated

7    time spent preparing the attorneys' fee application, motion for final approval, and

8    assisting class members with their claims. (Dkt. No. 431-2, Zohdy Decl. ¶¶ 46-47; Dkt.

9    No. 431-8, Kiesel Decl. ¶¶ 12-15.)  The requested fees represent a substantial negative

10   multiplier, meaning that counsel billed substantially more to the case than they will

11   recover in fees.  Further, Class Counsel's costs are $150,860.42. (Dkt. No. 431-2, Zohdy

12   Decl. ¶ 48; Dkt. No. 431-8, Kiesel Decl. ¶ 16.)  Therefore, it does not appear that counsel

13   is receiving a disproportionate distribution of the settlement.  Finally, there is no

14   "reverter" of unclaimed funds to FCA as the Settlement does not provide for the

15   establishment of a common fund.  With the exception of the "clear sailing" provision, an

16   issue Class Counsel recognize and will address in their motion for attorneys' fees, this

17   factor supports preliminary approval.

18   In addition, subject to Court approval, the Settlement Agreement provides for a

19   service award to the named Class Representative for his efforts to secure relief on behalf

20   of the Settlement Class, in the amount of $20,000.00, subject to Court approval.[4]  (Dkt.

21   No. 431-3, Zohdy Decl., Ex. 1, Settlement Agreement ¶ II.F at 13.)  The revised Long

22

23

24   [4] At the hearing, the Court informed counsel that the Settlement Agreement provides that Plaintiff

25   intends to seek $20,000 for a service award but it also provides that "FCA US shall pay the amount
     awarded by the Court (up to $10,000)."  At the time, counsel indicated this may have been a

26   typographical error; however, the parties did not provide an updated settlement agreement resolving the
     Court's concern.  Therefore, the amount of the incentive award remains at issue and will be reviewed at

27   the final approval stage.

28                                                                              16cv1617-GPC(JLB)

Form Notice provides any "award of payment to the Class Representative will be paid separately from and in addition to any benefits provided to the Settlement Class." (Dkt. No. 436-1 at 7.)

Incentive awards are typical in class action to compensate class representatives for work undertaken on behalf of the class. *In re Online DVD-Rental Antitrust Litig*., 779 F.3d at 943. In this case, Plaintiff seeks an incentive award for the time and effort he spent to support a case in which he had a modest personal interest, but which provided considerable benefits to Class Members and a commitment undertaken without any guarantee of recompense. (Dkt. No. 431-2, Zohdy Decl. ¶ 33.) He searched for, reviewed, and provided documents to, and consulted with, Class Counsel about the claims in this case and assisted throughout the course of the litigation. (*Id*.) Plaintiff reviewed the allegations, kept in constant contact with Class Counsel regarding the status of the case, and responded to inquiries regarding Defendant's efforts to remedy the problems Plaintiff experienced. (*Id*.) Plaintiff also thoroughly prepared for deposition and was deposed. (*Id*.) Plaintiff has also stayed abreast of settlement negotiations, reviewed the Settlement terms, and approved the Settlement on behalf of the Class. (*Id*.) Finally, Plaintiff has provided his vehicle on several prolonged occasions for both Plaintiff's expert and Defendant's inspection, and had to maintain ownership of his vehicle for a multiyear litigation. (*Id*.)

### iv.   Agreement Made in Connection with the Proposal

Rule 23(e)(3) requires that the Parties "must file a statement identifying any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(3). Plaintiff has not identified any such agreement; therefore, this factor is not relevant.

### 4.   Equitable Treatment of Class Members

Rule 23(e)(2) also turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could

16cv1617-GPC(JLB)

include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e)(2)(D) advisory committee note to 2018 amendment.

Here, the Settlement generally treats all class members the same.  The class is defined as all persons who, prior to the date of preliminary approval, purchased or leased in California from an authorized dealership a new Class Vehicle primarily for personal, family, or household purposes and all are equally entitled to the relief and remedies provided by the Settlement.  To the extent they receive different compensation under the settlement, it will be proportionate to their actual harms.  For example, only those Class Members who spent money to have their clutch slave cylinder replaced will be reimbursed for such expenses.  *See Altamirano v. Shaw Indus.*, Inc., No. 13-cv-00939, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct").  Once reimbursed for their repair expenses, those Class Members will stand in an identical posture to all other Class Members.  At that point, no Class Member will have suffered unreimbursed, out-of-pocket repair costs.

Even those Class Members who experienced the clutch defect firsthand or those who decide to trade in or sell their vehicles after receiving notice of the settlement will be entitled to the same relief.  Not all Class Members will suffer these types of harms, but those who do will be eligible for the same compensation.  The same is true for the class's release: all Class Members will provide an identical release it.  As a result, the settlement treats all Class Members equitably which further supports approval of the settlement.  Finally, though the class representative will receive an additional $20,000, the extra payment is in recognition for the service he performed on behalf of the class, and the

16cv1617-GPC(JLB)

Ninth Circuit has approved such awards.  This factor likely supports approval of the Settlement.

### 5.    Additional Factor - The Experience and Views of Counsel

Plaintiff also claims the Court should consider the views of experienced counsel. *Churchill Village, LLC v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir. 2004) (considering experience and views of counsel in determining whether the settlement is fair and adequate).  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *In re Pac. Enters. Sec. Litig*., 47 F.3d 373, 378 (9th Cir. 1995).

In this case, the parties achieved a settlement after a thorough review of relevant documents and testimony, as well as a rigorous analysis of the parties' claims and defenses.  The expectations of all parties are embodied by the Settlement, which, as concluded above, is non-collusive, being the product of arms' length negotiations and finalized with the assistance of an experienced Magistrate Judge.  The parties were represented by experienced class action counsel possessing significant experience in automotive defect and class action matters.  (*See* Dkt. No. 431-7, Zohdy Decl., Ex. 2; Dkt. No. 431-9, Kiesel Decl., Ex. 1.)  Likewise, Plaintiff's assert that FCA's counsel, Higgs, Fletcher & Mack LLP and Thompson Coburn LLP, are highly experienced in the field of automotive consumer class action defense.  The Parties' recommendation to approve this Settlement should therefore "be given great weight."  *Eisen v. Porsche*, No. 2:11–cv–09405–CAS–FFMx, 2014 WL 439006, at *5 (C.D. Cal. Jan. 30, 2014) (crediting the experience and views of counsel in approving a settlement resolving automotive defect allegations).  The Court agrees that the experience and views of counsel support preliminary approval of the settlement agreement.

### Conclusion

The Court, having fully reviewed the Motion for Preliminary Approval of Class Action

16cv1617-GPC(JLB)

Settlement, supporting documents, and the applicable and in recognition of the Court's duty to make a preliminary determination as to the reasonableness of any proposed class action settlement and, if preliminarily determined to be reasonable, to ensure proper notice is provided to Class Members in accordance with due process, and to conduct a Final Approval hearing as to the good faith, fairness, adequacy and reasonableness of any proposed settlement, FINDS, CONCLUDES, and ORDERS that the Settlement is hereby **PRELIMINARILY APPROVED**.  The Court further finds and orders as follows:

1.      The Court has subject matter jurisdiction under 28 U.S.C. § 1332(d), and venue is proper in this district.

2.      The Court has personal jurisdiction over the Plaintiff, Settlement Class Members, and the Defendant.

3.      To the extent not otherwise defined herein, all defined terms in this Order shall have the meaning assigned in the Settlement Agreement ("Settlement Agreement").

4.      The Settlement Agreement is a product of extensive arms' length negotiations entered into by experienced counsel and presided over by an experienced Magistrate Judge. The Settlement Agreement is not the result of collusion.

5.      The proceedings that occurred before the Parties reached resolution of this matter gave counsel the opportunity to adequately assess this case's strengths, weaknesses, and the risks to each Party and, thus, to structure the Settlement Agreement in a way that adequately accounts for those considerations.

6.      After careful review of the Settlement Agreement, the Court hereby finds that the Settlement Agreement is fair, reasonable, and adequate, and has no obvious deficiencies that preclude preliminary approval. Accordingly, the Court hereby preliminarily approves all terms of the Settlement Agreement and its Exhibits.

7.      The Court preliminarily finds, for settlement purposes only, that all requirements of Fed. R. Civ. P. 23(a) and (b)(3) have been satisfied. As such, the Court hereby preliminarily

16cv1617-GPC(JLB)

certifies the following Settlement Class:

> All persons who, prior to the Preliminary Approval Date, purchased or leased in California, from an authorized dealership, a new 2013-2015 Dodge Dart vehicle equipped with a Fiat C635 manual transmission built on or before November 12, 2014, primarily for personal, family, or household purposes.

> Excluded from this definition are (1) all owners or lessees of Class Vehicles who have filed and served litigation against FCA US asserting problems with the clutch in Class Vehicles that was pending as of the Notice Date and who do not dismiss their actions before final judgment and affirmatively elect to opt-out of the Settlement. However, owners or lessees of Class Vehicles who dismiss such litigation and affirmatively opt-in to the Settlement shall be members of the Class for all purposes; (2) FCA US's officers, directors, employees, affiliates and affiliates' officers, directors and employees; their distributors and distributors' officers, directors, and employees; and FCA US Dealers and FCA US Dealers' officers and directors; (3) judicial officers assigned to the Action and their immediate family members, and any judicial officers who may hear an appeal on this matter; (4) all entities and natural persons who have previously executed and delivered to FCA US releases of their claims based on clutch failure in the Class Vehicles; (5) all parties to litigation against FCA US alleging clutch failure in Class Vehicles in which final judgment has been entered; and (6) all those otherwise in the Class who timely and properly exclude themselves from the Class as provided in the Settlement.

8.     The Court preliminarily certifies the proposed Settlement Class, and preliminarily finds that the requirements of Rule 23(a) are satisfied, for settlement purposes only, as follows: (a) Pursuant to Fed. R. Civ. P. 23(a)(1), the members of the Settlement Class are so numerous that joinder of all members is impracticable, (b) Pursuant to Fed. R. Civ. P. 23(a)(2) and 23(c)(1)(B), there are common issues of law and fact for the Settlement Class, (c) Pursuant to

16cv1617-GPC(JLB)

Fed. R. Civ. P. 23(a)(3), the claims of Plaintiff Carlos Victorino are typical of the claims of the Settlement Class that he represents, and (d) Pursuant to Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and adequately protect and represent the interests of all members of the Settlement Class as the Class Representative, and his interests are not antagonistic to those of the Settlement Class.

9.      The Court further preliminarily finds that the requirements of Rule 23(b)(3) are satisfied, for settlement purposes only, in that, (a) common questions of law and fact pertaining to the Settlement Class Members predominate over questions that may affect only individual members; and (b) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

10.     The Court hereby preliminarily appoints Plaintiff Carlos Victorino to serve as the Class Representative for the Settlement Class.

11.     The Settlement Class Representatives and Class are ably represented by counsel who are experienced and competent in the prosecution of complex class action litigation and have acted in their best interests. Accordingly, the Court hereby preliminarily appoints Capstone Law APC and Kiesel Law LLP to serve as Class Counsel for the Settlement Class.

12.     The Court also preliminarily appoints Kroll Administration as the Notice Administrator (hereinafter, "Notice Administrator") to supervise and administer the Class Notice.

13.     The Court has reviewed the content of the proposed form of Class Notice attached to the Settlement Agreement as Exhibit A (Short Form Class Notice) and Exhibit B (revised Long Form Class Notice), and finds they satisfy Fed. R. Civ. P. 23(c)(2), Fed. R. Civ. P. 23(e)(1), and Due Process requirements, and, accordingly, the Court hereby approves the proposed Class Notice.

14.     The Court further approves the proposed method for providing notice of the Settlement to the Settlement Class Members, as reflected in the plan for Class Notice in the

16cv1617-GPC(JLB)

Settlement Agreement. The Court has reviewed the Class Notice plan and finds that the Settlement Class Members will receive the best notice practicable under the circumstances. The Court specifically approves the Parties' proposal that, on an agreed upon date with the Notice Administrator, but in no event later than **July 14, 2023**, the Notice Administrator shall cause individual Class Notice, substantially in the form attached to the Settlement Agreement as Exhibit A, to be mailed, by first class mail, to the current or last known addresses of all reasonably identifiable Settlement Class Members (the "Notice Date"). The Court specifically approves the procedures set forth in the Settlement Agreement for identifying Settlement Class Members, and for re-mailing notice packets and performing advanced address searches for Settlement Class Members' addresses if returned as undeliverable. The Notice Administrator shall establish the Settlement Website as contemplated by the Settlement Agreement. The Court further approves the payment of notice costs as provided in the Settlement Agreement.

15.     The Court finds that these procedures constitute the best notice practicable under the circumstances, including individual notice to all Class Members who can be identified with reasonable effort, and constitute valid, due, and sufficient notice to Class Members in full compliance with the requirements of applicable law, Fed. R. Civ. P. 23(c)(2) and (e)(1), and the Due Process Clause of the United States Constitution.

16.     Pending final determination of the joint application for approval of the Settlement Agreement, all proceedings in this Litigation, other than settlement approval proceedings, shall be stayed.

17.     The Court directs that, pursuant to Fed. R. Civ. P. 23(e)(2), a final Fairness Hearing will be held on **September 29, 2023, at 1:30 p.m.** in Courtroom 2D of the United States District Court for the Southern District of California, Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, California 92101, to consider: (a) the grant of final approval of the Settlement pursuant to the terms of the Settlement Agreement, (b) certification of the Settlement Class, (c) appointment of Plaintiff as the Settlement Class Representative, (d) appointment of

16cv1617-GPC(JLB)

Class Counsel as Settlement Class Counsel, (e) appointment of Kroll Administration as the Notice Administrator, (f) Class Counsel's Fee and Expense Application and Plaintiffs' Service Award Application, (g) any objections and/or requests for exclusion, and (h) entry of a Final Approval Order and Judgment. The Fairness Hearing may be adjourned by the Court, and the Court may address the above or other matters, without further notice to the Settlement Class other than notice that may be issued by the Court and/or on the Court's and settlement websites.

18.     The Court directs that no later than **August 18, 2023,** Settlement Class Counsel shall file their Motion for Final Approval of the Settlement. Class Counsel shall move for approval of attorney's fees, litigation expense reimbursements, and class representative service awards no later than fourteen (14) calendar days before the deadline to object.

19.     The Court further directs that no later than **September 22, 2023**, Class Counsel may file any supplemental brief in further support of final approval.

20.     Any Settlement Class Members wishing to object to the proposed Settlement or the requests for Class Counsel fees and expenses and/or the Class Representatives service award, must adhere to the following deadline and procedures for the objection to be considered:

      a)    To object, a Settlement Class Member must, no later than **September 15, 2023** (hereinafter, the "Objection Deadline"), file and serve a written objection, with all supporting documents and/or memoranda, with the Court and provide copies of the objections to the Notice Administrator at the address provided in the Short Form Class Notice. Upon receipt, the Notice Administrator shall promptly forward copies of all such objections to Class Counsel and counsel for FCA US. Any objection to the Settlement Agreement must be individually and personally signed by the Class Member (if the Class Member is represented by counsel, the objection additionally must be signed by such counsel).

      b)    Any objecting Settlement Class Member must include with his/her/their/its

16cv1617-GPC(JLB)

objection:

    i.      the objector's full name, address, and telephone number;

    ii.     the model year and vehicle identification number of the Class Member's Class Vehicle, along with proof that the objector has owned or leased a Class Vehicle (*e.g.,* a true copy of a vehicle title, registration, or license receipt);

    iii.    a written statement of all grounds for objection accompanied by any legal support for such objection;

    iv.    copies of any papers, briefs, or other documents upon which the objection is based;

    v.     a list of all cases in which the objector and/or his or her counsel has filed or in any way participated in—financially or otherwise—objections to a class action settlement in the preceding five years

    vi.    the name, address, email address, and telephone number of all attorneys representing the objector; and

    vii.   a statement indicating whether the objector and/or his or her counsel intends to appear at the Fairness Hearing, and if so, a list of all persons, if any, who will be called to testify in support of the objection.

c)    Any Class Member who does not file a timely written objection to the Settlement and notice of his or her intent to appear at the Fairness Hearing ,or who fails to otherwise comply with the specifications set forth in the Settlement Agreement, shall be foreclosed from seeking any adjudication or review of the Settlement by appeal, collateral attack, or otherwise.

21.    Any Settlement Class Member who wishes to be excluded from the Settlement Class must submit a request for exclusion ("Request for Exclusion") to the Notice Administrator at the address specified in the Class Notice, by first-class mail postmarked no later than

**September 15, 2023**. Class Members who wish to be excluded from the Class must do so with respect to all Class Vehicles they own(ed) or lease(d); Class Members may not exclude themselves from the Class with respect to some Class Vehicles and include themselves in the Class with respect to other Class Vehicles.

22.   To be effective, the Request for Exclusion must be sent via first-class U.S. Mail to the specified address and must:

a)   include the Class Member's full name, address and telephone number;

b)   identify the model year and vehicle identification number of the Class Member's Class Vehicle(s);

c)   specifically and unambiguously state his/her/their/its desire to be excluded from the class in *Victorino v. FCA US LLC*; and

d)   be individually and personally signed by the Class Member (if the Class Member is represented by counsel, the Request for Exclusion additionally must be signed by such counsel).

23.   Any Class Member who fails to submit a timely and complete Request for Exclusion to the proper address shall be subject to and bound by this Settlement Agreement and every order or judgment entered pursuant to this Settlement Agreement. Any purported Request for Exclusion sent to such address that is ambiguous or internally inconsistent with respect to the Class Member's desire to be excluded from the Class will be deemed invalid unless determined otherwise by the Court.

24.   The Notice Administrator will receive purported Requests for Exclusion and will follow guidelines developed jointly by Class Counsel and FCA US's counsel for determining whether they meet the requirements of a Request for Exclusion. Any communications from Class Members (whether styled as an exclusion request, an objection, or a comment) as to which it is not readily apparent whether the Class Member meant to exclude himself/herself from the Class will be evaluated jointly by Class Counsel and FCA US's counsel, who will make a good faith

evaluation, if possible. Any uncertainties about whether a Class Member is requesting exclusion from the Class will be resolved by the Court.

25.    The Notice Administrator will maintain a list of all Requests for Exclusion and shall report the names and addresses of all such entities and natural persons requesting exclusion to the Court, FCA US's counsel, and Class Counsel seven days prior to the Fairness Hearing, and the list of entities and natural persons deemed by the Court to have excluded themselves from the Class will be attached as an exhibit to the Final Order and Judgment.

26.    Each owner or lessee of a Class Vehicle with a pending lawsuit against Defendant alleging problems with the clutch in a Class Vehicle in which final judgment has not yet been entered and who dismiss such litigation and affirmatively opt-in to the Settlement shall be members of the Class for all purposes.

27.    The Notice Administrator will maintain a list of all owners or lessees of Class Vehicles with lawsuits against FCA US alleging problems with the clutch in Class Vehicles pending on the Notice Date in which final judgment has not yet been entered who opt-in to the Settlement.

28.    Upon final approval of the Settlement, all Settlement Class Members who have not timely and properly excluded themselves from the Settlement shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully and completely released, acquitted, and discharged all Released Parties from/for all Released Claims as set forth in the Settlement Agreement.

29.    Pending the Final Fairness Hearing and the Court's decision whether to finally approve the Settlement, no Settlement Class Member, either directly, representatively, or in any other capacity, shall commence, continue, prosecute, continue to prosecute, or participate in, against any of the Released Parties (as defined in the Settlement Agreement), any action or proceeding in any court or tribunal asserting any of the matters, claims or causes of action that are to be released in the Settlement Agreement. Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the

16cv1617-GPC(JLB)

Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over the Action.

30.     In the event the Settlement is not approved by the Court, or for any reason the parties fail to obtain a Final Order and Judgment as contemplated in the Settlement, or the Settlement is terminated pursuant to its terms for any reason, then the following shall apply:

(a)     All orders and findings entered in connection with the Settlement shall become null and void and have no further force and effect, shall not be used or referred to for any purposes whatsoever, and shall not be admissible or discoverable in this or any other proceeding, judicial or otherwise;

(b)     All of the Parties' respective pre-Settlement claims, defenses and procedural rights will be preserved, and the parties will be restored to their positions *status quo ante*;

(c)     Nothing contained in this order is, or may be construed as, any admission or concession by or against Defendant, Released Party, or Plaintiffs on any claim, defense, or point of fact or law;

(d)     Neither the Settlement terms nor any publicly disseminated information regarding the Settlement, including, without limitation, the Class Notice, court filings, orders, and public statements, may be used as evidence in this or any other proceeding, judicial or otherwise;

(e)     Neither the fact of, nor any documents relating to, either party's withdrawal from the Settlement, any failure of the Court to approve the Settlement, and/or any objections or interventions may be used as evidence; and

(f)     The preliminary certification of the Settlement Class pursuant to this order shall be vacated automatically, and the Action shall proceed as though the Settlement Class had never been preliminarily certified.

31.     The Parties and their counsel are hereby authorized to use all reasonable

16cv1617-GPC(JLB)

procedures in connection with approval and administration of the Settlement that are not materially inconsistent with the Preliminary Approval Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the Settlement, to the form and content of the Class Notice or to any other exhibits that the Parties jointly agree are reasonable and necessary.

IT IS SO ORDERED.

Dated:  May 5, 2023

Hon. Gonzalo P. Curiel
United States District Judge

30

16cv1617-GPC(JLB)